**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **ANTONIO R. WILLIAMS,** | |
| **Plaintiff,** | **Civil Action No: 2:26-cv-02179** |
| **v.** | **Transferor Court:** |
| | **Court of Common Pleas** |
| **AIR & LIQUID SYSTEMS CORPORATION,** **et al.,** | **Philadelphia County** |
| | **Case ID: 260300273** |
| **Defendants.** | |

**DEFENDANT HUNTINGTON INGALLS INDUSTRIES, INC.'S
NOTICE OF REMOVAL**

PLEASE TAKE NOTICE that Defendant Huntington Ingalls Industries, Inc. ("HII"), incorrectly sued as Huntington Ingalls Industries, by counsel, pursuant to 28 U.S.C. §§ 1442 and 1446, subject to and without waiving any defenses, including specifically its objection to the exercise of personal jurisdiction by this Court, hereby removes this civil action to the United States District Court for the Eastern District of Pennsylvania from the Court of Common Pleas, Philadelphia County, Case No. 260300273, where it is currently pending. The specific grounds for removal are as follows:

**I.    OVERVIEW**

1.     On March 2, 2026, Plaintiff Antonio Williams ("Plaintiff") filed a Complaint against HII and eleven other defendants, commencing the action entitled *Antonio Williams v. Air & Liquid Systems Corp., et al.*, Case No. 260300273, in the Pennsylvania Court of Common Pleas, Philadelphia County. A true and correct copy of the Complaint is attached as **Exhibit A**.

2.     Plaintiff served a Summons and Complaint upon HII on March 5, 2025. True and correct copies of the summons and service of process transmittal are attached collectively as **Exhibit B**.

3. Plaintiff's Complaint alleged that he was exposed to asbestos while serving as an ironworker for McClean Contracting from 1980 to 1989, a pile drive operator for Stella Marina Iron from 1989 to 1991, an ironworker for Ironman Construction from 1992 to 1996, and as an ironworker for D.T. Read Steel Company from 1996 to 2001. Plaintiff also alleges asbestos exposure from his father's work in an unspecified shipyard. Plaintiff alleges that he "spent time working at Newport News Shipbuilding" at some point during his time at McClean Contracting "where he worked with and around asbestos-containing pumps, valves, cranes, electrical equipment, and welding rods." Ex. A, Compl. ¶ 5.

4. On March 25, 2026, Plaintiff served his response to General Interrogatories, which contain a recitation of Plaintiff's alleged worksites and exposures identical to that found in the Complaint. A true and correct copy of Plaintiff's Interrogatory Responses are attached as **Exhibit C.**

5. On March 25, 2026, HII filed Preliminary Objections to Plaintiff's Complaint in the nature of a Motion to Strike for Lack of Personal Jurisdiction and Motion for a More Specific Pleading.

6. Undersigned counsel verifies that true and correct copies of all pleadings and other documents filed with the state court are attached collectively as **Exhibit D**.

7. A true and correct copy of the state court docket is attached as **Exhibit E**.

8. Plaintiff alleges that he was exposed to asbestos and that such exposure caused him to develop lung cancer. Ex. A, Compl. ¶ 6.

9. Plaintiff's Complaint fails to allege the factual basis of his claims against HII. HII assumes that such claims are related to Plaintiff's allegation that Plaintiff was exposed to asbestos at "Newport News Shipbuilding" a/k/a the Newport News Shipyard ("NNSY").

2

10.    HII does not own or operate the NNSY.  Rather, Huntington Ingalls Incorporated ("HIC"), who is not named or served in this suit, owns and operates NNSY.

11.    HIC is a wholly-owned subsidiary of HII.   HIC—not HII—holds the liabilities related to NNSY.

12.    HIC is and was, at all times relevant to the allegations in the Complaint, in the business of building, repairing, and overhauling ships.  In carrying out those activities, HIC conducts a substantial amount of work as a government contractor constructing, repairing, and overhauling United States Navy ("Navy") vessels.

13.    Throughout the 1980s, NNSY exclusively built and overhauled ships for the US Navy.  *See* Decl. of Rear Admiral David P. Sargent, Jr., ¶ 7, attached as **Exhibit F.** [1]

14.    Any asbestos used in the construction or overhaul of Navy vessels by HIC, including any ship at NNSY, was used pursuant to the direction of the Navy.  *See* Ex. F, Sargent Decl., ¶¶ 25-73, 85.  Thus, to the extent Plaintiff is alleging exposure from working with or around asbestos-containing equipment, such as pumps, valves, or electrical equipment, that was installed or used in ship construction or overhaul at NNSY, such exposure is necessarily attributable to asbestos-containing materials required for use in the construction and overhaul of Navy vessels.

15.    The Navy's contracts with HIC specified in great detail all the materials, processes and testing that were required by invoking numerous Navy or Military Specifications and Standards, and the work was overseen continuously by the onsite Navy Supervisor of Shipbuilding (SUPSHIP) commander and staff.  Ex. F, Sargent Decl. ¶¶ 40-73, 85.  These contracts were binding on HIC and required the use of specific products, including at times asbestos-containing products, in the construction of Navy ships and submarines.  *See id*.  The ships and submarines conformed to

---

[1] The Exhibits to the Decl. of Rear Admiral Sargent's Declaration are voluminous and are not included with this Notice of Removal, other than Exhibit A.  HII will file the Exhibits or otherwise share them with Plaintiff upon request.

and complied with the Government's specifications.  HIC could not vary from those detailed specifications and standards in any way without the express approval of the Navy and a modification to the contract documenting that approved change.  *See id.*

16.    As a result, HII, which is sued for the conduct of HIC, has colorable federal defenses to any claims against it under *Boyle v. United Technologies Corp.,* 487 U.S. 500 (1988) and *Yearsley v. WA Ross Construction Co.*, 309 U.S. 18 (1940).  This case is thus removable on the grounds of federal officer removal jurisdiction pursuant to 28 U.S.C. § 1442(a)(1).

17.    This Notice of Removal is timely.  Under 28 U.S.C. § 1446(b), a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief.  28 U.S.C. § 1446(b)(1).  HII was served with Plaintiff's Complaint on March 5, 2026, which first put HII on notice that Plaintiff's claims against HII in this action stem from alleged work at NNSY between 1980 and 1989, when only Navy vessels were under construction.  Thus, this Notice of Removal, filed within 30 days of service, is timely.

18.    This Notice of Removal and all exhibits hereto are being filed in the United States District Court for the district and division in which the state court action is pending.  *See* 28 U.S.C. § 1446(a).

19.    Pursuant to § 1446(a), HII has filed herewith a copy of all process, pleadings, and orders served upon it in the case to date.

20.    HII is not required to notify, or obtain the consent of, any other defendant in this action to remove the entire case under § 1442(a)(1).  *See* 28 U.S.C. § 1446(b)(2)(A) (requiring all defendants to consent only when "a civil action is removed solely under section 1441(a)"); *Genereux v. Am. Beryllia Corp*., 577 F.3d 350, 357 n. 9 (1st Cir. 2009); *Ely Valley Mines, Inc. v. Hartford Acc. & Indem. Co.*, 644 F.2d 1310, 1315 (9th Cir. 1981).

21.     Notice of removal will be filed with the Pennsylvania Court of Common Pleas, Philadelphia County and provided to all adverse parties pursuant to 28 U.S.C. § 1446(d).

## II.     JURISDICTION AND VENUE

22.     As a preliminary matter, HII is not subject to personal jurisdiction in Pennsylvania with respect to Plaintiff's claims.  HII incorporates the objections to personal jurisdiction as set forth in its Preliminary Objections.

23.     The Court's subject matter jurisdiction is based on 28 U.S.C. §§ 1331 and 1442(a)(1) in that it is a civil action in which Plaintiff's alleged right to relief necessarily depends on the resolution of a substantial question of federal law.

24.     Venue is proper in the Eastern District of Pennsylvania because the state court action was filed in the Pennsylvania Court of Common Pleas, Philadelphia County.  28 U.S.C. § 1442(a).

## III.     GROUNDS FOR REMOVAL

25.     Removal is proper under 28 U.S.C. § 1442(a)(1) of any state court action against or directed to "[t]he United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof . . . for or relating to any act under color of such office . . . ."  28 U.S.C. § 1442(a)(1).

26.     "This statute overcomes the well-pleaded complaint rule by providing a method to remove a case brought in state court against a federal officer, or any person acting under a federal officer, despite the absence of a federal cause of action."  *Nesbiet v. Gen. Elec. Co.*, 399 F. Supp. 2d 205, 210 (S.D.N.Y. 2005) (citing *Jefferson County v. Acker*, 527 U.S. 423, 431 (1999)).  This statute "enables the defendant to have the validity of his immunity defense adjudicated, in a federal forum."  *Arizona v. Manypenny*, 451 U.S. 232, 242 (1981).

27.     The Supreme Court has held that "the right of removal is absolute for conduct performed under color of federal office, and has insisted that the policy favoring removal 'should not be frustrated by a narrow, grudging interpretation of § 1442(a)(1).'"  *Id.* at 242 (quoting *Willingham v. Morgan,* 395 U.S. 402, 406-07 (1969)).

28.     Removal pursuant to 28 U.S.C. § 1442(a)(1) is appropriate where the moving party can show that (a) it is a "person" within the meaning of the statute; (b) the plaintiff's claims are based upon the moving party's conduct "acting under" the United States, its agencies, or its officers; (c) the plaintiff's claims against the moving party are "for or related to" an act performed under the color of federal office; and (d) the moving party raises a colorable federal defense to the plaintiff's claims.  *In re Commonwealth's Motion to Appoint Counsel Against or Directed to Defender Ass'n of Philadelphia*, 790 F.3d 457, 467 (3d Cir. 2015), *as amended* (June 16, 2015).  Here, HII, sued for the conduct of HIC, has met these requirements and is thus entitled to remove the case.

 **A.     HIC is a "Person" Under § 1442(a)(1).**

29.     A corporation is a "person" within the meaning of section 1442(a)(1).  *Papp v. Fore-Kast Sales Co., Inc.*, 842 F.3d 805, 812 (3d Cir. 2016) ("Because § 1442(a)(1) does not itself define the term 'person,' we look to § 1 of Title I of the United States Code, which defines 'person' to 'include corporations, companies, associations, firms, partnerships, societies, and joint stock companies, as well as individuals.'")  Thus, HIC was, at all relevant times, a "person" within the meaning of the statute.

 **B.     HIC Was Acting Under the Direction of the Navy.**

30.     An entity acts under a federal officer when it assists, or helps carry out, the duties or tasks of a federal superior.  *Watson v. Philip Morris Companies, Inc.*, 551 U.S. 142, 147 (2007) ("The words 'acting under' are broad").  The Third Circuit has stated that the "classic case of such assistance as it relates to government contractors is when 'the private contractor acted under a

federal officer or agency because the contractors 'help[ed] the Government to produce an item that it need[ed].'''" *Papp*, 842 F.3d at 812 (quoting *Defender Ass'n*, 790 F.3d at 468). "When . . . 'the federal government uses a private corporation to achieve an end it would have otherwise used its own agents to complete,' that contractor is 'acting under' the authority of a federal officer." *Id.* at 814 (quoting *Ruppel v. CBS Corp.*, 701 F.3d 1176, 1181 (7th Cir. 2012)).

31.     To the extent HIC used any asbestos-containing products in the design, construction, or repair of any Navy ship between 1980 and 1989, HIC was acting under the direction of an officer of the United States within the meaning of 28 U.S.C. § 1442(a)(1) pursuant to a contract with the Navy.  HIC's execution of its contract with the Navy was done under the supervision and control of the Navy in strict accordance with precise specifications provided by the Navy.  *See* Ex. F, Sargent Decl. ¶¶ 40-73.  If the materials or work failed to conform to the detailed Navy specifications, the Navy officers could and would reject the materials or work.  *See id*. ¶¶ 40-49, 63, 79, 85.

**C.      There is a Connection Between Plaintiff's Claims and the Acts HIC Performed Under Color of Federal Office.**

32.     The Third Circuit has held that "in order to meet the 'for or relating to' requirement, 'it is sufficient for there to be a connection or association between the act in question and the federal office.'"  *Papp*, 842 F.3d at 813 (quoting *Defender Ass'n*, 790 F.3d at 471).  Prior to a 2011 amendment that added the words "or relating to," § 1442(a)(1) required "a nexus, a 'causal connection' between the charged conduct and asserted official authority."  *Acker*, 527 U.S. at 431.  The 2011 amendment, however, was intended to "'broaden the universe of acts that enable Federal officers to remove [suits] to Federal court,'" leading courts to adopt a "more permissive view" by requiring only a "connection or association."  *Papp*, 842 F.3d at 813 (quoting H.R. Rep. No. 112-17, pt.1, at 6 (2011)).

33.     HII has plainly demonstrated a "connection" or "association"—and, in fact, even the more stringent "nexus"—between Plaintiff's claims in this action and the acts taken by HIC under the direction of federal officers—the same acts for which HII is sued.  Any claims against HII arise, though directed against the wrong entity, from Mr. Williams's alleged exposure to asbestos through his work at NNSY during years when only Navy ships were constructed there, pursuant to the specifications of HIC's contracts with the Navy and under the direct supervision of the Navy.  As set forth above, the claims against HII are inseparable from the government specifications that required the use of asbestos, if any, such that a clear connection exists between Plaintiff's claims and the acts performed by HIC (and attributed to HII) under color of federal office.

**D.     HII Asserts Two Colorable Federal Defenses.**

34.     HII has asserted facts establishing two colorable federal defenses that entitle it to remove this case: (1) the government contractor defense under *Boyle v. United Technologies Corp.,* 487 U.S. 500 (1988); and (2) derivative immunity under *Yearsley v. WA Ross Construction Co.*, 309 U.S. 18 (1940).

35.     "While the Court must require that the facts identified by the defendant support the federal defense, the Court is not called upon at this preliminary stage to pierce the pleadings or dissect the facts stated.  Nor is the Court's function at this stage to determine credibility, weigh the quantum of evidence or discredit the source of the defense."  *Hagen v. Benjamin Foster Co.*, 739 F. Supp. 2d 770, 782 (E.D. Pa. 2010).

> It is the sufficiency of the facts stated—not the weight of the proof presented—that matters.  For policy reasons, Congress has erected a road to federal court for litigants who can invoke a federal defense.  It is not the Court's role to impose judicially created tolls on those who seek to travel on it.  Thus, the Court concludes that a defense is colorable for purposes of determining jurisdiction under Section 1442(a)(1) if the defendant asserting it identifies facts which, viewed in the light most favorable to the defendant, would establish a complete defense at trial.

*Id.* at 782-83; *see also Papp*, 842 F.3d at 815 ("At the removal stage, [the defendant] needed only show that its asserted *Boyle* defense was 'colorable,' which is to say that the defense was 'legitimate and [could] reasonably be asserted, given the facts presented and the current law.'")

36.     To the extent Mr. Williams claims any asbestos exposure from equipment installed or intended to be installed on any Navy vessels, such equipment contained asbestos, if at all, pursuant to a contract with the Navy, according to the strict specifications of the Navy, and under the strict supervision of the Navy.  *See* Ex. F, Sargent Decl. ¶¶ 40-73, 85.

37.     The Navy selected the component parts and materials for the ships and submarines that HIC constructed, overhauled, and repaired, and specified their design, including the use of asbestos, if any.  *Id*.  HIC had no discretion with respect to the component parts and materials used in connection with constructing, overhauling, and repairing Navy ships and submarines.  *Id.*

38.     This is true with respect to any asbestos-containing materials or component parts that were used.  Due to the importance of heat transfer and insulation in Navy propulsion plants and aboard Navy vessels more generally, the Navy maintained significant expertise in this area.  The BUSHIPS manual and other documents issued and continuously updated by the Navy contained detailed instructions for the insulation of various systems and equipment by Navy shipyards or private contractors.  The Navy's specifications provided detailed instructions as to the specific insulating materials to be used, and also as to the amounts of those materials and the manner in which they were to be applied.  *Id.* ¶¶ 74-85.

39.     Further, to achieve its objective of ensuring that any markings on the component parts or materials used in the construction of Navy ships filled the specific informational role the Navy desired for its Navy audience and environment, the Navy developed precise specifications as to the nature of any markings, communications, or directions affixed to or made a part of any equipment supplied by equipment manufacturers for ultimate use aboard Navy ships.  *Id.* ¶¶ 87-

111. Constructing shipyards would not have been permitted, under the specifications, associated regulations and procedures, nor under the actual practice as it evolved in the field, to vary or to deviate in any respect from the Navy specifications in supplying equipment, including affixing any type of warning or caution statement to equipment intended for installation in a Navy ship, beyond those specifically required by the Navy without prior discussion and express approval by the Navy. *Id*.

40.      The Navy had state of the art knowledge concerning the potential risks associated with exposure to asbestos.  The Navy was, and still is, one of the world's largest heavy industrial concerns and had its own industrial hygiene program to provide protection for its uniformed and civilian workforce.  As a result, Navy organizations, including the Bureau of Medicine and Surgery, the Bureau of Ships, and their successors, developed and acquired state of the art knowledge concerning the potential risks or hazards relating to work with or around asbestos-containing materials and products.  The Navy possessed information superior to that of its government contractors on issues of industrial hygiene and asbestos medicine, including any potential risks involved with use of asbestos-containing components or materials.  *See, e.g., Zeringue v. Crane Co.*, 846 F.3d 785, 791–92 (5th Cir. 2017)[2]; *Shuman v. United States*, 765 F.2d 283, 285-86 (1st Cir. 1985); *Hilster v. Air & Liquid Sys. Corp.*, No. 2:20-CV-01537-MJH, 2022 WL 1720321, at *6-7 (W.D. Pa. May 27, 2022); *Kraus v. Alcatel-Lucent et. al.,* No. CV 18-2119, 2018 WL 3585088, at *4-5 (E.D. Pa. July 25, 2018); *Marley v. Elliott Turbomachinery Co., Inc.,* 545 F. Supp. 2d 1266, 1270 (S.D. Fla. 2008); *Blackman v. Asbestos Defendants (BHC),* No. C-97-3066, 1997 WL 703773, *3 (N.D. Cal. Nov. 3, 1997); *Kase v. Metalclad Insulation Corp.*, 6 Cal. App. 5th 623, 643 (Ct. App. 2016).

---

[2] Overruled on other, unrelated grounds in *Latiolais v. Huntington Ingalls, Incorporated*, 951 F.3d 286 (5th Cir. 2020) (overruling line of cases erroneously relying on a "causal nexus" test after Congress amended section 1442(a) to include the phrase "relating to")

41.     Shipyards, both public Naval Shipyards and private shipyards, were required to use exactly the materials specified by their contracts with the Navy and could not vary from those detailed requirements without prior approval from the Navy and a modification to the contract documenting any approved variation from the original contract.  *See* Ex. F, Sargent Decl. ¶¶ 63, 85.

42.     All Navy vessels constructed by HIC were subject to inspection and testing by the Navy prior to approval to ensure complete conformity with the design specifications.  *See* Ex. F, Sargent Decl. ¶¶ 51, 64, 69.

### i.      *Boyle v. United Technologies Corp.*

43.     Based on these facts, any claims against HII, which are based on the conduct of HIC, are affirmatively barred by the government contractor defense as set forth by the U.S. Supreme Court in *Boyle v. United Technologies Corp.,* 487 U.S. 500 (1988).  Pursuant to this federal defense, government contractors are immune from liability arising from work performed for the United States military when: (a) the United States approved reasonably precise specifications; (b) the equipment conformed to these specifications; and (c) the equipment supplier warned the military about any hazards involved in the use of the equipment that are known to the equipment supplier but not known to the military.  *Boyle,* 487 U.S. at 512; *see also Papp*, 842 F.3d at 814.

44.     Analyzing the *Boyle* factors in light of the facts set forth above, it is clear that HII, sued for the conduct of HIC, has a colorable federal defense with respect to Plaintiff's claims: (a) the Navy provided strict design specifications for the construction of the ships, including the use of asbestos-containing products and equipment, if any; (b) HIC complied with the Navy's specifications for the construction of its vessels, including the use of asbestos-containing products, if any; and (c) the Navy had state of the art knowledge and was aware of potential health hazards of working with or around asbestos-containing materials, and thus, HIC (and HII) would not have had knowledge of any hazards associated with the use of the equipment or materials which was not

already known to the United States.  HII is thus entitled to the government contractor defense with respect to Plaintiff's claims.  *See, e.g.*, *Papp*, 842 F.3d at 814; *Leite v. Crane Co.* 749 F.3d 1117, 1123 (9th Cir. 2014); *Hilster*, 2022 WL 1720321, at *6-7; *Vedros v. Northrop Grumman Shipbuilding, Inc.*, No. CIV.A. 2:11-67281-ER, 2012 WL 3155180, at *7 (E.D. Pa. Aug. 2, 2012); *Blackman,* 1997 WL 703773, *3; *Marley,* 545 F. Supp. 2d at 1271; *Pack v. AC & S, Inc.*, 838 F. Supp. 1099, 1104 (D. Md. 1993); *Fung v. Abex Corp.,* 816 F. Supp. 569, 573 (N.D. Cal. 1992); *see also Shuman*, 765 F.2d at 285-86; *Zeringue*, 846 F.3d at 791–92; *Kase*, 6 Cal. App. 5th at 643.

45.    HIC has successfully removed a number of asbestos cases based on its status as a government contractor.  *See, e.g.*, *Thorp v. Air & Liquid Systems Corporation, et al.* No. 2:23-cv-2594 (E.D. Pa. July 6, 2023); *Parker v. Alfa Laval Inc., et al.*, No. 4:20-cv-00174-DTF (D. Az. Apr. 22, 2020); *Rogers v. A.O. Smith Corporation et. al*, Civ. No. 2:19-cv-00573 (E.D. Pa. Feb. 15, 2019); *Sullivan v. A.W. Chesterton, Inc. et. al.,* Civ. No. 2:18-cv-03622 (E.D. Pa. Aug. 22, 2018); *Fend v. Allen-Bradley Company, et. al.,* Civ. No. 2:17cv1701-ER (E.D. Pa. Apr. 20, 2017); *Terry et al v. Thomas Dee Engineering Company et al*, No. 2:12-cv-03576-DSF-MAN (C.D. Cal. April 25, 2012); *Cotten v. Asbestos Corp Ltd et al*, No. 3:14-cv-02124-JD (N.D. Cal. May 8, 2014); *Fannin et al v. Asbestos Corporation Limited et al*, No. 3:11-cv-06156-WHO (N.D. Cal. December 7, 2011); *see also, e.g., Quisenberry v. BorgWarner Morse Tec Inc.*, Civil Action No. 4:16cv126 (E.D. Va. Jan. 30, 2017); *Blackburn v. Northrup Grumman Newport News*, 2:07-CV-63993-ER (E.D. Pa. MDL 875 Aug. 10, 2011) (denying Plaintiff's Motion for Remand in fifteen separate cases against HIC).  HII is entitled to the same outcome here.

### ii.    *Yearsley v. WA Ross Construction Co.*

46.    HII, sued for the conduct of HIC, is also entitled to federal officer removal under 28 U.S.C. 1442(a)(1) based upon the separate and additional federal defense of derivative sovereign immunity as set forth in *Yearsley v. WA Ross Construction Co.*, 309 U.S. 18 (1940).

47.     *Yearsley* established that a government contractor, performing at the direction and authorization of a government officer, is immune from suit based upon performance of the contract. *Id.* at 20-21; *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 673 (2016), *as revised* (Feb. 9, 2016) ("Where the Government's 'authority to carry out the project was validly conferred, that is, if what was done was within the constitutional power of Congress,' we explained, 'there is no liability on the part of the contractor' who simply performed as the Government directed." (quoting *Yearsley*)).

48.     For the reasons stated above, that is the case here.  To the extent HIC used asbestos in the construction of its vessels, it did so as a result of the Navy's strict design specifications.  In other words, HIC's use of such products occurred at the direction of the Navy, acting pursuant to government authorization, such that if the government had performed these acts directly, it would be immune from suit.  HII, sued for the conduct of HIC, should be as well.

49.     As the Third Circuit recently clarified, both *Boyle* and *Yearsley* should not be defined "so narrowly" as to apply only to questions over which the contractor had no discretion. *Gay v. A.O. Smith Corp.*, No. 23-2078, 2024 WL 2558735, at *3 (3d Cir. May 24, 2024).  Instead, the critical inquiry under *Yearsley* is only whether the contractor's "main activities… were authorized and directed by the government."  *Id.* At *2 (holding that the contractor need not show that the government directed an alleged failure to warn about asbestos.)

## IV.     CONCLUSION

50.     Removal of this action is proper under 28 U.S.C. § 1442 (a)(1).

51.     Should Plaintiff move to remand this case, HII respectfully requests an opportunity to respond more fully in writing, including the submission of additional affidavits and authority.

52.     HII reserves all of its defenses.

WHEREFORE, Huntington Ingalls Industries, Inc. has stated sufficient bases for removal under § 1442, and thus, respectfully requests, subject to and without waiving its objection to the

exercise of personal jurisdiction, that this matter proceed in federal court.  This Notice has been served on all counsel of record on the date and manner stated in the Certificate of Service.

Respectfully submitted this 2nd day of April, 2026.

**HUNTON ANDREWS KURTH LLP**

*Alexandra B. Cunningham*
Alexandra B. Cunningham (Pa. Bar No. 334728)
Hunton Andrews Kurth LLP
951 East Byrd Street
Riverfront Plaza, East Tower
Richmond, Virginia 23219
Telephone: (804) 788-8200
acunningham@hunton.com

***Attorneys for Defendant Huntington Ingalls Industries, Inc.***

14