# Exhibit A

**WEITZ & LUXENBERG**
*A New York Professional Corporation*
By: EDWARD M. COSTELLO III, ESQUIRE
Atty Id: 335450
220 Lake Drive East, Suite 210
Cherry Hill, NJ  08002
(856)755-1115



Filed and Attested by the
Office of Judicial Records
02 MAR 2026 10:57 am
D. SMITH

Attorneys for Plaintiff(s)

ANTONIO R WILLIAMS
401 Davis Ave.
Elizabeth City, NC 27909

                Plaintiff(s)

    vs.

AIR & LIQUID SYSTEMS CORPORATION,
as successor-by-merger to BUFFALO
PUMPS, INC., et al

                Defendants.

COURT OF COMMON PLEAS
PHILADELPHIA COUNTY

              TERM 2026

NO.

ASBESTOS CASE

JURY TRIAL DEMANDED

## <u>NOTICE TO PLEAD</u>

### NOTICE

You have been sued in Court.  If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this Complaint and Notice are served, by entering a written appearance, personally, or by an attorney, and filing in writing with the Court your defenses or objections to the claims set forth against you.  You are warned that if you fail to do so, the case may proceed without you, and a judgment may be entered against you by the Court without further notice for any money claimed in the Complaint or for any other claim or relief requested by the plaintiff.  You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE.  IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP:
PHILADELPHIA BAR ASSOCIATION
Lawyer Referral and Information Service
One Reading Center
Philadelphia, PA 19107
Telephone: 215-238-1701

### AVISO

Le han demandado a usted en la corte.  Si usted quiere de estas demandas expuestas en las paginas siguientes, usted tiene veinte (20) dias de plaza al partif de la fecha de la demanda y la notificacion.  Hace falta asentar una comparencia escrita o en persona o con un abagado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su persona.  Sea avisado que si usted no se defiende, la corte tomara medidas y puede continuar la demanda en contra suya sin previo aviso o notificacion.  Ademas, la corte puede decidir a favor del demandante y requiere que usted cumpla con todas las provisiones de esta demanda.  Usted puede perder dienero o sus propiedades u otros derechos importantes para usted.

LLEVE ESTA DEMANDA A UN ABOGADO IMMEDIATAMENTE.  SI NO TIENE ABAGADO O SI NO TIENE EL DINERO SUFICIENTE DE PAGAR TAL SERVICIO, VAYA EN PERSONA O LLAME POR TELEFONO A LA OFICINA CUYA DIRECCION SE ENCUENTRA ESCRITA ABAJO PARA AVERIGUAR DONDE SE PUEDE CONSEGUIR ASISTENCIA LEGAL.
ASOCIATION DE LICENCIADOS DE FILADELFIA
Servicio De Referencia E Informacion Legal
One Reading Center
Filadelfia, Pennsylvania 19107
Telefono: 215-238-1701

Case ID: 260300273

**WEITZ & LUXENBERG**
*A New York Professional Corporation*
By: EDWARD M. COSTELLO III, ESQUIRE
Atty Id: 335450
220 Lake Drive East, Suite 210
Cherry Hill, NJ  08002
(856)755-1115

Attorneys for Plaintiff(s)

| | |
|---|---|
| ANTONIO R WILLIAMS<br>401 Davis Ave.<br>Elizabeth City, NC 27909<br><br>Plaintiff(s)<br><br>vs.<br><br>AIR & LIQUID SYSTEMS CORPORATION,<br>as successor-by-merger to BUFFALO<br>PUMPS, INC., et al<br><br>Defendants | COURT OF COMMON PLEAS<br>PHILADELPHIA COUNTY<br><br>TERM 2026<br>NO.<br><br>ASBESTOS CASE<br><br>JURY TRIAL DEMANDED |

## SHERIFF'S SERVICE LIST

**AIR & LIQUID SYSTEMS CORPORATION,**
   **as successor-by-merger to BUFFALO PUMPS, INC.**
5235 North Front Street
Harrisburg, PA 17110

**PARAMOUNT GLOBAL, f/k/a VIACOMCBS Inc.,**
   **f/k/a CBS CORPORATION, a Delaware Corporation,**
   **f/k/a/ VIACOM INC., successor by merger to CBS**
   **CORPORATION, a PENNSYLVANIA CORPORATION, f/k/a**
   **WESTINGHOUSE ELECTRIC CORPORATION**
Asbestos Litigation Support Manager
ECKERT SEAMANS CHERIN & MELLOTT, LLC
Case Management & Technology Center
USX Towers
600 Grant Street
Pittsburgh, PA 15219

Case ID: 260300273

**WEITZ & LUXENBERG**
*A New York Professional Corporation*
By: EDWARD M. COSTELLO III, ESQUIRE
Atty Id: 335450
220 Lake Drive East, Suite 210
Cherry Hill, NJ  08002
(856)755-1115

Attorneys for Plaintiff(s)

| | |
|---|---|
| ANTONIO R WILLIAMS<br>401 Davis Ave.<br>Elizabeth City, NC 27909<br><br>Plaintiff(s)<br><br>vs.<br><br>AIR & LIQUID SYSTEMS CORPORATION,<br>as successor-by-merger to BUFFALO<br>PUMPS, INC., et al<br><br>Defendants. | COURT OF COMMON PLEAS<br>PHILADELPHIA COUNTY<br><br>TERM 2026<br>NO.<br><br>ASBESTOS CASE<br><br>JURY TRIAL DEMANDED |

## DEFENDANTS SERVICE LIST

**AIR & LIQUID SYSTEMS CORPORATION,**
  **as successor-by-merger to BUFFALO PUMPS, INC.**
5235 North Front Street
Harrisburg, PA 17110

**CATERPILLAR, INC.**
CORPORATION SERVICE COMPANY
251 LITTLE FALLS DRIVE
Wilmington, DE 19808

**FMC CORPORATION,**
  **Individually and Successor to LINKBELT**
306 West Main Street
Suite 512
Frankfort, KY 40601

**GENERAL ELECTRIC COMPANY**
Electric Insurance Company
75 Sam Fonzo Drive

Case ID: 260300273

Beverly, MA 01915

**GOULDS PUMPS LLC**
CT Corporation System
28 Liberty St,  42nd Fl
New York, NY 10005

**HUNTINGTON INGALLS INDUSTRIES**
c/o Hunton Andrews Kurth LLP
951 E. Byrd Street
Richmond, VA 23219

and
4101 Washington Avenue
Newport News, VA 23607
Richmond, VA 23219

**IMO INDUSTRIES, LLC.**
28 Liberty Street
28th Floor
New York, NY 10005

**ITT LLC.,**
   **Individually and as successor to**
   **BELL & GOSSETT and as successor to**
   **KENNEDY VALVE MANUFACTURING CO., Inc.**
CT Corporation
28 Liberty Street
New York, NY 10005

**PARAMOUNT GLOBAL, f/k/a VIACOMCBS Inc.,**
   **f/k/a CBS CORPORATION, a Delaware Corporation,**
   **f/k/a/ VIACOM INC., successor by merger to CBS**
   **CORPORATION, a PENNSYLVANIA CORPORATION, f/k/a**
   **WESTINGHOUSE ELECTRIC CORPORATION**
Asbestos Litigation Support Manager
ECKERT SEAMANS CHERIN & MELLOTT, LLC
Case Management & Technology Center
USX Towers
600 Grant Street
Pittsburgh, PA 15219

**REDCO CORPORATION f/k/a CRANE CO.**
The Corporation Trust Company
1209 Orange Street
Wilmington, DE 19801

or

Redco Corporation
1000 N. West Street, Suite 1200
Wilmington, Delaware 19801

**SCHNEIDER ELECTRIC USA, INC. formerly known as
    SQUARE D COMPANY**
Corporation Service Company
801 Adlai Stevenson Dr
Springfield, IL 62703

**WARREN PUMPS, LLC**
CT Corporation
1209 Orange Street
Wilmington, DE 19801

**WEITZ & LUXENBERG**
*A New York Professional Corporation*
By: EDWARD M. COSTELLO III, ESQUIRE
Atty Id: 335450
220 Lake Drive East, Suite 210
Cherry Hill, NJ  08002
(856)755-1115

Attorneys for Plaintiff(s)

| | |
|---|---|
| ANTONIO R WILLIAMS<br>401 Davis Ave.<br>Elizabeth City, NC 27909<br><br>Plaintiff(s)<br><br>vs.<br><br>AIR & LIQUID SYSTEMS CORPORATION,<br>as successor-by-merger to BUFFALO<br>PUMPS, INC., et al<br><br>Defendants. | COURT OF COMMON PLEAS<br>PHILADELPHIA COUNTY<br><br>TERM 2026<br>NO.<br><br>ASBESTOS CASE<br><br>JURY TRIAL DEMANDED |

## CIVIL ACTION COMPLAINT

Plaintiff(s) incorporate by reference Plaintiffs Master Long Form Complaint In re:

Asbestos Litigation in Philadelphia County Court of Common Pleas, filed as of October Term

1986, No. 8610-0001.  Pursuant to an Order dated July 30, 1986, and signed by the Honorable

Richard B. Klein, the following Short Form Complaint is utilized in this asbestos action.

1.    This Complaint involves the claims of the following person(s):
    a.  Plaintiff:
    Name:      ANTONIO R WILLIAMS
    Address:   401 Davis Ave.
    Elizabeth City, NC 27909
    SSN:        xxx-xx-████
    Date of Birth:    ████████

2.    The Defendants are those companies listed in the caption.

Case ID: 260300273

3.      Plaintiff(s) might have named as defendants other additional entities responsible for the manufacture, distribution and/or supply of products that contained asbestos or were designed to be used with asbestos, except that such other entities have petitioned for relief in bankruptcy under the United States Bankruptcy Code and, pursuant to federal statute, the institution of actions against these entities is stayed.

4.      Plaintiff(s) hereby incorporate by reference the following Counts from the Master Long Form Complaint: Counts I through X.

5.      Plaintiff(s) asbestos employment history is as follows:

| McLean Contracting | CHESAPEAKE | VA | 01/1980 | 12/1989 | IRONWORKER |
|---|---|---|---|---|---|
| STELLA MARINA IRON | SOUTH NORFOLK | VA | 01/1989 | 12/1991 | PILE DRIVER OPERATOR |
| IRONMAN CONSTRUCTION | NEWPORT NEWS | VA | 01/1992 | 12/1996 | IRONWORKER |
| D.T. READ STEEL COMPANY | SOUTH MILLS | NC | 01/1996 | 12/2001 | IRONWORKER |

Mr. Williams was occupationally exposed to asbestos from his work as an ironworker. He was non-occupationally exposed to asbestos from his father's work in a shipyard.

From 1980 to 1989, Mr. Williams was exposed to asbestos while working as an ironworker for McLean Contracting. Mr. Williams spent time working at Newport News Shipbuilding, where he worked with and around asbestos-containing pumps, valves, cranes, electrical equipment, and welding rods.

6.      Plaintiff was diagnosed on or around April 24, 2025, as having Lung Cancer which is the direct and proximate result of his exposure to asbestos dust and fibers.  This exposure arose from working with or around products manufactured and distributed by defendants.

Case ID: 260300273

7.      Plaintiff's smoking history:

Plaintiff smoked approximately 1 pack-per-day from 1989 until 2009.

8.      Plaintiff's wages during his full year of employment were:

a.  To be supplied if applicable.

WHEREFORE, Plaintiffs pray for judgment against the defendants and each of them

individually, jointly and severally for compensatory damages in an amount in excess of FIFTY

THOUSAND DOLLARS ($50,000.00), punitive damages, and all such damages and relief as the

Court deems just and proper.

**WEITZ & LUXENBERG, P.C.**
**Attorneys for Plaintiff(s)**

By:  _____
      Edward M. Costello III, Esq.

Case ID: 260300273

## VERIFICATION

I, Antonio Williams, Plaintiff herein, verify that the facts contained in the foregoing document are true and correct to the best of my knowledge, information, and belief. To the extent that the contents of the said document are based on information gathered by my counsel, I have relied upon my counsel in executing this verification. The language of this verification is that of my counsel.

I understand that the statements contained herein are subject to the penalties of 18 Pa.C.S. §4904 relating to unsworn falsification.

SIGNATURE: _Antonio Williams_

Case ID: 260300273

**<u>CERTIFICATION</u>**

I, Edward M. Costello III, Esq., attorney for the Plaintiff(s), certifies pursuant to Pennsylvania Rule No. 205.4 that the hard copy of this electronically filed document was properly signed.

Dated: March 2, 2026

_____
Edward M. Costello III, Esq.

Case ID: 260300273

# Exhibit B

Wolters Kluwer

**CT Corporation**
**Service of Process Notification**
03/05/2026
CT Log Number 551554103

## Service of Process Transmittal Summary

**TO:**  Jan White
Huntington Ingalls Industries, Inc.
5220 RIVER RD
AVONDALE, LA 70094-2770

**RE:**  **Process Served in Virginia**

**FOR:**  Huntington Ingalls Industries, Inc.  (Domestic State: DE)

ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:

| | |
|---|---|
| **TITLE OF ACTION:** | Re: ANTONIO R WILLIAMS // To: Huntington Ingalls Industries, Inc. |
| **DOCUMENT(S) SERVED:** | Attachment(s), Notice, Civil Action Complaint, Verification, Certification, Case Management Order, Civil Cover Sheet |
| **COURT/AGENCY:** | Philadelphia County - Court of Common Pleas, PA
Case # 260300273 |
| **NATURE OF ACTION:** | Asbestos Litigation - Personal Injury |
| **PROCESS SERVED ON:** | C T Corporation System, Glen Allen, VA |
| **DATE/METHOD OF SERVICE:** | By Process Server on 03/05/2026 at 14:56 |
| **JURISDICTION SERVED:** | Virginia |
| **APPEARANCE OR ANSWER DUE:** | Within 20 days after service (Document(s) may contain additional answer dates) |
| **ATTORNEY(S)/SENDER(S):** | EDWARD M. COSTELLO III
WEITZ & LUXENBERG
220 Lake Drive East, Suite 210
Cherry Hill, NJ 08002
856-755-1115 |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 03/06/2026, Expected Purge Date: 03/11/2026

Image SOP

Email Notification,  Jan White  jan.white@hii-co.com

Email Notification,  Shayna Callis  shayna.e.callis@hii-co.com |
| **REGISTERED AGENT CONTACT:** | C T Corporation System
4701 Cox Road, Suite 285
Glen Allen, VA 23060
8775647529
MajorAccountTeam2@wolterskluwer.com |
| **REMARKS:** | The documents received have been modified to reflect the name of the entity being served. |

Page 1 of  2

The information contained in this Transmittal is provided by CT for quick reference only. It does not constitute a legal opinion, and should not otherwise be relied on, as to the nature of action, the amount of damages, the answer date, or any other information contained in the included documents. The recipient(s) of this form is responsible for reviewing and interpreting the included documents and taking appropriate action, including consulting with its legal and other advisors as necessary. CT disclaims all liability for the information contained in this form, including for any omissions or inaccuracies that may be contained therein.



# PROCESS SERVER DELIVERY DETAILS

**Date:**                                          Thu, Mar 5, 2026
**Server Name:**                                   Sharon Condrey

| Entity Served | HUNTINGTON INGALLS INDUSTRIES, INC. |
|---|---|
| Case Number | 260300273 |
| Jurisdiction | VA |

| Inserts |
|---|
|  |





## COMPLETE LIST OF DEFENDANTS:

1. AIR & LIQUID SYSTEMS CORPORATION
   ALIAS: AS SUCCESSOR-BY-MERGER TO BUFFALO PUMPS, INC.
   5235 NORTH FRONT STREET
   HARRISBURG PA 17110
2. CATERPILLAR, INC.
   CORPORATION SERVICE COMPANY 251 LITTLE FALLS DRIVE
   WILMINGTON DE 19808
3. FMC CORPORATION
   ALIAS: INDIVIDUALLY AND SUCCESSOR TO LINKBELT
   306 WEST MAIN STREET SUITE 512
   FRANKFORT KY 40601
4. GENERAL ELECTRIC COMPANY
   ELECTRIC INSURANCE COMPANY 75 SAM FONZO DRIVE
   BEVERLY MA 01915
5. GOULDS PUMPS LLC
   CT CORPORATION SYSTEM 28 LIBERTY ST, 42ND FL
   NEW YORK NY 10005
6. HUNTINGTON INGALLS INDUSTRIES
   C/O HUNTON ANDREWS KURTH LLP 951 E. BYRD STREET
   RICHMOND VA 23219
7. IMO INDUSTRIES, LLC.
   28 LIBERTY STREET 28TH FLOOR
   NEW YORK NY 10005
8. ITT LLC.,
   ALIAS: MANUFACTURING CO., INC.
   CT CORPORATION 28 LIBERTY STREET
   NEW YORK NY 10005
9. PARAMOUNT GLOBAL
   ALIAS: A PENNSYLVANIA CORPORATION, F/K/A WESTINGHOUSE ELECTRIC CORP
   ECKERT SEAMANS CHERIN & MELLOT USX TOWERS 600 GRANT STREET
   PITTSBURGH PA 15219
10. REDCO CORPORATION
    ALIAS: F/K/A CRANE CO.
    THE CORPORATION TRUST COMPANY 1209 ORANGE STREET
    WILMINGTON DE 19801
11. SCHNEIDER ELECTRIC USA, INC.
    ALIAS: FORMERLY KNOWN AS SQUARE D COMPANY
    CORPORATION SERVICE COMPANY 801 ADLAI STEVENSON DR
    SPRINGFIELD IL 62703
12. WARREN PUMPS, LLC
    CT CORPORATION 1209 ORANGE STREET
    WILMINGTON DE 19801

**WEITZ & LUXENBERG**
*A New York Professional Corporation*
By: EDWARD M. COSTELLO III, ESQUIRE
Atty Id: 335450
220 Lake Drive East, Suite 210
Cherry Hill, NJ 08002
(856)755-1115



Attorneys for Plaintiff(s)

---

ANTONIO R WILLIAMS
401 Davis Ave.
Elizabeth City, NC 27909

Plaintiff(s)

vs.

AIR & LIQUID SYSTEMS CORPORATION,
as successor-by-merger to BUFFALO
PUMPS, INC., et al

Defendants.

---

COURT OF COMMON PLEAS
PHILADELPHIA COUNTY

TERM 2026

NO.

ASBESTOS CASE

JURY TRIAL DEMANDED

---

## NOTICE TO PLEAD

**NOTICE**

You have been sued in Court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this Complaint and Notice are served, by entering a written appearance, personally, or by an attorney, and filing in writing with the Court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so, the case may proceed without you, and a judgment may be entered against you by the Court without further notice for any money claimed in the Complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP:
PHILADELPHIA BAR ASSOCIATION
Lawyer Referral and Information Service
One Reading Center
Philadelphia, PA 19107
Telephone: 215-238-1701

**AVISO**

Le han demandado a usted en la corte. Si usted quiere de estas demandas expuestas en las paginas siguientes, usted tiene veinte (20) dias de plaza al partif de la fecha de la demanda y la notificacion. Hace falta asentar una comparencia escrita o en persona o con un abagado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su persona. Sea avisado que si usted no se defiende, la corte tomara medidas y puede continuar la demanda en contra suya sin previo aviso o notificacion. Ademas, la corte puede decidir a favor del demandante y requiere que usted cumpla con todas las provisiones de esta demanda. Usted puede perder dienero o sus propiedades u otros derechos importantes para usted.
LLEVE ESTA DEMANDA A UN ABOGADO IMMEDIATAMENTE. SI NO TIENE ABAGADO O SI NO TIENE EL DINERO SUFICIENTE DE PAGAR TAL SERVICIO, VAYA EN PERSONA O LLAME POR TELEFONO A LA OFICINA CUYA DIRECCION SE ENCUENTRA ESCRITA ABAJO PARA AVERIGUAR DONDE SE PUEDE CONSEGUIR ASISTENCIA LEGAL.
ASOCIATION DE LICENCIADOS DE FILADELFIA
Servicio De Referencia E Informacion Legal
One Reading Center
Filadelfia, Pennsylvania 19107
Telefono: 215-238-1701

Case ID: 260300273

**WEITZ & LUXENBERG**
*A New York Professional Corporation*
By: EDWARD M. COSTELLO III, ESQUIRE
Atty Id: 335450
220 Lake Drive East, Suite 210
Cherry Hill, NJ 08002
(856)755-1115

Attorneys for Plaintiff(s)

| | |
|---|---|
| ANTONIO R WILLIAMS<br>401 Davis Ave.<br>Elizabeth City, NC 27909<br><br>          Plaintiff(s)<br><br>   vs.<br><br>AIR & LIQUID SYSTEMS CORPORATION,<br>as successor-by-merger to BUFFALO<br>PUMPS, INC., et al<br><br>          Defendants | COURT OF COMMON PLEAS<br>PHILADELPHIA COUNTY<br><br>          TERM 2026<br>NO.<br><br>ASBESTOS CASE<br><br>JURY TRIAL DEMANDED |

## SHERIFF'S SERVICE LIST

**AIR & LIQUID SYSTEMS CORPORATION,**
  **as successor-by-merger to BUFFALO PUMPS, INC.**
5235 North Front Street
Harrisburg, PA 17110

**PARAMOUNT GLOBAL, f/k/a VIACOMCBS Inc.,**
  **f/k/a CBS CORPORATION, a Delaware Corporation,**
  **f/k/a/ VIACOM INC., successor by merger to CBS**
  **CORPORATION, a PENNSYLVANIA CORPORATION, f/k/a**
  **WESTINGHOUSE ELECTRIC CORPORATION**
Asbestos Litigation Support Manager
ECKERT SEAMANS CHERIN & MELLOTT, LLC
Case Management & Technology Center
USX Towers
600 Grant Street
Pittsburgh, PA 15219

Case ID: 260300273

**WEITZ & LUXENBERG**
*A New York Professional Corporation*
By: EDWARD M. COSTELLO III, ESQUIRE
Atty Id: 335450
220 Lake Drive East, Suite 210
Cherry Hill, NJ 08002
(856)755-1115

Attorneys for Plaintiff(s)

| | |
|---|---|
| ANTONIO R WILLIAMS<br>401 Davis Ave.<br>Elizabeth City, NC 27909 | COURT OF COMMON PLEAS<br>PHILADELPHIA COUNTY |
| Plaintiff(s) | TERM 2026<br>NO. |
| vs. | ASBESTOS CASE |
| AIR & LIQUID SYSTEMS CORPORATION,<br>as successor-by-merger to BUFFALO<br>PUMPS, INC., et al | JURY TRIAL DEMANDED |
| Defendants. | |

## DEFENDANTS SERVICE LIST

**AIR & LIQUID SYSTEMS CORPORATION,**
   **as successor-by-merger to BUFFALO PUMPS, INC.**
5235 North Front Street
Harrisburg, PA 17110

**CATERPILLAR, INC.**
CORPORATION SERVICE COMPANY
251 LITTLE FALLS DRIVE
Wilmington, DE 19808

**FMC CORPORATION,**
   **Individually and Successor to LINKBELT**
306 West Main Street
Suite 512
Frankfort, KY 40601

**GENERAL ELECTRIC COMPANY**
Electric Insurance Company
75 Sam Fonzo Drive

Case ID: 260300273

Beverly, MA 01915

**GOULDS PUMPS LLC**
CT Corporation System
28 Liberty St, 42nd Fl
New York, NY 10005

**HUNTINGTON INGALLS INDUSTRIES**
c/o Hunton Andrews Kurth LLP
951 E. Byrd Street
Richmond, VA 23219

and
4101 Washington Avenue
Newport News, VA 23607
Richmond, VA 23219

**IMO INDUSTRIES, LLC.**
28 Liberty Street
28th Floor
New York, NY 10005

**ITT LLC.,**
   **Individually and as successor to**
   **BELL & GOSSETT and as successor to**
   **KENNEDY VALVE MANUFACTURING CO., Inc.**
CT Corporation
28 Liberty Street
New York, NY 10005

**PARAMOUNT GLOBAL, f/k/a VIACOMCBS Inc.,**
   **f/k/a CBS CORPORATION, a Delaware Corporation,**
   **f/k/a/ VIACOM INC., successor by merger to CBS**
   **CORPORATION, a PENNSYLVANIA CORPORATION, f/k/a**
   **WESTINGHOUSE ELECTRIC CORPORATION**
Asbestos Litigation Support Manager
ECKERT SEAMANS CHERIN & MELLOTT, LLC
Case Management & Technology Center
USX Towers
600 Grant Street
Pittsburgh, PA 15219

**REDCO CORPORATION f/k/a CRANE CO.**
The Corporation Trust Company
1209 Orange Street
Wilmington, DE 19801

Case ID: 260300273

or

Redco Corporation
1000 N. West Street, Suite 1200
Wilmington, Delaware 19801

**SCHNEIDER ELECTRIC USA, INC. formerly known as
    SQUARE D COMPANY**
Corporation Service Company
801 Adlai Stevenson Dr
Springfield, IL 62703

**WARREN PUMPS, LLC**
CT Corporation
1209 Orange Street
Wilmington, DE 19801

Case ID: 260300273

# Exhibit C

**WEITZ & LUXENBERG**
*A New York Professional Corporation*
By: EDWARD M. COSTELLO III, ESQUIRE
Identification No.: 335450
220 Lake Drive East, Suite 210
Cherry Hill, NJ  08002
(856)755-1115

Attorneys for Plaintiff(s)

| | |
|---|---|
| ANTONIO R WILLIAMS<br><br>Plaintiff(s)<br><br>vs.<br><br>AIR & LIQUID SYSTEMS CORPORATION, as successor-by-merger to BUFFALO PUMPS, INC., et al<br><br>Defendant(s) | COURT OF COMMON PLEAS PHILADELPHIA COUNTY<br><br>MARCH TERM 2026<br>NO.:  260300273<br><br>ASBESTOS CASE |

**PLAINTIFF'S RESPONSES TO**
**GENERAL INTERROGATORIES - SET I**

I. 1.    Please state your full name, including aliases or nicknames; date of birth; social security number and current address.

> **ANTONIO R. WILLIAMS**
> **401 Davis Ave.**
> **Elizabeth City, NC 27909**
> **SSN: xxx-xx-4789**
> **Date of Birth: March 21, 1958**

I. 2.    If the person responding these Interrogatories is the representative of a deceased claimant, set forth the name of the person responding to these Interrogatories; the legal capacity in which that person is responding; the date and place of the decedent's death; the decedent's cause of death; and, whether or not you contend that the decedent's death was related to asbestos exposure.

> **Not applicable.**

I. 3.    Have you or your attorneys filed on behalf of any of the Plaintiffs named herein, any related or companion lawsuits or legal actions in any court based upon any alleged asbestos-related condition?  If so, please list the caption and identifying number of any such suits.

**No.**

I. 4.    Please provide a chronological list of all addresses at which you have resided. Please also provide the dates of residence at these addresses.

**Current**
401 Davis Ave.
Elizabeth City, NC 27909

**Plaintiff is unable to specifically recall the exact addresses or dates of all prior residences at which he resided. Discovery continues, additional information may be provided should it become available, if applicable.**

I. 5.    State the names and dates of birth of your spouse and children, as applicable.

**Dwuan Williams – 1976**
**Antonio Williams – 1978**
**Sharetta Williams Gibbs - 1983**

I. 6.    If any person, including those listed in response to Interrogatory I. 5. above, is partially or totally financially dependent upon you, state his or her name, date of birth, current address, relationship to you, and the amount of support given during the last five (5) years.

**Not applicable.**

I. 7.    Set forth your current occupation and employer.

**Not applicable.**

I. 8.    Please provide a complete chronological history of work experience, to include: the name and address of each employer and worksite; your job title and the dates of employment; and, whether you were exposed to asbestos at the job or worksite listed, and the period of time for each exposure alleged.

**1980-1989 – McLean Contracting, Chesapeake, VA**
Ironworker
Asbestos Exposure

**1989-1991 – Stella Marina Iron, South Norfolk, VA**
Pile Driver Operator
Asbestos Exposure

**1992-1996 – Ironman Construction, Newport News, VA**
Ironworker

2

Asbestos Exposure

**1996-2001 – D.T. Read Steel Company, South Mills, NC**
Ironworker
Asbestos Exposure

**Plaintiff is unable to specifically recall the exact address of all prior employers, each and every work site, or the specific dates when Plaintiff was employed at each job site.  For additional employers, see Social Security records available through RecordTrak, 651 Allendale Road, King of Prussia, Pennsylvania.**

**This information is available to Defendants.  Plaintiff will provide appropriate authorizations upon tender by Defendants to obtain such information.**

I. 9.    List, by type, brand and/or trade name, and manufacturer, every asbestos-containing product to which you believe you were exposed.

**Electrical**
Square D
Westinghouse

**Cranes**
Caterpillar
Link-Belt

**Premises**
Newport News Shipbuilding

**Pumps**
Bell & Gossett
Buffalo Pumps
Crane
DeLaval/IMO
General Electric
Goulds
Warren Pumps

**Furthermore, PLAINTIFF'S COUNSEL ALLEGES THAT, at the present time and upon information and belief, Plaintiff was exposed to asbestos-containing products manufactured by, or insulation used on equipment manufactured by, or was exposed to asbestos due to the negligence of the Defendants named in the Plaintiff's lawsuit as well but not limited to some of**

3

**the Companies (or their legal predecessors): A.P. Green Industries; Armstrong World Industries; Babcock & Wilcox; C.E. Thurston.; Combustion Engineering; Eagle-Picher; Federal Mogul; Fibreboard; H.K. Porter Co.; KACC; Keene Corp.; Owens Corning; Pittsburgh Corning; USG (US Gypsum) Corp.; Yarway Corp; and US Mineral Products.**

**Plaintiff's counsel further states that identification of the manufacturers, sellers, distributors and users of the products to which Plaintiff was exposed, as well as any and all tortfeasors liable to Plaintiff for causing or contributing to his contraction of an asbestos-related disease may be established by other witnesses, Interrogatory responses of the tortfeasors, sales invoices and other evidence.**

**Investigation continues.  Further information will be provided as it becomes available, if applicable.**

I. 10.    For each asbestos-containing product identified in the response to Interrogatory I. 9. above, set forth the places, circumstances, and dates of exposure.

**Mr. Williams was occupationally exposed to asbestos from his work as an ironworker. He was non-occupationally exposed to asbestos from his father's work in a shipyard.**

**From 1980 to 1989, Mr. Williams was exposed to asbestos while working as an ironworker for McLean Contracting. Mr. Williams spent time working at Newport News Shipbuilding, where he worked with and around asbestos-containing pumps, valves, cranes, electrical equipment, and welding rods. From 1989 to 1991, Mr. Williams worked around asbestos-containing materials while employed by Stella Marina Iron. From 1992 to 1996, Mr. Williams worked around asbestos-containing materials while employed by Ironman Construction. From 1996 to 2001, Mr. Williams worked around asbestos-containing products while employed by D.T. Read Steel Company.**

**Furthermore, see responses to Interrogatories I. 8 and I. 9 above.  Discovery continues, additional information will be provided if applicable.**

I. 11.    If this lawsuit is based upon any asbestos exposure other than that described in the preceding Interrogatory, then set forth the nature, location and dates of said exposure.

**Not applicable.**

I. 12.    If you are retired, please state the date of retirement, type of retirement, the employment retired from and the reasons for your retirement.

4

**Mr. Williams stopped working in 2009 following a surgery he had and began receiving SSDI.**

I. 13.   During your last year of full-time employment, what was your gross income?

**To be provided if applicable.**

I. 14.   What are the injuries for which you are claiming compensation in this lawsuit?

**Lung Cancer.**

**See also Plaintiff's Complaint, Exhibit "A" attached hereto and medical records available through RecordTrak, 651 Allendale Road, King of Prussia, Pennsylvania.**

I. 15.   What is the name and address of the doctor who diagnosed these injures, and what was the date of diagnosis?

**Plaintiff was diagnosed on or around April 24, 2025.**

I. 16.   Please provide a complete list of the hospitals, institutions or other health-related facilities in which you have been confined, or in which you have received out-patient treatment, including: the name and address of the hospital, institution, or other health-related facility; the date of admission; the date of discharge; medical condition, illness or symptoms which were the basis for each hospitalization, institutionalization, or other treatment; diagnosis at discharge; and, the full name and address of admitting physician or principal treating physician.

**See Exhibit "A" attached hereto and medical records available through RecordTrak, 651 Allendale Road, King of Prussia, Pennsylvania.**

I. 17.   Please provide a complete list of medical practitioners, including but not limited to physicians and therapists, excluding those listed in No. l6 above, who have rendered services to you, and as to each, state: full name and present or last known address; the date(s) of examination, treatment, or other care; and, the medical condition, illness or symptoms which were the basis for each examination, treatment or consultation.

**See Exhibit "A" attached hereto and medical records available through RecordTrak, 651 Allendale Road, King of Prussia, Pennsylvania.**

I. 18.   If you have ever used tobacco products, state: the type(s) of tobacco product you have used; the dates during which you have used each type of tobacco product; and, the daily frequency with which you have used each tobacco product (i.e., two packages of cigarettes daily, three cigars daily, two pipefuls daily, etc.).

**Plaintiff smoked approximately 1 pack-per-day from 1989 until 2009.**

5

I. 19.   State whether you have ever sought, filed for, or received any of the following: Workmen's Compensation benefits; sickness, accident or disability benefits provided by or through an employer for non-employment related conditions; Social Security disability benefits; Veterans medical or disability benefits; Union disability benefits; and, any other disability benefits.

**Plaintiff has received Social Security disability benefits since approximately 2009. Mr. Williams also previously received Workman's Compensation benefits due to an on-the-job injury.**

I. 20. For each affirmative response to Interrogatory I. 19. above, please provide the following: a description of the benefits sought, filed for, or received; the identity of each person, firm, corporation or entity (including insurance companies or union) for which benefits were sought, filed for or received; claim number, account number or other identifying information; the date of request or claim for benefits; and, the date on which benefits were first received or denied.

**See Plaintiff's response to Interrogatory I. 19 above.**

Please respond to the following additional Interrogatories if friction companies are named as Defendants in your lawsuit or if you allege exposure to friction materials:

I.21. For each separate Defendant to whose asbestos products you claim exposure, state the names, home addresses and business addresses of all individuals who have knowledge of that particular exposure.

**Discovery continues, information will be provided as it becomes available to Plaintiffs' counsel, if applicable.**

I.22. Set forth in detail the exact nature of your work that involved exposure to asbestos materials, including:

(a)   the frequency of contact with asbestos materials.
(b)   the frequency with which you worked near other persons who worked with asbestos materials; and
(c)   the manner in which you performed your work.

**To be provided through witness deposition testimony and additional discovery.**

## DEFENDANTS' REQUEST FOR PRODUCTION OF DOCUMENTS AND THINGS

Defendants, by their attorneys, hereby request Plaintiffs produce the following:

l.      A copy of the diagnosing physician's report and any other expert's report.

**See Exhibit "A" attached hereto.**

2.      A copy of Plaintiff's decedent's death certificate.

**Not applicable.**

3.      A copy of any and all Releases executed in the cases identified in your response to Interrogatory I. 3. above.

**Not applicable.**

**WEITZ & LUXENBERG**
*A New York Professional Corporation*
Attorneys for Plaintiffs


By: _____
     Edward M. Costello, III


Dated: _____

**"ATTACHMENT 1"**

Plaintiffs and their attorneys or representatives are relying upon information supplied from all of the following sources:

a.  Fellow workers.

b.   Business records of Plaintiff's employers.

c.  Business records of Defendants, their suppliers and distributors of Defendants' asbestos-containing products to the work sites where Antonio Williams was exposed.

d.  The business records of Defendant, Interrogatories, depositions and testimony of employees of Defendant in other similar litigation.

e.  Personal knowledge of Plaintiff and his attorneys and representatives.

f.  Medical and scientific publications of governmental agencies having jurisdiction over asbestos and private publications of hospitals, doctors, agencies, governments and organizations writing on the subject of asbestos disease.

# EXHIBIT "A"

## MEDICAL HISTORY

**Sentara Family Medicine Physicians**
905 Thunder Road,
Suite 140,
Elizabeth City, NC, 27909
Phone: 252-334-0320
Fax: 855-330-7320

- Marie E. Pharr, M.D. – Family Medicine

**Sentara Radiation Oncology**
905 Thunder Road,
Suite 100,
Elizabeth City, NC, 27909
Phone: 252-334-0360
Fax: 252-334-0360

- Janete M. Mills, M.D. – Radiation Oncology

**Sentara Surgery Specialists, Division of Albemarle Physician Services – Sentara, Inc.**
905 Thunder Road,
Suite 130,
Elizabeth City, NC 27909
Phone: (252) 384-0600

- Tarkten A. Pharr, M.D. - General Surgery, Surgery, Vascular Surgery, Vascular Surgery

**Albemarle Pulmonary Medicine Associates, PA**
1507 N Road Street,
Suite 1,
Elizabeth City, NC 27909
Phone: (252) 338-6167
Fax: (252) 334-1755

9

## **VERIFICATION**

I, Antonio Williams, hereby state:

1.  I am the client in this action;

2.  I verify that the statements made in the foregoing **Interrogatories** are true and correct to the best of my knowledge, information and belief; and

3.  I understand that the statements in said **Interrogatories** are made subject to the penalties of 18 Pa. C.S. 4904 relating to unsworn falsification to authorities.


_____

Antonio Williams

Dated: _____

10

## VERIFICATION

I, Antonio Williams, hereby state:

1. I am the client in this action;

2. I verify that the statements made in the foregoing **Interrogatories** are true and correct to the best of my knowledge, information and belief; and

3. I understand that the statements in said **Interrogatories** are made subject to the penalties of 18 Pa. C.S. 4904 relating to unsworn falsification to authorities.

_____
Antonio Williams

Dated: 3-30-2026

10

**WEITZ & LUXENBERG**
*A New York Professional Corporation*
By: EDWARD M. COSTELLO III, ESQUIRE
Identification No.: 335450
220 Lake Drive East, Suite 210
Cherry Hill, NJ  08002
(856)755-1115

Attorneys for Plaintiff(s)

| | |
|---|---|
| ANTONIO R WILLIAMS<br><br>Plaintiff(s)<br><br>vs.<br><br>AIR & LIQUID SYSTEMS CORPORATION,<br>as successor-by-merger to BUFFALO PUMPS,<br>INC., et al<br><br>Defendant(s) | COURT OF COMMON PLEAS<br>PHILADELPHIA COUNTY<br><br>MARCH TERM 2026<br>NO.:  260300273<br><br>ASBESTOS CASE |

**PLAINTIFF'S RESPONSES TO
GENERAL INTERROGATORIES - SET II**

**BACKGROUND INFORMATION**

II. 1.   Please provide supplemental responses to Interrogatories - Set I for any information that has changed since you answered them.

> **Any changes or updates affecting any of the properly asked Interrogatories within Set I have already been provided to Defendants in accordance with the Rules of Civil Procedure.**

II. 2.   Describe your educational background, including:

(a)      the names and addresses of all schools attended;
(b)      dates of attendance;
(c)      dates of graduation;
(d)      diplomas or degrees received

> **Mr. Williams completed high school. He also completed 3 ½ years at Elizabeth City State University in Elizabeth City, North Carolina.**

II. 3.   Have you ever served in the Armed Forces of the United States?  If so, state:

(a)      the branch of the service,

(b)     your serial number, initial rank, rank at discharge, and highest rank held;

(c)     the dates of your service;

(d)     the type of discharge you received;

(e)     whether you were given any physical examination which included x-rays;

(f)     whether you were injured while in the service and the nature of your injury or injuries;

(g)     whether you incurred any illness requiring hospitalization while in the service and the nature of that illness; and

(h)     whether you claimed any disability for any injury, physical condition, or illness arising out of your military service; and if so, state the details of the claim, including the nature of the claim, the date the claim was made, when the claim was adjudicated, and the compensation, if any, which was awarded.

**Not applicable.**

II. 4.    What is your present marital status?

**Divorced.**

II. 5.    Have you ever been married to anyone other than your present spouse? If so, state:

(a)     your former spouse's name and present address;

(b)     the date of the marriage;

(c)     how and when the marriage ended;

(d)     whether you provide any support for the former spouse; and

(e)     whether the former spouse provides any support for you.

**OBJECTION: This Interrogatory seeks information which is irrelevant to this lawsuit, not calculated to lead to the discovery of relevant information and is otherwise inappropriate under the provisions of Pa.R.C.P. No. 4011. Subject to and without waiving this objection, Plaintiff responds:**

**Plaintiff was previously married.**

II. 6.    Have you or your spouse ever lived apart from one another either under a legal separation agreement or under an informal arrangement? If so,

(a)     when;

(b)     for how long; and

(c)     what was your address and your spouse's address during the separation.

**OBJECTION:  See Plaintiff's response to Interrogatory II. 5 above.**

II. 7.    Has your spouse ever been employed? If so, state:

(a)     the name and address of each employer;
(b)     the dates of each employment;
(c)     whether employment was or is full-time or part-time;
(d)     the job title(s) and description(s); and
(e)     the amount of the spouse's average weekly or monthly salary.

**To be provided if applicable.**

II. 8.    Have you engaged in any part-time employment within the past five years in addition to your regular occupation?  If so, state:

(a)     each employer for whom you worked part-time;
(b)     the type of work performed;
(c)     the rate of pay;
(d)     the number of hours or days you were employed; and
(e)     whether you are currently employed.

**Not applicable.**

II. 9.    Describe any pain or suffering for which you are claiming compensation in this lawsuit.

**See Plaintiff's medical records and responses provided to this area of questioning in Interrogatories Set I.**

II. 10.  Describe the nature of any disability for which you are claiming compensation in the lawsuit.

**See Plaintiff's Complaint, medical records and responses provided to this area of questioning in Interrogatories Set I.**

II. 11.  If you have had chest x-rays taken, including x-rays taken at the request of your employer, state:

(a)     the names and addresses of the persons who took the x-rays:
(b)     the dates on which the x-rays were taken;
(c)     the charges you incurred for the x-rays and evaluations; and
(d)     if and when you were informed of the results of those x-rays.

**See Exhibit "A" provided with Plaintiff's responses to Interrogatories Set I. Investigation continues.  Further information will be provided as it becomes available to Plaintiff's counsel, if applicable.**

II. 12.  If you have had tomographic films, computerized tomographic (C.T.) films, gallium or other radioisotopic tracing films, perfusion and ventilation scans, nuclear magnetic

3

resonance (N.M.R.) films, or any other diagnostic imaging modality taken state for each such modality used:

(a)    the names and addresses of the persons who performed the imaging;
(b)    the dates on which the imaging was performed;
(c)    the charges you incurred for the imaging and/or evaluations;
(d)    the date you were informed of the results of the imaging; and
(e)    the present location of such films and/or scans.

**See Plaintiff's response to Interrogatory II. 11 above.**

II. 13.  Has any physician or other person conducted pulmonary function tests on you, including pulmonary function tests done at the request of your employer?  If so, who conducted the tests and when and where were they conducted?  Please list any costs you incurred for the tests.

**See Plaintiff's response to Interrogatory II. 11 above.**

II. 14.  Are you still under a physician's care for the injuries which are the subject of this lawsuit?  If so, state:

(a)    name(s) and address(es) of the treating physicians;
(b)    the frequency of treatment; and
(c)    the date you were last treated.

**See Plaintiff's responses to Interrogatories Set I.**

II. 15.  Have you ever been confined to a bed or confined to your house because of the condition for which you instituted this lawsuit?  If so, state the period of that confinement.

**See Plaintiff's responses to Interrogatories Set I.  Investigation continues. Further information will be provided as it becomes available to Plaintiff's counsel, if applicable.**

II. 16.  Did you have annual or other regular physical examinations?  If so, state the names and addresses of the examining physicians, when and where they took place, whether you or your employer requested these examinations, and whether you were advised of the results.

**See medical records.**

II. 17.  If you have not fully recovered from the injuries for which you are suing, state in what ways you have not fully recovered.

**See Plaintiff's responses to Interrogatories Set I.**

II. 18.  Do you claim that exposure to asbestos has aggravated a pre-existing condition?

4

(a)     If so, had you recovered from the pre-existing condition at the time of the exposure to the asbestos materials?

(b)     If you had recovered, what was the date of recovery?

**Not applicable.**

II. 19.  When were you first aware of any symptoms which you now believe to be related to the injuries for which you are suing?  What were those symptoms?

**See Plaintiff's responses to Set I Interrogatories and medical records.**

II. 20.  If you believe you were exposed to asbestos materials aboard specific ships or in certain buildings, identify the ships or buildings.

**See Plaintiff's responses to Interrogatories Set I.**

II. 21.  Set forth in detail the exact nature of your work that involved exposure to asbestos materials, including:

(a)     the frequency of contact with asbestos materials;

(b)     the frequency with which you worked near other persons who worked with asbestos materials; and

(c)     the manner in which you performed your work.

**See Plaintiff's responses Interrogatories Set I.**

II. 22.  For each separate defendant to whose asbestos products you claim exposure, state the names, home addresses and business addresses of all individuals who have knowledge of that particular exposure.

**See Plaintiff's responses to Interrogatories Set I.**

II. 23.  State whether each asbestos-containing product you have identified had any caution or warning, and if so, set forth the nature and text of each such warning or caution and when you first became aware of such warning or caution.

**Not applicable.**

II. 24.  Did you ever work with, or around, asbestos-containing materials, which were manufactured, sold, prepared, or distributed, installed or removed by any person or company not named as a Defendant in this lawsuit?

**See Plaintiff's response to Interrogatory Set I. 9.**

5

II. 25.  If your response to Interrogatory II. 24. above is in the affirmative, identify each such person or company, and state:

(a)    the type of product;
(b)    when and where the exposure occurred;
(c)    the type of work you were doing during this exposure;
(d)    how the exposure occurred; and
(e)    your employer at the time.

**Investigation continues.   Responsive information will be provided as it becomes available to Plaintiff's counsel, if applicable.**

II. 26.  What are the names and addresses of each of your supervisors during the period in which you claim you were exposed to asbestos materials?

**Investigation continues.   Responsive information will be provided as it becomes available to Plaintiff's counsel, if applicable.**

II. 27.  What are the names and addresses of each of your co-workers when you were allegedly exposed to asbestos?

**See Plaintiff's responses to Interrogatories Set I.   Investigation continues. Further information will be provided as it becomes available to Plaintiff's counsel, if applicable.**

II. 28.  Have you or your attorneys, representatives, or experts performed any tests upon any asbestos-containing products, to which you claim you were exposed, to determine their composition?

**No.**

II. 29.  If so, state the name, address, job classification and employer of the person who conducted each test, and;

(a)    the date of each test;
(b)    state the tools used in each test;
(c)    state where each test was conducted;
(d)    set forth a summary of the findings or results of each test;
(e)    state the nature of the test performed on each product;
(f)    state the names, addresses, and occupations of  all persons present during any of the tests;
(g)    state the specific products on which the tests were conducted; identifying the products by manufacturer, brand or trade name, and type of product, and
(h)    state whether any reports, notes, memoranda, or other type of record was made for any such test, and if so by whom;

6

**Not applicable.**

II. 30. State the present location of the record referred to in Interrogatory II. 29., including the name, address, and occupation of the person who has possession of such record.

**See Plaintiff's response to Interrogatory II. 29 above.**

II. 31. Do you, your attorneys, your representatives or experts have possession of any samples of any asbestos or asbestos-containing products referred to in the Complaint; and if so, state:

  (a)    the name, address, and job classification of the person having custody;
  (b)    the manufacturer's name, brand or trade name, distributor's name, and type of product for each sample;
  (c)    when, whence, and from whom each sample was obtained;
  (d)    whether the samples were altered or changed it any way from the state in which they were manufactured and originally distributed; and
  (e)     whether you have viewed any such sample; and if so, when.

**To be provided if applicable.**

II. 32. State whether you or any other person known to you has, or knows of, photographs of insulating repair or insulation work done by, or near you; and if so, state:

  (a)    when each photograph was taken;
  (b)    the name, address, and occupation of the person who took each photograph;
  (c)    where each photograph was taken;
  (d)    the present location and the name, address, and occupation of the custodian of each such photograph;
  (e)    what each photograph depicts; and
  (f)    whether you personally have seen any such photographs; and if so, when.

**Such photographs, if they exist, may be found in trade or industrial publications and/or in the witnesses' employers' publications. There were no known photographs taken around Plaintiff at times when he was exposed to Defendants' asbestos-containing products nor would such have likely occurred.**

II. 33. Do you, or any person known to you, have, or know of, the existence of any asbestos product information or data sheets with information about the characteristics and uses of any asbestos product to which you were exposed. If so, state:

  (a)    the manufacturer or seller, brand or trade name, and type of product of each sample;

7

(b)    when and from whom each sample was obtained; and

(c)    whether you have seen any of these product information or data sheets and, if so, when.

**See Plaintiff's response to Interrogatory II. 3l above.**

II. 34.    Do you, or any person known to you, have or know of, photographs of any asbestos-containing products made or sold by any defendant or other person or company; and if so, state:

(a)    when each photograph was taken;

(b)    the name, address, and occupation of the person who took   each photograph;

(c)    where each photograph was taken;

(d)    the present location, and the name, address, and occupation of the person who has possession of each such photograph;

(e)    what each photograph depicts; and

(f)    whether you personally have seen any such photograph; and if so, when.

**See Plaintiff's response to Interrogatory II. 32 above.**

II. 35.  Did your employer ever give any instructions or warnings during the course of your employment about any alleged dangers of asbestos?

**Investigation continues.   Responsive information will be provided as it becomes available to Plaintiff's counsel, if applicable.**

II. 36.  If the response to Interrogatory II. 35. above is yes, then, for each instruction or warning, state:

(a)    the date given;

(b)    the person who gave it;

(c)    whether the communication was written or oral;

(d)    if the communication was written, whether you have a copy of it in writing or know of anyone who does have a copy;

(e)    if the communication was written, the author of the communication; and

(f)    a summary of the communication.

**Investigation continues.   Responsive information will be provided as it becomes available to Plaintiff's counsel, if applicable.**

II. 37.  Were masks, respirators, or other dust inhalation inhibitors available during any part of your employment, and if so, state:

(a)    whether the devices were provided by your employer;

8

(b)    the period of time of your employment during which the devices were available to you;
(c)    what instructions were given to you about using the devices;
(d)    the manufacturer of the device;
(e)    whether and when you ever used the device; and
(f)    how often, by a percentage of the time you were exposed to asbestos materials, you in fact used the device.

**Investigation continues. Responsive information will be provided as it becomes available to Plaintiff's counsel, if applicable.**

II. 38.  Did any of your employers ever recommend or require that you use any device to reduce your possible exposure to, or inhalation of, asbestos fibers?

**Investigation continues. Responsive information will be provided as it becomes available to Plaintiff's counsel, if applicable.**

II. 39.  If your response to Interrogatory II. 38. above was in the affirmative, state:

(a)    the employer's name and address;
(b)    when, where, and the circumstances under which each recommendation or requirement was made;
(c)    the identity of the person who issued the recommendation or requirement to you;
(d)    the identity of each person present when each recommendation or requirement was made to you;
(e)    the identity of each person who received the same or similar recommendations or requirements;
(f)    the exact wording and content of each recommendation or requirement; and whether it was made in writing or orally;
(g)    the type, make, and model of each device referred to in each recommendation, or requirement; and
(h)    the nature of the action, if any, you took in response to each recommendation or requirement.

**Investigation continues. Responsive information will be provided as it becomes available to Plaintiff's counsel, if applicable.**

II. 40.  Did you at any time receive any publication, warning, requirement, or recommendation, whether written or oral, which purported to:

(a)    advise you of possible harmful effects of exposure to, or inhalation of asbestos; or
(b)    recommend techniques or equipment which would reduce or guard against such potentially harmful exposure?

9

**Investigation continues.   Responsive information will be provided as it becomes available to Plaintiff's counsel, if applicable.**

II. 41.  If you answered in the affirmative to any part of Interrogatory II. 40 above, state for each communication:

  (a)   the nature and exact wording;
  (b)   when, where, and the circumstances under which it  was communicated;
  (c)   the identity of each source;
  (d)   the identity of each witness to your receipt of the communication; and
  (e)   the identity of each co-worker or similarly situated person who received a similar communication.

**See Plaintiff's response to Interrogatory II. 35 and II. 37 above.**

II. 42.  Do you, or any person known to you, have, or know of samples of any asbestos product labels, warnings, packaging markings, or writings, or any other type of symbols or writings identifying or describing such products or warning of hazards of such products; and if so, state:

  (a)   the manufacturer, brand or trade name, and type of product of each such sample;
  (b)   when and from whom each sample was obtained;
  (c)   whether the samples were altered or changed in any way from when they were originally produced; and
  (d)   whether you have seen such samples; and if so, when.

**Investigation continues.   Responsive information will be provided as it becomes available to Plaintiff's counsel, if applicable.**

II. 43.  Do you, or any person known to you, have, or know of, samples of warning signs, notices, bulletins, pamphlets, memoranda, or other writing posted at your place of employment by your employer, your labor union, by any state governmental agency, or by any federal governmental agency, about asbestos health hazards or work practices and procedures to be followed when working with or near asbestos-containing products; and if so, state:

  (a)   the type and content of the sample;
  (b)   when and from whom the sample was obtained;
  (c)   when the writing was issued or posted; and
  (d)   the present location, and the name, address, and occupation of the person who has possession, of each such sample.

**See Plaintiff's response to Interrogatory II. 3l above.**

II. 44.  Were you a member of any labor union at any time?  If so, state for each membership:

10

(a)    the name of the union and its local;
(b)    the time periods in which you were a member;
(c)    the names of your local's officials.

**Mr. Williams was a member of Local 46 Metallic Lathers Union at 1322 3rd Ave, New York, NY 10021 from 2000 – 2008.**

II. 45.  Were you an apprentice?

**No.**

II. 46.  Were you a journeyman?

**No.**

II. 47.  What offices have you held, and on what committees have you served for either your local regional, national or international union?

**Not applicable.**

II. 48.  Have you ever attended any international, national regional or local union meetings, seminars, conferences, or conventions at which the subjects of occupational health and exposure to asbestos were discussed?  If so, state:

(a)    when and where such meetings took place;
(b)    the names and addresses of any speaker or discussion leader; and
(c)    a summary of the matters under discussion.

**No.**

II. 49.  Have you ever been informed by any person in your local or international union of any possible hazards associated with exposure to asbestos?  If so, state:

(a)    the name, address, and official capacity of the person;
(b)    when and where you were so informed;
(c)    the information you received; and
(d)    what action, if any, you took upon learning this information.

**No.**

II. 50.  Did you receive any union newspapers, newsletters, or other publication?  If so, state:

(a)    the type and nature of each publication received;
(b)    how often you received such publications; and

11

(c)     whether you read such publications.

**No.**

II. 51.  Have you ever discussed this lawsuit or the injuries you claim in this lawsuit with any official of your local or international union?  If so, state:

(a)     the name, address, and official capacity of each person with whom you discussed these matters;

(b)     when, where, and under what circumstances did you discuss these matters; and

(c)     the substance of these discussions.

**No.**

II. 52.  Did you ever participate in any medical screening program or health survey sponsored by, or with, your local or international union?  If so, state:

(a)     when and where you so participated;

(b)     the nature of the program or survey;

(c)     the name and address of any examining physician or health practitioner; and

(d)     whether any x-rays were taken.

**Not applicable.**

II. 53.  If you are claiming loss of earnings or impairment of earning power because of any asbestos-related condition, disease or injury, then state:

(a)     when you first became impaired;

(b)     the name and address of your employer, your job classification, and your monthly or weekly rate of pay at the time you claim to have become impaired or lost earning power;

(c)     if you had more than one employer during the three-year period prior to the onset of the impairment in earning power, then state the names and addresses of all employers, your job classifications, your weekly or monthly rate of pay, and the dates of employment; and

(d)     the dates during which you were unable to work to your expectations because of any asbestos-related injury, and the total amount of pay you lost because of this inability;

**Investigation continues.   Responsive information will be provided as it becomes available to Plaintiff's counsel, if applicable.**

II. 54.  State whether you have ever sought, filed for or received any of the following:

12

(a)     Social Security retirement benefits;
(b)     Life insurance benefits including but not limited to waiver of premium;
(c)     Union retirement benefits;
(d)     Any other retirement benefits; and
(e)     Unemployment compensation.

**Plaintiff receives social security disability benefits.**

II. 55. When, if ever, did you first become aware that asbestosis was a compensable occupational disease under a state or federal workmen's compensation Act? State how you became aware of this fact.

**To be provided if applicable.**

II. 56. For each hospital, or other health-related facility in which you have been confined as the result of any alleged asbestos related condition, disease or injury itemize by facility the costs you incurred. State whether or not these expenses have been paid, partially or wholly, and identify the person or other entity who has paid them.

**See Exhibit "A" provided with Plaintiff's responses to Interrogatories Set I. Investigation continues. Further information will be provided as it becomes available to Plaintiff's counsel, if applicable.**

II. 57. State the total amount of any other expenses, including doctor bills, which you incurred as a result of your alleged asbestos-related condition, disease or injuries. State whether or not these expenses have been paid, partially or wholly, and identify the person or other entity who has paid them.

**See Plaintiff's response to Interrogatory II. 56 above.**

II. 58. If a claim is made for household help, state the names and addresses of each person employed for household help, the dates of the employment, and the expenses incurred.

**Not applicable.**

II. 59. Do you now consume, or have you ever consumed alcoholic beverages? If so, describe what you drink, and the frequency and quantity of your consumption.

**OBJECTION: This question seeks information which is totally irrelevant to this lawsuit, not calculated to lead to the discovery of relevant information and is otherwise inappropriate under the provisions of Pa.R.C.P. No. 4011.**

II. 60. If you have used cigarettes, cigars, pipes, or any other tobacco product, state:

(a)     the brand names of the tobacco product; and

13

(b)     whether you were ever advised by any physician or other person to stop using tobacco products, and if so, identify each person so advising you, and state when the advice was given to you, and whether you followed the advice.

**Plaintiff smoked approximately 1 pack-per-day from 1989 until 2009.**

II. 61.  If you ever stopped using tobacco products, please state your reasons for doing so.

**Plaintiff quit due to health reasons.**

II. 62.  Are you aware of the United States Surgeon General's cautions placed on all cigarette packages and advertisements?  If so, when did you acquire this awareness?

**Yes.**

II. 63.  Have you ever read the warnings referred to in Interrogatory II. 62 above?

**Yes.**

II. 64.  Have you ever smoked cigarettes after becoming aware of the cautions?

**Yes, Plaintiff became addicted to cigarettes.**

II. 65.  Are you aware that the use of tobacco may cause cancer?  If so, when did you acquire this knowledge?

**Yes, but Plaintiff was not aware of the harmful effects of the combination of both cigarette smoking and asbestos exposure together.**

II. 66.  Identify the sources of all information you, your attorneys, or other representatives, obtained in answering the preceding Interrogatory, setting forth the names and addresses of all persons providing the information, their employment, and their job positions.

**Investigation continues.  Responsive information will be provided as it becomes available to Plaintiff's counsel, if applicable.**

II. 67.  Have you ever given sworn testimony in a criminal or civil proceeding other than this; and, if so, state:

(a)     when and where you testified;
(b)     who called you as a witness;
(c)     in what court you testified;
(d)     the subject matter of your testimony; and
(e)     the parties to the proceedings.

14

**To be provided, if applicable.**

II. 68.   Identify all written statements which you have made which relate to the facts of this lawsuit and the damages claimed.

**To be provided, if applicable.**

II. 69.   List the names of each person who will testify as a fact witness on behalf of the plaintiffs.

**Investigation continues.   Responsive information will be provided as it becomes available to Plaintiff's counsel, if applicable.**

II. 70.   For each person identified in your response to Interrogatory II. 69 above, state the person's

(a)     age;
(b)     home and business address;
(c)     employer's name;
(d)     occupation; and
(e)     previous employment history, including a description of duties for each employer.

**See Plaintiff's response to Interrogatory II. 69 above.**

II. 71.   For each person identified in your response to Interrogatory II. 69 above, state the subject matter of the witness's proposed testimony and the facts to which the person will testify.

**Investigation continues.   Responsive information will be provided as it becomes available to Plaintiff's counsel, if applicable.**

II. 72.   With whom did you consult in preparing your answers to these Interrogatories?

**My attorney.**

15

II. 73. Did you rely on any documents in preparing your responses to these Interrogatories?  If so, describe each document fully, and state when, where, and from whom you obtained the document.

**No.**

**WEITZ & LUXENBERG**
*A New York Professional Corporation*
Attorneys for Plaintiffs


By: _____
        Edward M. Costello III, Esq.


Dated: _____

16

**VERIFICATION**

I, Antonio Williams, hereby state:

1.  I am the client in this action;

2.  I verify that the statements made in the foregoing **Interrogatories** are true and correct to the best of my knowledge, information and belief; and

3.  I understand that the statements in said **Interrogatories** are made subject to the penalties of 18 Pa. C.S. 4904 relating to unsworn falsification to authorities.

_____
Antonio Williams

Dated: _____

17

## VERIFICATION

I, Antonio Williams, hereby state:

1.  I am the client in this action;

2.  I verify that the statements made in the foregoing **Interrogatories** are true and correct to the best of my knowledge, information and belief; and

3.  I understand that the statements in said **Interrogatories** are made subject to the penalties of 18 Pa. C.S. 4904 relating to unsworn falsification to authorities.

_____
Antonio Williams

Dated: 3-30-2026

10

# Exhibit D

**WEITZ & LUXENBERG**
*A New York Professional Corporation*
By: EDWARD M. COSTELLO III, ESQUIRE
Atty Id: 335450
220 Lake Drive East, Suite 210
Cherry Hill, NJ  08002
(856)755-1115



Filed and Attested by the
Office of Judicial Records
02 MAR 2026 10:57 am
E. SMITH

Attorneys for Plaintiff(s)

ANTONIO R WILLIAMS
401 Davis Ave.
Elizabeth City, NC 27909

Plaintiff(s)

vs.

AIR & LIQUID SYSTEMS CORPORATION,
as successor-by-merger to BUFFALO
PUMPS, INC., et al

Defendants.

COURT OF COMMON PLEAS
PHILADELPHIA COUNTY

TERM 2026

NO.

ASBESTOS CASE

JURY TRIAL DEMANDED

## NOTICE TO PLEAD

| NOTICE | AVISO |
|---|---|
| You have been sued in Court.  If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this Complaint and Notice are served, by entering a written appearance, personally, or by an attorney, and filing in writing with the Court your defenses or objections to the claims set forth against you.  You are warned that if you fail to do so, the case may proceed without you, and a judgment may be entered against you by the Court without further notice for any money claimed in the Complaint or for any other claim or relief requested by the plaintiff.  You may lose money or property or other rights important to you. | Le han demandado a usted en la corte.  Si usted quiere de estas demandas expuestas en las paginas siguientes, usted tiene veinte (20) dias de plaza al partif de la fecha de la demanda y la notificacion.  Hace falta asentar una comparencia escrita o en persona o con un abagado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su persona.  Sea avisado que si usted no se defiende, la corte tomara medidas y puede continuar la demanda en contra suya sin previo aviso o notificacion.  Ademas, la corte puede decidir a favor del demandante y requiere que usted cumpla con todas las provisiones de esta demanda.  Usted puede perder dienero o sus propiedades u otros derechos importantes para usted. |
| YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE.  IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP:<br>PHILADELPHIA BAR ASSOCIATION<br>Lawyer Referral and Information Service<br>One Reading Center<br>Philadelphia, PA 19107<br>Telephone: 215-238-1701 | LLEVE ESTA DEMANDA A UN ABOGADO IMMEDIATAMENTE.  SI NO TIENE ABAGADO O SI NO TIENE EL DINERO SUFICIENTE DE PAGAR TAL SERVICIO, VAYA EN PERSONA O LLAME POR TELEFONO A LA OFICINA CUYA DIRECCION SE ENCUENTRA ESCRITA ABAJO PARA AVERIGUAR DONDE SE PUEDE CONSEGUIR ASISTENCIA LEGAL.<br>ASOCIATION DE LICENCIADOS DE FILADELFIA<br>Servicio De Referencia E Informacion Legal<br>One Reading Center<br>Filadelfia, Pennsylvania 19107<br>Telefono: 215-238-1701 |

Case ID: 260300273

**WEITZ & LUXENBERG**
*A New York Professional Corporation*
By: EDWARD M. COSTELLO III, ESQUIRE
Atty Id: 335450
220 Lake Drive East, Suite 210
Cherry Hill, NJ  08002
(856)755-1115

Attorneys for Plaintiff(s)

| | |
|---|---|
| ANTONIO R WILLIAMS<br>401 Davis Ave.<br>Elizabeth City, NC 27909<br><br>     Plaintiff(s)<br><br>  vs.<br><br>AIR & LIQUID SYSTEMS CORPORATION,<br>as successor-by-merger to BUFFALO<br>PUMPS, INC., et al<br><br>     Defendants | COURT OF COMMON PLEAS<br>PHILADELPHIA COUNTY<br><br>    TERM 2026<br>NO.<br><br>ASBESTOS CASE<br><br>JURY TRIAL DEMANDED |

## SHERIFF'S SERVICE LIST

**AIR & LIQUID SYSTEMS CORPORATION,**
 **as successor-by-merger to BUFFALO PUMPS, INC.**
5235 North Front Street
Harrisburg, PA 17110

**PARAMOUNT GLOBAL, f/k/a VIACOMCBS Inc.,**
 **f/k/a CBS CORPORATION, a Delaware Corporation,**
 **f/k/a/ VIACOM INC., successor by merger to CBS**
 **CORPORATION, a PENNSYLVANIA CORPORATION, f/k/a**
 **WESTINGHOUSE ELECTRIC CORPORATION**
Asbestos Litigation Support Manager
ECKERT SEAMANS CHERIN & MELLOTT, LLC
Case Management & Technology Center
USX Towers
600 Grant Street
Pittsburgh, PA 15219

**WEITZ & LUXENBERG**
*A New York Professional Corporation*
By: EDWARD M. COSTELLO III, ESQUIRE
Atty Id: 335450
220 Lake Drive East, Suite 210
Cherry Hill, NJ  08002
(856)755-1115

Attorneys for Plaintiff(s)

| | |
|---|---|
| ANTONIO R WILLIAMS<br>401 Davis Ave.<br>Elizabeth City, NC 27909<br><br>                Plaintiff(s)<br><br>    vs.<br><br>AIR & LIQUID SYSTEMS CORPORATION,<br>  as successor-by-merger to BUFFALO<br>PUMPS, INC., et al<br><br>                Defendants. | COURT OF COMMON PLEAS<br>PHILADELPHIA COUNTY<br><br>          TERM 2026<br>NO.<br><br>ASBESTOS CASE<br><br>JURY TRIAL DEMANDED |

## DEFENDANTS SERVICE LIST

**AIR & LIQUID SYSTEMS CORPORATION,**
  **as successor-by-merger to BUFFALO PUMPS, INC.**
5235 North Front Street
Harrisburg, PA 17110

**CATERPILLAR, INC.**
CORPORATION SERVICE COMPANY
251 LITTLE FALLS DRIVE
Wilmington, DE 19808

**FMC CORPORATION,**
  **Individually and Successor to LINKBELT**
306 West Main Street
Suite 512
Frankfort, KY 40601

**GENERAL ELECTRIC COMPANY**
Electric Insurance Company
75 Sam Fonzo Drive

Case ID: 260300273

Beverly, MA 01915

**GOULDS PUMPS LLC**
CT Corporation System
28 Liberty St,  42nd Fl
New York, NY 10005

**HUNTINGTON INGALLS INDUSTRIES**
c/o Hunton Andrews Kurth LLP
951 E. Byrd Street
Richmond, VA 23219

and
4101 Washington Avenue
Newport News, VA 23607
Richmond, VA 23219

**IMO INDUSTRIES, LLC.**
28 Liberty Street
28th Floor
New York, NY 10005

**ITT LLC.,**
   **Individually and as successor to**
   **BELL & GOSSETT and as successor to**
   **KENNEDY VALVE MANUFACTURING CO., Inc.**
CT Corporation
28 Liberty Street
New York, NY 10005

**PARAMOUNT GLOBAL, f/k/a VIACOMCBS Inc.,**
   **f/k/a CBS CORPORATION, a Delaware Corporation,**
   **f/k/a/ VIACOM INC., successor by merger to CBS**
   **CORPORATION, a PENNSYLVANIA CORPORATION, f/k/a**
   **WESTINGHOUSE ELECTRIC CORPORATION**
Asbestos Litigation Support Manager
ECKERT SEAMANS CHERIN & MELLOTT, LLC
Case Management & Technology Center
USX Towers
600 Grant Street
Pittsburgh, PA 15219

**REDCO CORPORATION f/k/a CRANE CO.**
The Corporation Trust Company
1209 Orange Street
Wilmington, DE 19801

Case ID: 260300273

or

Redco Corporation
1000 N. West Street, Suite 1200
Wilmington, Delaware 19801

**SCHNEIDER ELECTRIC USA, INC. formerly known as
    SQUARE D COMPANY**
Corporation Service Company
801 Adlai Stevenson Dr
Springfield, IL 62703

**WARREN PUMPS, LLC**
CT Corporation
1209 Orange Street
Wilmington, DE 19801

Case ID: 260300273

**WEITZ & LUXENBERG**
*A New York Professional Corporation*
By:  EDWARD M. COSTELLO III, ESQUIRE
Atty Id: 335450
220 Lake Drive East, Suite 210
Cherry Hill, NJ  08002
(856)755-1115

Attorneys for Plaintiff(s)

| | |
|---|---|
| ANTONIO R WILLIAMS<br>401 Davis Ave.<br>Elizabeth City, NC 27909<br><br>               Plaintiff(s)<br><br>   vs.<br><br>AIR & LIQUID SYSTEMS CORPORATION,<br>as successor-by-merger to BUFFALO<br>PUMPS, INC., et al<br><br>               Defendants. | COURT OF COMMON PLEAS<br>PHILADELPHIA COUNTY<br><br>          TERM 2026<br>NO.<br><br>ASBESTOS CASE<br><br>JURY TRIAL DEMANDED |

## CIVIL ACTION COMPLAINT

Plaintiff(s) incorporate by reference Plaintiffs Master Long Form Complaint In re:

Asbestos Litigation in Philadelphia County Court of Common Pleas, filed as of October Term

1986, No. 8610-0001.  Pursuant to an Order dated July 30, 1986, and signed by the Honorable

Richard B. Klein, the following Short Form Complaint is utilized in this asbestos action.

1.      This Complaint involves the claims of the following person(s):
    a.  Plaintiff:
        Name:    ANTONIO R WILLIAMS
        Address:  401 Davis Ave.
        Elizabeth City, NC 27909
        SSN:      xxx-xx-████
        Date of Birth:    ████████

2.      The Defendants are those companies listed in the caption.

3.      Plaintiff(s) might have named as defendants other additional entities responsible for the manufacture, distribution and/or supply of products that contained asbestos or were designed to be used with asbestos, except that such other entities have petitioned for relief in bankruptcy under the United States Bankruptcy Code and, pursuant to federal statute, the institution of actions against these entities is stayed.

4.      Plaintiff(s) hereby incorporate by reference the following Counts from the Master Long Form Complaint: Counts I through X.

5.      Plaintiff(s) asbestos employment history is as follows:

| McLean Contracting | CHESAPEAKE | VA | 01/1980 | 12/1989 | IRONWORKER |
|---|---|---|---|---|---|
| STELLA MARINA IRON | SOUTH NORFOLK | VA | 01/1989 | 12/1991 | PILE DRIVER OPERATOR |
| IRONMAN CONSTRUCTION | NEWPORT NEWS | VA | 01/1992 | 12/1996 | IRONWORKER |
| D.T. READ STEEL COMPANY | SOUTH MILLS | NC | 01/1996 | 12/2001 | IRONWORKER |

Mr. Williams was occupationally exposed to asbestos from his work as an ironworker. He was non-occupationally exposed to asbestos from his father's work in a shipyard.

From 1980 to 1989, Mr. Williams was exposed to asbestos while working as an ironworker for McLean Contracting. Mr. Williams spent time working at Newport News Shipbuilding, where he worked with and around asbestos-containing pumps, valves, cranes, electrical equipment, and welding rods.

6.      Plaintiff was diagnosed on or around April 24, 2025, as having Lung Cancer which is the direct and proximate result of his exposure to asbestos dust and fibers.  This exposure arose from working with or around products manufactured and distributed by defendants.

Case ID: 260300273

7. Plaintiff's smoking history:

Plaintiff smoked approximately 1 pack-per-day from 1989 until 2009.

8. Plaintiff's wages during his full year of employment were:

a. To be supplied if applicable.

WHEREFORE, Plaintiffs pray for judgment against the defendants and each of them individually, jointly and severally for compensatory damages in an amount in excess of FIFTY THOUSAND DOLLARS ($50,000.00), punitive damages, and all such damages and relief as the Court deems just and proper.

**WEITZ & LUXENBERG, P.C.**
**Attorneys for Plaintiff(s)**

By: _____
Edward M. Costello III, Esq.

Case ID: 260300273

## VERIFICATION

I, Antonio Williams, Plaintiff herein, verify that the facts contained in the foregoing document are true and correct to the best of my knowledge, information, and belief. To the extent that the contents of the said document are based on information gathered by my counsel, I have relied upon my counsel in executing this verification. The language of this verification is that of my counsel.

I understand that the statements contained herein are subject to the penalties of 18 Pa.C.S. §4904 relating to unsworn falsification.

SIGNATURE: _Antonio Williams_

Case ID: 260300273

## CERTIFICATION

I, Edward M. Costello III, Esq., attorney for the Plaintiff(s), certifies pursuant to Pennsylvania Rule No. 205.4 that the hard copy of this electronically filed document was properly signed.


Dated: March 2, 2026

_____
Edward M. Costello III, Esq.

**WEITZ & LUXENBERG**
*A New York Professional Corporation*
By: EDWARD M. COSTELLO III, ESQUIRE
Atty Id: 335450
220 Lake Drive East, Suite 210
Cherry Hill, NJ  08002
(856)755-1115



Filed and Attested by the
Office of Judicial Records
02 MAR 2026 10:57 am
G. SMITH

Attorneys for Plaintiff(s)

| | |
|---|---|
| ANTONIO R WILLIAMS<br>401 Davis Ave.<br>Elizabeth City, NC 27909<br><br>Plaintiff(s)<br><br>vs.<br><br>AIR & LIQUID SYSTEMS CORPORATION,<br>as successor-by-merger to BUFFALO<br>PUMPS, INC., et al<br><br>Defendants. | COURT OF COMMON PLEAS<br>PHILADELPHIA COUNTY<br><br>TERM 2026<br>NO.<br><br>ASBESTOS CASE<br><br>JURY TRIAL DEMANDED |

## <u>NOTICE TO PLEAD</u>

### NOTICE

You have been sued in Court.  If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this Complaint and Notice are served, by entering a written appearance, personally, or by an attorney, and filing in writing with the Court your defenses or objections to the claims set forth against you.  You are warned that if you fail to do so, the case may proceed without you, and a judgment may be entered against you by the Court without further notice for any money claimed in the Complaint or for any other claim or relief requested by the plaintiff.  You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE.  IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP:
PHILADELPHIA BAR ASSOCIATION
Lawyer Referral and Information Service
One Reading Center
Philadelphia, PA 19107
Telephone: 215-238-1701

### AVISO

Le han demandado a usted en la corte.  Si usted quiere de estas demandas expuestas en las paginas siguientes, usted tiene veinte (20) dias de plaza al partif de la fecha de la demanda y la notificacion.  Hace falta asentar una comparencia escrita o en persona o con un abagado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su persona.  Sea avisado que si usted no se defiende, la corte tomara medidas y puede continuar la demanda en contra suya sin previo aviso o notificacion.  Ademas, la corte puede decidir a favor del demandante y requiere que usted cumpla con todas las provisiones de esta demanda.  Usted puede perder dienero o sus propiedades u otros derechos importantes para usted.

LLEVE ESTA DEMANDA A UN ABOGADO IMMEDIATAMENTE.  SI NO TIENE ABAGADO O SI NO TIENE EL DINERO SUFICIENTE DE PAGAR TAL SERVICIO, VAYA EN PERSONA O LLAME POR TELEFONO A LA OFICINA CUYA DIRECCION SE ENCUENTRA ESCRITA ABAJO PARA AVERIGUAR DONDE SE PUEDE CONSEGUIR ASISTENCIA LEGAL.
ASOCIATION DE LICENCIADOS DE FILADELFIA
Servicio De Referencia E Informacion Legal
One Reading Center
Filadelfia, Pennsylvania 19107
Telefono: 215-238-1701

Case ID: 260300273

**WEITZ & LUXENBERG**
*A New York Professional Corporation*
By: EDWARD M. COSTELLO III, ESQUIRE
Atty Id: 335450
220 Lake Drive East, Suite 210
Cherry Hill, NJ  08002
(856)755-1115

Attorneys for Plaintiff(s)

| | |
|---|---|
| ANTONIO R WILLIAMS<br>401 Davis Ave.<br>Elizabeth City, NC 27909<br><br>Plaintiff(s)<br><br>vs.<br><br>AIR & LIQUID SYSTEMS CORPORATION,<br>as successor-by-merger to BUFFALO<br>PUMPS, INC., et al<br><br>Defendants | COURT OF COMMON PLEAS<br>PHILADELPHIA COUNTY<br><br>TERM 2026<br>NO.<br><br>ASBESTOS CASE<br><br>JURY TRIAL DEMANDED |

## SHERIFF'S SERVICE LIST

**AIR & LIQUID SYSTEMS CORPORATION,**
  **as successor-by-merger to BUFFALO PUMPS, INC.**
5235 North Front Street
Harrisburg, PA 17110

**PARAMOUNT GLOBAL, f/k/a VIACOMCBS Inc.,**
  **f/k/a CBS CORPORATION, a Delaware Corporation,**
  **f/k/a/ VIACOM INC., successor by merger to CBS**
  **CORPORATION, a PENNSYLVANIA CORPORATION, f/k/a**
  **WESTINGHOUSE ELECTRIC CORPORATION**
Asbestos Litigation Support Manager
ECKERT SEAMANS CHERIN & MELLOTT, LLC
Case Management & Technology Center
USX Towers
600 Grant Street
Pittsburgh, PA 15219

Case ID: 260300273

**WEITZ & LUXENBERG**
*A New York Professional Corporation*
By: EDWARD M. COSTELLO III, ESQUIRE
Atty Id: 335450
220 Lake Drive East, Suite 210
Cherry Hill, NJ  08002
(856)755-1115

Attorneys for Plaintiff(s)

| | |
|---|---|
| ANTONIO R WILLIAMS<br>401 Davis Ave.<br>Elizabeth City, NC 27909<br><br>Plaintiff(s)<br><br>vs.<br><br>AIR & LIQUID SYSTEMS CORPORATION,<br>as successor-by-merger to BUFFALO<br>PUMPS, INC., et al<br><br>Defendants. | COURT OF COMMON PLEAS<br>PHILADELPHIA COUNTY<br><br>TERM 2026<br>NO.<br><br>ASBESTOS CASE<br><br>JURY TRIAL DEMANDED |

## DEFENDANTS SERVICE LIST

**AIR & LIQUID SYSTEMS CORPORATION,**
   **as successor-by-merger to BUFFALO PUMPS, INC.**
5235 North Front Street
Harrisburg, PA 17110

**CATERPILLAR, INC.**
CORPORATION SERVICE COMPANY
251 LITTLE FALLS DRIVE
Wilmington, DE 19808

**FMC CORPORATION,**
   **Individually and Successor to LINKBELT**
306 West Main Street
Suite 512
Frankfort, KY 40601

**GENERAL ELECTRIC COMPANY**
Electric Insurance Company
75 Sam Fonzo Drive

Case ID: 260300273

Beverly, MA 01915

**GOULDS PUMPS LLC**
CT Corporation System
28 Liberty St,  42nd Fl
New York, NY 10005

**HUNTINGTON INGALLS INDUSTRIES**
c/o Hunton Andrews Kurth LLP
951 E. Byrd Street
Richmond, VA 23219

and
4101 Washington Avenue
Newport News, VA 23607
Richmond, VA 23219

**IMO INDUSTRIES, LLC.**
28 Liberty Street
28th Floor
New York, NY 10005

**ITT LLC.,**
  **Individually and as successor to**
  **BELL & GOSSETT and as successor to**
  **KENNEDY VALVE MANUFACTURING CO., Inc.**
CT Corporation
28 Liberty Street
New York, NY 10005

**PARAMOUNT GLOBAL, f/k/a VIACOMCBS Inc.,**
  **f/k/a CBS CORPORATION, a Delaware Corporation,**
  **f/k/a/ VIACOM INC., successor by merger to CBS**
  **CORPORATION, a PENNSYLVANIA CORPORATION, f/k/a**
  **WESTINGHOUSE ELECTRIC CORPORATION**
Asbestos Litigation Support Manager
ECKERT SEAMANS CHERIN & MELLOTT, LLC
Case Management & Technology Center
USX Towers
600 Grant Street
Pittsburgh, PA 15219

**REDCO CORPORATION f/k/a CRANE CO.**
The Corporation Trust Company
1209 Orange Street
Wilmington, DE 19801

Case ID: 260300273

or

Redco Corporation
1000 N. West Street, Suite 1200
Wilmington, Delaware 19801

**SCHNEIDER ELECTRIC USA, INC. formerly known as
    SQUARE D COMPANY**
Corporation Service Company
801 Adlai Stevenson Dr
Springfield, IL 62703

**WARREN PUMPS, LLC**
CT Corporation
1209 Orange Street
Wilmington, DE 19801

Case ID: 260300273

**WEITZ & LUXENBERG**
*A New York Professional Corporation*
By: EDWARD M. COSTELLO III, ESQUIRE
Atty Id: 335450
220 Lake Drive East, Suite 210
Cherry Hill, NJ  08002
(856)755-1115

Attorneys for Plaintiff(s)

| | |
|---|---|
| ANTONIO R WILLIAMS<br>401 Davis Ave.<br>Elizabeth City, NC 27909<br><br>                Plaintiff(s)<br><br>    vs.<br><br>AIR & LIQUID SYSTEMS CORPORATION,<br>as successor-by-merger to BUFFALO<br>PUMPS, INC., et al<br><br>             Defendants. | COURT OF COMMON PLEAS<br>PHILADELPHIA COUNTY<br><br>           TERM 2026<br>NO.<br><br>ASBESTOS CASE<br><br>JURY TRIAL DEMANDED |

## CIVIL ACTION COMPLAINT

Plaintiff(s) incorporate by reference Plaintiffs Master Long Form Complaint In re:

Asbestos Litigation in Philadelphia County Court of Common Pleas, filed as of October Term

1986, No. 8610-0001.  Pursuant to an Order dated July 30, 1986, and signed by the Honorable

Richard B. Klein, the following Short Form Complaint is utilized in this asbestos action.

1.      This Complaint involves the claims of the following person(s):
    a.  Plaintiff:
        Name:    ANTONIO R WILLIAMS
        Address:   401 Davis Ave.
        Elizabeth City, NC 27909
        SSN:     xxx-xx-4789
        Date of Birth:   March 21, 1958

2.      The Defendants are those companies listed in the caption.

Case ID: 260300273

3.      Plaintiff(s) might have named as defendants other additional entities responsible for the manufacture, distribution and/or supply of products that contained asbestos or were designed to be used with asbestos, except that such other entities have petitioned for relief in bankruptcy under the United States Bankruptcy Code and, pursuant to federal statute, the institution of actions against these entities is stayed.

4.      Plaintiff(s) hereby incorporate by reference the following Counts from the Master Long Form Complaint: Counts I through X.

5.      Plaintiff(s) asbestos employment history is as follows:

| | | | | | |
|---|---|---|---|---|---|
| McLean Contracting | CHESAPEAKE | VA | 01/1980 | 12/1989 | IRONWORKER |
| STELLA MARINA IRON | SOUTH NORFOLK | VA | 01/1989 | 12/1991 | PILE DRIVER OPERATOR |
| IRONMAN CONSTRUCTION | NEWPORT NEWS | VA | 01/1992 | 12/1996 | IRONWORKER |
| D.T. READ STEEL COMPANY | SOUTH MILLS | NC | 01/1996 | 12/2001 | IRONWORKER |

Mr. Williams was occupationally exposed to asbestos from his work as an ironworker. He was non-occupationally exposed to asbestos from his father's work in a shipyard.

From 1980 to 1989, Mr. Williams was exposed to asbestos while working as an ironworker for McLean Contracting. Mr. Williams spent time working at Newport News Shipbuilding, where he worked with and around asbestos-containing pumps, valves, cranes, electrical equipment, and welding rods.

6.      Plaintiff was diagnosed on or around April 24, 2025, as having Lung Cancer which is the direct and proximate result of his exposure to asbestos dust and fibers.  This exposure arose from working with or around products manufactured and distributed by defendants.

Case ID: 260300273

7.  Plaintiff's smoking history:

Plaintiff smoked approximately 1 pack-per-day from 1989 until 2009.

8.  Plaintiff's wages during his full year of employment were:

a.  To be supplied if applicable.

WHEREFORE, Plaintiffs pray for judgment against the defendants and each of them individually, jointly and severally for compensatory damages in an amount in excess of FIFTY THOUSAND DOLLARS ($50,000.00), punitive damages, and all such damages and relief as the Court deems just and proper.

**WEITZ & LUXENBERG, P.C.**
**Attorneys for Plaintiff(s)**

By: _____
Edward M. Costello III, Esq.

Case ID: 260300273

## VERIFICATION

I, Antonio Williams, Plaintiff herein, verify that the facts contained in the foregoing document are true and correct to the best of my knowledge, information, and belief. To the extent that the contents of the said document are based on information gathered by my counsel, I have relied upon my counsel in executing this verification. The language of this verification is that of my counsel.

I understand that the statements contained herein are subject to the penalties of 18 Pa.C.S. §4904 relating to unsworn falsification.

SIGNATURE: _Antonio Williams_

Case ID: 260300273

## CERTIFICATION

I, Edward M. Costello III, Esq., attorney for the Plaintiff(s), certifies pursuant to Pennsylvania Rule No. 205.4 that the hard copy of this electronically filed document was properly signed.


Dated: March 2, 2026

_____
Edward M. Costello III, Esq.

Court of Common Pleas of Philadelphia County
Trial Division

# Civil Cover Sheet

For Prothonotary Use Only (Docket Number)

**MARCH 2026**

E-Filing Number: 2603001151

**00273**

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| ANTONIO R. WILLIAMS | AIR & LIQUID SYSTEMS CORPORATION, ALIAS: AS SUCCESSOR-BY-MERGER TO BUFFALO PUMPS, INC. |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| 401 DAVIS AVE ELIZABETH CITY NC 27909 | 5235 NORTH FRONT STREET HARRISBURG PA 17110 |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| | CATERPILLAR, INC. |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| | CORPORATION SERVICE COMPANY 251 LITTLE FALLS DRIVE WILMINGTON DE 19808 |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| | FMC CORPORATION, ALIAS: INDIVIDUALLY AND SUCCESSOR TO LINKBELT |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| | 306 WEST MAIN STREET SUITE 512 FRANKFORT KY 40601 |

| TOTAL NUMBER OF PLAINTIFFS | TOTAL NUMBER OF DEFENDANTS | COMMENCEMENT OF ACTION |
|---|---|---|
| 1 | 12 | [X] Complaint    [ ] Petition Action    [ ] Notice of Appeal<br>[ ] Writ of Summons    [ ] Transfer From Other Jurisdictions |

**AMOUNT IN CONTROVERSY**
[ ] $50,000.00 or less
[X] More than $50,000.00

**COURT PROGRAMS**
[ ] Arbitration    [X] Mass Tort    [ ] Commerce    [ ] Settlement
[ ] Jury    [ ] Savings Action    [ ] Minor Court Appeal    [ ] Minors
[ ] Non-Jury    [ ] Petition    [ ] Statutory Appeals    [ ] W/D/Survival
[ ] Other:

**CASE TYPE AND CODE**

T1 - MASS TORT - ASBESTOS

**STATUTORY BASIS FOR CAUSE OF ACTION**

**RELATED PENDING CASES (LIST BY CASE CAPTION AND DOCKET NUMBER)**

**FILED
PRO PROTHY**

MAR **02** 2026

**C. SMITH**

**IS CASE SUBJECT TO COORDINATION ORDER?**
YES        NO

TO THE PROTHONOTARY:

Kindly enter my appearance on behalf of Plaintiff/Petitioner/Appellant: ANTONIO R WILLIAMS

Papers may be served at the address set forth below.

| NAME OF PLAINTIFF'S/PETITIONER'S/APPELLANT'S ATTORNEY | ADDRESS |
|---|---|
| EDWARD M. COSTELLO | 220 LAKE DRIVE EAST SUITE 210 CHERRY HILL NJ 08002 |

| PHONE NUMBER | FAX NUMBER | |
|---|---|---|
| (856)755-1115 | (646)293-7983 | |

| SUPREME COURT IDENTIFICATION NO. | E-MAIL ADDRESS |
|---|---|
| 335450 | ECOSTELLO@WEITZLUX.COM |

| SIGNATURE OF FILING ATTORNEY OR PARTY | DATE SUBMITTED |
|---|---|
| *EDWARD COSTELLO* | Monday, March 02, 2026, 10:57 am |

FINAL COPY (Approved by the Prothonotary Clerk)

**COMPLETE LIST OF DEFENDANTS:**

1. AIR & LIQUID SYSTEMS CORPORATION
      ALIAS: AS SUCCESSOR-BY-MERGER TO BUFFALO PUMPS, INC.
      5235 NORTH FRONT STREET
      HARRISBURG PA 17110
2. CATERPILLAR, INC.
      CORPORATION SERVICE COMPANY 251 LITTLE FALLS DRIVE
      WILMINGTON DE 19808
3. FMC CORPORATION
      ALIAS: INDIVIDUALLY AND SUCCESSOR TO LINKBELT
      306 WEST MAIN STREET SUITE 512
      FRANKFORT KY 40601
4. GENERAL ELECTRIC COMPANY
      ELECTRIC INSURANCE COMPANY 75 SAM FONZO DRIVE
      BEVERLY MA 01915
5. GOULDS PUMPS LLC
      CT CORPORATION SYSTEM 28 LIBERTY ST, 42ND FL
      NEW YORK NY 10005
6. HUNTINGTON INGALLS INDUSTRIES
      C/O HUNTON ANDREWS KURTH LLP 951 E. BYRD STREET
      RICHMOND VA 23219
7. IMO INDUSTRIES, LLC.
      28 LIBERTY STREET 28TH FLOOR
      NEW YORK NY 10005
8. ITT LLC.,
      ALIAS: MANUFACTURING CO., INC.
      CT CORPORATION 28 LIBERTY STREET
      NEW YORK NY 10005
9. PARAMOUNT GLOBAL
      ALIAS: A PENNSYLVANIA CORPORATION, F/K/A WESTINGHOUSE ELECTRIC CORP
      ECKERT SEAMANS CHERIN & MELLOT USX TOWERS 600 GRANT STREET
      PITTSBURGH PA 15219
10. REDCO CORPORATION
      ALIAS: F/K/A CRANE CO.
      THE CORPORATION TRUST COMPANY 1209 ORANGE STREET
      WILMINGTON DE 19801
11. SCHNEIDER ELECTRIC USA, INC.
      ALIAS: FORMERLY KNOWN AS SQUARE D COMPANY
      CORPORATION SERVICE COMPANY 801 ADLAI STEVENSON DR
      SPRINGFIELD IL 62703
12. WARREN PUMPS, LLC
      CT CORPORATION 1209 ORANGE STREET
      WILMINGTON DE 19801

**IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY**
**FIRST JUDICIAL DISTRICT OF PENNSYLVANIA**
**TRIAL DIVISION - CIVIL**

| | |
|---|---|
| **WILLIAMS VS AIR & LIQUID SYSTEMS CORPORATION ETAL** | **MARCH** TERM **1926** |
| | No. **00273** |

**CASE MANAGEMENT ORDER**
**FOR ASBESTOS-RELATED PERSONAL INJURY CLAIMS**

**AND NOW**, this **2nd day** of **March 2026**, the court enters the following Case Management

Order governing personal injury cases involving exposure to asbestos or asbestos-containing

products.

This Case Management Order supersedes all prior Case Management Orders entered in the

Asbestos Litigation Program and shall apply to all cases now pending and subsequently filed in this

Court.

**I. ADMINISTRATIVE MATTERS**

A. Liaison counsel have been appointed to facilitate communication between the parties and

the Court, including the dissemination of any documents filed on the Global Docket to their

respective constituent groups. If a party, or their respective counsel, has any questions or

concerns related to the Asbestos Litigation Program, those questions or concerns should first

be addressed to their respective liaison counsel. [1]

---

[1] As of the date of this order, the current liaison counsel are:

Plaintiffs' liaison counsel
Laurence Brown
Brookman, Rosenberg, Brown & Sandler
30 South 15th Street
Philadelphia, PA 19102

B.  There shall be no reverse bifurcation of any asbestos case, unless agreed upon by all counsel involved and approved by the Court.

C.  All punitive damage claims in asbestos cases shall be deferred.

D.  <u>Asbestos Cases Projected Trial Grouping</u>: Once a year, the Court will enter an order with a list of cases to be scheduled for projected trial dates in the following year.  Asbestos cases shall be organized in groups of a maximum of 10. Liaison counsel shall present the Court with a proposal of trial groups that takes into consideration the following criteria:

i.  Same law. Cases that involve application of the law of different states will not be tried together;

ii.  Same disease. The disease category for each case in a group must be identical. The disease categories of cases to be grouped for trial are mesotheliomas, peritoneal mesotheliomas, lung cancers, other cancers and non-malignancy cases;

iii.  Same plaintiff's law firm. Primary trial counsel for all cases in each group will be from a single plaintiff firm. Cases where Philadelphia plaintiff firms serve as local counsel for out-of-state counsel may be grouped with cases from the local firm; however, cases will not be tried together if the plaintiffs are not represented by the same firm;

---

(215) 569-4000
LBrown@brbs.com

Defense liaison counsel
Catherine Jasons
Kelley Jasons McGowan Spinelli Hanna & Reber LLP
1818 Market Street, Suite 3205
Philadelphia, PA 19103
(215) 854-0658
CJasons@kjmsh.com

The parties and their respective counsel are reminded of their continuing obligation to review the Global Docket for any changes that may occur after the entry of this Case Management Order.

iv.  Pleural mesothelioma is a disease that is distinct from mesotheliomas originating in other parts of the body, and will not be tried on a consolidated basis with non-pleural mesothelioma cases;

v.  Non-pleural mesothelioma cases will be further classified for trial, so that non-pleural mesothelioma cases allegedly caused by occupational exposure will not be tried on a consolidated basis with non-pleural mesothelioma cases allegedly caused by para-occupational (bystander) exposure;

vi.  Such other factors as determined appropriate in weighing whether all parties to the litigation can receive a prompt and just trial. The Court's present backlog of asbestos cases shall not be an overriding factor in the grouping determination.

E.  Mediation: Once grouped and assigned a projected trial date, counsel are urged to seek mediation from a special panel of former judges named in ¶ 3 of General Court Regulation 2023-01.  All parties will share the expense of mediation.

## II. PLEADINGS

### A. Short-Form Complaints

A short-form complaint shall be filed and served in every case in accordance with the Pennsylvania Rules of Civil Procedure.  Plaintiffs may incorporate by reference the long-form complaints filed on the above-captioned docket.

The short-form complaint shall contain the information required by Rule *1041.1(B) of the Philadelphia Civil Rules.

A short-form complaint that contains premises liability claims shall include the name and address of each work site at which the plaintiff alleges exposure to asbestos and the dates during which the plaintiff or the decedent worked at each such work site.

### B. Preliminary Objections

In response to each short-form complaint, any defendant may file preliminary objections in accordance with the Pennsylvania Rules of Civil Procedure and Rules *1028 and *1041.1 of the Philadelphia Civil Rules.  The preliminary objections shall comply with the procedures set forth in Sections V(C) and V(E). Plaintiffs' response to preliminary objections shall be subject to Rule 1028(c)(1) of the Pennsylvania Rules of Civil Procedure and Rule *1028(c) of the Philadelphia Civil Rules.

### C. Answers to Complaints

Defendant's answers to complaints are governed by Rule 1041.1 of the Pennsylvania Rules of Civil Procedure and Rule *1041.1 of the Philadelphia Civil Rules.

**III. GIFFEAR DOCKET**

Cases that do not state a valid claim pursuant to Giffear v. Johns-Manville Corp., 632 A.2d 880 (Pa. Super. 1993), *aff'd sub nom. Simmons v. Pacor, Inc.*, 674 A.2d 232 (Pa.1996), shall be placed on an inactive docket.

To reactivate a case that has been discontinued pursuant to *Giffear*, a motion to reactivate must be filed and include all necessary medical reports supporting the motion.  The motion shall be filed in letter brief format consistent with Section V(C) of this order.

**IV. DISCOVERY**

A. Unless otherwise agreed to by opposing counsel or upon a showing of exigent circumstances, all discovery shall take place in Philadelphia.  A party may notice a deposition to take place at a location outside of Philadelphia so long as that party provides video conferencing, or telephone conferencing if video conferencing is impracticable, at no expense to opposing parties.  All remote depositions shall be conducted under the guidelines set forth in this Court¿s Order of January 11, 2021, attached as Exhibit A.

B. A notice of deposition shall be served on all parties at least 14 days before the scheduled deposition date unless, upon agreement of the parties, medically exigent circumstances exist or court approval is obtained for a shorter period.  The notice of deposition shall include the intended dates for the continuation of the deposition, if necessary.  Plaintiff shall provide the defendants with answers to Defendants' Common Interrogatories no later than five days before the scheduled deposition date of any plaintiff.  Each plaintiff firm will use its best efforts to limit the number of depositions scheduled to occur concurrently to two depositions per firm, per day, regardless of whether the depositions are for witnesses in the same case or different cases.

C. The following deadlines shall apply for the completion of discovery and the exchange of

expert reports, as set forth in the Asbestos Litigation Schedule 2:

180 Days before the projected jury selection-
Plaintiffs shall serve answers to Defendants' Common Interrogatories and Requests for
Production Directed to Plaintiffs, including information relating to Bankruptcy Trust Filings as set
forth in this Court's Order of April 5, 2010, attached as Exhibit B.

Plaintiffs shall forward the identification of all health care providers along with addresses to
defense counsel and RecordTrak.

Plaintiffs shall forward HIPAA compliant authorization forms signed by plaintiffs to RecordTrak.

120 days before the projected jury selection -

Plaintiffs shall serve medical, economic and liability expert reports.

Plaintiffs shall produce to lead defense counsel all diagnostic materials in the possession of
plaintiffs or their counsel and all diagnostic material reviewed by plaintiffs' experts.  This
includes, but is not limited to, x-rays, CT scans, pathology and cytology.

Plaintiffs shall serve witness lists identifying the defendants whose products the witnesses are
expected to identify.

100 days before the projected jury selection - Completion of plaintiffs' depositions.

---

2  The Asbestos Litigation Schedule is established after the Court approves the annual trial grouping
schedule that is proposed by liaison counsel.  The deadlines contained within the Asbestos Litigation
Schedule are consistent with the deadlines set forth under §§ IV(C), V, and VI of this order.

<u>90 days before the projected jury selection</u> - Completion of all co-worker depositions.

<u>10 days before the date of the date-certain jury selection as scheduled by the Court pursuant to Section VIII.</u>  -Defendants shall serve medical and expert liability reports.

## V. MOTIONS PROCEDURES

A. This section applies to all motions other than motions for summary judgment that are filed in the Asbestos Litigation Program.  Motions for summary judgment shall be governed by Section VI.

B. All motions shall be electronically filed each Monday pursuant to Rule 205.4 of the Pennsylvania Rules of Civil Procedure and Rule *205.4 of the Philadelphia Civil Rules.  Any motions filed after Monday will be deemed filed the following Monday.

C. All motions shall be in letter-brief rather than motion package format.  The first page of the motion shall include the caption, type of litigation (i.e., Asbestos), name of opposing counsel, and the filing and response dates.  The second page of the motion shall be the proposed order.  The third page of the motion shall include the title line (Dear Judge"...) and contain an executive summary followed by questions presented, facts, and discussion of the issues with citation to pertinent legal authority.  Each motion must also include a signed Certificate of Service.

D. All discovery motions also must include a signed Attorney Certification of Good Faith and Certificate of Service.  The Attorney Certification of Good Faith shall attest that certifying counsel has spoken with opposing counsel to resolve the specific dispute at issue, and that despite counsel's good faith efforts, has been unable to do so.  Merely sending an email or letter to opposing counsel without response does not constitute a good faith effort to resolve a discovery dispute.

E. The moving party must serve opposing counsel and all interested parties with a copy of every motion on the day filed with the Court, by electronic mail, facsimile or hand delivery 3.   The moving party shall notify opposing counsel and all interested parties of the motion Control Number upon notification of same by the Court.

F. From the date of filing as determined pursuant to Section V(B), opposing counsel shall have seven days to file a response to any motion, unless a specific Case Management Order provides otherwise.  The response must be filed no later than 11:59 p.m. of the due date.  THE RESPONSE MUST CLEARLY DISPLAY THE CONTROL NUMBER OF THE CORRESPONDING MOTION ON ITS FIRST PAGE.  The responding party must serve the moving party and all other interested parties with a copy of the response the same day by electronic mail, facsimile or hand delivery.  4

---

3 Counsel are reminded of the more exacting nature of the motions practice in the Complex Litigation Center because of the shorter response times and the need to ensure the completion of same-day service. Counsel are cautioned that under Rule 205.4(g)(2)(ii) of the Pennsylvania Rules of Civil Procedure, service by electronic transmission is not complete until "an e-mail message is sent to the recipient by the electronic filing system that the legal paper has been filed and is available for review on the system's website."  Accordingly, the obligation of same-day service contained Section V(E) of this order will not be satisfied by reliance on Rule 205.4 (g)(2) of the Pennsylvania Rules of Civil Procedure if a motion, response or reply filed by electronic mail is not accepted by the Court on the date that it is transmitted to the Court.

4 *See* Footnote 3, *supra*.

G. If any motion or response is withdrawn, filing counsel must electronically file, under the appropriate Control Number, a praecipe to withdraw.  The praecipe must clearly display the Control Number of the motion.  All interested parties must be served with a copy the same day by electronic mail, facsimile or hand delivery. [5]

H. Counsel shall not directly contact any mass tort law clerks or Complex Litigation Center staff requesting rulings on motions.  Any questions should be sent to the Director of the Complex Litigation Center via e-mail at ComplexLitigationCenter@courts.phila.gov.  No email correspondence or other ex parte communications should be sent to the judge.

## VI. SPECIAL PROCEDURES FOR MOTIONS FOR SUMMARY JUDGMENT

A. To prevent the filing of unnecessary motions, as set forth in the Asbestos Litigation Schedule, five days before the deadline for filing summary judgment motions (or 85 days before the projected jury selection date) plaintiffs' counsel are to serve upon all parties to a case, a letter identifying all defendants that plaintiff will voluntarily dismiss from that case.

B. All summary judgment motions shall be electronically filed 80 days before the projected trial date and shall comply with the requirements of Section V(C) *supra*.

C. Unless otherwise governed by Section VI(F), any opposing counsel shall  file a response to the motion on or before 63 days before the jury selection date, as set forth in the Asbestos Litigation Schedule.

---

[5] *See* Footnote 3, *supra*.

The response must be filed no later than 11:59 p.m. of the due date.  The response must clearly display the control number of the corresponding motion on its first page.  The responding party must serve the moving party and all other interested parties with a copy of the response the same day by electronic mail, facsimile or hand delivery. [6]

D. A reply by the moving party, if any, shall be electronically filed by 11:59 PM on or before 58 days before the jury selection date, as set forth in the Asbestos Litigation Schedule.  The reply must clearly display the control number of the corresponding motion on the first page. The reply must be filed no later than 11:59 p.m. of the due date.  The party filing the reply must serve the moving party and all other interested parties with a copy of the reply the same day by electronic mail, facsimile or hand delivery. [7]

E. Plaintiffs' counsel are under a good faith obligation to determine which of the defendants' motions will be opposed, and to cooperate with defense counsel in signing stipulations of dismissal where appropriate, so that defendants whose presence is not required at mediation are not put to the expense of attending mediation.

F. If the plaintiffs' counsel would like the Court to hold a motion for summary judgment to allow for mediation, plaintiffs' counsel must notify the Court and all parties within 17 days of the filing of that summary judgment motion.  By the same deadline, plaintiffs¿ counsel shall also advise the Court and all parties which summary judgment motions can be granted as unopposed.

---

[6] *See* Footnote 3, *supra*.

[7] *See* Footnote 3, *supra*.

Plaintiff need not respond to any motion held in abeyance until the mediator has determined that the claim cannot be resolved before the Court renders a decision on the motion.  Once the mediator makes this determination, the mediator shall give notice of the conclusion of the mediation process to the Court and to all parties by email, identifying those defendants who have had claims against them resolved and those against whom claims remain outstanding.  Upon receiving notice from the mediator, the Director of the Complex Litigation Center, or their designee, shall then advise the plaintiffs they may file a response to any defendant's pending motion for summary judgment within seven days and defense replies shall be due no later than seven days after the filing of the response.

   G. Courtesy copies of motions should not be sent to the Complex Litigation Center or to the Court, unless specifically requested by the Court.

## VII. MEDIATION

   The Court expects all parties to fully cooperate with one another and to act in good faith to try to resolve pending actions.  The Court strongly encourages parties to mediate their cases and to schedule mediation as soon as practicable.  Cases that are ready to be mediated shall be scheduled for mediation to take place in the order of the trial groups as they appear on the projected trial lists and after the deadline for the filing of motions for summary judgment as established by this order and the Asbestos Litigation Schedule prepared on an annual basis.  Plaintiffs' counsel shall provide the defendants with no less than 45 days' notice of a scheduled mediation.  At the time of notice of the mediation, plaintiffs' counsel shall advise which defendants are expected to participate in the mediation and provide settlement demands.

The mediator shall set the deadlines for the timely submission of mediation statements. As cases are scheduled for mediation, plaintiffs' counsel shall notify the Director of the Complex Litigation Center by email with the names of the cases being mediated, the name of the mediator and the date of the mediation.

## VIII. SCHEDULING OF TRIALS AND DEADLINES

In any case that has not been resolved through mediation, the parties shall be prepared to proceed to a pre-trial conference to be conducted by the Team Leader Judge or their designee, which may take place approximately 30 days after the Court is notified of the failed mediation. If there are any outstanding motions ripe for review after mediation, the Court may rule on those motions before any pre-trial conference. If no pre-trial conference is held or if the matter does not resolve after any pre-trial conference, trial shall be scheduled to commence not less than 60 days after the mediator's notice that mediation has concluded. At that time, the Court will also schedule a date certain jury selection date or dates.

Plaintiffs shall make best efforts to comply with the deadlines established in the Asbestos Litigation Schedule for the production of plaintiffs' answers to interrogatories, bankruptcy trust filings, authorizations and expert reports. Defendants shall make best efforts to timely respond to discovery requests directed to them. The deadline for production of defense medical and liability reports shall be 10 days before the date of the date-certain jury selection.

One-week trial slots are established for each month of each year. There will be a primary case scheduled with designated "back-up" cases, which are expected to be ready to proceed to trial should the primary case settle. In the event the primary case settles, the first back-up will be substituted as the new primary case to be tried; this process shall be repeated until all back-up cases have been resolved. Counsel will be notified by the Court of the order of cases identified for trial and Notices of Trial Attachment will be served on counsel.

Within seven days of being assigned a trial date, as either the primary case or as a back-up case, all counsel and parties must notify the court of any scheduling conflicts, including trial attachments and pre-paid vacations, by electronically filing a conflict letter. The Court will not recognize any untimely conflict notifications. Failure to notify the Court of scheduling conflicts may result in the imposition of appropriate sanctions. To electronically file the conflict letter, access the "Existing Case" section of the court's electronic filing system, select "Conference Submissions" as the filing category, and select "Trial Pool Conflict Letter" as the document type. The assigned trial judge may serve additional orders or instructions on the parties proceeding to trial.

## IX. STIPULATIONS OF DISMISSAL

A. If a plaintiff has agreed to stipulate to the dismissal of a defendant, the defendant (the "Stipulated Defendant") shall prepare a stipulation of dismissal.

B. The Stipulated Defendant shall circulate the stipulation of dismissal to all defense counsel by letter, stating that any party has 10 days from the date of the letter to object to the dismissal of the Stipulated Defendant.

C. If a party objects to the dismissal of the Stipulated Defendant, the objecting party shall notify the Stipulated Defendant in writing stating the basis for the objection.

D. If, after the expiration of the 10-day period, no objections are received by the Stipulated Defendant, the stipulation of dismissal may be electronically filed with the Court as unopposed.

E. The electronically filed stipulation of dismissal must be accompanied by a cover letter stating no objections have been raised within the 10-day period.

F. Service of the Court-approved stipulation of dismissal shall be effectuated via the Court's electronic filing system on all parties of record.

G. Any defendant who settles with the plaintiff and desires to have the matter marked discontinued as to that defendant may follow this procedure or, in the alternative, file a motion as set forth in Rule 229(b) of the Pennsylvania Rules of Civil Procedure.

## X. DEADLINES FOR CASES THAT MOVE TO NEW TRIAL GROUPS

If any case is moved, with the consent of the Court, from its original projected trial group to a later projected trial group, all discovery and motions deadlines for the later projected group will apply.  Any summary judgment motions filed before moving the case will remain open and need not be re-filed.

## XI.   SANCTIONS

The Court expects all counsel to amicably resolve any issues that arise as a result of the implementation of this order.  The Court may make exceptions to any procedures or protocols set forth in this order in special situations, sua sponte or on written request, electronically filed with service upon all parties, of counsel upon showing extraordinary cause.

\\zdrasbes 12/1/2023

Failure to comply with any deadlines set forth in this Case Management Order may, upon application to the Court or after the issuance of a rule to show cause, result in the imposition of appropriate sanctions, including dismissal.

**BY THE COURT:**

**/s/**

_____
**JOSHUA ROBERTS**
**MASS TORT TEAM LEADER**

# AFFIDAVIT OF SERVICE

**State of PA**                     **County of PHILADELPHIA**

Case Number: 260300273

Plaintiff: **Antonio R Williams**
vs.
Defendant: **AIR & LIQUID SYSTEMS CORPORATION,  as successor-by-merger to BUFFALO PUMPS, INC., et. al.,**

For:
Audrey Hen
Weitz & Luxenberg

Received by Nicoletti & Harris to be served on **GOULDS PUMPS LLC CT Corporation Systems, 28 Liberty St, New York, NY 10005.**

I, Alex Colon, being duly sworn, depose and say that on the **4th day of March, 2026** at **11:15 am, I:**

served a **CORPORATION** by delivering a true copy of the **Civil Cover Sheet, Notice to Plead and Civil Action Complaint and Jury Trial Demanded, Case Management Order for Asbestos-Related Personal Injury Claims** with the date and hour of service endorsed thereon by me, to: **Joseph McCabe** as **Intake Specialist/ Authorized to Accept** for **GOULDS PUMPS LLC**, at the address of: **28 Liberty Street, 42nd Floor, New York, NY 10005**, and informed said person of the contents therein, in compliance with state statutes.

The entity served was known to be the corporation described in the papers. The title of the individual named above was known. I inquired whether the individual was authorized to accept service, received an affirmative response, and served the papers accordingly

**Description** of Person Served: Age: 35, Sex: M, Race/Skin Color: White, Height: 5'9", Weight: 200, Hair: Blonde, Glasses: Y

I certify that I am over the age of 18 and have no interest in the above action.

STATE OF        New York)
COUNTY OF     New York)

Subscribed and Sworn to before me on the 4th day of March, 2026 by the affiant who is personally known to me.

Ana E. Sanchez
Notary Public State of New York
Bronx County
Lic No. 01SA5067260
Commission Expires: October 15, 2026

**Alex Colon**
2119478

**Nicoletti & Harris**
**101 Avenue of the Americas**
**9th floor**
**New York, NY 10013**
**(212) 267-6448**

Our Job Serial Number: NHI-2026005532
Ref: T126864



Case ID: 260300273

# AFFIDAVIT OF SERVICE

**State of PA**                                    **County of PHILADELPHIA**

Case Number: 260300273

Plaintiff: **Antonio R Williams**
vs.
Defendant: **AIR & LIQUID SYSTEMS CORPORATION, as successor-by-merger to BUFFALO PUMPS, INC., et. al.,**

For:
Audrey Hen
Weitz & Luxenberg

Received by Nicoletti & Harris to be served on **IMO INDUSTRIES, LLC., 28 Liberty Street, 28th Floor, New York, NY 10005.**

I, Alex Colon, being duly sworn, depose and say that on the **4th day of March, 2026** at **11:15 am, I:**

served a **CORPORATION** by delivering a true copy of the **Civil Cover Sheet, Notice to Plead and Civil Action Complaint and Jury Trial Demanded, Case Management Order for Asbestos-Related Personal Injury Claims** with the date and hour of service endorsed thereon by me, to: **Joseph McCabe** as **Intake Specialist/ Authorized to Accept** for **IMO INDUSTRIES, LLC.**, at the address of: **28 Liberty Street, 42nd Floor, New York, NY 10005**, and informed said person of the contents therein, in compliance with state statutes.

The entity served was known to be the corporation described in the papers. The title of the individual named above was known. I inquired whether the individual was authorized to accept service, received an affirmative response, and served the papers accordingly

**Description** of Person Served: Age: 35, Sex: M, Race/Skin Color: White, Height: 5'9", Weight: 200, Hair: Blonde, Glasses: Y

I certify that I am over the age of 18 and have no interest in the above action.

STATE OF        New York)
COUNTY OF     New York)

Subscribed and Sworn to before me on the 4th day of March, 2026 by the affiant who is personally known to me.

Ana E. Sanchez
Notary Public State of New York
Bronx County
Lic No. 01SA5067260
Commission Expires: October 15, 2026

**Alex Colon**
2119478

**Nicoletti & Harris**
**101 Avenue of the Americas**
**9th floor**
**New York, NY 10013**
**(212) 267-6448**

Our Job Serial Number: NHI-2026005528
Ref: T126864

Filed and Attested by the Office of Judicial Records Common 2026 10:52 am G IMPERATO

Case ID: 260300273

## AFFIDAVIT OF SERVICE

**State of PA**                              **County of PHILADELPHIA**

Case Number: 260300273

Plaintiff: **Antonio R Williams**
vs.
Defendant: **AIR & LIQUID SYSTEMS CORPORATION,  as successor-by-merger to BUFFALO PUMPS, INC., et. al.,**

For:
Audrey Hen
Weitz & Luxenberg

Received by Nicoletti & Harris to be served on **ITT LLC., Individually and as successor to BELL & GOSSETT and as successor to KENNEDY VALVE MANUFACTURING CO., Inc., c/o CT Corporation Systems, 28 Liberty St, New York, NY 10005**.

I, Alex Colon, being duly sworn, depose and say that on the **4th day of March, 2026** at **11:15 am, I:**

served a **CORPORATION** by delivering a true copy of the **Civil Cover Sheet, Notice to Plead and Civil Action Complaint and Jury Trial Demanded, Case Management Order for Asbestos-Related Personal Injury Claims** with the date and hour of service endorsed thereon by me, to: **Joseph McCabe** as **Intake Specialist/ Authorized to Accept** for **ITT LLC., Individually and as successor to BELL & GOSSETT and as successor to KENNEDY VALVE**, at the address of: **28 Liberty Street, 42nd Floor, New York, NY 10005**, and informed said person of the contents therein, in compliance with state statutes.

The entity served was known to be the corporation described in the papers. The title of the individual named above was known. I inquired whether the individual was authorized to accept service, received an affirmative response, and served the papers accordingly

**Description** of Person Served: Age: 35, Sex: M, Race/Skin Color: White, Height: 5'9", Weight: 200, Hair: Blonde, Glasses: Y

I certify that I am over the age of 18 and have no interest in the above action.

STATE OF        New York)
COUNTY OF     New York)

Subscribed and Sworn to before me on the 4th day of March, 2026 by the affiant who is personally known to me.

Ana E. Sanchez
Notary Public State of New York
Bronx County
Lic No. 01SA5067260
Commission Expires: October 15, 2026

**Alex Colon**
2119478

**Nicoletti & Harris**
**101 Avenue of the Americas**
**9th floor**
**New York, NY 10013**
**(212) 267-6448**

Our Job Serial Number: NHI-2026005526
Ref: T126864

Filed and Attested by the Office of Judicial Records Common Pleas Court 06 MAR 2026 10:54 am G. IMPERATO



Case ID: 260300273



**EASTBURN AND GRAY, P.C.**
**BY: John P. McShea**
**Attorney I.D. No. 34562**
**60 East Court Street**
**Doylestown, PA 18901**
**215-345-7000**

**Attorney for Defendant**
**General Electric Company**

| | | |
|---|---|---|
| ANTONIO R. WILLIAMS, | : | PHILADELPHIA COUNTY |
| | : | COURT OF COMMON PLEAS |
| Plaintiff, | : | |
| | : | MARCH TERM, 2026 |
| v. | : | NO. 0273 |
| | : | |
| GENERAL ELECTRIC COMPANY, et al., | : | ASBESTOS CASE |
| | : | |
| Defendants. | : | |
| | : | |
| | : | |

## ENTRY OF APPEARANCE

**TO THE PROTHONOTARY:**

Kindly enter my appearance on behalf of Defendant General Electric Company, under Pennsylvania Rule of Civil Procedure 1041.1. This document serves as an entry of appearance, denial of all averments of fact in the Complaint, an allegation of all affirmative defenses, and a claim for indemnification and contribution from any other party.

Dated: March 6, 2026

/s/  John P. McShea
John P. McShea
*Attorney for Defendant*
*General Electric Company*

Case ID: 260300273

## CERTIFICATE OF SERVICE

I hereby certify that on this 6th day of March 2026, a true and correct copy of the foregoing Entry of Appearance was provided to all counsel of record *via electronic case filing system.*

/s/ John P. McShea
John P. McShea

Case ID: 260300273

# AFFIDAVIT OF SERVICE



*Filed and Attested by the Office of Judicial Records 11 MAR 2026 06:40 pm G. SMITH*

**State of PA**                    **County of PHILADELPHIA**          Common Pleas Court

Case Number: 260300273

Plaintiff:
**Antonio R Williams**

vs.

Defendant:
**AIR & LIQUID SYSTEMS CORPORATION,  as successor-by-merger to BUFFALO PUMPS, INC., et. al.,**

For:
Audrey Hen
Weitz & Luxenberg

Received by NICOLETTI & HARRIS, INC on the 4th day of March, 2026 at 12:48 pm to be served on **FMC CORPORATION,  Individually and Successor to LINKBELT CT Corp., 306 West Main Street, Suite 512, Frankfort, KY 40601.**

I, Amy Thurman, being duly sworn, depose and say that on the **5th day of March, 2026 at 10:28 am, I:**

served a **CORPORATION** by delivering a true copy of the **Civil Cover Sheet, Notice to Plead and Civil Action Complaint and Jury Trial Demanded, Case Management Order for Asbestos-Related Personal Injury Claims** to: **Amy Worford** as **as Process Receiver Authorized to accept service** for **FMC CORPORATION,  Individually and Successor to LINKBELT**, at the address of: **306 West Main Street, Suite 512, Frankfort, KY 40601**, and informed said person of the contents therein, in compliance with state statutes.

**Description** of Person Served: Age: 46, Sex: F, Race/Skin Color: Caucasian, Height: 5'3", Weight: 150, Hair: Blonde, Glasses: Y

I certify that I am over the age of 18, have no interest in the above action, and am a Process Server, in good standing, in the judicial circuit in which the process was served.

Subscribed and Sworn to before me on the __5th__ day of __March__, __2026__ by the affiant who is personally known to me.

_____
NOTARY PUBLIC

Brittany Dawn Rue
Notary Public, ID KYNP65685
State at Large, Kentucky
My Commission Expires on Jan. 25, 2027

_____
**Amy Thurman**
Process Server
03/05/2026
_____
**Date**

**NICOLETTI & HARRIS, INC**
**101 AVENUE OF THE AMERICAS**
**9TH FLOOR**
**New York, NY 10013**
**(212) 267-6448**

Our Job Serial Number: NHI-2026005534
Ref: T126864

Copyright © 1992-2026 DreamBuilt Software, LLC. - Process Server's Toolbox V9.0e

Case ID: 260300273
Doc ID: 2d76b32ba6c270021d091b0b91710f9db918e955

## AFFIDAVIT OF SERVICE

*Filed and Attested by the Office of Judicial Records 11 MAR 2026 06:41 pm SMITH*

**State of PA**                    **County of PHILADELPHIA**                    Common Pleas Court

Case Number: 260300273

Plaintiff:
**Antonio R Williams**

vs.

Defendant:
**AIR & LIQUID SYSTEMS CORPORATION,  as successor-by-merger
to BUFFALO PUMPS, INC., et. al.,**

For:
Audrey Hen
Weitz & Luxenberg

Received by Nicoletti & Harris to be served on **SCHNEIDER ELECTRIC USA, INC. formerly known
as  SQUARE D COMPANY Corporation Service Company, 801 Adlai Stevenson Dr, Springfield, IL
62703**.

I, John Pennell, being duly sworn, depose and say that on the **5th day of March, 2026** at **3:22 pm, I:**

**served a CORPORATION** by delivering a copy of the **Civil Cover Sheet, Notice to Plead and Civil
Action Complaint and Jury Trial Demanded, Case Management Order for Asbestos-Related
Personal Injury Claims**, to: **Baylon Elfgen** as **Intake Specialist** for SCHNEIDER ELECTRIC USA, INC.
formerly known as  SQUARE D COMPANY Corporation Service Company, who stated they are authorized
to accept service, at the address of: **801 Adllai Stevenson Dr., Springfiield, IL 62703**, and informed said
person of the contents therein.

**Description** of Person Served: Age: 22, Sex: M, Race/Skin Color: White, Height: 6'3", Weight: 250,
Hair: Brown, Glasses: N

I certify that I have no interest in the above action, am of legal age and have proper authority in the
jurisdiction in which this service was made.

Subscribed and Sworn to before me on the 5th
day of March, 2026 by the affiant who is
personally known to me.

_____
NOTARY PUBLIC

> OFFICIAL SEAL
> YELENA OGULNIK
> Notary Public, State of Illinois
> Commission No. 886208
> My Commission Expires Dec. 27, 2026

_____
**John Pennell**
115.002074

**Nicoletti & Harris
101 Avenue Of Americas
9th Floor
New York, NY 10013**

Our Job Serial Number: NHI-2026005511
Ref: T126864

Copyright © 1992-2026 DreamBuilt Software, Inc. - Process Server's Toolbox V9.0a

Case ID: 260300273



*Filed and Attested by the
Office of Judicial Records
12 MAR 2026 03:50 pm
L. BREWINGTON*

BY:  W. Matthew Reber, Esquire
mreber@kjmsh.com
I.D. No.: 67035
**KELLEY JASONS MCGOWAN
SPINELLI HANNA & REBER, LLP**
1818 Market Street, Suite 3205
Philadelphia, PA  19103
(215) 854-0658

Attorney for Defendant
FMC Corporation, on behalf of its former
Construction Equipment Group improperly
sued as "FMC Corporation individually and
as successor to Link-Belt"

| | | |
|---|---|---|
| **ANTONIO R. WILLIAMS** | : | **COURT OF COMMON PLEAS** |
| | : | **PHILADELPHIA COUNTY** |
| **v.** | : | |
| | : | **MARCH TERM, 2026** |
| **FMC CORPORATION, ON BEHALF OF** | : | |
| **ITS FORMER CONSTRUCTION** | : | **NO. 0273** |
| **EQUIPMENT GROUP IMPROPERLY** | : | |
| **SUED AS "FMC CORPORATION** | : | **ASBESTOS CASE** |
| **INDIVIDUALLY AND SUCCESSOR TO** | : | |
| **LINK BELT,"** *et al.* | : | |

### ENTRY OF APPEARANCE AND ANSWER TO COMPLAINT OF DEFENDANT FMC CORPORATION, ON BEHALF OF ITS FORMER CONSTRUCTION EQUIPMENT GROUP IMPROPERLY SUED AS "FMC CORPORATION INDIVIDUALLY AND SUCCESSOR TO LINK BELT"

Pursuant to Rule 1041.1(c) of the Pennsylvania Rules of Civil Procedure, W. Matthew Reber, Esquire, enters his appearance on behalf of Attorney for Defendant FMC Corporation, on behalf of its former Construction Equipment Group improperly sued as "FMC Corporation individually and as successor to Link-Belt" and hereby answers the Complaint filed in the above-captioned matter.  By operation of this Rule, this Entry constitutes a denial of all averments of fact in the Complaint, an allegation of all affirmative defenses and a claim for indemnification

Case ID: 260300273

and contribution from all other defendants and additional defendants. This Entry is further filed in accordance with Philadelphia County Court of Common Pleas Local Rule 1019.1.  Answering defendant hereby incorporates by reference the Defendants' Master New Matter, and all amendments thereto, filed by defendants in In Re: Asbestos Litigation, Special Asbestos Docket, October Term, 1986, Number 0001.

**KELLEY JASONS McGOWAN**
**SPINELLI HANNA & REBER, LLP**


*/s/ W. Matthew Reber*
W. Matthew Reber, Esquire

2

Case ID: 260300273

## CERTIFICATION OF COMPLIANCE

I, W. Matthew Reber, certify that this filing complies with the provisions of the *Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts* that require filing confidential information and documents differently than non-confidential information and documents**.**

**KELLEY JASONS McGOWAN
SPINELLI HANNA & REBER, LLP**

/s/ *W. Matthew Reber*
W. Matthew Reber
I.D. No.: 67035

Attorney for Defendant
FMC Corporation, on behalf of its former
Construction Equipment Group improperly sued as
"FMC Corporation individually and as successor to
Link-Belt"

Dated:  March 12, 2026

## CERTIFICATE OF SERVICE

I, W. Matthew Reber, do hereby certify that a true and correct copy of the foregoing Entry of Appearance and Answer to Complaint of Defendant Attorney for Defendant FMC Corporation, on behalf of its former Construction Equipment Group improperly sued as "FMC Corporation individually and as successor to Link-Belt" was filed this date via the First Judicial District of Philadelphia Court of Common Pleas Civil Trial Division's E-Filing System and thereby deemed served on all counsel of record pursuant to rule 205.4(g) of the Pennsylvania Rules of Civil Procedure.

_/s/ W. Matthew Reber_
W. Matthew Reber

Dated:   March 12, 2026

# AFFIDAVIT OF SERVICE

Filed and Attested by the
Office of Judicial Records
13 MAR 2026 12:50 pm
E. BALILONIS

**State of PA**                    **County of PHILADELPHIA**            Common Pleas Court

Case Number: 260300273

Plaintiff:
**Antonio R Williams**

vs.

Defendant:
**AIR & LIQUID SYSTEMS CORPORATION,  as successor-by-merger to BUFFALO PUMPS, INC., et. al.,**

For:
Audrey Hen
Weitz & Luxenberg

Received by Nicoletti & Harris to be served on **CATERPILLAR, INC. Corporation Service Company, 251 Little Falls Drive, Wilmington, DE 19808**.

I, Remy Nicoletti, being duly sworn, depose and say that on the **10th day of March, 2026** at **2:14 pm, I**:

served a **CORPORATION** by delivering a true copy of the **Civil Cover Sheet, Notice to Plead and Civil Action Complaint and Jury Trial Demanded, Case Management Order for Asbestos-Related Personal Injury Claims** with the date and hour of service endorsed thereon by me, to: **Jane Doe Corporation Service Company** as **Litigation Mgmt Rep./Authorized to Accept Service** for **CATERPILLAR, INC.**, at the address of: **251 Little Falls Drive, Wilmington, DE 19808**, and informed said person of the contents therein, in compliance with state statutes.

The entity served was known to be the corporation described in the papers. The title of the individual named above was known. I inquired whether the individual was authorized to accept service, received an affirmative response, and served the papers accordingly

**Description** of Person Served: Age: 29, Sex: F, Race/Skin Color: White, Height: 5'4", Weight: 185, Hair: Dark Brown, Glasses: N

I certify that I am over the age of 18 and have no interest in the above action.

STATE OF        New Jersey)
COUNTY OF      Monmouth )

Subscribed and Sworn to before me on the 10th day of March, 2026 by the affiant who is personally known to me.

CARA FIERRO
Notary Public, State of New Jersey
Comm. # 50109515
My Commission Expires 7/29/2029

**Remy Nicoletti**

**Nicoletti & Harris**
**101 Avenue of the Americas**
**9th floor**
**New York, NY 10013**
**(212) 267-6448**

Our Job Serial Number: NHI-2026005539
Ref: T126864

Copyright © 1992-2026 DreamBuilt Software, LLC. - Process Server's Toolbox V9.0c



Case ID: 260300273

## AFFIDAVIT OF SERVICE

*Filed and Attested by the Office of Judicial Records 13 MAR 2026 12:53 pm Com. BRPINGTON*

**State of PA**                    **County of PHILADELPHIA**

Case Number: 260300273

Plaintiff: **Antonio R Williams**
vs.
Defendant: **AIR & LIQUID SYSTEMS CORPORATION, as successor-by-merger to BUFFALO PUMPS, INC., et. al.,**

For: Audrey Hen
        Weitz & Luxenberg

Received by Nicoletti & Harris to be served on **HUNTINGTON INGALLS INDUSTRIES CT CORPORATION, 4701 Cox Road, #285, Glen Allen, VA 23060.** I, Karen L Rice _____, being duly sworn, depose and say that on the 5TH day of MARCH , 2026 at 2 :00 P.m., executed service by delivering a true copy of the **Civil Cover Sheet, Notice to Plead and Civil Action Complaint and Jury Trial Demanded, Case Management Order for Asbestos-Related Personal Injury Claims** in accordance with state statutes in the manner marked below:

(X) **CORPORATE SERVICE:** By serving Lauren Phillips _____ as Authorized to Accept Service _____. The entity served was known to be the corporation described in the papers. The title of the individual named above was known. I inquired whether the individual was authorized to accept service, received an affirmative response, and served the papers accordingly.

( ) **OTHER SERVICE:** As described in the Comments below by serving _____ as _____.

( ) **NON SERVICE:** For the reason detailed in the Comments below.

**COMMENTS:**_____
_____
_____
_____

Age 45 Sex M (F) Race White Height 6'0" Weight 105 Hair Brown Glasses Y (N)

I certify that I am over the age of 18 and have no interest in the above action.

State of Virginia }
County of Chesterfield }
Subscribed and Sworn to before me on the 10TH day of March , 2026 by the affiant who is personally known to me.

NOTARY PUBLIC

_Karen L Rice_
PROCESS SERVER # N/A
Appointed in accordance with State Statutes

**Nicoletti & Harris**
**101 Avenue of the Americas**
**9th floor**
**New York, NY 10013**
**(212) 267-6448**

Our Job Serial Number: 2026005529
Ref: T126864



KENNETH V. CONDREY
NOTARY PUBLIC
REG. #347158
MY COMMISSION
EXPIRES
05/06/2028
COMMONWEALTH OF VIRGINIA



## AFFIDAVIT OF SERVICE

Filed and Attested by the
Office of Judicial Records
13 MAR 2026 12:55 pm
L. BREWINGTON

**State of PA**                    **County of PHILADELPHIA**            Common Pleas Court

Case Number: 260300273

Plaintiff:
**Antonio R Williams**

vs.

Defendant:
**AIR & LIQUID SYSTEMS CORPORATION,  as successor-by-merger to BUFFALO PUMPS, INC., et. al.,**

For:
Audrey Hen
Weitz & Luxenberg

Received by Nicoletti & Harris to be served on **REDCO CORPORATION f/k/a CRANE CO. The Corporation Trust Company, 1209 Orange Street, Wilmington, DE 19801**.

I, Remy Nicoletti, being duly sworn, depose and say that on the **10th day of March, 2026** at **1:22 pm, I:**

served a **CORPORATION** by delivering a true copy of the **Civil Cover Sheet, Notice to Plead and Civil Action Complaint and Jury Trial Demanded, Case Management Order for Asbestos-Related Personal Injury Claims** with the date and hour of service endorsed thereon by me, to: **Tatiyana Smith c/o The Corporation Trust Company** as **Intake Specialist/Authorized to Accept Service** for REDCO **CORPORATION f/k/a CRANE CO.**, at the address of: **1209 North Orange Street, Wilmington, DE 19801**, and informed said person of the contents therein, in compliance with state statutes.

The entity served was known to be the corporation described in the papers. The title of the individual named above was known. I inquired whether the individual was authorized to accept service, received an affirmative response, and served the papers accordingly

**Description** of Person Served: Age: 28, Sex: F, Race/Skin Color: Black, Height: 5'7", Weight: 175, Hair: Dark Blonde, Glasses: N

I certify that I am over the age of 18 and have no interest in the above action.

STATE OF        New Jersey)
COUNTY OF       Monmouth )

Subscribed and Sworn to before me on the 10th day of March, 2026 by the affiant who is personally known to me.

**Remy Nicoletti**

**Nicoletti & Harris**
**101 Avenue of the Americas**
**9th floor**
**New York, NY 10013**
**(212) 267-6448**

CARA FIERRO
Notary Public, State of New Jersey
Comm. # 50109515
My Commission Expires 7/29/2029

Our Job Serial Number: NHI-2026005516
Ref: T126864

Copyright © 1992-2026 DreamBuilt Software, LLC. - Process Server's Toolbox V9.0c

Case ID: 260300273

## AFFIDAVIT OF SERVICE

Filed and Attested by the
Office of Judicial Records
13 MAR 2026 12:57 pm
L. BREWINGTON

**State of PA**                    **County of PHILADELPHIA**              Common Pleas Court

Case Number: 260300273

Plaintiff:
**Antonio R Williams**

vs.

Defendant:
**AIR & LIQUID SYSTEMS CORPORATION,  as successor-by-merger
to BUFFALO PUMPS, INC., et. al.,**

For:
Audrey Hen
Weitz & Luxenberg

Received by Nicoletti & Harris to be served on **WARREN PUMPS, LLC CT Corporation, 1209 Orange Street, Wilmington, DE 19801**.

I, Remy Nicoletti, being duly sworn, depose and say that on the **10th day of March, 2026** at **1:22 pm, I:**

served a **CORPORATION** by delivering a true copy of the **Civil Cover Sheet, Notice to Plead and Civil Action Complaint and Jury Trial Demanded, Case Management Order for Asbestos-Related Personal Injury Claims** with the date and hour of service endorsed thereon by me, to: **Tatiyana Smith c/o The Corporation Trust Company** as **Intake Specialist/Authorized to Accept Service** for **WARREN PUMPS, LLC**, at the address of: **1209 North Orange Street, Wilmington, DE 19801**, and informed said person of the contents therein, in compliance with state statutes.

The entity served was known to be the corporation described in the papers. The title of the individual named above was known. I inquired whether the individual was authorized to accept service, received an affirmative response, and served the papers accordingly

**Description** of Person Served: Age: 28, Sex: F, Race/Skin Color: Black, Height: 5'7", Weight: 175, Hair: Dark Blonde, Glasses: N

I certify that I am over the age of 18 and have no interest in the above action.

STATE OF        New Jersey)
COUNTY OF     Monmouth )

Subscribed and Sworn to before me on the 10th day of March, 2026 by the affiant who is personally known to me.

CARA FIERRO
Notary Public, State of New Jersey
Comm. # 50109515
My Commission Expires 7/29/2029

**Remy Nicoletti**

**Nicoletti & Harris
101 Avenue of the Americas
9th floor
New York, NY 10013
(212) 267-6448**

Our Job Serial Number: NHI-2026005503
Ref: T126864

Copyright © 1992-2026 DreamBuilt Software, LLC. - Process Server's Toolbox V9.0c

Case ID: 260300273

LEADER BERKON COLAO &
SILVERSTEIN LLP
Attorneys for Defendant
By: Joseph I. Fontak, Esq.
I.D. No. 310087
jfontak@leaderberkon.com
1515 Market Street, Suite 1200
Philadelphia, PA 19102
(215) 755-0455 (office)
(215) 405-2999 (fax)

------------------------------------------------------------------

ANTONIO R. WILLIAMS,



v.


AIR & LIQUID SYSTEMS CORPORATION,
as successor-by-merger to BUFFALO PUMPS,
INC., et al.

------------------------------------------------------------------

COURT OF COMMON PLEAS
PHILADELPHIA COUNTY

TERM: MARCH 2026

NO. 00273

ASBESTOS CASE

Imo Industries LLC
Filed and Attested by the
Office of Judicial Records
13 MAR 2026 01:16 pm
S. GILLIAM

## ENTRY OF APPERANCE AND ANSWER TO COMPLAINT
## OF DEFENDANT IMO INDUSTRIES LLC

Pursuant to Rule 1041.1(c) of the Pennsylvania Rules of Civil Procedure, Joseph I. Fontak, Esq. enters his appearance on behalf of Defendant Imo Industries LLC and hereby answers the Complaint filed in the above-captioned matter. By operation of this Rule, this Entry constitutes a denial of all averments of facts in the Complaint, an allegation of all affirmative defenses and a claim for indemnification and contribution from all other defendants and additional defendants.

Respectfully submitted,

LEADER BERKON COLAO
& SILVERSTEIN LLP

Dated: March 13, 2026          BY:      /s/ Joseph I. Fontak, Esq.
                                        Joseph I. Fontak, Esq.

Case ID: 260300273

## CERTIFICATE OF SERVICE

I, Joseph I. Fontak, do hereby certify that a true and correct copy of the foregoing, Entry of Appearance and Answer to Complaint of Defendant Imo Industries LLC was filed this date via the First Judicial District of Philadelphia Court of Common Pleas Civil Trial Division's E-Filing System and thereby deemed served on all counsel of record pursuant to Rule 205.4(g) of thePennsylvania Rules of Civil Procedure and Local Rule *205.4(f)(7).

LEADER BERKON COLAO
& SILVERSTEIN LLP


BY:   */s/ Joseph I. Fontak, Esq.*
        Joseph I. Fontak, Esq.

Dated:  March 13, 2026



*Filed and Attested by the Office of Judicial Records 13 MAR 2026 01:11 pm L. BREWINGTON*

BY:  W. Matthew Reber, Esquire
mreber@kjmsh.com
I.D. No.: 67035
**KELLEY JASONS MCGOWAN SPINELLI HANNA & REBER, L.L.P.**
1818 Market Street
Suite 3205
Philadelphia, PA  19103
(215) 854-0658

Attorney for Defendant
**Schneider Electric USA, Inc., formerly known as Square D Company**

| | | |
|---|---|---|
| ANTONIO R. WILLIAMS | : | COURT OF COMMON PLEAS |
| | : | PHILADELPHIA COUNTY |
| | : | |
| v. | : | |
| | : | MARCH TERM, 2026 |
| | : | |
| SCHNEIDER ELECTRIC USA, INC., | : | NO. 0273 |
| FORMERLY KNOWN AS SQUARE D | : | |
| COMPANY, et al. | : | ASBESTOS CASE |
| | : | |
| | : | |

**ENTRY OF APPEARANCE AND ANSWER TO COMPLAINT
OF DEFENDANT SCHNEIDER ELECTRIC USA, INC., FORMERLY
KNOWN AS SQUARE D COMPANY**

Pursuant to Rule 1041.1(c) of the Pennsylvania Rules of Civil Procedure, W. Matthew

Reber, Esquire, enters his appearance on behalf of Defendant Schneider Electric USA, Inc.,

formerly known as Square D Company and hereby answers the Complaint filed in the above-

captioned matter.  By operation of this Rule, this Entry constitutes a denial of all averments of fact

Case ID: 260300273

in the Complaint, an allegation of all affirmative defenses and a claim for indemnification and contribution from all other defendants and additional defendants.

This Entry is further filed in accordance with Philadelphia County Court of Common Pleas Local Rule 1019.1.  Answering defendant hereby incorporates by reference the Defendants' Master New Matter, and all amendments thereto, filed by defendants in In Re: Asbestos Litigation, Special Asbestos Docket, October Term, 1986, Number 0001.

**KELLEY JASONS McGOWAN SPINELLI HANNA & REBER, L.L.P.**

/s/ W. Matthew Reber\_\_\_
W. Matthew Reber, Esquire

2

Case ID: 260300273

## CERTIFICATION OF COMPLIANCE

I certify that this filing complies with the provisions of the *Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts* that require filing confidential information and documents differently than non-confidential information and documents.

KELLEY JASONS McGOWAN
SPINELLI HANNA & REBER, LLP


BY: /s/    *W. Matthew Reber*
       W. Matthew Reber
       No. 67035
       Attorney for Defendant
       Schneider Electric USA, Inc., f/k/a Square D Company

Dated:  March 13, 2026

Case ID: 260300273

# AFFIDAVIT OF SERVICE



*Filed and Attested by the Office of Judicial Records 19 MAR 2026 11:41 am D. BREWINGTON*

**State of PA**                    **County of PHILADELPHIA**

Case Number: 260300273

Plaintiff: **Antonio R Williams**

vs.

Defendant: **AIR & LIQUID SYSTEMS CORPORATION, as successor-by-merger to BUFFALO PUMPS, INC., et. al.,**

For: Audrey Hen
    Weitz & Luxenberg

Received by Nicoletti & Harris to be served on **PARAMOUNT GLOBAL, f/k/a VIACOMCBS Inc., f/k/a CBS CORPORATION, a Delaware Corporation, f/k/a/ VIACOM INC., successor by merger to CBS CORPORATION, a PENNSYLVANIA CORPORATION, f/k/a WESTINGHOUSE ELECTRIC CORPORATION, Asbestos Litigation Support Manager, ECKERT SEAMANS CHERIN & MELLOTT, LLC, Case Management & Technology Center, USX Towers, 600 Grant Street, Pittsburgh, PA 15219.** I, _Christopher Itle_, being duly sworn, depose and say that on the __10__ day of __March__, 20_26_ at _12:57_ m., executed service by delivering a true copy of the **Civil Cover Sheet, Notice to Plead and Civil Action Complaint and Jury Trial Demanded, Case Management Order for Asbestos-Related Personal Injury Claims** in accordance with state statutes in the manner marked below:

(X)CORPORATE SERVICE: By serving _Nyick Bloom_ as _____. The entity served was known to be the corporation described in the papers. The title of the individual named above was known. I inquired whether the individual was authorized toaccept service, received an affirmative response, and served the papers accordingly.

( ) OTHER SERVICE: As described in the Comments below by serving _____ as _____.

( )NON SERVICE: For the reason detailed in the Comments below.

**COMMENTS:**_____
_____
_____
_____

Age _44_ Sex (M)/F   Race _W_   Height _____   Weight _____   Hair _Brwn_   Glasses (Y) N

I certify that I am over the age of 18 and have no interest in the above action.

State of              }
County of             }

Subscribed and Sworn to before me on the _____
day of _____, _____ by the affiant who
is personally known to me.

_____
NOTARY PUBLIC

_____ (signature)

PROCESS SERVER # _____
Appointed in accordance with State Statutes

**Nicoletti & Harris**
**101 Avenue of the Americas**
**9th floor**
**New York, NY 10013**
**(212) 267-6448**

Our Job Serial Number: 2026005520
Ref: T126864

Case ID: 260300273

**EASTBURN AND GRAY, P.C.**
**BY: John P. McShea**
**Attorney I.D. No. 34562**
**60 East Court Street**
**Doylestown, PA 18901**
**215-345-7000**

**Attorney for Defendant** ~~Paramount~~
**Global, f/k/a ViacomCBS, Inc.,**
**f/k/a CBS Corporation, a Delaware**
**corporation, f/k/a Viacom, Inc.,**
**successor-by-merger to CBS**
**Corporation, a Pennsylvania**
**corporation, f/k/a Westinghouse**
**Electric Corporation**

*Filed and Attested by the Office of Judicial Records 19 MAR 2026 02:23 pm G. IMPERATO*

|  |  |  |
|---|---|---|
| ANTONIO R. WILLIAMS, | : | PHILADELPHIA COUNTY |
| | : | COURT OF COMMON PLEAS |
| Plaintiff, | : | |
| | : | MARCH TERM, 2026 |
| v. | : | NO. 0273 |
| | : | |
| PARAMOUNT GLOBAL, et al., | : | ASBESTOS CASE |
| | : | |
| Defendants. | : | |
| | : | |
| | : | |

## ENTRY OF APPEARANCE

**TO THE PROTHONOTARY:**

Kindly enter my appearance on behalf of Defendant Paramount Global f/k/a ViacomCBS Inc., f/k/a CBS Corporation, a Delaware corporation, f/k/a Viacom, Inc., successor by merger to CBS Corporation, a Pennsylvania corporation, formerly known as Westinghouse Electric Corporation, under Pennsylvania Rule of Civil Procedure 1041.1. This document serves as an entry of appearance, denial of all averments of fact in the Complaint, an allegation of all affirmative defenses, and a claim for indemnification and contribution from any other party.

Dated: March 19, 2026

/s/ John P. McShea
John P. McShea
*Attorney for Defendant*
*Paramount Global*

Case ID: 260300273

## CERTIFICATE OF SERVICE

I hereby certify that on this 19th day of March 2026, a true and correct copy of the

foregoing Entry of Appearance of Paramount Global was provided to all counsel of record *via*

*electronic case filing system.*


/s/  John P. McShea
John P. McShea

*13022-03126*

**MARSHALL DENNEHEY, P.C.**
BY:  JOSHUA D. SCHEETS, ESQUIRE
Identification No. 203015
2000 Market Street, 23rd Floor
Philadelphia, PA  19103
(215) 575-2751

*Filed and Attested by the
Office of Judicial Records
24 MAR 2026 02:48 pm
B. BREWINGTON*

**Attorney for Defendant,**
Warren Pumps, LLC

| | | |
|---|---|---|
| ANTONIO R. WILLIAMS | : | COURT OF COMMON PLEAS |
| | : | PHILADELPHIA COUNTY |
| v. | : | |
| | : | MARCH TERM, 2026 |
| WARREN PUMPS, LLC, ET AL. | : | NO.  0273 |
| | : | |
| | : | **ASBESTOS** |

## ENTRY OF APPEARANCE

TO THE PROTHONOTARY:

Kindly enter my appearance on behalf of Defendant, Warren Pumps, LLC, in the above-captioned matter.

MARSHALL DENNEHEY, P.C.

BY:  /s/ *Joshua D. Scheets*

JOSHUA D. SCHEETS, ESQUIRE
Attorney for Defendant, Warren
Pumps, LLC

Dated:  March 24, 2026

Case ID: 260300273

# SHERIFF'S OFFICE OF DAUPHIN COUNTY

**Nicholas Chimienti, Jr.**
*Sheriff*

**David B. Dowling**
*Solicitor*



E. Olweiler
*Chief Deputy*

Filed and Attested by the
Office of Judicial Records
24 MAR 2026 04:03 pm
S. McLEAN

Dawson
*Assistant Special State Deputy*

ANTONIO R WILLIAMS
vs.
AIR & LIQUID SYSTEMS CORPORATION, S/B/M TO BUFFALO PUMPS, INC.

**Case Number**
260300273

---

## SHERIFF'S RETURN OF SERVICE

03/09/2026    CASE# 260300273

03/09/2026    Advance Fee

03/12/2026    10:35 AM - DEPUTY JOSHUA M. PIERCE, BEING DULY SWORN ACCORDING TO LAW, DEPOSES AND SAYS, THE SHORT FORM COMPLAINT WAS SERVED TO SAMUEL ADGIE, SERVICE ASSOCIATE , WHO ACCEPTED AS ADULT IN CHARGE AT THE TIME OF SERVICE TO WIT, AIR & LIQUID SYSTEMS CORPORATION, S/B/M TO BUFFALO PUMPS, INC. AT C/O CSC, 5235 N. FRONT STREET, HARRISBURG, PA 17110.

JOSHUA M. PIERCE, DEPUTY

03/18/2026    Closed By: AP

SO ANSWERS,

March 18, 2026

NICHOLAS CHIMIENTI, JR., SHERIFF

**NOTARY**

Affirmed and subscribed to before me this
_____18TH_____ day of _____MARCH_____ , 2026

Commonwealth of Pennsylvania — Notary Seal
Megan Tritt, Notary Public
Dauphin County
My Commission Expires September 29, 2029
Commission Number 1407107

(c) CountySuite Sheriff, Teleosoft, Inc.

Case ID: 260300273


*Filed and Attested by the*
*Office of Judicial Records*
*25 MAR 2026 02:40 pm*
*IMPERATO*

# Exhibit 1

Case ID: 260300273
Control No.: 26035904

**WEITZ & LUXENBERG**
*A New York Professional Corporation*
By: EDWARD M. COSTELLO III, ESQUIRE
Atty Id: 335450
220 Lake Drive East, Suite 210
Cherry Hill, NJ  08002
(856)755-1115



Filed and Attested by the
Office of Judicial Records
02 MAR 2026 10:57 am
D. SMITH

Attorneys for Plaintiff(s)

---

ANTONIO R WILLIAMS
401 Davis Ave.
Elizabeth City, NC 27909

Plaintiff(s)

vs.

AIR & LIQUID SYSTEMS CORPORATION,
as successor-by-merger to BUFFALO
PUMPS, INC., et al

Defendants.

---

COURT OF COMMON PLEAS
PHILADELPHIA COUNTY

TERM 2026

NO.

ASBESTOS CASE

JURY TRIAL DEMANDED

---

## <u>NOTICE TO PLEAD</u>

| NOTICE | AVISO |
|---|---|
| You have been sued in Court.  If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this Complaint and Notice are served, by entering a written appearance, personally, or by an attorney, and filing in writing with the Court your defenses or objections to the claims set forth against you.  You are warned that if you fail to do so, the case may proceed without you, and a judgment may be entered against you by the Court without further notice for any money claimed in the Complaint or for any other claim or relief requested by the plaintiff.  You may lose money or property or other rights important to you. | Le han demandado a usted en la corte.  Si usted quiere de estas demandas expuestas en las paginas siguientes, usted tiene veinte (20) dias de plaza al partif de la fecha de la demanda y la notificacion.  Hace falta asentar una comparencia escrita o en persona o con un abagado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su persona.  Sea avisado que si usted no se defiende, la corte tomara medidas y puede continuar la demanda en contra suya sin previo aviso o notificacion.  Ademas, la corte puede decidir a favor del demandante y requiere que usted cumpla con todas las provisiones de esta demanda.  Usted puede perder dienero o sus propiedades u otros derechos importantes para usted. |
| YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE.  IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP: | LLEVE ESTA DEMANDA A UN ABOGADO IMMEDIATAMENTE.  SI NO TIENE ABAGADO O SI NO TIENE EL DINERO SUFICIENTE DE PAGAR TAL SERVICIO, VAYA EN PERSONA O LLAME POR TELEFONO A LA OFICINA CUYA DIRECCION SE ENCUENTRA ESCRITA ABAJO PARA AVERIGUAR DONDE SE PUEDE CONSEGUIR ASISTENCIA LEGAL. |

PHILADELPHIA BAR ASSOCIATION
Lawyer Referral and Information Service
One Reading Center
Philadelphia, PA 19107
Telephone: 215-238-1701

ASOCIATION DE LICENCIADOS DE FILADELFIA
Servicio De Referencia E Informacion Legal
One Reading Center
Filadelfia, Pennsylvania 19107
Telefono: 215-238-1701

Case ID: 260300273
Control No.: 26035904

**WEITZ & LUXENBERG**
*A New York Professional Corporation*
By: EDWARD M. COSTELLO III, ESQUIRE
Atty Id: 335450
220 Lake Drive East, Suite 210
Cherry Hill, NJ  08002
(856)755-1115

Attorneys for Plaintiff(s)

| | |
|---|---|
| ANTONIO R WILLIAMS<br>401 Davis Ave.<br>Elizabeth City, NC 27909<br><br>            Plaintiff(s)<br><br>    vs.<br><br>AIR & LIQUID SYSTEMS CORPORATION,<br>as successor-by-merger to BUFFALO<br>PUMPS, INC., et al<br><br>            Defendants | COURT OF COMMON PLEAS<br>PHILADELPHIA COUNTY<br><br>            TERM 2026<br>NO.<br><br>ASBESTOS CASE<br><br>JURY TRIAL DEMANDED |

## SHERIFF'S SERVICE LIST

**AIR & LIQUID SYSTEMS CORPORATION,**
  **as successor-by-merger to BUFFALO PUMPS, INC.**
5235 North Front Street
Harrisburg, PA 17110

**PARAMOUNT GLOBAL, f/k/a VIACOMCBS Inc.,**
  **f/k/a CBS CORPORATION, a Delaware Corporation,**
  **f/k/a/ VIACOM INC., successor by merger to CBS**
  **CORPORATION, a PENNSYLVANIA CORPORATION, f/k/a**
  **WESTINGHOUSE ELECTRIC CORPORATION**
Asbestos Litigation Support Manager
ECKERT SEAMANS CHERIN & MELLOTT, LLC
Case Management & Technology Center
USX Towers
600 Grant Street
Pittsburgh, PA 15219

Case ID: 260300273
Control No.: 26035904

**WEITZ & LUXENBERG**
*A New York Professional Corporation*
By: EDWARD M. COSTELLO III, ESQUIRE
Atty Id: 335450
220 Lake Drive East, Suite 210
Cherry Hill, NJ  08002
(856)755-1115

Attorneys for Plaintiff(s)

| | |
|---|---|
| ANTONIO R WILLIAMS<br>401 Davis Ave.<br>Elizabeth City, NC 27909<br><br>Plaintiff(s)<br><br>vs.<br><br>AIR & LIQUID SYSTEMS CORPORATION,<br>as successor-by-merger to BUFFALO<br>PUMPS, INC., et al<br><br>Defendants. | COURT OF COMMON PLEAS<br>PHILADELPHIA COUNTY<br><br>TERM 2026<br>NO.<br><br>ASBESTOS CASE<br><br>JURY TRIAL DEMANDED |

## DEFENDANTS SERVICE LIST

**AIR & LIQUID SYSTEMS CORPORATION,**
  **as successor-by-merger to BUFFALO PUMPS, INC.**
5235 North Front Street
Harrisburg, PA 17110

**CATERPILLAR, INC.**
CORPORATION SERVICE COMPANY
251 LITTLE FALLS DRIVE
Wilmington, DE 19808

**FMC CORPORATION,**
  **Individually and Successor to LINKBELT**
306 West Main Street
Suite 512
Frankfort, KY 40601

**GENERAL ELECTRIC COMPANY**
Electric Insurance Company
75 Sam Fonzo Drive

<span style="color:red">Case ID: 260300273<br>Control No.: 26035904</span>

Beverly, MA 01915

**GOULDS PUMPS LLC**
CT Corporation System
28 Liberty St,  42nd Fl
New York, NY 10005

**HUNTINGTON INGALLS INDUSTRIES**
c/o Hunton Andrews Kurth LLP
951 E. Byrd Street
Richmond, VA 23219

and
4101 Washington Avenue
Newport News, VA 23607
Richmond, VA 23219

**IMO INDUSTRIES, LLC.**
28 Liberty Street
28th Floor
New York, NY 10005

**ITT LLC.,**
  **Individually and as successor to**
  **BELL & GOSSETT and as successor to**
  **KENNEDY VALVE MANUFACTURING CO., Inc.**
CT Corporation
28 Liberty Street
New York, NY 10005

**PARAMOUNT GLOBAL, f/k/a VIACOMCBS Inc.,**
  **f/k/a CBS CORPORATION, a Delaware Corporation,**
  **f/k/a/ VIACOM INC., successor by merger to CBS**
  **CORPORATION, a PENNSYLVANIA CORPORATION, f/k/a**
  **WESTINGHOUSE ELECTRIC CORPORATION**
Asbestos Litigation Support Manager
ECKERT SEAMANS CHERIN & MELLOTT, LLC
Case Management & Technology Center
USX Towers
600 Grant Street
Pittsburgh, PA 15219

**REDCO CORPORATION f/k/a CRANE CO.**
The Corporation Trust Company
1209 Orange Street
Wilmington, DE 19801

Case ID: 260300273
Control No.: 26035904

or

Redco Corporation
1000 N. West Street, Suite 1200
Wilmington, Delaware 19801

**SCHNEIDER ELECTRIC USA, INC. formerly known as
    SQUARE D COMPANY**
Corporation Service Company
801 Adlai Stevenson Dr
Springfield, IL 62703

**WARREN PUMPS, LLC**
CT Corporation
1209 Orange Street
Wilmington, DE 19801

Case ID: 260300273
Control No.: 26035904

**WEITZ & LUXENBERG**
*A New York Professional Corporation*
By:  EDWARD M. COSTELLO III, ESQUIRE
Atty Id: 335450
220 Lake Drive East, Suite 210
Cherry Hill, NJ  08002
(856)755-1115

Attorneys for Plaintiff(s)

| | |
|---|---|
| ANTONIO R WILLIAMS<br>401 Davis Ave.<br>Elizabeth City, NC 27909<br><br>      Plaintiff(s)<br><br>  vs.<br><br>AIR & LIQUID SYSTEMS CORPORATION,<br>as successor-by-merger to BUFFALO<br>PUMPS, INC., et al<br><br>      Defendants. | COURT OF COMMON PLEAS<br>PHILADELPHIA COUNTY<br><br>    TERM 2026<br>NO.<br><br>ASBESTOS CASE<br><br>JURY TRIAL DEMANDED |

## CIVIL ACTION COMPLAINT

Plaintiff(s) incorporate by reference Plaintiffs Master Long Form Complaint In re:

Asbestos Litigation in Philadelphia County Court of Common Pleas, filed as of October Term

1986, No. 8610-0001.  Pursuant to an Order dated July 30, 1986, and signed by the Honorable

Richard B. Klein, the following Short Form Complaint is utilized in this asbestos action.

1.  This Complaint involves the claims of the following person(s):
  a. Plaintiff:
   Name:  ANTONIO R WILLIAMS
   Address:  401 Davis Ave.
   Elizabeth City, NC 27909
   SSN:   xxx-xx-████
   Date of Birth:  ████████

2.  The Defendants are those companies listed in the caption.

Case ID: 260300273<br>Control No.: 26035904

3.      Plaintiff(s) might have named as defendants other additional entities responsible for the manufacture, distribution and/or supply of products that contained asbestos or were designed to be used with asbestos, except that such other entities have petitioned for relief in bankruptcy under the United States Bankruptcy Code and, pursuant to federal statute, the institution of actions against these entities is stayed.

4.      Plaintiff(s) hereby incorporate by reference the following Counts from the Master Long Form Complaint: Counts I through X.

5.      Plaintiff(s) asbestos employment history is as follows:

| McLean Contracting | CHESAPEAKE | VA | 01/1980 | 12/1989 | IRONWORKER |
|---|---|---|---|---|---|
| STELLA MARINA IRON | SOUTH NORFOLK | VA | 01/1989 | 12/1991 | PILE DRIVER OPERATOR |
| IRONMAN CONSTRUCTION | NEWPORT NEWS | VA | 01/1992 | 12/1996 | IRONWORKER |
| D.T. READ STEEL COMPANY | SOUTH MILLS | NC | 01/1996 | 12/2001 | IRONWORKER |

Mr. Williams was occupationally exposed to asbestos from his work as an ironworker. He was non-occupationally exposed to asbestos from his father's work in a shipyard.

From 1980 to 1989, Mr. Williams was exposed to asbestos while working as an ironworker for McLean Contracting. Mr. Williams spent time working at Newport News Shipbuilding, where he worked with and around asbestos-containing pumps, valves, cranes, electrical equipment, and welding rods.

6.      Plaintiff was diagnosed on or around April 24, 2025, as having Lung Cancer which is the direct and proximate result of his exposure to asbestos dust and fibers.  This exposure arose from working with or around products manufactured and distributed by defendants.

Case ID: 260300273
Control No.: 26035904

7.      Plaintiff's smoking history:

Plaintiff smoked approximately 1 pack-per-day from 1989 until 2009.

8.      Plaintiff's wages during his full year of employment were:

a.  To be supplied if applicable.

WHEREFORE, Plaintiffs pray for judgment against the defendants and each of them individually, jointly and severally for compensatory damages in an amount in excess of FIFTY THOUSAND DOLLARS ($50,000.00), punitive damages, and all such damages and relief as the Court deems just and proper.

**WEITZ & LUXENBERG, P.C.**
**Attorneys for Plaintiff(s)**

By: _____
        Edward M. Costello III, Esq.

Case ID: 260300273
Control No.: 26035904

## VERIFICATION

I, Antonio Williams, Plaintiff herein, verify that the facts contained in the foregoing document are true and correct to the best of my knowledge, information, and belief. To the extent that the contents of the said document are based on information gathered by my counsel, I have relied upon my counsel in executing this verification. The language of this verification is that of my counsel.

I understand that the statements contained herein are subject to the penalties of 18 Pa.C.S. §4904 relating to unsworn falsification.

SIGNATURE: _Antonio Williams_

Case ID: 260300273
Control No.: 26035904

## **CERTIFICATION**

I, Edward M. Costello III, Esq., attorney for the Plaintiff(s), certifies pursuant to Pennsylvania Rule No. 205.4 that the hard copy of this electronically filed document was properly signed.


Dated: March 2, 2026

_____
Edward M. Costello III, Esq.

Case ID: 260300273
Control No.: 26035904

# Exhibit 2

Case ID: 260300273
Control No.: 26035904

IN THE COURT OF COMMON PLEAS
FOR PHILADELPHIA COUNTY

IN RE: ASBESTOS LITIGATION      :    OCTOBER TERM, 1986
IN PHILADELPHIA COURT OF        :    NO. 8610-0001
COMMON PLEAS                    :

PLAINTIFFS' GENERAL MASTER LONG-FORM COMPLAINT

Pursuant to an Order dated July 30, 1986, by the Honorable Edward J. Blake and the Honorable Richard B. Klein, the undersigned attorneys for plaintiffs in asbestos actions bring this Master General Long-Form Complaint against the following defendants:

A. C. & S., INC.
180 W. Church Road
King of Prussia, Pennsylvania 19406

ABEX CORPORATION
c/o Prentice Hall Corporation
System, Inc.
100 Pine Street
Harrisburg, Pennsylvania 17108

AIRCO WELDERS SUPPLY
4501 N. Howard Street
Philadelphia, Pennsylvania 19140

ALLIED CORPORATION
Columbian Road & Park
Morristown, New Jersey 07961

ALLPAX (USA) INC.
Marmeroneck, New York

AMCHEM PRODUCTS, INC.
300 Brookside Avenue
Ambler, Pennsylvania  19002

AMERICAN ENERGY PRODUCTS, INC.
667 Brea Canyon Road
Suite 20-B
Walnut, California .91789

AMERICAN MOTORS SALES CORPORATION
c/o CT Systems
123 South Broad Street
Philadelphia, Pennsylvania  19107

-1-

Case ID: 260300273
Control No.: 26035904

AMERICAN STANDARD
Station Street
Wilmerding, Pennsylvania

AM GENERAL CORPORATION
701 Chippewa Avenue
South Bend, Indiana

AMOSA (PTY) LTD.
The Corner House
63 Fox Street
Johannesburg 2001 TVL
Republic of South Africa

ANCHOR PACKING COMPANY, INC.
One Buttonwood Square
2001 Hamilton Street
Philadelphia, Pennsylvania  19130

A.P. GREEN REFRACTORIES COMPANY
Hedley and Delaware Avenue
Philadelphia, Pennsylvania 19137

ARMSTRONG WORLD INDUSTRIES, INC.
Liberty and Charlotte Streets
Lancaster, Pennsylvania 17604

ASBEKA INDUSTRIES OF N.Y., INC.
2324 McDonald Avenue
Brooklyn, New York

ASBESTOS CORPORATION LTD.
1940 Sun Life Building
1155 Metcalf Street
Montreal, Canada  H3B2X6
        or
Thetford Mines
Quebec, Canada

ASBESTOS INSULATION COMPANY, INC.
a/k/a Deerland Corporation
311 West Marshall Street
Norristown, Pennsylvania 19401
ASBESTOS PRODUCTS MFG. CORPORATION
c/o Herbert. L. Levine
3215 Avenue "H"
Brooklyn, New York  11210

ASBESTOSPRAY CORPORATION
c/o Herbert L. Levine
3215 Avenue "H"
Brooklyn, New York  11210

-2-

Case ID: 260300273
Control No.: 26035904

ASHLAND OIL, INC.
Box 391
Ashland, Kentucky   41114

ASSOCIATED INSULATION, INC.
Pennsylvania

ASSOCIATED MINERALS CORPORATION
Iver Lane Cowley, Uxbridge
Middlesex, England

ASTEN-HILL MANUFACTURING COMPANY
Henry and Roberts Avenues
Philadelphia, Pennsylvania

ATLAS TURNER, INC.
5600 Hochelaga Street
Montreal, Quebec, Canada

AUTOMOTIVE PARTS COMPANY
5505 Centre Avenue
Pittsburgh, Pennsylvania

A.W. CHESTERTON, INC.
Massachusetts

BABOCK and WILCOX
1810 Chapel Ave. West
Cherry Hill, New Jersey
     or
c/o Charles J. Tague, Jr.
P.O. Box 1310
Bryn Mawr, Pennsylvania   19010
     or
1010 Common Street
New Orleans, Louisiana   70106

BABCOCK and WILCOX TUBULAR PRODUCTS
Box 401
Beaver Falls, Pennsylvania   15010

BALTIMORE & OHIO RAILROAD
c/o Rudolph Garcia, Esquire
Centre Square West, 38th Floor
Philadelphia, Pennsylvania   19102

BARKER PIPE FITTINGS CO.
271 Lancaster Pike
Frazer, Pennsylvania   19355

BASIC, INCORPORATED
845 Hama Building
Cleveland, Ohio   44115

-3-

Case ID: 260300273
Control No.: 26035904

-4-

BELL ASBESTOS MINES, LTD.
c/o Thetford Mines
P.O. Box 99
Quebec, Canada

BENJAMIN FOSTER
Division of Amchem
25 Brookside Avenue
Ambler, Pennsylvania   19002

BEVCO INDUSTRIES
790 Birney Highway
Aston, Pennsylvania 19014

BIRD, INCORPORATED
Washington Street
East Walpole, Massachusetts   02032

BORG WARNER CORPORATION
615 Griswold
Detroit, Michigan 48226

BRAKE & CLUTCH COMPANY
OF PHILADELPHIA
1610 Fairmount Avenue
Philadelphia, Pennsylvania 19130

BRAND INSULATIONS, INC.
c/o Norman L. Haase
Kelly, Haase & Dunn
344 West Front Street
Media, Pennsylvania 19063

BRINCO MINING LTD.
2000 Guiness Tower
1055 W. Hastings Street
Vancouver, B.C.
Canada V6E 3VE

BRITISH SOUTH AFRICA CO., LTD.
40 Holborn Viaduct
London, England

CAPE ASBESTOS FIBRES, LTD.
114 Park Street
London, W1Y 4AB
England

CAPE ASBESTOS INDUSTRIES, LTD.
114 Park Street
London, England

-4-

Case ID: 260300273
Control No.: 26035904

CAPE ASBESTOS S.A. (PTY) UNITED LTD.
The Corner House
63 Fox Street
Johannesburg 2001 TVL
Republic of South Africa

CAPE BOARD & PANELS
Iver Lane, Uxbridge
UB8, 2IQ, England

CAPE INDUSTRIES, LTD.
114 Park Street
London, W1Y 4AB
England

CAREY-CANADA, INC.
P.O. Box 190
E. Boroughton Station
Quebec, Quebec,
Canada GON1HO

CARLISLE CORPORATION
Molded Materials Co.
d/b/a/ Motion Control Industries
P.O. Box P
Gillis Avenue
Ridgeway, Pennsylvania

CE MINERALS, INC.
443 South Gulph Road
King of Prussia, Pennsylvania   19406

CE REFRACTORIES
a Division of Combustion Engineering, Inc.
901 East 8th Avenue
King of Prussia, Pennsylvania
          or
900 Long Ridge Road
Stampen, Connecticut   06902

CELOTEX CORPORATION
c/o C.T. Corporation System
123 South Broad Street
Philadelphia, Pennsylvania 19109
          or
1500 W. Dalemabry Highway
Tampa, Florida   33607

CENTRAL JERSEY INDUSTRIES, INC.
2 Aldwyn Center
Villanova, Pennsylvania   19085

-5-

Case ID: 260300273
Control No.: 26035904

CENTRAL MINING FINANCE, LTD.
40 Holborn Viaduct
London, England

CERTAIN-TEED CORPORATION
Swedesford and Old School Roads
Valley Forge, Pennsylvania 19481

CHARLES F. GUYON
c/o Theodore Levy
900 South 4th Street
Harrison, New Jersey  07029

CHARTER CONSOLIDATED INVESTMENTS, LTD.
40 Holborn Viaduct
London, England

CHARTER CONSOLIDATED P.L.C.
40 Holborn Viaduct
London, England

CHARTER CONSOLIDATED SERVICES, LTD.
40 Holborn Viaduct
London, England

CHICAGO FIRE BRICK CO.
c/o Ralph Schindler
1467 N. Elston Avenue
Chicago, Illinois  60622

CHILDERS PRODUCTS COMPANY, INC.
23350 Merchantville Road
Cleveland, Ohio  44122

CHRYSLER CORPORATION
c/o G. Lee Philp
1200 Lynn Townsend Drive
Highland Park, Michigan  48203

CLARK CONTROLLER COMPANY
CT Company
123 South Broad Street
Philadelphia, Pennsylvania  19107

COLLINS PACKING COMPANY, INC.
5024 Mulberry Street
Philadelphia, Pennsylvania  19124

COLONIAL ELECTRIC SUPPLY
A Pennsylvania Corporation
2901 PSFS Building
Philadelphia, Pennsylvania

-6-

Case ID: 260300273
Control No.: 26035904

COLONIAL RUBBER
Elbo Lane and Texas Avenue
Mount Laurel, New Jersey 08054

COLUMBIA BOILER COMPANY OF POTTSTOWN
Old Reading Pike,
P. O. Box G
Pottstown, Pennsylvania 19464

COMBUSTION ENGINEERING CO., INC.
c/o Weaver, Willman & Arnold
705 McKnight Park Drive
Pittsburgh, Pennsylvania  15237
       or
900 Long Ridge Road
Stamford, Connecticut  06902

CONSOLIDATED MINES SELECTION CO., LTD.
40 Holborn Viaduct
London, England

CONSOLIDATED RAIL CORPORATION
Six Penn Center Plaza
Philadelphia, Pennsylvania  19104

COONEY BROTHERS, INC.
S.W. Corner 5th and Dauphin
Philadelphia, Pennsylvania 19133

CRANE PACKING
682 Parkway
Broomall, Pennsylvania

CROWN CORK & SEAL COMPANY, INC.
c/o C.T. Corporation System
123 South Broad Street
Philadelphia, Pennsylvania 19109

C. TENNANT & SONS & CO., OF NEW YORK
Division of Cargil
P. O. Box 9300
Minneapolis, Minnesota  55440

CULP BROTHERS, INC.
R.R.2
Box 369
Perkasie, Pennsylvania  18944

CURTIS INDUSTRIES
Division of Congoleum Corporation
CT Systems
123 South Broad Street
Philadelphia, Pennsylvania

-7-

Case ID: 260300273
Control No.: 26035904

DANA CORPORATION
4500 Dorr Street
P.O. Box 1000
Toledo, Ohio 43697
     or
Corporate Trust Inc.
Resident Agent
32 South Street
Baltimore, Maryland  21202

D.A.R. INDUSTRIAL PRODUCTS, INC.
3645 N. Smedley Street
Philadelphia, Pennsylvania 19140

DAVIS BRAKE & EQUIPMENT
 CORPORATION
2219 N. Second Street
Philadelphia, Pennsylvania 19133

DECKER ASSOCIATES, INC.
Pennsylvania

DELAWARE INSULATION COMPANY
Fifth Avenue & Coleman Streets
Wilmington, Delaware 19899

DELAWARE VALLEY SAFEGUARD
COMPANY, INCORPORATED
Leiz's Road
R D #1
Leesport, Pennsylvania  19533

DELCO PRODUCTS
P.O. Box 1042
Dayton, Ohio
     or
3031 West Grand Blvd.
P.O. Box 33122
Detroit, Michigan

DRAVCO CORPORATION
One Oliver Plaza
Pittsburgh, Pennsylvania 15222

DRESSER INDUSTRIES, ·INC.
c/o CT Corporation Systems
320 Oliver Building
Pittsburgh, Pennsylvania  15222

Case ID: 260300273
Control No.: 26035904

-9.1-

DURABLA
27 Industrial Boulevard
Paoli, Pennsylvania  19301
          or
5th & Liberty Avenues
Pittsburgh, Pennsylvania

DURAMETALLIC CORPORATION
c/o C.T. Corporation System
123 South Broad Street
Philadelphia, Pennsylvania 19109

DUROX EQUIPMENT COMPANY
12351 Prospect Road
Cleveland, Ohio  44136

EAGLE-PICHER INDUSTRIES, INC.
c/o C.T. Corporation System
123 South Broad Street
Philadelphia, Pennsylvania 19109

EARL B. BEACH COMPANY
A Pennsylvania Corporation
546 Penn Street
Yeadon, Pennsylvania

EAST PENN REFRACTORIES
P. O. Box 277
Lehigh Street
Reading, Pennsylvania  19603

EATON CORPORATION, formerly known
as Cutler Hammer, Inc.
c/o C. T. Corporation
123 Broad Street
Philadelphia, Pennsylvania

EGNEP (PTY) LTD.
Burlington House
22 Rissik Street
Johannesburg, Tvl
Republic of South Africa

ELBO INDUSTRIAL SUPPLY COMPANY
305 N.6th Street
Philadelphia, Pennsylvania 19106

EMPIRE ACE INSULATION COMPANY
One Cozin Avenue
Brooklyn, New York 11207

-9.1-

Case ID: 260300273
Control No.: 26035904

EMPIRE INSULATION OF NORTHEAST MISSOURI
c/o Gilbert Coan
Box 215
Lewiston, Missouri   63452

ERIE-LACKAWANNA, INC.
1302 Midland Building
Cleveland, Ohio 44115

F. B. WRIGHT DISTRIBUTION CO.
180 Church Street
King of Prussia, Pennsylvania

FERRO ENGINEERING, a Division of
Oglebay Norton Company
100 West 10th Street
Wilmington, Delaware   19801

FIBREBOARD CORPORATION
22 Battery Street
Suite 404
San Francisco, California   94133

FIRESTONE TIRE & RUBBER CO.
Worldbestos Division
1112 South 25th Street
New Castle, Indiana   47362

FLEXITALLIC GASKET COMPANY
151 Heller Place
Bellmawr, New Jersey   08031

FLINTKOTE CO.
365 W. Passarc Street
Rochelle Park, New Jersey   07662
        or
4 Embarcadero Center
San Francisco, California   94111

FORD MOTOR COMPANY
c/o Sidney Kelly
The American Road
Dearborn, Michigan   48121

FOSECO, INCORPORATED
123 South Broad Street
Philadelphia, Pennsylvania   19109

FOSTER WHEELER CORPORATION
668 5th Avenue
New York, New York   10019

-10-

Case ID: 260300273
Control No.: 26035904

GAF CORPORATION
c/o Prentice Hall Corporation Systems
100 Pine Street
Harrisburg, Pennsylvania 17108
        or
1361 Alps Road
Wayne, New Jersey  07470

GARFIELD MOLDING COMPANY, INC.
P.O. Box 40
Garfield, New Jersey  17026

GARLOCK, INC.
P.O. Box 8090
Longview, Texas 75601

GENERAL ELECTRIC COMPANY
One River Road
Schnectady, New York

GENERAL MOTORS CORPORATION
c/o C.T. Corporation System
123 South Broad Street
Philadelphia, Pennsylvania 19109

GENERAL REFACTORIES
225 City Avenue
Bala Cynwyd, Pennsylvania  19004

GENSTAR CORPORATION
Suite 380o0
Four Embarcadero Center
San Francisco, California  96111

GEORGE A. ROWLEY & CO., INC.
a/k/a Peltz Rowley
5700 Tacony Street
Philadelphia, Pennsylvania  19135

GEORGE V. HAMILTON, INC.
326 Linden Street
McKees Rocks, Pennsylvania

GEORGIA-PACIFIC CORPORATION
c/o C.T. Corporation System
123 South Broad Street
Philadelphia, Pennsylvania 19109

GLOBE REFRACTORIES, INC.
P. O. Box D
Newell, West Virginia  26050

-11-

Case ID: 260300273
Control No.: 26035904

GOULDS PUMPS, INC.
240 Fall Street
Seneca Falls, New York   13148

GREEN TWEED & COMPANY, INC.
Deweiler Road
Kulpsville, Pennsylvania

GRIFFIN WHEEL COMPANY
Division of Amsted
3700 Prudential Plaza
Chicago, Illinois   60601

GRUMMAN OHIO CORPORATION
c/o C.T. Corporation
123 S. Broad Street
Philadelphia, Pennsylvania 19109

GTE SYLVANIA
c/o C. T. Corporation
123 Broad Street
Philadelphia, Pennsylvania

HAJOCA PLUMBING COMPANY
123 South Broad Street
Philadelphia, Pennsylvania 19109

HARNISCHFEGER CORPORATION
CT Systems
123 South Broad St.
Philadelphia, Pennsylvania 19107

H. K. PORTER CO., INC.
Porter Building
601 Grant Street
Pittsburgh, Pennsylvania   15219

HOPEMAN BROTHERS, INC.
435 Essex Avenue
Waynesboro, Virginia 22980

HUXLEY DEVELOPMENT CORP.
805 3rd Avenue, 28th Floor
New York, New York   10022

INDUSTRIAL PRODUCTS COMPANY
21 Cabot Boulevard
Langhorne, Pennsylvania   19047

INDUSTRIAL SALESMASTER
S. Clinton & Elmer
Trenton, New Jersey   08611

-12-

Case ID: 260300273
Control No.: 26035904

-13-

INSULATION MATERIALS, INC.
400 Penn Centre Boulevard
Suite 204
Pittsburgh, Pennsylvania

INSULATION PRODUCTS CORPORATION
2100 East Ohio Street
Pittsburgh, Pennsylvania

INTERNATIONAL HARVESTER COMPANY
5401 N. Michigan Avenue
Chicago, Illinois   60611

JACQUAYS ASBESTOS COMPANY
c/o Jacquay's Mining Corporation
1219 South 19th Avenue
Phoenix, Arizona   85009

J.H. FRANCE REFRACTORIES CO.
Clarence Road
Snow Shoe, Pennsylvania   16874

JOHN CRANE-HOUDAILLE, INC.
682 Parkway Drive
Broomall, Pennsylvania 19008
        or
c/o C. T. Corporation System
123 Broad Street
Philadelphia, Pennsylvania 19109

J. P. STEVENS, INC.
c/o C.T. Corporation System
123 South Broad Street
Philadelphia, Pennsylvania 19109

J. W. ROBERTS, LTD.
20 Saint Mary's Parsonage
Manchester M3 2NL, England

KANE BROTHERS
457 A Street
Sharon, Pennsylvania 16146

KAY WHEEL SALES
1771 Tomlinson Road
Philadelphia, Pennsylvania

KEENE CORPORATION
c/o Prentice Hall Corporations
Systems, Inc.
100 Pine Street
Harrisburg, Pennsylvania 17108

Case ID: 260300273
Control No.: 26035904

LAC D'AMIANTE DU QUEBEC LTEE.
P.O. Box 608, Black Lake
Quebec, GOW 1AO, Canada

LEAR SIEGLER, INC.
3171 South Bundy Drive
Santa Monica, California 90406

LEHIGH VALLEY RAILROAD COMPANY
415 Brighton Street
Bethlehem, Pennsylvania  19017

LEHIGH VALLEY REFRACTORIES, INC.
Roosevelt and MacArthur Roads
Whitehall, Pennsylvania

LENCO, INC.
319 W. Main Street
Jackson, Missouri 63755

LEONARD J. BUCK, INC.
c/o Francis J. Minchak
P. O. Box 505
2 Shumpike Road
Madison, New Jersey  07940

MACK TRUCKS, INC.
2100 Mack Boulevard
P.O. Box M
Allentown, Pennsylvania 18195

MANUFACTURED RUBBER PRODUCTS COMPANY
4502 N. Howard Street
Philadelphia, Pennsylvania 19140

MAREMONT CORPORATION
c/o C.T. Corporation System
123 South Broad Street
Philadelphia, Pennsylvania 19109
        or
200 E. Randolph Street
Chicago, Illinois

McCORD GASKET
191 Labadie Avenue
Wyandotte, Michigan  48192

MELRATH GASKET COMPANY, INC.
wholly-owned subsidiary of
Melrath Gasket Holding Company, Inc.
39th Street and Hunting Park Avenue
Philadelphia, Pennsylvania
a/k/a a TNT LIQUIDATING CO.

-13.1-

Case ID: 260300273
Control No.: 26035904

MELRATH GASKET HOLDING COMPANY, INC.
30th Street and Hunting Park Avenue
Philadelphia, Pennsylvania
a/k/a a TNT LIQUIDATING CO.

MERIDEN MOLDED PLASTICS, INC.
112 Empire Avenue
Meriden, Connecticut   06450

MOHAWK MANUFACTURING
7354 N. Caldwell
Niles, Illinois

MONSEY PRODUCTS
Cold Stream Road
Kimberton, Pennsylvania

MOTOR SERVICES
573 Fourth Avenue
Brooklyn, New York

NATIONAL GYPSUM COMPANY
c/o C.T. Corporation System
123 South Broad Street
Philadelphia, Pennsylvania 19109

NATIONAL RAILROAD PASSENGER CORPORATION
1617 J.F.K. Boulevard, Room 710
Philadelphia, Pennsylvania   19104

NATIONAL U.S. BOILER CO., INC.
New Castle, Pennsylvania

NAVISTAR INTERNATIONAL CORPORATION
c/o CT Corporation System
Oliver Building
Mellon Square
Pittsburgh, Pennsylvania   15222

NEW YORKER STEEL BOILER COMPANY, INC.
Bethlehem Pike
Colmar, Pennsylvania   18915

NICOLET, INC.
a Delaware corporation
Maple Street and Wissahickon Avenue
Ambler, Pennsylvania 19002

NIMCO BUS SALES AND BUS PARTS
252 Doremus Avenue
Newark, New Jersey   07105

-14-

Case ID: 260300273
Control No.: 26035904

NORCA CORPORATION
185 Great Neck Road
Great Neck, New York

NORTH AMERICAN ASBESTOS COMPANY
c/o Lord, Bisselle & Block
115 S. LaSalle Street
Chicago, Illinois

NOSROC CORPORATION
1500 Walnut
Philadelphia, Pennsylvania   19102

NUTURN CORPORATION
570 Metroplex Drive
Nashville, Tennessee   37211
        or
c/o C.T. Corporation System
530 Gay Street
Knoxville, Tennessee   37902

NYCAL
240 S. Main St.
S. Hackersock, New Jersey   07606

OWENS-CORNING FIBERGLAS CORP.
123 South Broad Street
Philadelphia, Pennsylvania 19109

OWENS-ILLINOIS GLASS CO.
460 N. Gulph Road
King of Prussia, Pennsylvania

OWENS-ILLINOIS, INC.
c/o C.T. Corporation System
123 South Broad Street
Philadelphia, Pennsylvania 19109

PARS MANUFACTURING COMPANY
60 East Penn Street
Norristown, Pennsylvania   19401

PARSON SALES COMPANY, INC.
Pennsylvania

PEERLESS INDUSTRIES, INC.
Spring and Schaeffer Streets
Boyertown, Pennsylvania   19512

PELTZ ROWLEY CHEMICAL COMPANY
5700 Tacony Street
Philadelphia, Pennsylvania

-15-

Case ID: 260300273
Control No.: 26035904

PENN CENTRAL CORPORATION
IVB Building
1700 Market Street
Philadelphia, Pennsylvania  19103

PENNSYLVANIA BRAKE BONDING
9001 Torresdale Avenue
Philadelphia, Pennsylvania  19124

PENN VALVE & FITTING CORPORATION
2440 Maryland Road
Willow Grove, Pennsylvania  19090

PFIZER, INC.
235 East 42nd Street
New York, New York  10017

PITTSBURGH CORNING CORPORATION
1670 Golden Mile Highway
Monroeville, Pennsylvania  15146

PORTER HAYDEN CO.
c/o C.T. Corporation System
123 South Broad Street
Philadelphia, Pennsylvania 19109

PPG INDUSTRIES
One Gateway Center
Pittsburgh, Pennsylvania  15222

QUIGLEY CO., INC.
c/o C.T. Corporation
123 Broad Street
Philadelphia, Pennsylvania
      or
c/o C.T. Corporation Systems
277 Park Avenue
New York, New York  10017

QUINT CORPORATION
140 East 16th Street
Erie, Pennsylvania  16512

RAND MINES LTD.
The Corner House
63 Fox Street
Johannesburg 2001 TVL
Republic of South Africa

RAYMARK INDUSTRIES INC.
c/o C.T. Corporation System
123 South Broad Street
Philadelphia, Pennsylvania 19109

Case ID: 260300273
Control No.: 26035904

THE READING COMPANY
1 North 12th Street
Philadelphia, Pennsylvania   19107

RICHARD KLINGER COMPANY
2350 Campbell Road
Sidney, Ohio   45365

RILEY STOKER CORPORATION
No. 9 Neponset Street
Worcesster, Massachusetts 01606

R-M FRICTION MATERIALS COMPANY
100 Oak View Drive
Trumbull, Connecticut   06611

ROCK BESTOS CO.
400 Penn Centre Boulevard
Suite 204
Pittsburgh, Pennsylvania

ROCKWELL INTERNATIONAL
c/o CT Corporation Systems
Oliver Building
Mellon Square
Pittsburgh, Pennsylvania   15222

ROCK WOOL MFG. CO.
P. O. Boc 506
Leeds, Alabama   35094

ROGERS CORPORATION
One Technology Drive
Rogers, Connecticut   06263

ROYAL ELECTRIC SUPPLY COMPANY
3730 Market Street
Philadelphia, Pennsylvania

SAGER CORPORATION, formerly known as
Sager Gloves
An Illinois Corporation
4030 North Nashville Street
Chicago, Illinois   60634

SEPCO CORPORATION
P. O. Box 854
        or
Clokan J. Hollan
27611 LaPaza Road
Laguna Niguel, California   92677

-17-

Case ID: 260300273
Control No.: 26035904

- -

SID HARVEY MID ATLANTIC, INC.
King of Prussia, Pennsylvania

SMITH OF PHILADELPHIA
811 E. Cayuga Street
Philadelphia, Pennsylvania   19124

SMS AUTOMOTIVE PRODUCTS
4819 Langdon Street
Philadelphia, Pennsylvania

SOUTHEASTERN PENNSYLVANIA TRANSPORTATION
AUTHORITY
130 S. 9th Street
5th Floor
Philadelphia, Pennsylvania   19107

SOUTHERN TEXTILE CORP.
c/o Porter Building
601 Grant Street
Pittsburgh, Pennsylvania 15219

SPECIAL MATERIALS, INC. - WISCONSIN
C.T. Corporation
222 Washington
Madison, Wisconsin
       or
3628 W. Pierce
Milwaukee, Wisconsin   53215

SPRAYON RESEARCH CORPORATION
c/o Richard Kempthorne
1390 South Ocean Blvd.
Pompano Beach, Florida   33062

STRAHMAN VALVES, INC.
Nicolet Avenue
Florham Park, New Jersey

STEARN'S DIV. OF F.M.C. CORP.
c/o C. T. Corporation
123 Broad Street
Philadelphia, Pennsylvania

STUDEBAKER-WORTHINGTON, INC.
c/o Corporation Trust Center
1209 Orange Street
Wilmington, Delaware   19801

THERMAL MATERIALS CORP.
360 Hurst Street
Linden, New Jersey

-18-

Case ID: 260300273
Control No.: 26035904

-19-

TNT LIQUIDATING COMPANY
600 First National Bank Bldg.
Erie, Pennsylvania

TRANSCO, INC.
55 East Jackson Boulevard
Chicago, Illinois   60604

TRANSVAAL CONSOLIDATION LAND
   & EXPLORATION CO.; LTD.
Johannesberg, South Africa

TURNER ASBESTOS FIBRES, LTD.
c/o Turner & Newall, Ltd.
20 St. Mary;s Parsonage
Manchester, M3 2NL, England

TURNER & NEWALL, LTD.
20 Saint Mary's Parsonage
Manchester, England M22-EA

UNION CARBIDE CORPORATION
c/o C.T. Corporation System
123 South Broad Street
Philadelphia, Pennsylvania 19109

UNIROYAL, INC.
c/o Prentice Hall Corporation
100 Pine Street
Harrisburg, Pennsylvania 17101

UNITED STATES GYPSUM COMPANY
c/o C.T. Corporation System
123 South Broad Street
Philadelphia, Pennsylvania 19109

UNITED STATES MINERAL PRODUCTS COMPANY
Farnace Street
Stanhope, New Jersey   97874

UNIVERSAL INSULATION COMPANY
c/o Arthur Rank
306 Hialeah Drive
Cherry Hill, New Jersey   08002

U.S. BRAKELINING CORP.
Miami, Florida

Case ID: 260300273
Control No.: 26035904

VERMONT ASBESTOS GROUP, INC.
Box 54B, R.R. #1
Morrisville, Vermont   05661
        or
c/o David Stockpole
P. O. Box 1016
Stowe, Vermont   05672

WAGNER ELECTRIC COMPANY
100 Misty Lane
Parsippany, New Jersey   07054

WARREN BALDERSTON CO.
375 North Will Street
Pittsburgh, Pennsylvania

WEIL McCLAIN CO.
Blaine Street
Michigan City, Illinois   46360

WEINSTEIN SUPPLY COMPANY
Moreland & Davisville Roads
Willow Grove, Pennsylvania 19090

WESTINGHOUSE ELECTRIC CORPORATION
Westinghouse Building
Gateway Center
Pittsburgh, Pennsylvania 15222

WEST PHILADELPHIA ELECTRIC SUPPLY
5828 Market Street
Philadelphia, Pennsylvania

WHEELING BRAKE BLOCK MANUFACTURING COMPANY
Wheeling, West Virginia

W.I.C.K., INC.
Michigan

WILMINGTON SUPPLY OF PENNSYLVANIA
Pennsylvania

W. R. GRACE CO.
Grace Plaza
1114 Avenue of Americas
New York, New York   10036

-20-

Case ID: 260300273
Control No.: 26035904

YORK INDUSTRIES, INC.,
d/b/a York Insulation Company
c/o Gabe Marx
360 Hurst Street
Linden, New Jersey
       or
c/o Ronca, McDonald, Judge & Hanley
600 South Livingston Avenue
Livingston, New Jersey 07039

YORK-SHIPLEY INC.
693 North Hills Road
York, Pennsylvania 17402

JURISDICTION AND VENUE

1.   (a)   Jurisdiction over this action at law is conferred upon this Court pursuant to 42 Pa.C.S. _ 931(a).

(b)   With respect to railroad defendants, jurisdiction is also conferred upon this Court by an Act of Congress, known as the Federal Employers' Liability Act, 45 U.S.C. __ 51-60, (referred to herein as "F.E.L.A.").

2.   This Court is the proper Court of venue since the cause of action arose in Philadelphia County and/or since all defendants are corporations that regularly conduct business or have conducted business in Philadelphia County, pursuant to 42 Pa.C.S. _ 931(c) and Pa.R.C.P. __ 2179(a)(2) and (3) by the sale or shipment of asbestos in all forms through or in Philadelphia.

3.   Pursuant to the Order of This Court, this Complaint is a Master Complaint filed for all plaintiffs represented by any plaintiffs' counsel who has signed agreement to the Master Long Form Complaint and, by operation of such order, all allegations pleaded herein are deemed pleaded in any "Short-Form" Complaint hereafter filed.

DEFENDANTS

4.   .(a)   The defendants are:

(1)   Defendant, A.C.& S., Inc., formerly known as Armstrong Contracting & Supply Co., sued in its corporate capacity and as successor by purchase of the Contracting Units of Armstrong Cork Company, is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in Pennsylvania, and is doing business in the Commonwealth of Pennsylvania and in the Federal Eastern District of Pennsylvania.   At all times

-21-

Case ID: 260300273
Control No.: 26035904

material hereto, Defendant, A.C.&S. Inc., formerly known as, Armstrong Contracting & Supply, Co. and/or its predecessors, including, the Contracting Units of Armstrong Cork Company, was a manufacturer, distributor and supplier of asbestos products, including, but not limited to, products of some or all of the various other defendants named herein, which products were either directly or indirectly sold and/or supplied in the geographical area in which plaintiffs worked and/or to the employers of the plaintiffs and/or to contractors at job sites on which plaintiffs worked, when they were exposed to said asbestos products.

(2)   Defendant, ABEX CORPORATION, is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in Pennsylvania and is doing business in the Commonwealth of Pennsylvania and in the Federal Eastern District of Pennsylvania. Defendant ABEX CORPORATION is also sued as the successor to American Brake Shoe and American Brake Block.  At all times material hereto, Defendant, ABEX CORPORATION, manufactured, produced and sold, either directly or indirectly, in the geographical area in which plaintiffs worked and/or to the employers of the plaintiffs and/or to contractors on job sites on which plaintiffs worked, asbestos products, including, but not limited to, asbestos brakes, brake linings, brake blocks, brake discs and pads, clutch plates and other asbestos friction and railroad products.

(3)   Defendant, AIRCO WELDERS SUPPLY, INC., is the successor corporation of Welders Supply, Inc.  It is a corporation duly organized and existing under the laws of the Commonwealth of Pennsylvania with a principal place of business at 4501 N. Howard Street, Philadelphia, Pennsylvania and is doing business in the Commonwealth of Pennsylvania and in the Federal Eastern District of Pennsylvania.  At all times material hereto, defendant, AIRCO WELDERS SUPPLY, INC., produced, manufactured, distributed and/or sold, through its predecessor, Welders Supply Inc., either directly or indirectly to the employers of the plaintiffs and/or its predecessors, asbestos products including, but not limited to, asbestos brake shoes, asbestos brake linings and other asbestos friction products.

(4)   Defendant, ALLIED CORPORATION, sued in its corporate capacity and as successor in interest to the Bendix Corporation is a corporation organized and existing under the laws of the State of New York, with its principal place of business in New Jersey, which is doing business in the Commonwealth of Pennsylvania and in the Federal Eastern District of Pennsylvania.  At all times material hereto, Defendant, ALLIED CORPORATION and/or its predecessor Bendix Corporation, manufactured, produced and sold, in the geographical area in which plaintiffs worked and/or to the employers of the plaintiffs and/or to the contractors on job

-22-

Case ID: 260300273
Control No.: 26035904

sites on which plaintiffs worked, asbestos products, including, but not limited to asbestos brakes, brake linings, brake blocks, brake discs and pads, clutch plates, other friction products and asbestos gaskets, packing and sealing devices.

(5) Defendant, ALLPAX (USA) INC., is a Pennsylvania Corporation with a principal place of business in Marmeroneck, NY. Allpax (USA) Inc., is a subsidiary of Allpax Company, Inc. At all times material hereto, defendant, ALLPAX (USA) INC., manufactured, produced, sold and/or supplied, either directly or indirectly to the employer of the plaintiffs, asbestos products.

(6) Defendant AMCHEM PRODUCTS, INC. is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania with its principal place of business in Pennsylvania and is doing business in the Commonwealth of Pennsylvania and in the Federal Eastern District of Pennsylvania. At all times material hereto, Defendant, AMCHEM PRODUCTS, INC., and/or its predecessors and subsidiaries including Benjamin Foster Co., manufactured, produced and sold, either directly or indirectly, in the georgaphical area in which plaintiffs worked and/or to the employers of the plaintiffs and/or to contractors on job sites on which plaintiffs worked asbestos products, including, but not limited to, Foster Mastic, C. I. Mastic, and other asbestos products.

(7) Defendant, AMERICAN ENERGY PRODUCTS, INC. is a corporation organized and existing under the laws of the State of California, is a citizen and resident of the State of California, and at all times material hereto was doing business in the Commonwealth of Pennsylvania and the State of New Jersey and in the Federal Eastern District of Pennsylvania. At all times material hereto, defendant, AMERICAN ENERGY PRODUCTS, INC., manufactured, produced, sold and/or supplied, either directly or indirectly to the employer of the plaintiffs, asbestos products, including, but not limited to SprayDon.

(8) Defendant, AMERICAN MOTORS SALES CORPORATION, is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in Michigan and is doing business in the Commonwealth of Pennsylvania and in the Federal Eastern District of Pennsylvania. At all times material hereto, defendant, AMERICAN MOTORS SALES CORPORATION manufactured, produced and sold, either directly or indirectly, in the geographical area in which plaintiffs worked and/or to employers of the plaintiffs and/or to contractors on job sites on which plaintiffs worked, asbestos products, including, but not limited to, asbestos brakes, brake linings, brake blocks, brake discs and pads, clutch plates and other friction products.

-23-

Case ID: 260300273
Control No.: 26035904

(9)    Defendant AMERICAN STANDARD INC., is a Delaware Corporation with a principal place of business in New York and is doing business in the Commonwealth of Pennsylvania and in the Federal Eastern District of Pennsylvania.   It is the successor in interest to Westinghouse Air Brake Co., which sold asbestos-containing brake shoes.

(10) Defendant, AM GENERAL CORPORATION, is a corporation duly organized and existing under the laws of the State of Indiana with its principal place of business at 701 Chippewa Avenue, South Bend, Indiana, which is doing business in the Commonwealth of Pennsylvania and in the Federal Eastern District of Pennsylvania.   At all times material hereto, AM GENERAL CORPORATION produced, distributed, manufactured, and/or sold asbestos friction products to the employees of the plaintiffs or its predecessors including, but not limited to, brake shoes and brake linings.

(11) Defendant, ANCHOR PACKING COMPANY, INC., is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in Pennsylvania which is doing business in the Commonwealth of Pennsylvania and in the Federal Eastern District of Pennsylvania.   At all times material hereto, defendant, ANCHOR PACKING COMPANY, INC., manufactured, produced and sold, either directly or indirectly, in the geographical area in which plaintiffs worked and/or to the employers of the plaintiffs and/or to contractors on job sites on which plaintiffs worked, asbestos products, including, but not limited to, mechanical sealing devices, molded rubber products, gaskets and asbestos-containing packings.

(12) Defendant, A.P. GREEN REFRACTORIES COMPANY, is a corporation organized and existing under the laws of the State of Delaware, is qualified to do business in the Commonwealth of Pennsylvania, with a principal place of business at Hedley and Delaware River, Philadelphia, Pennsylvania  19137 which is doing business in the Commonwealth of Pennsylvania and in the Federal Eastern District of Pennsylvania.   At all times material hereto, Defendant, A.P. GREEN REFRACTORIES COMPANY, mined, manufactured, produced, and/or sold or distributed asbestos or products containing asbestos, either directly or indirectly, in the geographical area in which plaintiffs worked, and/or to the employers of the plaintiffs, and/or to contractors on job sites on which plaintiffs worked, which products were used in the vicinity of the plaintiffs.

(13) Defendant, ARMSTRONG WORLD INDUSTRIES, INC., formerly known as Armstrong Cork Company and/or Armstrong Contracting & Supply Co., is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania, with a principal place of business in Pennsylvania, and is

-24-

Case ID: 260300273
Control No.: 26035904

doing business in the Commonwealth of Pennsylvania and in the Federal Eastern District of Pennsylvania. At all times material hereto, Defendant, ARMSTRONG WORLD INDUSTRIES, INC., formerly known as Armstrong Cork Company and/or Armstrong Contracting & Supply Co., manufactured, produced and sold, either directly or indirectly, in the geographical area in which plaintiffs worked and/or to the employers of the plaintiffs and/or to contractors on job sites on which plaintiffs worked, asbestos products, including, but not limited to, LT Pipecovering, Armaspray and Armaspray 16 insulation, Armaflex adhesive, LT Cork Covering and asbestos gaskets, packing and sealing devices. In addition, Defendant ARMSTRONG WORLD INDUSTRIES, INC., through its subsidiary and/or predecessor corporations, sold, distributed, supplied and/or installed insulation materials and/or contracted to install and maintain insulation materials, either directly or indirectly, in the geographical area in which plaintiffs worked and/or for the employers of the plaintiffs and/or for contractors on job sites on which plaintiffs worked and said insulation materials included, but were not limited to, asbestos products manufactured and produced by the other defendants including, but not limited to, Kaytherm Pipecovering and Block, High-Temperature Pipecovering and Block, Armstrong 85% Magnesia Pipecovering and Block, Bestfelt Pipecovering and Block, Aircell Pipecovering and Block, Kaylo Pipecovering and Block, Armabestos Pipecovering and Block, Oakdale High Pressure Pipecovering and Block, Duplex Pipecovering, Non-sweat Pipecovering, Non-frost Pipecovering, High-Temperature Cement, Armatemp #166 Cement, 85% Magnesia Cement, #152 Asbestos Cement, Amblerex #2 Cement, K.P. Asbestos Floats, "limpet" spray asbestos, and other asbestos products, including, but not limited to, asbestos gaskets, packing and sealing devices.

(14) Defendant, ASBEKA INDUSTRIES OF N.Y., INC., is a corporation organized and existing under the laws of the State of New York, with its principal place of business in New York which is doing business in the Commonwealth of Pennsylvania and in the Federal Eastern District of Pennsylvania. At all times material hereto, Defendant, ASBEKA INDUSTRIES OF N.Y., INC., manufactured, produced and sold, either directly or indirectly, in the geographical area in which plaintiffs worked and/or to the employers of the plaintiffs and/or to contractors on job sites on which plaintiffs worked, asbestos and/or asbestos products.

(15) Defendant, ASBESTOS CORPORATION OF AMERICA, is a corporation organized and existing under the laws of the State of New Jersey, with its principal place of business in New Jersey, and at all times material to this Company, was doing business in the Eastern District of Pennsylvania. At all times material hereto, Defendant ASBESTOS CORPORATION OF AMERICA, has been and/or is now

-25-

Case ID: 260300273
Control No.: 26035904

engaged, directly or indirectly, in the mining, milling, manufacturing, producing, processing, compounding, converting, selling, merchandising, supplying, distributing, and/or otherwise placing in the stream of commerce, asbestos, milled asbestos, raw asbestos, asbestos fiber, mined asbestos, processed asbestos, material containing asbestos, including, but not limited to, packaged or bagged asbestos, asbestos products and compounds (hereinafter collectively referred to as "asbestos products") in the geographic area in which plaintiffs worked and/or to employers of plaintiffs.

(16) Defendant, ASBESTOS CORPORATION, LTD. is a corporation organized and existing under the laws of Canada, with its principal place of business in Canada which is doing business in the Commonwealth of Pennsylvania and in the Federal Eastern District of Pennsylvania. Defendant, ASBESTOS CORPORATION, LTD., during all times material to this Complaint, and for a long time prior thereto, has been and/or is now engaged, directly or indirectly, in the mining, milling, manufacturing, producing, processing, compounding, converting, selling, merchandising, supplying, distributing and/or otherwise placing in the stream of commerce, asbestos, milled asbestos, raw asbestos, asbestos fiber, mined asbestos, milled asbestos, processed asbestos, material containing asbestos, including, but not limited to, packaged or bagged asbestos, asbestos products and compounds (hereinafter collectively referred to as "asbestos products") in the geographica area in which plaintiffs worked and/or to employers of plaintiffs.

(17) Defendant, ASBESTOS INSULATION COMPANY, INC., a/k/a Deerland Corporation, is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania with its principal place of business in Pennsylvania and is doing business in the Commonwealth of Pennsylvania and in the Federal Eastern District of Pennsylvania. At all times material hereto, defendant, ASBESTOS INSULATION COMPANY, INC., manufactured, produced, sold and/or supplied, either directly or indirectly to the employer of the plaintiffs, asbestos products.

(18) Defendant ASBESTOS PRODUCTS MFG. CORP. is a corporation organized and existing under the laws of the State of New York, is a citizen and resident of the State of New York, and at all times material hereto was doing business in the Commonwealth of Pennsylvania, in the State of New Jersey and in the Federal Eastern District of Pennsylvania. At all times material hereto, defendant, ASBESTOS PRODUCTS MFG. CORP., manufactured, produced, sold and/or supplied, either directly or indirectly to the employer of the plaintiffs, asbestos products, including, but not limited to Spray Craft.

-26-

Case ID: 260300273
Control No.: 26035904

(19) Defendant, ASBESTOSPRAY CORPORATION is a corporation organized and existing under the laws of the State of New York, is a citizen and resident of the State of New York, and at all times material hereto was doing business in the State of New Jersey and in the Commonwealth of Pennsylvania and in the Federal Eastern District of Pennsylvania. At all times material hereto, defendant, ASBESTOSPRAY CORPORATION, manufactured, produced, sold and/or supplied, either directly or indirectly to the employer of the plaintiffs, asbestos products, including, but not limited to Spray Craft.

(20) Defendant, ASHLAND OIL, INC., is a corporation organized and existing under the laws of the state of Kentucky, with its principal place of business in Kentucky, which is doing business in the Commonwealth of Pennsylvania and in the Federal Eastern District of Pennsylvania. At all times material hereto, Defendant, ASHLAND OIL, INC., and/or its predecessor in interest, F.H. Ross, has been and/or is now engaged, directly or indirectly, in the mining, milling, manufacturing, producing, processing, compounding, converting, selling, merchandising, supplying, distributing and/or otherwise placing in the stream of commerce, asbestos, milled asbestos, raw asbestos, asbestos fiber, mined asbestos, processed asbestos, material containing, including, but not limited to packaged or bagged asbestos, asbestos products and compounds (hereinafter collectively referred to as "asbestos products") including all products manufactured by Johns-Manville Corporation, in the geographical area in which plaintiffs worked and/or to the employers of the plaintiffs and/or to contractors on job sites on which plaintiffs worked.

(21) Defendant, ASSOCIATED INSULATION, INC., is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania, with its principal place of business in Pennsylvania, which is doing business in the Commonwealth of Pennsylvania and in the Federal Eastern District of Pennsylvania. At all times material hereto, ASSOCIATED INSULATION, INC., manufactured, distributed and/or supplied asbestos products, either directly or indirectly, in the geographical area in which plaintiffs worked and/or to the employers of the plaintiffs and/or to contractors at job sites on which plaintiffs worked when they were exposed to said asbestos products.

(22) Defendant, ASSOCIATED MINERALS CORPORATION is a foreign corporation organized and existing under the laws of a jurisdiction other than the State of New Jersey or the Commonwealth of Pennsylvania, has its principal place of business in London, England and at all times material hereto was doing business in the State of New Jersey and in the Commonwealth of Pennsylvania and in the Federal Eastern District of Pennsylvania. It functions as a sales

-27-

Case ID: 260300273
Control No.: 26035904

representative for various corporations in the Cape Industries group. It is also the successor for various corporations in the Cape Industries group that were engaged in the sale and supply of asbestos.

(23) Defendant, ASTEN-HILL MANUFACTURING COMPANY, is a business entity doing business in the Commonwealth of Pennsylvania with its principal place of business at Henry and Roberts Avenues, Philadelphia, Pennsylvania which is doing business in the Commonwealth of Pennsylvania and in the Federal Eastern District of Pennsylvania. At all times material hereto, Defendant, ASTEN-HILL MANUFACTURING COMPA-NY, mined, milled, manufactured, produced, processed, supplied, distributed, sold and/or otherwise placed in the stream of commerce, raw asbestos, asbestos fiber, mined asbestos, processed asbestos, material containing asbestos, including, but not limited to packaged or bagged asbestos, asbestos products and compounds (hereinafter collectively referred to as "asbestos products") to which plaintiff was continuously exposed in the course of his employment for this defendant.

(24) Defendant ATLAS TURNER, INC. is a corporation organized and existing under the laws of the Dominion of Canada, is a citizen and resident of the Dominion of Canada, has its principal place of business in the Province of Quebec, and at all times material hereto was doing business in the Commonwealth of Pennsylvania. At all times material hereto, defendant, ATLAS ASBESTOS CO. mined, manufactured, produced, sold and/or supplied, either directly or indirect-ly to the employer of the plaintiffs, asbestos products including, but not limited to, Limpet, acoustical spray, fireproofing spray and other asbestos spray products.

(25) Defendant, AUTOMOTIVE PARTS CO., is a corpo-ration organized and existing under the laws of the State of Pennsylvania and at all times material hereto was doing business in the Commonwealth of Pennsylvania and in the Federal Eastern District of Pennsylvania. At all times material hereto, Defendant, AUTOMOTIVE PARTS CO., mined, manufactured, produced, sold and supplied, either directly or indirectly to the employers of the plaintiffs at Fairless Hills, Pennsylvania, among other places, asbestos products including but not limited to industrial brake blocks, wire backed industrial brake blocks, and brake linings of various sizes including but not limited to Wagner Brake Linings.

(26) Defendant, A.W. CHESTERTON, INC., is a Massachusetts Corporation with a principal place of business in Massachusetts. At all times material hereto, defendant, A.W. CHESTERTON, INC., mined, manufactured, produced, sold and/or supplied, either directly or indirectly to the employer of the plaintiffs, asbestos products.

-28-

Case ID: 260300273
Control No.: 26035904

(27) Defendant BABCOCK and WILCOX is a corporation organized and existing under the laws of a state other than New Jersey or Pennsylvania, has its principal place of business in the State of Louisiana and at all times material hereto was doing business in the Commonwealth of Pennsylvania. At all times material hereto, defendant, BABOCK and WILCOX mined, manufactured, produced, sold and/or supplied, either directly or indirectly to the employer of the plaintiffs, asbesto products including, but not limited to, asbestos insulated boilers, asbestos block and asbestos cement.

(28) Defendant BABCOCK and WILCOX TUBULAR PRODUCTS is a Pennsylvania corporation with its principal place of business in Pennsylvania. At all times material hereto, Defendant, BABCOCK and WILCOX TUBULAR PRODUCTS, manufactured, produced, mined, distributed and/or sold, and placed into the stream of commerce, either directly or indirectly to the employers of the plaintiffs, and/or to sub-contractors on their job site, asbestos products and materials to which plaintiffs were exposed. Babcock and Wilcox sold asbestos-containing products, including cements, insulation products and boilers and burners containing asbestos.

(29) Defendant, BALTIMORE & OHIO RAILROAD, is a corporation organized and existing under the laws of the State of Maryland, and was incorporated on February 27, 1826, and is a citizen of the State of Maryland, doing business in the Commonwealth of Pennsylvania, with a registered address for service of process c/o Rudolph Garcia, Esquire, Centre Square West, 38th Floor, Philadelphia, Pennsylvania 19102. BALTIMORE & OHIO RAILROAD operated a railroad which employed certain plaintiffs.

(30) Defendant, BARKER PIPE FITTINGS, CO., is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania with its principal place of business at 271 Lancaster Pike, Frazer, Pennsylvania 19355. At all times material hereto, defendant, BARKER PIPE FITTINGS, CO., manufactured, produced, sold and/or supplied, either directly or indirectly to the employer of the plaintiffs, asbestos products.

(31) Defendant, BASIC INCORPORATED, is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in Connecticut, which is doing business in the Commonwealth of Pennsylvania and in the Federal Eastern District of Pennsylvania. At all times material hereto, BASIC INCORPORATED, manufactured, distributed and/or supplied asbestos products, including, but not limited to Kilnoise, either directly or indirectly, in the geographical area in which plaintiffs work and/or to the employers of the plaintiffs and/or to

-29-

Case ID: 260300273
Control No.: 26035904

contractors at job sites on which plaintiffs worked when they were exposed to said asbestos products.

(32) Defendant, BELL ASBESTOS MINES, LTD., is a corporation organized and existing under the laws of Canada, with its principal place of business in Canada, which is doing business in the Commonwealth of Pennsylvania and in the Federal Eastern District of Pennsylvania. Defendant, BELL ASBESTOS MINES, LTD., during all times material to this Complaint, and for a long time prior thereto, has been and/or is now engaged, directly or indirectly, in the mining, milling, manufacturing, producing, processing, compounding, converting, selling, merchandising, supplying, distributing and/or otherwise placing in the stream of commerce, asbestos, milled asbestos, raw asbestos, asbestos fiber, mined asbestos, milled asbestos, processed asbestos, material containing asbestos, including, but not limited to, packaged or bagged asbestos, asbestos products and compounds (hereinafter collectively referred to as "asbestos products") in the geographica area in which plaintiffs worked and/or to employers of plaintiffs.

(33) Defendant, BENJAMIN FOSTER, Division of Amchem is a corporation organized and existing under the laws of the State of Delaware, is  citizen and resident of the State of Delaware, has its principle place of business in the Commonwealth of Pennsylvania, and at all times material hereto was doing business in the Commonwealth of Pennsylvania and in the Federal Eastern District of Pennsylvania.  At all times material hereto, defendant, BENJAMIN FOSTER, Division of Amchem, manufactured, produced, sold and/or supplied, either directly or indirectly to the employer of the plaintiffs, asbestos products including, but not limited to fibrous adhesive tape and mastic.

(34) Defendant, BEVCO INDUSTRIES, is a corporation duly authorized to do business within the Commonwealth of Pennsylvania and Federal Eastern District of Pennsylvania, and is domiciled in Commonwealth of Pennsylvania.  In 1981, BEVCO INDUSTRIES acquired the business and product lines property of Kay Asbestos, which then dissolved.  Kay Asbestos was a distributor of asbestos products and sold such asbestos products to the places of employment relevant to this action.  BEVCO INDUSTRIES itself was a distributor of asbestos products including gasket and packing materials. BEVCO is, therefore, liable to plaintiffs for injuries resulting from the sale of and inhalation of dust emitted by asbestos products of BEVCO or Kay Asbestos.

(35) Defendant, BIRD, INCORPORATED, Formerly known as Bird & Son, Inc., is a corporation organized and existing under the laws of the State of Massachusetts, with its principal place of business in Massachusetts, which is doing business in the Commonwealth of Pennsylvania and in the

-30-

Case ID: 260300273
Control No.: 26035904

Federal Eastern District of Pennsylvania. At all times material hereto, BIRD, INCORPORATED manufactured, distributed and/or supplied asbestos roofing and siding products, either directly or indirectly, in the geographical area in which plaintiffs worked and/or to the employers of the plaintiffs and/or to contractors at job sites on which plaintiffs worked when they were exposed to said asbestos products.

(36) Defendant, BORG WARNER CORPORATION, is a corporation duly organized and existing under the laws of the State of Michigan with a principal place of business at 615 Griswold, Detroit, Michigan. At all times material hereto, defendant, BORG WARNER CORPORATION, manufactured, produced and/or sold asbestos products, either directly or indirectly to the employers of plaintiffs and/or its predecessors, asbestos products including, but not limited to, asbestos brake shoes, asbestos brake linings and other asbestos friction products.

(37) Defendant, BRAKE & CLUTCH COMPANY OF PHILA-DELPHIA, INC., is a corporation duly organized and existing under the laws of the Commonwealth of Pennsylvania with a principal place of business at 1610 Fairmont Avenue, Philadelphia, Pennsylvania and in the Federal Eastern District of Pennsylvania. At all times material hereto, defendant, BRAKE & CLUTCH COMPANY OF PHILADELPHIA, INC., manufactured, distributed, produced and/or sold asbestos friction products, either directly or indirectly, in the geographical area in which plaintiffs worked, and/or to the employers of the plaintiffs, including, but not limited to, brake shoes, brake linings and Worldbestos Transit Mix and other asbestos friction products.

(38) Defendant, BRAND INSULATIONS, INC., sued in its corporate capacity and as successor by purchase of certain assets of Philip Carey Manufacturing Company, is a corporation organized and existing under the laws of the State of Illinois, with its principal place of business in Illinois and is doing business in the Commonwealth of Pennsylvania and in the Federal Eastern District of Pennsylvania. At all times material hereto, Defendant, BRAND INSULATIONS, INC., and/or its predecessors, was a manufacturer, distributor and supplier of asbestos products, including, but not limited to, products of some or all of the various other defendants named herein, including, but not limited to, as sole distributor of Philip Carey Manufacturing Company products in one of the geographical areas in which plaintiffs worked, which products were either directly or indirectly sold and/or supplied in the geographical area in which plaintiffs worked and/or to the employers of the plaintiffs and/or to contractors at job sites on which plaintiffs worked, when they were exposed to said asbestos products.

-31-

Case ID: 260300273
Control No.: 26035904

(39) Defendant, BRINCO MINING LTD., is a corporation organized and existing under the laws of Canada, with its principal place of business in Canada which is doing business in the Commonwealth of Pennsylvania and in the Federal Eastern District of Pennsylvania, and is successor by amalgamation to Cassiar Resources Ltd., formerly known as Cassiar Asbestos Corp., Ltd.  Defendant, BRINCO MINING LTD., during all times material to this Complaint, and for a long time prior thereto, has been and/or is now engaged, directly or indirectly, in the mining, milling, manufacturing, producing, processing, compounding, converting, selling, merchandising, supplying, distributing and/or otherwise placing in the stream of commerce, asbestos, milled asbestos, raw asbestos, asbestos fiber, mined asbestos, milled asbestos, processed asbestos, material containing asbestos, including, but not limited to, packaged or bagged asbestos, asbestos products and compounds (hereinafter collectively referred to as "asbestos products") in the geographica area in which plaintiffs worked and/or to employers of plaintiffs.

(40)  Defendant, BRITISH SOUTH AFRICA CO., LTD. is a foreign corporation organized and existing under the laws of a jurisdiction other than the State of New Jersey, has its principal place of business in London, England and at all times material hereto was doing business in the State of New Jersey and in the Commonwealth of Pennsylvania and in the Federal Eastern District of Pennsylvania.  It is a wholly-owned subsidiary of defendant Charter Consolidated, Ltd., participating in the control of various corporate members of the Cape Industries Group and is therefore the alter ego and is the successor to the Cape Industries Group, North American Asbestos Corp. and Associated Minerals Corp. and is responsible for their tortious acts and omissions by virtue of the fact that it directed their policies and actions in a manner and/or for the purpose of committing a fraud, circumventing the law and/or otherwise defeating the ends of justice.

(41) Defendant, CAPE ASBESTOS FIBERS, LTD., is a corporation organized and existing under the laws of South Africa with its principal place of business in South Africa which is doing business in the Commonwealth of Pennsylvania and in the Federal Eastern District of Pennsylvania.  At all times material hereto, Defendant, CAPE ASBESTOS FIBERS, LTD., has been or is now engaged, directly or indirectly, in the mining, milling, manufacturing, producing, processing, compounding, converting, selling, merchandising, supplying, distributing asbestos, processed asbestos, material containing asbestos, including but not limited to, products and compounds (hereinafter collectively referred to as "asbestos products") in the geographical area in which plaintiffs worked and/or to employers of plaintiffs.  This defendant is

-32-

Case ID: 260300273
Control No.: 26035904

also sued as both predecssor and successor in interest to North American Asbestos Company.

(42) Defendant, CAPE ASBESTOS INDUSTRIES, LTD. (formerly the Cape Asbestos Co., Ltd.) is a foreign corporation organized and existing under the laws of a jurisdiction other than the State of New Jersey, has its principal place of business in London, England and at all times material hereto was doing business in the State of New Jersey and in the Commonwealth of Pennsylvania and in the Federal Eastern District of Pennsylvania. At all times material hereto, Defendant, CAPE ASBESTOS INDUSTRIES, LTD., has been or is now engaged, directly or indirectly, in the mining, milling, manufacturing, producing, processing, compounding, converting, selling, merchandising, supplying, distributing asbestos, processed asbestos, material containing asbestos, including but not limited to, products and compounds (hereinafter collectively referred to as "asbestos products") in the geographical area in which plaintiffs worked and/or to employers of plaintiffs. This defendant is also sued as both predecssor and successor in interest to North American Asbestos Company.

(43) Defendant, CAPE ASBESTOS S.A. (PTY) UNITED, LTD., sued in its corporate capacity and/or as parent and/or as an affiliated company and/or as successor to asbestos mining, milling, producing and distributing companies, including but not limited to, Cape Blue Mines (PTY), Ltd., and/or Egnep, Ltd., is a corporation organized and existing under the laws of South Africa with its principal place of business in South Africa which is doing business in the Commonwealth of Pennsylvania and in the Federal Eastern District of Pennsylvania. At all times material hereto, Defendant, CAPE ASBESTOS S.A. (PTY) UNITED, LTD., has been or is now engaged, directly or indirectly, in the mining, milling, manufacturing, producing, processing, compounding, converting, selling, merchandising, supplying, distributing asbestos, processed asbestos, material containing asbestos, including but not limited to, packaged or bagged asbestos, asbestos products and compounds (hereinafter collectively referred to as "asbestos products") in the geographical area in which plaintiffs worked and/or to employers of plaintiffs. This defendant is also sued as both predecessor and successor in interest to North American Asbestos Company.

(44) Defendant, CAPE BOARD & PANELS, LTD. is a foreign corporation organized and existing under the laws of a jurisdiction other than the State of New Jersey or the Commonwealth of Pennsylvania, has its principal place of business at Uxbridge, England and at all times material hereto was doing business in the State of New Jersey and in the Commonwealth of Pennsylvania and in the Federal Eastern District of Pennsylvania. It is a member of the Cape

-33-

Case ID: 260300273
Control No.: 26035904

Industries group that manufactures and sells asbestos-containing products. It is doing business in the United States at this time through its agent W.B. Arnold Co., Inc.

(45) Defendant, CAPE INDUSTRIES, LTD., sued in its corporate capacity and as parent, owner and/or successor to other asbestos mining companies, including, but not limited to, Amosa (PTY), Ltd., is a corporation organized and existing under the laws of the United Kingdom with its principal place of business in the United Kingdom which is doing business in the Commonwealth of Pennsylvania and in the Federal Eastern District of Pennsylvania. At all times material hereto, Defendant, CAPE INDUSTRIES, LTD., has been or is now engaged, directly or indirectly, in the mining, milling, manufacturing, producing, processing, compounding, converting, selling, merchandising, supplying, distributing asbestos, processed asbestos, material containing asbestos, including but not limited to, packaged or bagged asbestos, asbestos products and compounds (hereinafter collectively referred to as "asbestos products") in the geographical area in which plaintiffs worked and/or to employers of plaintiffs. This defendant is also sued as both predecessor and successor in interest to North American Asbestos Company.

(46) Defendant, CAREY-CANADA, INC., formerly known as Carey-Canadian Mines, Ltd., is a corporation organized and existing under the laws of Canada, with its principal place of business in Canada which is doing business in the Commonwealth of Pennsylvania and in the Federal Eastern District of Pennsylvania. Defendant, CAREY-CANADA, INC., during all times material to this Complaint, and for a long time prior thereto, has been and/or is now engaged, directly or or indirectly, in the mining, milling, manufacturing, producing, processing, compounding, converting, selling, merchandising, supplying, distributing and/or otherwise placing in the stream of commerce, asbestos, milled asbestos, raw asbestos, asbestos fiber, mined asbestos, milled asbestos, processed asbestos, material containing asbestos, including, but not limited to, packaged or bagged asbestos, asbestos products and compounds (hereinafter collectively referred to as "asbestos products") in the geographical area in which plaintiffs worked and/or to employers of plaintiffs.

(47) Defendant, CARLISLE CORPORATION, is a corporation duly organized and existing under the laws of the State of Delaware with its principal place of business in Ridgeway, Pennsylvania, with a post office number P.O. Box P, Gillis Avenue, Ridgeway, Pennsylvania and is doing business in the Commonwealth of Pennsylvania and in the Federal Eastern District of Pennsylvania. At all times material hereto, defendant, CARLISLE CORPORATION, distributed, produced and/or sold either directly or indirectly to the employers of the plaintiffs or their predecessors,

-34-

Case ID: 260300273
Control No.: 26035904

asbestos friction products including, but not limited to, asbestos brake shoes, brake assemblies, clutch plates, brake linings, and Transit Mix. In addition, plaintiffs were exposed to asbestos fibers emitted by brake linings, clutch facings and other asbestos friction products used in Grumman or Flexible buses and sold by the defendant. In addition, CARLISLE CORPORATION sold asbestos products in rolls or sheets for use in buses and other vehicles of Septa and its predecessors. CARLISLE CORPORATION sold such asbestos products under the name CARLISLE CORPORATION and also through its unincorporated division, Motion Control Industries. CARLISLE CORPORATION liable for injuries resulting from its torts and those of Motion Control Industries.

(48) Defendant, CE MINERALS, INC., is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania and its principal place of business in Pennsylvania which is doing business in the Commonwealth of Pennsylvania and in the Eastern District of Pennsylvania. At all times material hereto, Defendant CE MINERALS, INC., formerly known as and/or also known and/or CE Refractories Company, manufactured, produced and sold, either directly or indirectly, in the geographical area in which plaintiffs worked and/or to the employers of plaintiffs and/or to contractors on job sites on which plaintiffs worked, asbestos products, including but not limited to refractories.

(49) Defendant, CE REFRACTORIES (A DIVISION OF COMBUSTION ENGINEERING, INC.), sued in its corporate capacity and as successor to Refractory and Insulation Corp., and M.H. Dettrick Company, is a corporation organized and existing under the laws of the State of Delaware with a registered office situate at 123 South Broad Street, Philadelphia, Pennsylvania 19109 which is doing business in the Commonwealth of Pennsylvania and in the Federal Eastern District of Pennsylvania. At all times material hereto, defendant, C.E. Refractory, Division of Combustion Engineering, and/or its predecessors, Refractory and Insulation Corp. and/or M.H. Dettrick Company, mined, manufactured, produced, sold, or distributed, either directly or indirectly, in the geographical area in which plaintiffs worked, and/or to the employers of the plaintiffs, and/or to the contractors on job sites on which plaintiffs worked, asbestos products, including, but not limited to, refractory and insulation materials and boilers.

(50) Defendant CELOTEX CORPORATION is a corporation duly organized and existing under the laws of the State of Delaware and is a citizen of the State of Delaware and has its principal place of business at 1500 N. Dale Mabry Highway, Tampa, Florida. It is successor by virtue of merger with Panacon, Briggs Manufacturing Company, Rapid American, Glen Alden, Philip Carey Corporation, and Philip Carey Manufacturing Company, and Smith and Kanzler and

-35-

Case ID: 260300273
Control No.: 26035904

Philip Carey (New Jersey).  At all times material hereto, Defendant Celotex Corporation itself mined, manufactured, produced and sold asbestos products itself to the employers of plaintiffs or sold asbestos products affixed to products sold to the employers of decedent or its predecessor corporations and creatures sold asbestos products to the employers of the plaintiffs, including but not limited to: Hightemp Pipecovering and Block, All Temp Pipecovering and Block, 85% Magnesia Pipecovering and Block, Air Cell Covering, Fibrous Adhesive Bonding, Careytemp Bonding, 7-M-90 Asbestos Shorts, Insulation Cement, Vitracel Cement (Refractory Finishing), LF 20 Asbestos Cement (long fiber), No. 100 Asbestos Cement (hard finish), No. 303 Asbestos Cement, Asbestos Cement, MW-50 Cement, No. 707 Insulating Cement and Thermotex-B Insulating Cement, and asbestos shingles, roofing products and asbestos paper.  Furthermore, Philip Carey Corporation acquired Smith & Kanzler Company a wholly-owned subsidiary of Dana Corporation by way of stock purchase in 1969.  Prior to Smith & Kanzler Company's acquisition by Philip Carey, it produced, marketed and sold an asbestos product known a "Spray Craft."  After the acquisition, Philip Carey continued to produce, market and sell "Spray Craft."  Philip Carey Corporation has assumed the assets and liabilities of the Dana Corporation to the extent the Dana Spray Craft product.  Philip Carey Corporation has also assumed the assets and liabilities of the Spray Craft product line for its prior owners Smith & Kanzler Corporation and Victor Manufacturing & Gasket Company.  It later renamed its now mere creature Smith Kanzler as Philip Carey (New Jersey).  Celotex itself, after the acquisition referred to supra, sold the asbestos product lines formerly sold by Smith  Kanzler to plaintiffs' employers or is responsible for damages for injuries resulting from exposure to the products of Smith and Kanzler.  Celotex Corporation is thus also liable for torts and injuries arising from exposure to Smith and Kanzler asbestos paper, felt, and tape products.

(51) Defendant, CENTRAL JERSEY INDUSTRIES, INC., is a corporation organized and existing under the laws of the State of New Jersey, whose principal place of busienss and address for process of service is 2 Aldwyn Center, Villanova, Pennsylvania 19085.  Central Jersey Industries, Inc., was incorporated on February 26, 1847, as Central Railroad of New Jersey.  Central Railroad of New Jersey changed its name on September 7, 1979 to Central Jersey Industries, Inc.  CENTRAL JERSEY INDUSTRIES, INC. operated a railroad which employed certain plaintiffs.

(52) Defendant CENTRAL MINING FINANCE, LTD. is a foreign corporation organized and existing under the laws of a jurisdiction other than the State of New Jersey or the Commonwealth of Pennsylvania, has its principal place of business in London, England and at all times material hereto

-36-

Case ID: 260300273
Control No.: 26035904

was doing business in the State of New Jersey and in the Commonwealth of Pennsylvania and in the Federal Eastern District of Pennsylvania. It is a wholly-owned subsidiary of defendant Charter Consolidated, Ltd., and it owns, along with defendant Charter Consolidated Industries, Ltd., the controlling interest in the Cape Industries Group, inter alia, defendant Cape Industries, Ltd. and is therefore the alter ego and is the successor to the Cape Industries Group, North American Asbestos Corp. and Associated Minerals Corp. and is responsible for their tortious acts and omissions by virtue of the fact that it directed their policies and actions in a manner and/or for the purpose of committing a fraud, circumventing the law and/or otherwise defeating the ends of justice.

(53) Defendant, CERTAIN-TEED CORPORATION, formerly known as Certain-Teed Products Corporation, is a corporation organized and existing under the laws of the State of Maryland with its principal place of business in Maryland and is doing business in the Commonwealth of Pennsylvania and in the Federal Eastern District of Pennsylvania. CERTAIN-TEED CORPORATION is also sued as successor to and in the capacity of purchaser of assets and liabilities of Keasbey and Mattison's asbestos line, which was absorbed into CERTAIN-TEED CORPORATION's Ambler facility, which manufactures, distributes and supplies, among other things, asbestos products. CERTAIN-TEED CORPORATION is also sued by virtue of its acquisition of Brand Insulations, Inc., during Certain-Teed's merger with Gustin-Bacon Manufacturing Company in 1966; prior to transfer of stock of Brand Insulations into a joint venture known as Certain-Teed Saint Gobain Insulation Corporation in 1967. At all times material hereto Brand Insulations, Inc. was a seller, distributor and/or supplier of asbestos products, as described supra. At all times material hereto, Defendant, CERTAIN-TEED CORPORATION, its predecessors and companies acquired by it, manufactured, produced, distributed and sold, either directly or indirectly, in the geographical area in which plaintiffs worked and/or to the employers of the plaintiffs and/or to contractors on job sites on which plaintiffs worked, asbestos products, including, but not limited to, asbestos cement pipe, asbestos products used in insulation, and other products it manufactured, produced, distributed and/or supplied; and, at certain times relevant hereto, products, previously manufactured by Brand Insulations, Inc. and Keasbey and Mattison.

(54) Defendant, CHARLES F. GUYON is a corporation organized and existing under the laws of a state other than the State of New Jersey, is a citizen and resident of a state other than the State of New Jersey, has its principle place of business in a state other than the State of New Jersey, and at all times material hereto was doing business in the Commonwealth of Pennsylvania and in the Federal

-37-

Case ID: 260300273
Control No.: 26035904

Eastern District of Pennsylvania.  At all times material hereto, defendant, CHARLES F. GUYON mined, manufactured, produced, sold and/or supplied, either directly or indirectly to the employer of the plaintiffs, asbestos products.

(55) Defendants, CHARTER CONSOLIDATED P.L.C., sued in its corporate capacities and as successors-in-interest to Cape Industries, Ltd., is a corporation organized and existing under the laws of Great Britain, with its principal places of business located at #40 Holborn Viaduct, London, England, which is doing business in the Commonwealth of Pennsylvania and in the Federal Eastern District of Pennsylvania.  At all times relevant hereto CHARTER CONSOLIDATED P.L.C. was the alter ego, parent company, and sole stockholder, and in full control of Cape Industries, Ltd., Amosa (PTY) Ltd., Cape Asbestos South Africa (PTY) United, Cape Blue Mines (PTY) Ltd., Egnep (PTY) Ltd., and other companies, which companies mined, manufactured, processed, imported, converted, compounded, sold, supplied, or delivered substantial amounts of asbestos and asbestos related materials for use, processing, or manufacturing in the Commonwealth of Pennsylvania.  At all times material hereto, defendant directly and indirectly caused shipments of raw amosite fiber to be delivered to plaintiffs' worksites.  In or around 1967, defendant assumed effective control of and operated an entity known as Cape Industries, which previously acted as a broker for the sale of asbestos fiber in the United States to, inter alia, worksites at which the plaintiffs were exposed.  At all times material hereto, North American Asbestos Company was a corporation organized and existing under the laws of the State of Illinois, which acted as an agent and totally controlled division of Cape Industries for the purpose of causing raw amosite asbestos fibers to be shipped into the Commonwealth of Pennsylvania at worksites where plaintiffs were exposed.  Raw amosite fiber was shipped through the city of Philadelphia by Cape Industries, said asbestos fibers being consigned to North American Asbestos Company for shipment to the worksites where plaintiffs were exposed.  In or around 1978, North American Asbestos Company was dissolved by Cape Industries, at the direction of defendants and, accordingly, they cannot be sued.  The dissolution was accomplished for the purpose of escaping liability for the injuries suffered by persons, such as plaintiffs, who were directly or indirectly exposed to raw amosite fiber.  Cape Industries, although it can be subjected to the jurisdiction of this Court, by long arm service, has refused to appear in the United States for several years.  In fact, Cape Industries has been personally served with process in other asbestos litigation, and has yet to acknowledge the jurisdiction of this Court.

(56) Defendant CHARTER CONSOLIDATED INVESTMENTS, LTD. is a foreign corporation organized and existing under the laws of a jurisdiction other than the State of New

-38-

Case ID: 260300273
Control No.: 26035904

Jersey or the Commonwealth of Pennsylvania, has its principal place of business in London, England, and at all times material hereto was doing business in the State of New Jersey and in the Commonwealth of Pennsylvania and the Federal Eastern District of Pennsylvania. It is a wholly-owned subsidiary of defendant Charter Consolidated, Ltd., and it owns or owned, along with defendant Central Mining Finance, Ltd., a controlling interest in the Cape Industries Group, inter alia, defendant Cape Industries, Ltd. Defendant Charter Consolidated Investments, Ltd. is the alter ego and is the successor to the Cape Industries Group, North American Asbestos Corp. and Associated Minerals Corp. and is responsible for their tortious acts and omissions by virtue of the fact that it directed their policies and actions in a manner and/or for the purpose of committing a fraud, circumventing the law and/or otherwise defeating the ends of justice.

(57) Defendant CHARTER CONSOLIDATED SERVICES, LTD. is a foreign corporation organized and existing under the laws of jurisdiction other than the State of New Jersey or the Commonwealth of Pennsylvania, has its principal place of business in London, England, and at all times material hereto was doing business in the State of New Jerseyand in the Commonwealth of Pennsylvania and the Federal Eastern District of Pennsylvania. It is a wholly-owned subsidiary of defendant Charter Consolidated, Ltd., and is therefore the alter ego and is the successor to the Cape Industries Group, North American Asbestos Corp. and Associated Minerals Corp. and is responsible for their tortious acts and omissions by virtue of the fact that it directed their policies and actions in a manner and/or for the purpose of committing a fraud, circumventing the law and/or otherwise defeating the ends of justice.

(58) Defendant, CHICAGO FIRE BRICK CO., is a corporation organized and existing under the laws of the State of Illinois, with its principal place of business in the Illinois, which is doing business in the Commonwealth of Pennsylvania and in the Federal Eastern District of Pennsylvania. At all times material hereto, CHICAGO FIRE BRICK CO., manufactured, distributed and/or supplied asbestos products including but not limited to asbestos fiber, either directly or indirectly, in the geographical area in which plaintiffs worked and/or to the employers of the plaintiffs and/or to contractors at job sites on which plaintiffs worked when they were exposed to said asbestos products.

(59) Defendant, CHILDERS PRODUCTS COMPANY, INC., is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in the State of Ohio, which is doing business in the Commonwealth of Pennsylvania and in the Federal Eastern District of Pennsylvania. At all times material hereto, CHILDERS

-39-

Case ID: 260300273
Control No.: 26035904

PRODUCTS COMPANY, INC., manufactured, distributed and/or supplied asbestos products, either directly or indirectly, in the geographical area in which plaintiffs worked and/or to the employers of the plaintiffs and/or to contractors at job sites on which plaintiffs worked when they were exposed to said asbestos products.

(60) Defendant, CHRYSLER CORPORATION, is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in Michigan which is doing business in the Commonwealth of Pennsylvania and in the Federal Eastern District of Pennsylvania. At all times material hereto, Defendant, CHRYSLER CORPORATION, manufactured, produced and sold, either directly or indirectly, in the geographical area in which plaintiffs worked, and/or to employers of the plaintiffs and/or to contractors on job sites on which plaintiffs worked, asbestos products, including, but not limited to asbestos brakes, brake lining, brake blocks, brake discs and pads, clutch plates and other friction products.

(61) Defendant, CLARK CONTROLLER COMPANY is a corporation organized and existing under the laws of the State of Ohio, is a citizen and resident of the State of Ohio, has its principal place of business in the State of Ohio and at all times material hereto was doing business in the Commonwealth of Pennsylvania and in the Federal Eastern District of Pennsylvania. At all times material hereto, CLARK CONTROLLER COMPANY, manufactured, produced, sold and/or supplied, either directly or indirectly or through its predecessors, to the employer of the plaintiffs, brake assemblies.

(62) Defendant, COLLINS PACKING COMPANY, INC., is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania with its principal place of business in Pennsylvania, which is doing business in the Commonwealth of Pennsylvania and in the Federal Eastern District of Pennsylvania. At all times material hereto, Defendant, COLLINS PACKING COMPANY, INC., manufactured, produced and sold either directly or indirectly, in the geographical area in which plaintiffs worked and/or to the employers of the plaintiffs and/or to contractors on job sites on which plaintiffs worked, asbestos products including, but not limited to, mechanical seals and sealing devices, packing and gaskets.

(63) Defendant, COLONIAL ELECTRIC SUPPLY, is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania and is a citizen and resident of the State of Pennsylvania and at all times material hereto was doing business in the Commonwealth of Pennsylvania and in the Federal Eastern District of Pennsylvania. At all times material hereto, Defendant, COLONIAL ELECTRIC

-40-

Case ID: 260300273
Control No.: 26035904

SUPPLY, manufactured, produced, sold and supplied, either directly or indirectly to the employers of the plaintiffs at Fairless Hills, Pennsylvania, among other places, asbestos products including but not limited to insulation block diatomoceous silicia, brake linings including but not limited to those manufactured by Cutler Hammer, and industrial brake blocks including but not limited to those manufactured by Clark Control.

(64) Defendant, COLONIAL RUBBER, is a corporation duly organized and existing under the laws of the State of New Jersey with its principal place of business at Elbo Lane and Texas Avenue, Mount Laurel, New Jersey. At all times material hereto, defendant, COLONIAL RUBBER, manufactured, produced, distributed and/or sold asbestos products either directly or indirectly to the employers of the plaintiffs or their predecessors, including, but not limited to asbestos paper and Thermoid matting.

(65) Defendant, COLUMBIA BOILER COMPANY OF POTTSTOWN, sued in its corporate capacity and as a successor by merger to Columbia Boiler Company, is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania with its principal place of business in Pennsylvania which is doing business in the Commonwealth of Pennsylvania and in the Federal District of Pennsylvania. At all times material hereto, Defendant, COLUMBIA BOILER COMPANY OF POTTSTOWN and/or Columbia Boiler Company, manufactured, produced and sold, either directly or indirectly, in the geographical area in which plaintiffs worked and/or to the employers of plaintiffs and/or to contractors on job sites on which plaintiffs worked, asbestos products.

(66) Defendant, COMBUSTION ENGINEERING, INC., sued in its corporate capacity and as successor in interest to and purchaser of Refractory and Insulation Company is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in Connecticut which is doing business in the Commonwealth of Pennsylvania and in the Eastern District of Pennsylvania. At all times material hereto, Defendant COMBUSTION ENGINEERING, INC., and/or its predecessors, including Refractory and Insulation Company, manufactured, produced and sold, either directly or indirectly, in the geographical area in which plaintiffs worked and/or to the employers of plaintiffs and/or to contractors on job sites on which plaintiffs worked, asbestos products, and products incorporating asbestos components including but not limited to refractories and boilers.

(67) Defendant, CONSOLIDATED MINES SELECTION CO., LTD. is a foreign corporation organized and existing under the laws of a jurisdiction other than the State of New Jersey, has its principal place of business in London,

-41-

Case ID: 260300273
Control No.: 26035904

England and at all times material hereto was doing business in the State of New Jersey. It is a wholly-owned subsidiary of defenant Charter Consolidated, Ltd., participating in the control of various corporate members of the Cape Industries Group and is therefore the alter ego and is the successor to the Cape Industries Group, North American Asbestos Corp. and Associated Minerals Corp. and is responsible for their tortious acts and omissions by virtue of the fact that it directed their policies and actions in a manner and/or for the purpose of committing a fraud, circumventing the law and/or otherwise defeating the ends of justice.

(68) Defendant, CONSOLIDATED RAIL CORPORATION is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania, whose principal place of business and address for service of process is Six Penn Center Plaza, Philadelphia, Pennsylvania 19104. Consolidated Rail Corporation is and has been since April 1, 1976 a common carrier by rail and is liable to the plaintiffs as their employer since that date under the Federal Employer's Liability Act and/or as a result of the obligation placed upon it by the Northeast Rail Reorganization Act as amended and/or as the purchaser of and successor to Penn Central Transportation Company, Central Railroad of New Jersey, Reading Company, Lehigh Valley Railroad Company and Erie Lackawanna Railway Company's railroad operations. CONSOLIDATED RAIL CORPORATION operated a railroad which employed certain plaintiffs.

(69) Defendant, COONEY BROTHERS, INC., is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania with a principal place of business at the S.W. Corner of 5th & Dauphin Street, Philadelphia, PA 19133 which is doing business in the Commonwealth of Pennsylvania and the Federal Eastern District of Pennsylvania and in the Federal Eastern District of Pennsylvania. At all times material hereto, defendant, COONEY BROTHERS, INC., manufactured, produced and/or sold, either directly, in the geographical area in which plaintiffs worked and/or to the employers of the plaintiffs and/or to contractors on job sites on which plaintiffs worked, asbestos products, including, but not limited to plumbing supplies and materials that contained asbestos to which plaintiffs were exposed.

(70) Defendant, CRANE PACKING, is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania, is a citizen of the Commonwealth of Pennsylvania, and has a principal place of business at 682 Parkway, Broomall, Pennsylvania, which is doing business in the Commonwealth of Pennsylvania and the Federal Eastern District of Pennsylvania. At all times material hereto, Defendant, CRANE PACKING, distributed products containing

-42-

Case ID: 260300273
Control No.: 26035904

asbestos, including, but not limited to, asbestos gaskets and packing manufactured or supplied by some of the defendants named herein, either directly or indirectly, in the geographical area in which plaintiffs worked, and/or to the employers of the plaintiffs, and/or to contractors on job sites on which plaintiffs worked, which products were used in the vicinity of the plaintiffs.

(71) Defendant, CROWN CORK & SEAL COMPANY, INC., sued in its corporate capacity and as successor by purchase of certain assets of Mundet Cork Corporation, is a corporation organized and existing under the laws of the State of New York, with its principal place of business in Pennsylvania and is doing business in the Commonwealth of Pennsylvania and in the Federal Eastern District of Pennsylvania. At all times material hereto, Defendant, CROWN CORK & SEAL COMPANY, INC., and/or its predecessors, including, Mundet Cork Corporation, was a manufacturer, distributor and supplier of asbestos products, including, but not limited to, products of some or all of the various other defendants, which products were either directly or indirectly sold and/or supplied in the geographical area in which plaintiffs worked and/or to the employers of the plaintiffs and/or to contractors at job sites on which plaintiffs worked, when he was exposed to said asbestos products.

(72) Defendant, C. TENNANT SONS & CO., OF NEW YORK, is a corporation organized and existing under the laws of the State of New York, with its principal place of business in New York, and at all times material to this Complaint, was doing business in the Eastern District of Pennsylvania. At all times material hereto, Defendant, C. TENNANT SONES & CO., OF NEW YORK, has been and/or is now engaged, directly or indirectly, in the mining, milling, manufacturing, producing, processing, compounding, converting, selling, merchandising, supplying, distributing, and/or otherwise placing in the stream of commerce, asbestos, milled asbestos, raw asbestos, asbestos fiber, mined asbestos, processed asbestos, material containing asbestos, including, but not limited to packaged or bagged asbestos, asbestos products and compounds in the geographical area in which plaintiffs worked and/or to employers of plaintiffs.

(73) Defendant, CULP BROTHERS, INC., formerly known as Culp Industrial Insulation Company, sued in its corporate capacity and as successor in interest to Culp Industrial Insulation Company, is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania with its principal place of business in Pennsylvania which is doing business in the Commonwealth of Pennsylvania and in the Federal Eastern District of Pennsylvania. At all times material hereto, Defendant, CULP BROTHERS, INC., and/or its predecessors, including Culp Industrial Insulation Company, manufactured, produced and sold, either

-43-

Case ID: 260300273
Control No.: 26035904

directly or indirectly, in the geographical area in which plaintiffs worked and/or to the employers of plaintiffs and/or to contractors on job sites on which plaintiffs worked, asbestos products.

(74) Defendant, CURTIS INDUSTRIES, is a corporation organized and existing under the laws of the State of Delaware, is a citizen and resident of the State of Delaware, has its principal place of business in the State of Ohio and at all times material hereto was doing business in the Commonwealth of Pennsylvania and in the Federal Eastern District of Pennsylvania. At all times material hereto, defendant CURTIS INDUSTRIES, manufactured, produced, sold and supplied, either directly or indirectly or through its predecessors, to the employer of the plainiff, asbestos automotive products including, but not limited to brakes, brake linings, clutches, clutch facings, gaskets and other friction materials.

(75) Defendant, DANA CORPORATION, is a corporation duly organized and existing in the Commonwealth of Virginia and is a citizen of the Commonwealth of Virginia with a principal place of business at 4500 Dorr Street, P.O. Box 1000, Toldeo, Ohio. Defendant acquired all of the stock assets and liabilities of Smith and Kanzler employers of the plaintiffs and its prececessors whose stock, assets, before being acquired by DANA. On or about February 18, 1969, Carey (Ohio) acquired the stock, assets and liabilites of S&K from DANA. Upon information and belief, there is an indemnification agreement between Carey (Ohio), now Celotex and DANA, under which DANA retained all liabilities for injuries due to exposure to S&K asbestos products prior to the acquisition by Carey (Ohio). At all times material hereto, Defendant, DANA CORPORATION, and its predecessor corporations, including but not limited to Perfect Circle Corporation, manufactured, produced and sold, either directly or indirectly, in the geographical area in which plaintiffs worked and/or to the employers of the plaintiffs and/or to contractors on job sites on which plaintiffs worked, asbestos products, including, but not limited to Spraycraft Insulation and Tiger Lime and asbestos friction materials.

(76) Defendant, D.A.R. INDUSTRIAL PRODUCTS, INC., formerly known as Delaware Asbestos & Rubber Co., is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania, and is a citizen of the Commonwealth of Pennsylvania doing business in the Commonwealth of Pennsylvania and in the Federal Eastern District of Pennsylvania. At all times material hereto, Defendant, D.A.R. INDUSTRIAL PRODUCTS, INC., and/or its predecessors, including, Delaware Asbestos & Rubber Co., was a manufacturer, distributor and supplier of asbestos products, including, but not limited to, products of some or all of the

-44-

Case ID: 260300273
Control No.: 26035904

various other defendants named herein, and including, but not limited to, asbestos gaskets, packing and sealing devices, which products were either directly or indirectly sold and/or supplied in the geographical area in which plaintiffs worked and/or to the employers of the plaintiffs and/or to contractors at job sites on which plaintiffs worked, when he was exposed to said asbestos products.

(77) Defendant, DAVIS BRAKE & EQUIPMENT CORPORA-TION, is a corporation duly organized and existing under the laws of the Commonwealth of Pennsylvania and is a citizen of the Commonwealth of Pennsylvania with a principal place of business at 2219 North Second Street, Philadelphia, Pennsylvania and is doing business in the Commonwealth of Pennsylvania and in the Federal Eastern District of Pennsylvania. At all times material hereto, defendant, DAVIS BRAKE & EQUIPMENT CORPORATION, manufactured, produced, distributed and/or sold either directly or indirectly to the employers of the plaintiffs or their predecessors, asbestos friction products including, but not limited to, brake linings, clutch plates, brake shoes, brake blocks and sheets.

(78) Defendant, DECKER ASSOCIATES, INC., is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania, with its principal place of business in Pennsylvania, which is doing business in the Commonwealth of Pennsylvania and in the Federal Eastern District of Pennsylvania. At all times material hereto, DECKER ASSOCIATES, INC., manufactured, distributed and/or supplied asbestos products, either directly or indirectly, in the geographical area in which plaintiffs worked and/or to the employers of the plaintiffs and/or to contractors at job sites on which plaintiffs worked when he was exposed to said asbestos products.

(79) Defendant, DELAWARE INSULATION COMPANY, is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in Delaware and is doing business in the Commonwealth of Pennsylvania and in the Federal Eastern District of Pennsylvania. At all times material hereto, Defendant, DELAWARE INSULATION COMPANY was a manufacturer, distributor and supplier of asbestos products, including, but not limited to, products of some or all of the various other defendants named herein, which products were either directly or indirectly sold and/or supplied in the geographical area in which plaintiffs worked and/or to the employers of the plaintiffs and/or to contractors at job sites on which plaintiffs worked, when he was exposed to said asbestos products.

(80) Defendant, DELAWARE VALLEY SAFEGUARD COMPANY, INCORPORATED, is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania, with its

Case ID: 260300273
Control No.: 26035904

principal place of business in Pennsylvania, which is doing business in the Commonwealth of Pennsylvania and the Federal Eastern District of Pennsylvania. At all times material hereto, defendant, DELAWARE VALLEY SAFEGUARD COMPANY, manufactured, produced, mined, distributed and/or sold, and placed into the stream of commerce, either directly or indirectly to the employers of the plaintiffs, and/or to sub-contractors on their job site asbestos products and materials to which plaintiff was exposed.

(81) Defendant, DELCO PRODUCTS, a Division of General Motors Corporation, is a corporation duly organized and existing under the laws of the State of Ohio with its principal place of business at P.O. Box 1042, Dayton, Ohio. At all times material hereto, defendant, DELCO PRODUCTS, produced, manufactured, distributed and/or sold to the employers of the plaintiffs or their predecessors, asbestos-containing friction products.

(82) Defendant, DRAVO CORPORATION, is a corporation organized and existing under the laws of the Common-wealth of Pennsylvania and is a citizen and resident of the Commonwealth of Pennsylvania and at all times material hereto was doing business in the Commonwealth of Pennsylvania and in the Federal Eastern District of Pennsylvania. At all times material hereto, Defendant, DRAVO CORPORATION, mined, manufactured, produced and sold, either directly or indirectly to the employers of the plaintiffs at Fairless Hills, Pennsylvania, among other places, asbestos products including but not limited various sizes of insulation pipe asbestos with 85% Magnesia.

(83) Defendant, DRESSER INDUSTRIES, INC., sued in its corporate capacity and as successor by merger to HARBISONWALKER COMPANY, is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in Texas which is doing business in the Commonwealth of Pennsylvania and in the Federal Eastern District of Pennsylvania. At all times material hereto, Defendant, DRESSER INDUSTRIES, INC., and/or to contractors on job sites on which plaintiffs worked, asbestos products, including but not limited to fireclay and other refractories.

(84) Defendant, DURAMETALLIC CORPORATION, is a corporation organized and existing under the laws of the State of Michigan with its principal place of business in Michigan, which is doing business in the Commonwealth of Pennsylvania and the Federal Eastern District of Pennsylvania. At all times material hereto, Defendant, DURAMETALLIC CORPORATION, manufactured, produced and sold, either direct-ly or indirectly, in the geographical area in which plain-tiffs worked and/or to the employers of the plaintiffs and/or to contractor on job sites on which plaintiffs

-46-

Case ID: 260300273
Control No.: 26035904

worked, asbestos products, including but not limited to, asbestos yarns, Type A-66-S, foil square rings, Styles 110 and 710, spiral packing, Types 66F, AL and AW, foil packing, Types D-10, D7-10 and B-71, Dura Plastic packing Types 8-7, D-2, 8-77 and D-22, and other asbestos containing packings, rope, braid and sealing products.

(85) Defendant, DURABLA, is a Pennsylvania corporation with its principal place of business at 27 Industrial Boulevard, Paoli, Pennsylvania 19301. At all times material hereto, defendant, DURABLA, manufactured, produced and sold, either directly or indirectly, in the geographical area in which plaintiffs worked and/or to the employers of the plaintiffs and/or to contractors on job sites on which plaintiffs worked, asbestos products.

(86) Defendant, DUROX EQUIPMENT COMPANY is a corporation organized and existing under the laws of State of Ohio, with its principal place of business in Cleveland, Ohio at 12351 Prospect Road, Cleveland, Ohio 44136, and is or was doing business with the Commonwealth of Pennsylvania. At all times material hereto, defendant, DUROX EQUIPMENT COMPANY, manufactured, produced and sold, either directly or indirectly, in the geographical area in which plaintiffs worked and/or to the employers of the plaintiffs and/or to contractors on job sites on which plaintiffs worked, asbestos products.

(87) Defendant, EAGLE-PICHER INDUSTRIES, INC., is a corporation organized and existing under the laws of the State of Ohio, with its principal place of business in Ohio and is doing business in the Commonwealth of Pennsylvania and in the Federal Eastern District of Pennsylvania. At all times material hereto, Defendant, EAGLE-PICHER INDUSTRIES, INC., manufactured, produced and sold, either directly or indirectly, in the geographical area in which plaintiffs worked and/or to the employers of the plaintiffs and/or to contractors on job sites on which plaintiffs worked, asbestos products, including, but not limited to, Epitherm 1200 Pipecovering and Block, Super 66 Insulating Cement, Hylo Cement, Hi-Stick Cement, One-Cote Cement, One-Coat Cement, Insulseal, PV Supertemp, E-P Blankets, E-P Magnesia, 99 Finishing Cement, 106 Finishing Cement, Eagle Dry Cote, Insulstic, 43 Finishing Cement, 85% Magnesia Pipecovering and Block, 33 Insulating Cement, 7M Asbestos Cement, Eagle 20 Cement, Hylo Pipecovering and Block, Swetchek Pipecovering and Block, Stalastic Pipecovering and Block, Vercel Block, Insulastic Pipecovering and Block, and Spraymastic Pipecovering and Block, MW-1, Armatemp No. 10 and Unarco No. 10 Cements and Stamastic and Swetchek covering.

-47-

Case ID: 260300273
Control No.: 26035904

(88) Defendant, EARL B. BEACH CO., is a corporation organized and existing under the laws of the State of Pennsylvania and is a citizen and resident of the State of Pennsylvania and at all times material hereto was doing business in the Commonwealth of Pennsylvania and in the Federal Eastern District of Pennsylvania. At all times material hereto, Defendant, EARL B. BEACH CO., mined, manufactured, produced, sold and supplied, either directly or indirectly to the employers of the plaintiffs at Fairless Hills, Pennsylvania, among other places, asbestos products including but not limited to asbestos cloth.

(89) Defendant, EAST PENN REFRACTORIES, is a Pennsylvania corporation with its principal place of business on Lehigh Street, Reading, Pennsylvania and in the Federal Eastern District of Pennsylvania. At all times material hereto, defendant, EAST PENN REFRACTORIES, manufactured, produced and sold, either directly or indirectly, in the geographical area in which plaintiffs worked and/or to the employers of the plaintiffs and/or to contractors on job sites on which plaintiffs worked, asbestos products.

(90.) Defendant, EATON CORPORATION, formerly known as Cutler Hammer, Inc., is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania and is a citizen and resident of the State of Pennsylvania and at all times material hereto was doing business in the Commonwealth of Pennsylvania and in the Federal Eastern District of Pennsylvania. At all times material hereto, Defendant, EATON CORPORATION, formerly known as Cutler Hammer, mined, manufactured, produced sold and supplied, either directly or indirectly to the employers of the plaintiffs at Fairless Hills, Pennsylvania, among other places, asbestos products including but not limited to brake linings and clutches.

(91) Defendant, EGNEP (PTY) LTD., is a foreign corporation organized and existing under the laws of a jurisdiction other than the State of New Jersey, has its principal place of business in Johannesburg, South Africa, and at all times material hereto was doing business in the State of New Jersey and in the Commonwealth of Pennsylvania and the Federal Eastern District of Pennsylvania. At all times material hereto, defendant EGNEP, (PTY), LTD. was a wholly-owned subsidiary of the Cape Industries group.

(92) Defendant, ELBO INDUSTRIAL SUPPLY COMPANY, is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania with a principal place of business at 305 N. 6th Street, Philadelphia, PA 19106 which is doing business in the Commonwealth of Pennsylvania and in the Federal Eastern District of Pennsylvania and in the Federal Eastern District of Pennsylvania. At all times

-48-

Case ID: 260300273
Control No.: 26035904

material hereto, defendant ELBO INDUSTRIAL SUPPLY COMPANY, manufactured, produced and/or sold, either directly, in the geographical area in which plaintiffs worked and/or to the employers of the plaintiffs and/or to contractors on job sites on which plaintiffs worked, asbestos products, including, but not limited to plumbing supplies and materials that contained asbestos to which plaintiffs were exposed.

(93) Defendant, EMPIRE-ACE INSULATION COMPANY, is a corporation organized and existing under the laws of the State of New York with a principal place of business at One Cozine Avenue, Brooklyn, NJ 11207, which is doing business in the Commonwealth of Pennsylvania and the Federal Eastern District of Pennsylvania.  At all times material hereto, Defendant EMPIRE-ACE INSULATION COMPANY, manufactured, produced and/or sold, either directly or indirectly, in the geographical area in which plaintiffs worked and/or to the employers of the plaintiffs and/or to contractors on job sites on which plaintiffs worked, asbestos products, including, but not limited to, Air Cell Pipecovering, EM Cell Pipecovering, Air Cell Boards and Blocks, EM Cell Boards and Blocks, Wool Felt Covering, Anti-Sweat Covering, Resisto Climatic Pipecovering, Range Boiler Jackets, Sponge Felt, EM Felt Covering, Magnesia Covering and Blocks, Calcium Silicate Covering and Blocks and Insulating Cements.

(94) Defendant, EMPIRE INSULATION OF NORTHEAST MISSOURI, sued in its corporate capacity and as successor in interest to and purchaser of EMPIRE ASBESTOS COMPANY, is a corporation organized and existing under the laws of the State of Missouri with its principal place of business in the State of Missouri which is doing business in the Commonwealth of Pennsylvania and in the Federal Eastern District of Pennsylvania.  At all times material hereto, Defendant EMPIRE INSULATION OF NORTEAST MISSOURI and as successor to EMPIRE ASBESTOS COMPANY, mined, manufactured, produced and sold, either directly or indirectly, in the geographic area in which plaintiffs worked and lived asbestos products, including, but not limited to, asbestos cement and other asbestos products.

(95) ERIE-LACKAWANNA, INC., is a corporation organized and existing under the laws of the State of Delaware, on April 14, 1983, said defendant was prior to April 14, 1983, known as the Erie-Lackawanna Railway Company.  ERIE-LACKAWANNA, INC. operated a railroad which employed certain plaintiffs.

(96) Defendant, F. B. WRIGHT DISTRIBUTION CO., is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania and is a citizen and resident of the Commonwealth of Pennsylvania and at all times material hereto was doing business in the Commonwealth of Pennsylvania and in the Federal Eastern District of Pennsylvania.

-49-

Case ID: 260300273
Control No.: 26035904

At all times material hereto, Defendant, F. B. WRIGHT DISTRIBUTION CO., mined, manufactured, produced sold and supplied, either directly or indirectly to the employers of the plaintiffs at Fairless Hills, Pennsylvania, among other places, asbestos products including but not limited to asbestos cloth.

(97) Defendant, FERRO ENGINEERING, a Division of Oglebay Norton Company, is a corporation organized and existing under the laws of the State of Ohio and is a citizen and resident of the State of Ohio and at all times material hereto was doing business in the Commonwealth of Pennsylvania. At all times material hereto, Defendant, FERRO ENGINEERING, a Division of Oglebay Norton Company, manufactured, produced, mined, distributed and/or sold and placed into the stream of commerce, either directly or indirectly to the employers of the plaintiff and/or to sub-contractors on their job sites, asbestos products and materials to which plaintiffs were exposed.

(98) Defendant, FIBREBOARD CORPORATION, including, but not limited to, the Pabco Industrial Products Division, is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in California and is doing business in the Commonwealth of Pennsylvania and in the Federal Eastern District of Pennsylvania. At all times material hereto, Defendant, FIBREBOARD CORPORATION, including, but not limited to, the Pabco Industrial Products Division, manufactured, produced and sold, either directly or indirectly, in the geographical area in which plaintiffs worked and/or to the employers of the plaintiffs and/or to contractors on job sites on which plaintiffs worked, asbestos products, including, but not limited to, Caltemp Pipecovering and Block, Pabco Magnesia Pipecovering and Block, Prasco Pipecovering and Block, Super Caltemp Pipecovering and Block, Pabco Pipecovering and Block, Precision Molded Pipecovering and Block, F 1 Cement and No. 127 Cement.

(99) Defendant, FIRESTONE TIRE & RUBBER COMPANY, is a corporation organized and existing under the laws of the State of Indiana with its principal place of business in the State of Indiana. At all times material hereto, Defendant, FIRESTONE TIRE & RUBBER COMPANY, including, but not limited to, the Pabco Industrial Products Division, manufactured, produced and sold, either directly or indirectly, in the geographical area in which plaintiffs worked and/or to the employers of the plaintiffs and/or to contractors on job sites on which plaintiffs worked, asbestos products.

(100) Defendant, FLEXITALLIC GASKET CORPORATION, is a corporation organized and existing under the laws of the State of Connecticut with its principal place of business in New Jersey which is doing business in the

-50-

Case ID: 260300273
Control No.: 26035904

Commonwealth of Pennsylvania and the Federal Eastern District of Pennsylvania. At all times material hereto, Defendant FLEXITALLIC GASKET CORPORATION, manufactured, produced and sold, either directly or indirectly, in the geographical area in which plaintiffs worked and/or to the employers of the plaintiffs and/or to contractors on job sites on which plaintiffs worked, asbestos products, including but not limited to, asbestos gaskets and packing materials.

(101)    Defendant, FLINTKOTE CO., is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in Ohio and is doing business in the Commonwealth of Pennsylvania and in the Federal Eastern District of Pennsylvania. At all times material hereto, Defendant, FLINTKOTE CO., manufactured, produced and sold, either directly or indirectly, in the geographical area in which plaintiffs worked and/or to the employers of the plaintiffs and/or to contractors on job sites on which plaintiffs worked, asbestos products, including various building and construction materials and products, including but not limited to, Flintkote Cement, Pipecoating, and Block Paste, tile, asbestos cement pipe, roofing materials, and siding.

(102)    Defendant, FORD MOTOR COMPANY, is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in Michigan which is doing business in the Commonwealth of Pennsylvania and in the Federal Eastern District of Pennsylvania. At all times material hereto, Defendant, FORD MOTOR COMPANY manufactured, produced and sold, either directly or indirectly, in the geographical area in which plaintiffs worked, and/or to employers of the plaintiffs and/or to contractors on job sites on which plaintiffs worked, asbestos products, including, but not limited to, asbestos brakes, brake linings, brake blocks, brake discs and pads, clutch plates and other friction products.

(103)    Defendant, FOSECO, INC., is a corporation organized and existing under the laws of the state of Delaware with its principal place of business in Ohio, which is doing business in the Commonwealth of Pennsylvania and in the Federal Eastern District of Pennsylvania. Defendant, FOSECO, INC., at all times material hereto, has been and/or is now engaged, directly or indirectly, in the mining, milling, manufacturing, producing, processing, compounding, converting, selling, merchandising, supplying, distributing and/or otherwise placing in the stream of commerce, asbestos, milled asbestos, raw asbestos, asbestos fiber, mined asbestos, processed asbestos, material containing asbestos, including, but not limited to, packaged or bagged asbestos and compounds (hereinafter collectively referred to as "asbestos products") in the geographical area in which

-51-

Case ID: 260300273
Control No.: 26035904

plaintiffs worked and/or to employers of plaintiffs and/or to contractors at job sites on which plaintiffs worked.

(104)    Defendant, FOSTER WHEELER CORPORATION is a corporation organized and existing under the laws of the State of New York with its principal place of business in New Jersey which is doing business in the Commonwealth of Pennsylvania and in the Eastern District of Pennsylvania. At all times material hereto, Defendant FOSTER WHEELER CORPORATION manufactured, produced and sold asbestos products, either directly or indirectly, in the geographical area in which plaintiffs worked and/or to the employers of plaintiffs and/or to contractors on job sites on which plaintiffs worked.

(105)    Defendant, GAF CORPORATION, sued in its corporate capacity and as successor by merger to Ruberoid Co., which was organized and existing under the laws of the State of New Jersey, is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in New Jersey and is doing business in the Commonwealth of Pennsylvania and in the Federal Eastern District of Pennsylvania.  At all times material hereto, Defendant, GAF CORPORATION, and/or its predecessors, including, Ruberoid Co. Mastic Tile, and Eternit, mined, manufactured, produced and sold, either directly or indirectly, in the geographical area in which plaintiffs worked and/or to the employers of the plaintiffs and/or to contractors on job sites on which plaintiffs worked, asbestos products, including, but not limited to, 7M, 115 and 214 Insulation Cements, Calsilite Pipecovering and Block and Hylo Pipecovering and Block, T/NA-100 Insulation Jacketing, Asbestos Paper and Millboard and Calsilite Insulating Cement, and asbestos tile products.  GAF is also sued as successor-in-interest and alter ego of Vermont Asbestos Corporation, Vermont Production Co., and The Vermont Asbestos Corporation, all of which mined and sold asbestos fiber.

(106)    Defendant, GARFIELD MOLDING COMPANY, INC., is a corporation organized and existing under the laws of the State of New Jersey, with its principal place of business in New Jersey which is doing business in the Commonwealth of Pennsylvania and in the Federal Eastern District of Pennsylvania.  At all times material hereto, Defendant, GARFIELD MOLDING COMPANY, INC., manufactured, produced and sold, either directly or indirectly, in the geographical area in which plaintiffs worked and/or to the employers of plaintiffs and/or to contractors on job sites on which plaintiffs worked, asbestos and/or asbestos products.

(107)    Defendant, GARLOCK, INC., including, but not limited to, the Precision Seal Division, is a corporation organized and existing under the laws of the State of

Case ID: 260300273
Control No.: 26035904

Ohio, with its principal place of business in Texas and is doing business in the Commonwealth of Pennsylvania and in the Federal Eastern District of Pennsylvania. At all times material hereto, Defendant, GARLOCK INC., including but not limited to, the Precision Seal Division, manufactured, produced and sold, either directly or indirectly, in the geographical area in which plaintiffs worked and/or to the employers of the plaintiffs and/or to contractors on job sites on which plaintiffs worked, asbestos products, including, but not limited to, asbestos gaskets, packing, and sealing devices.

(108)   Defendant, GENERAL ELECTRIC COMPANY ("GE"), is a corporation duly organized and existing under the laws of the State of New York with a principal place of business at One River Road, Schnectady, New York. At all times material hereto, GENERAL ELECTRIC COMPANY, through its distributor, General Electric Supply Company, distributed asbestos products that were used in and around plaintiffs. Certain of the electrical products of GE used in such repair, including wiring and millboard, are asbestos-containing products. As part of the repair and rehabilitation of Septa trolleys, old GE products which contained asbestos and which were decaying, broken, and emitting asbestos dust were removed from trolleys, and new GE asbestos containing asbestos products were installed. In the course of the use, removal, rehabilitation and/or installation of the GE products or activities by employees, asbestos products were cut, sliced and split, causing the emission into the air of asbestos dust and fibers which were inhaled by plaintiffs, all of which was or should have been foreseeable by GE. GE also distributed asbestos activator gaskets to Septa and/or its predecessors and manufactured and/or distributed other asbestos products to Septa and/or its predecessors.

(109)   Defendant, GENERAL MOTORS CORPORATION, including, but not limited to, the Delco Products, Delco-Remy and Delco Moraine divisions, is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in Michigan and is doing business in the Commonwealth of Pennsylvania and in the Federal Eastern District of Pennsylvania. At all times material hereto, Defendant, GENERAL MOTORS CORPORATION, including, but not limited to, the Delco Products, Delco-Remy and Delco Moraine divisions, manufactured, produced and sold, either directly or indirectly, in the geographical area in which plaintiffs worked, and/or to employers of the plaintiffs and/or to contractors on job sites on which plaintiffs worked, asbestos products, including, but not limited to, asbestos brakes, brake linings, brake blocks, brake discs and pads, clutch plates and other friction products.

-53-

Case ID: 260300273
Control No.: 26035904

(110)    Defendant, GENERAL REFRACTORIES COMPANY, is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania and is a citizen of the Commonwealth of Pennsylvania which is doing business in the Commonwealth of Pennsylvania and the Federal Eastern District of Pennsylvania.  At all times material hereto, defendant, GENERAL REFRACTORIES COMPANY, or its predecessors and/or alter egos, including East Penn Refractories, mined, manufactured, produced and/or sold or distributed asbestos or products containing asbestos either directly to the employers of the plaintiffs or to contractors on job sites where plaintiffs worked, which products were used in the vicinity of plaintiffs.

(111)    Defendant, GENSTAR CORPORATION, sued in its corporate capacity and as successor in interest to the Flintkote Company, is a corporation organized and existing under the laws of the Dominion of Canada, with its principal place of business in California which is doing business in the Commonwealth of Pennsylvania and in the Federal Eastern District of Pennsylvania.  At all times material hereto, Defendant, GENSTAR CORPORATION and/or its predecessors and divisions, including the Flintkote Company, manufactured, produced and sold, either directly or indirectly, in the geographical area in which plaintiffs worked and/or to the employers of the plaintiffs and/or to contractors on job sites on which plaintiffs worked, asbestos and/or asbestos products.

(112)    Defendant, GEORGE A. ROWLEY & CO., INC., a/k/a Peltz Rowley, is a Pennsylvania corporation with its principal place of business at 5700 Tacony Street, Philadelphia, Pennsylvania 19135.  At all times material hereto, Defendant, GEORGE A. ROWLEY & CO., INC., manufactured, produced and sold, either directly or indirectly, in the geographical area in which plaintiffs worked and/or to the employers of the plaintiffs and/or to contractors on job sites on which plaintiffs worked, asbestos products.

(113)    Defendant, GEORGE V. HAMILTON, INC., is a corporation organized and existing under the laws of the State of Pennsylvania and is a citizen and resident of the State of Pennsylvania and at all times material hereto was doing business in the Commonwealth of Pennsylvania and in the Federal Eastern District of Pennsylvania.  At all times material hereto, Defendant, GEORGE V. HAMILTON, INC., mined, manufactured, produced and sold, either directly or indirectly to the employers of the plaintiffs at Fairless Hills, Pennsylvania, among other places, asbestos products including but not limited to Insulation Felt 50 Waterproof Asbestos.

(114)    Defendant, GEORGIA-PACIFIC CORPORATION, is a corporation organized and existing under the laws of

-54-

Case ID: 260300273
Control No.: 26035904

the State of Georgia, with its principal place of business in Georgia and is doing business in the Commonwealth of Pennsylvania and in the Federal Eastern District of Pennsylvania. At all times material hereto, Defendant, GEORGIA-PACIFIC CORPORATION, manufactured, produced and sold, either directly or indirectly, in the geographical area in which plaintiffs worked and/or to the employers of the plaintiffs and/or to contractors on job sites on which plaintiffs worked, asbestos products, including, but not limited to, spray asbestos.

(115)   Defendant, GLOBE REFRACTORIES, INC., is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in West Virginia which is doing business in the Commonwealth of Pennsylvania and in the Eastern District of Pennsylvania. At all times material hereto, Defendant GLOBE REFRACTORIES, INC., manufactured, produced and sold, either directly or indirectly, in the geographical area in which plaintiffs worked and/or to the employers of plaintiffs and/or to contractors on job sites on which plaintiffs worked, asbestos products, including but not limited to refractories.

(116)   Defendant, GOULDS PUMPS, INC., is a corporation organized and existing under the laws of the State of New York with its principal place of business in New York which is doing business in the Commonwealth of Pennsylvania and in the Federal Eastern District of Pennsylvania. At all times material hereto, Defendant, GOULDS PUMPS, INC., manufactured, produced, and sold, either directly or indirectly, in the geographical area in which plaintiffs worked and/or to the employers of the plaintiffs and/or to contractors on job sites on which plaintiffs worked, asbestos products, including, but not limited to, pump and stuffing box packing, 1/8" Gland packing, 1/16" gaskets, and other asbestos containing packings, gaskets and sealing devices.

(117)   Defendant, GREEN TWEED & COMPANY, INC. is a Pennsylvania Corporation with a principal place of business in North Wales, PA. At all times material hereto, Defendant, GREEN TWEED & COMPANY, INC., manufactured, produced, and sold, either directly or indirectly, in the geographical area in which plaintiffs worked and/or to the employers of the plaintiffs and/or to contractors on job sites on which plaintiffs worked, asbestos products.

(118)   Defendent, GRIFFIN WHEEL COMPANY, is a division of Amstead Industries, and is a corporation organized and existing under the laws of the State of Illinois with its principal place of business in Illinois and is doing business in the Commonewalth of Pennsylvania and in the Federal Eastern District of Pennsylvania. At all times material hereto, defendant GRIFFIN WHEEL COMPANY sold

-55-

Case ID: 260300273
Control No.: 26035904

asbestos-containing brake shoes and other asbestos friction materials.

(119)    Defendant, GRUMMAN OHIO CORPORATION, formerly known as Grumman Flexible Corporation, is a corporation duly organized and existing under the laws of the State of Delaware with its principal place of business in Ohio.  At all times material hereto, defendant, GRUMMAN OHIO CORPORATION, or Grumman Flexible Corporation, sold buses to Septa or its predecessors.  These buses contained brakes, brake linings, brake shoes and other friction products, each of which contained asbestos to which plaintiffs was exposed.  Furthermore, defendant sold asbestos products including, but not limited to, brake linings and brake shoes that contained asbestos to which plaintiffs were exposed.

(120)  Defendant, GTE SYLVANIA, is a corporation organized and existing under the laws of the State of Pennsylvania and is a citizen and resident of the State of Pennsylvania and at all times material hereto was doing business in the Commonwealth of Pennsylvania and in the Federal Eastern District of Pennsylvania.  At all times material hereto, Defendant, GTE SYLVANIA, mined, manufactured, produced, sold and supplied, either directly or indirectly through its predecessor corporations, Clark Control and/or A. O. Smith to the employers of the plaintiffs at Fairless Hills, Pennsylvania, among other places, asbestos products including but not limited to Clark Control brakes, clutches and brake pads.

(121)  Defendant, HAJOCA PLUMBING COMPANY, is a corporation organized and existing under the laws of the State of Maine, with a registered business office at 123 S. Broad Street, Philadelphia, PA 19109, which is doing business in the Commonwealth of Pennsylvania and in the Federal Eastern District of Pennsylvania.  At all times material hereto, defendant, HAJOCA PLUMBING COMPANY, manufactured, produced and/or sold, either directly, in the geographical area in which plaintiffs worked and/or to the employers of the plaintiffs and/or to contractors on job sites on which plaintiffs worked, asbestos products, including, but not limited to plumbing supplies and materials that contained asbestos to which plaintiffs was exposed.

(122)    Defendant, HARNISCHFEGER CORPORATION, is a corporation organized and existing under the State of Delaware, is a citizen and resident of the State of Delaware, has its principal place of business in the State of Wisconsin, and at all times material hereto was doing business in the Commonwealth of Pennsylvania and in the Federal Eastern District of Pennsylvania.  At all times material hereto, defendant, HARNISCHFEGER CORPORATION, manufactured, produced, sold and/or supplied, either

-56-

Case ID: 260300273
Control No.: 26035904

directly or indirectly or through its predecessors, to the employer of the plaintiffs, asbestos friction materials, including but not limited to hoist, travel, swing and boom brakes and other friction material.

(123)   Defendant, H. K. PORTER CO., INC., sued in its corporate capacity as successor by merger with Thermoid Co., and Tallman-McCluskey and as parent of Southern Textile Corp., and including, but not limited to, the Thermoid Division, is a corporate organized and existing under the laws of the State of Delaware, with its principal place of business in Pennsylvania and is doing business in the Commonwealth of Pennsylvania and in the Federal Eastern District of Pennsylvania.  At all times material hereto, Defendant, H.K. PORTER COMPANY, INC., and/or its predecessors, and/or its subsidiary, Southern Textile Corp. and including, but not limited to, the Thermoid Division, mined, manufactured, produced and sold, either directly or indirectly, in the geographical area in which plaintiffs worked and/or to the employers of the plaintiffs and/or to contractors on job sites on which plaintiffs worked, asbestos products, including, but not limited to, cloth, tape, yarn/cord, felt, rope/wick, tubing and amosite blankets such as Portersite, Portersite G, Porterlag, and other cloth such as Thermagard, Cleangard, Covergard, Flamegard, Guardian, Heatgard, Splashgard, Weldgard, Insulgard, and Soundgard.

(124)   Defendant, HOPEMAN BROTHERS, INC., is a corporation organized and existing under the laws of the State of Delaware with its principal place of business at 435 Essex Avenue, P.O. Box 820, Waynesboro, VA  22980 which is doing business in the Commonwealth of Pennsylvania and the Federal Eastern District of Pennsylvania, with a registered office situate at 123 South Broad Street, Philadelphia, Pennsylvania  19109.  At all times material hereto, defendant, HOPEMAN BROTHERS, INC., manufactured, supplied, produced, and sold, either directly or indirectly, in the geographical area in which plaintiffs worked and/or to the employers of the plaintiffs and/or to contractors on job sites on which plaintiffs worked, asbestos products, including, but not limited to, asbestos wallboard, including Marnite.

(125)   Defendant, HUXLEY DEVELOPMENT CORP., is a corporation with a principal office located at 1133 Avenue of Americas, New York 10036 and is doing business in the Commonwealth of Pennsylvania and in the Federal Eastern District of Pennsylvania.  At all times material hereto, Defendant HUXLEY DEVELOPMENT CORPORATION, has been and/or is now engaged, directly or indirectly, in the mining, milling, manufacturing, producing, processing, compounding, converting, selling, merchandising, supplying, distributing, and/or otherwise placing in the stream of commerce, asbestos, milled asbestos, raw asbestos, asbestos fiber, mined

-57-

Case ID: 260300273
Control No.: 26035904

asbestos, processed asbestos, material containing asbestos, including, but not limited to, packaged or bagged asbestos, asbestos products and compounds in the geographic area in which plaintiffs worked and/or to employers of plaintiffs.

(126)     Defendant, INDUSTRIAL PRODUCTS COMPANY, is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania  with its principal place of business at 21 Cabot Boulevard, Langhorne, Pennsylvania, which is doing business in the Commonwealth of Pennsylvania and the Federal Eastern District of Pennsylvania.  At all times material hereto, Defendant, INDUSTRIAL PRODUCTS COMPANY, manufactured, produced, mined, distributed and/or sold, and placed into the stream of commerce, either directly or indirectly to the employers of the plaintiff, and/or to sub-contractors on his job site, asbestos products and materials to which plaintiff was exposed.

(127)  Defendant INDUSTRIAL SALESMASTER is a corporation organized and existing under the laws of the state of New Jersey with its principal place of business in New Jersey.  At all times material hereto defendant INDUS-TRIAL SALESMASTER manufactured, supplied, produced, and sold, either directly or indirectly, in the geographical area in which plaintiffs worked and/or to the employers of plaintiffs asbestos cloth and friction products.

(128)     Defendant, INSULATION MATERIAL, INC., is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania, with its principal place of business in Pennsylvania, which is doing business in the Commonwealth of Pennsylvania and in the Federal Eastern District of Pennsylvania.  At all times material hereto, INSULATION MATERIAL, INC., manufactured, distributed and/or supplied asbestos products, either directly or indirectly, in the geographical area in which plaintiffs worked and/or to the employers of the plaintiffs and/or to contractors at job sites on which plaintiffs worked when they were exposed to said asbestos products.

(129)     Defendant, INSULATION PRODUCTS CORPORA-TION, is a corporation organized and existing under the laws of the State of Pennsylvania and is a citizen and resident of the Stte of Pennsyulvania and at all times material heeto was doing business in the Commonwealth of Pennsylvania.  At all times material hereto, Defendant, INSULATION PRODUCTS CORPORATION, mined, manufactured, produced and sold, either directly or indirectly to the employers of the plaintiffs asbestos products including but not limited to various sizes of asbestos pipe insulation.

(130)     Defendant, INTERNATIONAL HARVESTER COMPANY, is a corporation organized and existing under the laws of the State of Delaware with its principal place of

-58-

Case ID: 260300273
Control No.: 26035904

business in Illinois which is doing business in the Commonwealth of Pennsylvania and in the Federal Eastern District of Pennsylvania. At all times material hereto, Defendant, INTERNATIONAL HARVESTER COMPANY, manufactured, produced and sold, either directly or indirectly, in the geographical area in which plaintiffs worked and/or to the employers of the plaintiffs and/or to contractors on job sites on which plaintiffs worked, asbestos products, including but not limited to, asbestos brakes, brake linings, brake blocks, brake discs and pads, clutch plates, other friction products and asbestos gaskets, packing and sealing devices.

(131)    Defendant, JACQUAYS ASBESTOS COMPANY, is a corporation organized and existing under the laws of the State of Arizona, having its principal place of business in the State of Arizona which is doing business in the Commonwealth of Pennsylvania and in the Federal Eastern District of Pennsylvania. At all times material hereto, JACQUAYS ASBESTOS COMPANY, during all times material to this Complaint, and for a long time prior thereto, has been and/or is now engaged directly or indirectly, in the mining, milling, manufacturing, producing, processing, compounding, converting, selling, merchandising, supplying, distributing and/or otherwise placing in the stream of commerce, asbestos, milled asbestos, raw asbestos, asbestos fiber, mined asbestos, processed asbestos, material containing asbestos, including, but not limited to, packaged or bagged asbestos, asbestos products and compounds in the geographic area in which plaintiffs worked and/or to employers of plaintiffs.

(132)    Defendant, J. H. FRANCE REFRACTORIES CO. is a corporation organized and existing under the laws of Commonwealth of Pennsylvania, is a citizen and resident of the Commonwealth of Pennsylvania, has its principle place of business in the Commonwealth of Pennsylvania, and at all times material hereto was doing business in the Commonwealth of Pennsylvania and in the Federal Eastern District of Pennsylvania. At all times material hereto, defendant, J.H. FRANCE REFRACTORIES CO., mined, manufactured, produced, sold and/or supplied, either directly or indirectly to the employer of the plaintiffs, asbestos products.

(133)    Defendant, JOHN CRANE-HOUDAILLE, INC., formerly Crane Packing Company, is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in Illinois, which is doing business in the Commonwealth of Pennsylvania and in the Federal Eastern District of Pennsylvania. At all times material hereto, Defendant, JOHN CRANE - HOUDAILLE, INC., manufactured, produced and sold either directly or indirectly, in the geographical area in which plaintiffs worked and/or to the employers of the plaintiffs and/or to contractors on job sites on which plaintiffs worked, asbestos products including, but not limited to, mechanical seals and

-59-

Case ID: 260300273
Control No.: 26035904

sealing devices, pumps, machine and industrial tools and packing. At all times material hereto, Defendant, JOHN CRANE - HOUDAILLE INC., formerly Crane Packing Company, manufactured, distributed and supplied asbestos products of some or all of the various other defendants named herein.

(134)     Defendant, J. P. STEVENS, INC., is a corporation organized and existing under the Laws of the State of Delaware, with its principal place of business in New York and is doing business in the Commonwealth of Pennsylvania and in the Federal Eastern District of Pennsylvania. At all times material hereto, Defendant, J. P. STEVENS, INC., manufactured, produced and sold, either directly or indirectly, in the geographical area in which plaintiffs worked and/or to the employers of the plaintiffs and/or to contractors on job sites on which plaintiffs worked, asbestos products, including, but not limited to, asbestos cloth, blankets, lagging, pad cloth and other textile products.

(135)     Defendant, J. W. ROBERTS, LTD., is a corporation organized and existing under the laws of Great Britain, with its principal place of business at 20 St. Mary's Parsonage, Manchester, England, which is doing business in the Commonwealth of Pennsylvania and in the Federal Eastern District of Pennsylvania. At all times material hereto, Defendant J. W. ROBERTS, LTD., manufactured, produced and sold either directly or indirectly in the geographical area in which plaintiffs worked and/or to the employers of the plaintiffs and/or to the contractors at job sites on which plaintiffs worked, asbestos products including, but not limited to "Limpet" spray asbestos.

(136)     Defendant, KANE BROTHERS, is a corporation organized and existing under the laws of the State of Ohio with a principal place of business at 457 A Street, Sharon, PA 16146 which is doing business in the Commonwealth of Pennsylvania and in the Federal Eastern District of Pennsylvania and in the Federal Eastern District of Pennsylvania. At all times material hereto, defendant, KANE BROTHERS, manufactured, produced and/or sold, either directly, in the geographical area in which plaintiffs worked and/or to the employers of the plaintiffs and/or to contractors on job sites on which plaintiffs worked, asbestos products, including, but not limited to plumbing supplies and materials that contained asbestos to which plaintiffs were exposed.

(137)  Defendant, KAY WHEEL SALES is a corporation organized and existing under the laws of the State of Pennsylvania, and is a citizen and resident of the State of Pennsylvania and at all times material hereto was doing business in the Commonwealth of Pennsylvania and in the Federal Eastern District of Pennsylvania. At all times it

-60-

Case ID: 260300273
Control No.: 26035904

sold asbestos-containing friction products to which plain-
tiffs were exposed.

(138)    Defendant, KEENE CORPORATION, sued in
its corporate capacity and as successor by purchase of
certain assets of Mundet Cork Corporation, is successor by
merger to Keene Building Products Corporation, which was
successor by merger to Baldwin-Ehret-Hill, Inc., which was
organized and existing under the laws of the Commonwealth of
Pennsylvania, and which was successor by merger to Ehret
Magnesia Manufacturing Company, which was formerly a corpo-
ration organized and existing under the laws of the Common-
wealth of Pennsylvania, is a corporation organized and
existing under the laws of the State of Delaware, with its
principal place of business in New York and is doing busi-
ness in the Commonwealth of Pennsylvania and in the Federal
Eastern District of Pennsylvania.  At all times material
hereto, Defendant, KEENE CORPORATION, and/or its predeces-
sors, including, Mundet Cork Corporation, Keene Building
Products Corporation, Baldwin-Ehret-Hill, Inc., and/or Ehret
Magnesia Manufacturing Company, manufactured, produced and
sold, either directly or indirectly, in the geographical
area in which plaintiffs worked and/or to the employers of
the plaintiffs and/or to contractors on job sites on which
plaintiffs worked, asbestos products, including, but not
limited to, Thermasil Pipecovering and Block, Monoblock
Pipecovering and Block, Thermalite Pipecovering and Block,
Enduro Block, Superpowerhouse Cement, Powerhouse Cement, BEH
No. 1 Plus Insulating Cement, Bondtite Cement, Thermasil
Cement, Pyrospray Types I, T, S, MonoSpray, Fibrekote, Ehret
Asbestos Sponge Felt, Aircell Pipecovering and Block, and
asbestos gaskets, packing and sealing devices.

(139)    Defendant, LAC D'AMIANTE DU QUEBEC, is a
corporation organized and existing under the laws of the
State of Delaware, with its principal place of business in
Canada, which is doing business in the Commonwealth of
Pennsylvania and in the Federal Eastern District of Pennsyl-
vania.  Defendant, LAC D'AMIANTE DU QUEBEC, during all times
material to this Complaint, and for long time prior thereto,
has been and/or is now engaged, directly or indirectly, in
the mining, milling, manufacturing, producing, processing,
compounding, converting, selling, merchandising, supplying,
distributing and/or otherwise placing in the stream of
commerce, asbestos, milled asbestos, raw asbestos, asbestos
fiber, mined asbestos, milled asbestos, processed asbestos,
material containing asbestos, including, but not limited to,
packaged or bagged asbestos, asbestos products and compounds
(hereinafter collectively referred to as "asbestos prod-
ucts") in the geographical area in which plaintiffs worked
and/or to employers of plaintiffs.

(140)    Defendant, LEAR SIEGLER, INC., includ-
ing, but not limited to, any Brake Products Divisions, sued

-61-

Case ID: 260300273
Control No.: 26035904

in its corporate capacity and as successor by merger to Royal Industries, Inc., which was successor to Century Engineers, which was organized and existing under the laws of the State of California, and which reincorporated and was organized and existing under the laws of the State of Delaware, is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in California and is doing business in the Commonwealth of Pennsylvania and in the Federal Eastern District of Pennsylvania. At all times material hereto, Defendant, LEAR SIEGLER INC., and/or its predecessors including, Royal Industries, Inc., and Century Engineers, manufactured, produced and sold, either directly or indirectly, in the geographical area in which plaintiffs worked and/or to the employers of the plaintiffs and/or to contractors on job sites on which plaintiffs worked, asbestos products, including, but not limited to, asbestos brakes, brake linings, brake blocks, brake discs and pads, clutch plates and other friction products.

(141)    Defendant, LEHIGH VALLEY RAILROAD COMPANY, is a corporaiton organized and existing under the laws of the Commonwealth of Pennsylvania, whose principal place of business and address for service of process is 415 Brighton Street, Bethlehem, Pennsylvania 19017 and is a citizen of the Commonwealth of Pennsylvania and doing business in the Commonwealth of Pennsylvania. LEHIGH VALLEY RAILROAD COMPANY operated a railroad which employed certain plaintiffs.

(142)    Defendant, LEHIGH VALLEY REFRACTORIES, INC., is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania, with its principal place of business in Pennsylvania, which is doing business in the Commonwealth of Pennsylvania and in the Federal Eastern District of Pennsylvania. At all times material hereto, LEHIGH VALLEY REFRACTORIES, INC., manufactured, distributed and/or supplied asbestos products, either directly or indirectly, in the geographical area in which plaintiffs worked and/or to the employers of the plaintiffs and/or to contractors at job sites on which plaintiffs worked when they were exposed to said asbestos products.

(143)    Defendant, LENCO, INC., is a corporation duly organized and existing under the laws of the State of Missouri, with its principal place of business at 319 West Main Street, Jackson Missouri. At all times material hereto, defendant, LENCO, INC., produced, distributed, manufactured, and/or sold asbestos products to the employers of the plaintiffs or its predecessors including, but not limited to, asbestos containing jackets, cape sleeves and aprons.

-62-

Case ID: 260300273
Control No.: 26035904

(144)    Defendant, LEONARD J. BUCK, INC. is a corporation organized and existing under the laws of the State of Delaware, has its principal place of business in the State of Delaware and at all times material hereto was doing business in the State of New Jersey and in the Commonwealth of Pennsylvania and in the Federal Eastern District of Pennsylvania.  At all times material hereto, LEONARD J. BUCK, INC., manufactured, distributed and/or supplied asbestos products, either directly or indirectly, in the geographical area in which plaintiffs worked and/or to the employers of the plaintiffs and/or to contractors at job sites on which plaintiffs worked when they were exposed to said asbestos products.

(145)    Defendant, MACK TRUCKS, INC., is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania which is doing business in the Commonwealth of Pennsylvania and in the Federal Eastern District Pennsylvania.  At all times material hereto, Defendant, MACK TRUCKS, INC., manufactured, produced and sold, either directly or indirectly, in the geographical area in which plaintiffs worked, and/or to employers of the plaintiffs and/or to contractors on jobsites on which plaintiffs worked, asbestos products, including but not limited to, asbestos brakes, brake linings, brake blocks, brake discs and pads, clutch pads and other friction products.

(146)    Defendant, MANUFACTURED RUBBER PRODUCTS COMPANY, is a corporation duly authorized and existing under the laws of the Commonwealth of Pennsylvania and is a citizen of the Commonwealth of Pennsylvania with a principal place of business at 4501 Tacony Street, Philadelphia, Pennsylvania and in the Federal Eastern District of Pennsylvania.  At all times material hereto, defendant, MANUFACTURED RUBBER PRODUCTS COMPANY, produced, manufactured, distributed and/or sold either directly or indirectly, to the employers of the plaintiffs or its predecessors, asbestos products including, but not limited to, asbestos paper.

(147)    Defendant, MAREMONT CORPORATION, formerly known as Maremont-Delaware, Inc., is a corporation organized and existing under the laws of the State of Illinois, with its principal place of business in Illinois and is doing business in the Commonwealth of Pennsylvania and in the Federal Eastern District of Pennsylvania.  At all times material hereto, Defendant, MAREMONT CORPORATION, and/or its predecessors, including, MaremontDelaware, Inc., manufactured, produced and sold, either directly or indirectly, in the geographical area in which plaintiffs worked and/or to the employers of the plaintiffs and/or to contractors on job sites on which plaintiffs worked, asbestos products, including, but not limited to, asbestos brakes,

-63-

Case ID: 260300273
Control No.: 26035904

brake linings, brake blocks, brake discs and pads, clutch plates and other friction products.

(148)    Defendant, McCORD GASKET COMPANY is a corporation organized and existing under the laws of the State of Michigan and is authorized to do business in Pennsylvania, and at all times material hereto was conducting business in the Commonwealth of Pennsylvania and in the Federal Eastern District of Pennsylvania.  At all times material hereto, Defendant McCORD GASKET COMPANY, manufactured, produced and sold, either directly or indirectly, in the geographical area in which plaintiffs worked and/or to the employers of plaintiffs and/or to contractors on job sites on which plaintiffs worked, asbestos and/or asbestos products.

(149)    Defendant, MELRATH GASKET COMPANY, INC., is a wholly-owned subsidiary of Melrath Gasket Holding Company, Inc., a Pennsylvania corporation, a/k/a a TNT Liquidating Co.  At all times material hereto, Defendant MELRATH GASKET COMPANY, INC., manufactured, produced and sold, either directly or indirectly, in the geographical area in which plaintiffs worked and/or to the employers of plaintiffs and/or to contractors on job sites on which plaintiffs worked, asbestos and/or asbestos products.

(150)    Defendant, MELRATH GASKET HOLDING COMPANY, INC., is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania and in the Federal Eastern District of Pennsylvania.  On August 28, 1983, MELRATH GASKET COMPANY, INC., became a wholly-owned subsidiary of MELRATH GASKET HOLDING COMPANY, INC., a Pennsylvania Corporation, a/k/a TNT Liquidating Company.

(151)    Defendant, MERIDEN MOLDED PLASTICS, INC., is a corporation organized and existing under the laws of the State of Connecticut, with its principal place of business in Connecticut which is doing business in the Commonwealth of Pennsylvania and in the Federal Eastern District of Pennsylvania.  At all times material hereto, Defendant MERIDEN MOLDED PLASTICS, INC., manufactured, produced and sold, either directly or indirectly, in the geographical area in which plaintiffs worked and/or to the employers of plaintiffs and/or to contractors on job sites on which plaintiffs worked, asbestos and/or asbestos products.

(152) Defendant MOHAWK MANUFACTURING is a corporation organized and existing under the laws of Illinois, with its principal place of business in Illinois, which is doing business in the Commonwealth of Pennsylvania and the Federal Eastern District of Pennsylvania.  At all times it

-64-

Case ID: 260300273
Control No.: 26035904

manufactured and sold asbestos-containing friction products to which plaintiffs were exposed.

(153)    Defendant, MONSEY PRODUCTS, is a corporation organized and existing under the laws of Pennsylvania, with its principal place of business in Pennsylvania, which is doing business in the Commonwealth of Pennsylvania and in the Federal Eastern District of Pennsylvania.  At all times it manufactured and/or sold asbestos-containing friction products to which plaintiffs were exposed.

(154)  Defendant MOTOR SERVICES is a corporation organized and existing under the laws of the State of New York, with its principal place of business in the State of New York, which is doing business in the Commonwealth of Pennsylvania and in the Federal Eastern District of Pennsylvania.  At all times it manufactured and/or sold asbestos-containing friction products to which plaintiffs were exposed.

(155)    Defendant, NATIONAL GYPSUM COMPANY, is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in Texas which is doing business in the Commonwealth of Pennsylvania and in the Federal Eastern District of Pennsylvania.  At all times material hereto, Defendant, NATIONAL GYPSUM COMPANY, manufactured, produced and sold, either directly or indirectly, in the geographical area in which plaintiffs worked and/or to the employers of the plaintiffs and/or to contractors on job sites on which plaintiffs worked, asbestos products, including, but not limited to, Thermacoustic, Sprayolite, Fireshield, Macoustic, Texas Texture, Perfolyte, joint compounds, joint cements, toppings, textures, spackles, plasters, siding, roofing, and Gold Bond products.

(156)    Defendant, NATIONAL RAILROAD PASSENGER CORPORATION is a corporation organized and existing under the laws of Washington, D.C., whose address for service of process is 1617 J.F.K. Boulevard, Room 710, Philadelphia, Pennsylvania 19104.  National Railroad Passenger Corporation is and has been since October 30, 1970 a common carrier by rail and is liable to the plaintiffs as his employer since that date under the Federal Employer's Liability Act and/or as a result of the obligation placed upon it by the Rail Passenger Service Act as amended and/or as the purchaser of and successor to Penn Central Corporation's railroad operations.  NATIONAL RAILROAD PASSENGER CORPORATION operated a railroad which employed certain plaintiffs.

(157)    Defendant, NATIONAL U.S. BOILER CO., INC., is a Pennsylvania Corporation with a principal place of business in New Castle, PA.  At all times material hereto, defendant, NATIONAL U.S. BOILER CO., INC.,

-65-

Case ID: 260300273
Control No.: 26035904

manufactured, produ.ced, sold and supplied, either directly or indirectly or through its predecessors, to the employer of the plaintiffs, asbestos National U.S. Boiler products.

(158)    Defendant, NAVISTAR is a corporation organized and existing under the laws of the State of Delaware, is a citizen and resident of the State of Delaware, has its principal place of business in a State other than New Jersey or Pennsylvania and at all times material hereto was doing business in the Commonwealth of Pennsylvania and in the Federal Eastern District of Pennsylvania. Navistar is successor by name change to International Harvester Company.  At all times material hereto, defendant, NAVISTAR manufactured, produced, sold and supplied, either directly or indirectly or through its predecessors, to the employer of the plaintiffs, asbestos automotive products incuding, but not limited to brakes, brake linings, clutches, clutch facings, gaskets and other friction materials.

(159)    Defendant, NEW YORKER STEEL BOILER COMPANY, INC., is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania with its principal place of business in Pennsylvania which is doing business in the Commonwealth of Pennsylvania and in the Federal Eastern District of Pennsylvania.  At all times material hereto, Defendant, NEW YORKER STEEL BOILER COMPANY, INC., manufactured, produced and sold, either directly or indirectly, in the geographical area in which plaintiffs worked and/or to the employers of plaintiffs and/or to contractors on job sites on which plaintiffs worked, asbestos products.

(160)    Defendant, NICOLET, INC., formerly known as Nicolet Industries, Inc., sued in its corporate capacity and as successor by purchase of certain assets of Keasbey & Mattison's Asbestos Products Division, is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in Pennsylvania and is doing business in the Commonwealth of Pennsylvania and in the Federal Eastern District of Pennsylvania. At all times material hereto, Defendant, NICOLET, INC., formerly known as Nicolet Industries, Inc., and/or its predecessors including Keasbey & Mattison, mined, manufactured, produced and sold, either directly or indirectly, in the geographical area in which plaintiffs worked and/or to the employers of the plaintiffs and/or to contractors on job sites on which plaintiffs worked, asbestos products, including, but not limited to, 7M Cement, millboard, paper, sheet packing, cement boards, pipecovering and block including, but not limited to, Norriscell Corrugated Paper, Nicobestos, Nicospec, Nicosat, Nicolam, SBR Sheets, Kon-X, Nicoseal, as well as 85% Magnesia Pipecovering and Block, Zebra Pipecovering, Kaytherm Pipecovering and Block, Kaytherm 1700 Pipecovering, Hytemp Pipecovering and Block, Bestfeld

-66-

Case ID: 260300273
Control No.: 26035904

Pipecovering, Aircell Pipecovering and Block, and other asbestos products, including, but not limited to, asbestos gaskets, packing and sealing devices. At all times relevant hereto NICOLET was the alter ego, parent company, and sole stockholder and in full control of Nicolet Asbestos Mines, Ltd., which company mined, manufactured, processed, imported, converted, compounded, sold, supplied or delivered substantial amounts of asbestos and asbestos related materials for use, processing, or manufacturing in the Commonwealth of Pennsylvania and in the Federal Eastern District of Pennsylvania. At all times relevant hereto, this action is brought against NICOLET as the legal successor to Keasbey & Mattison based on one or more of the following factors: NICOLET's purchase of one or more of Keasbey & Mattison's division; NICOLET' s purchase of some or all of the assets of Keasbey & Mattison's industrial products division; NICOLET's purchase of land, buildings, machinery, equipment, inventory, business records, materials, supplies, processes, patents, and trademarks of Keasbey & Mattison; NICOLET's purchase of Keasbey & Mattison's good will and th right to use Keasbey's name; NICOLET's employment of some of Keasbey & Mattison's key personnel; NICOLET's continuing to manufacture some of Keasbey & Mattison's products, NICOLET holding itself out as and/or advertising itself has an ongoing enterprise of Keasbey & Mattison; NICOLET's continuation of the Keasbey & Mattison product line; and NICOLET's continuing sales to Keasbey & Mattison customers. This action is further brought against NICOLET as successor to Keasbey & Mattison as a matter of public policy under the product liability laws of the Commonwealth of Pennsylvania and in the Federal Eastern District of Pennsylvania. At all times relevant hereto NICOLET, INC. was the alter ego, parent company, and sole stockholder and in full control of Nicolet Asbestos Mines, Ltd. which company mined, manufactured, processed, imported, converted, compounded, sold, supplied or delivered substantial amounts of asbestos and asbestos related materials for use, processing, or manufacturing in the Commonwealth of Pennsylvania and in the Federal Eastern District of Pennsylvania.

(161)   Defendant, NIMCO BUS SALES AND BUS PARTS, is a corporation duly organized and existing under the laws of the State of New Jersey with its principal place of business at 252 Doremus Avenue, Newark, New Jersey. At all times material hereto, defendant NIMCO BUS SALES AND BUS PARTS produced, manufactured, distributed and/or sold, either directly or indirectly to the employers of the plaintiffs or its predecessors, asbestos friction products including, but not limited to, brake pads and brake shoes.

(162)   Defendant, NORCA CORPORATION, is a corporation organized and existing under the laws of the State of New York with its principal place of business in New York, which is doing business in the Commonwealth of

-67-

Case ID: 260300273
Control No.: 26035904

Pennsylvania and in the Federal Eastern District of Pennsylvania. At all times material hereto, Defendant, NORCA CORPORATION, was a manufacturer, distributor and supplier of asbestos products, including, but not limited to, products of some or all of the various other defendants named herein, which products were either directly or indirectly sold and/or supplied in the geographical area in which plaintiffs worked and/or to the employers of the plaintiffs and/or to contractors at jobsites on which plaintiffs worked, when they were exposed to said asbestos products.

(163)     Defendant, NORTH AMERICAN ASBESTOS COMPANY, is a corporation organized and existing under the laws of the State of Illinois, is a citizen of the State of Illinois, and at all times material to this Complaint, was doing business in the Commonwealth of Pennsylvania and in the Federal Eastern District of Pennsylvania. The defendant was dissolved but was the alter ego of defendants CAPE ASBESTOS FIBRES, LTS., CAPE ASBESTOS INDUSTRIES, LTD., CAPE INDUSTRIES, LTD., among others.

(164)     Defendant, NOSROC CORPORATION, sued in its corporate capacity and as successor in interest to G.W.H. Corson, is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania with a principal place of business c/o G & W.H. Corson, Inc., Joshua Road and Stenton Avenue, Plymouth Meeting, Pennsylvania 19462 which is doing business in the Commonwealth of Pennsylvania and the Federal Eastern District of Pennsylvania with a registered office situate at 123 South Broad Street, Philadelphia, Pennsylvania 19109. At all times material hereto, defendant, NOSROC CORPORATION, and its predecessors, including, but not limited to, G.W.H. Corson, was the sole distributor of the asbestos products mined, manufactured, produced, and sold by various of the defendants named herein, including, but not limited to, Ehret-Magnesia, Baldwin-Ehret-Hill, and Keene Corporation, including, but not limited to Kilboard, Superpowerhouse Cement, Powerhouse Cement, B.H. #1 Insulating Cement, PyroSpray, and other asbestos products, which products were either directly or indirectly sold and/or supplied in the geographical area in which plaintiffs worked and/or to the employers of the plaintiffs and/or to contractors at job sites on which plaintiffs worked, when he was exposed to said asbestos products.

(165)     Defendant, NUTURN CORPORATION, is a corporation duly organized and existing under the laws of the State of Tennessee with its principal place of business in at 570 Metroplex drive, Nashville, Tennessee which is doing business in the Commonwealth of Pennsylvania and in the Federal Eastern District of Pennsylvania. At all times material hereto, defendant, NUTURN CORPORATION, produced, manufactured, distributed, and/or sold, either directly or

-68-

Case ID: 260300273
Control No.: 26035904

indirectly to the employers of the plaintiffs, asbestos products including, but not limited to, brake linings, brake shoes, other friction products, World Bestos Transit Mix or Carlisle B33 Mix.  Defendant, NUTURN CORPORATION, is also sued as successor by purchase of the Brake Systems Division of Maremont Corporation in 1977.

(166)  Defendant NYCAL is a corporation organized and existing under the laws of New York with its principal place of business in New Jersey, which is doing business in the Commonwealth of Pennsylvania and in the Federal Eastern District of Pennsylvania.  At all times, it sold asbestos-containing friction products to which plaintiffs were exposed.

(167)  Defendant, OWENS-CORNING FIBERGLAS CORP., sued in its corporate capacity and as successor by purchase of the Kaylo Division of Owens-Illinois Glass Company, now known as Owens-Illinois, Inc., is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in Ohio and is doing business in the Commonwealth of Pennsylvania and in the Federal Eastern District of Pennsylvania.  At all times material hereto, Defendant, OWENS-CORNING FIBERGLAS CORP., and/or its predecessors, including, the Kaylo Division of Owens-Illinois Glass Company, now known as Owens-Illinois, Inc., manufactured, produced and sold, either directly or indirectly, in the geographical area in which plaintiffs worked and/or to the employers of the plaintiffs and/or to contractors on job sites on which plaintiffs worked, asbestos products, including, but not limited to, Kaylo Pipecovering and Block, Kaylo 20 Pipecovering and Block and 660 Cement.  Furthermore, No. 100 Asbestos Cement (hard finish), No. 303 Asbestos Cement, MW-50 Cement, No. 707 Insulating Cement, Thermotex-B Insulating Cement, and other asbestos products, including, but not limited to, asbestos gaskets, packing and sealing devices.  Defendants predecessor, Philip Carey Corporation, maintained a contracting unit that installed and/or repaired asbestos products in the vicinity in which plaintiffs worked during his employment.

(168)  Defendant, OWENS-ILLINOIS GLASS CO., is an Ohio Corporation with a principal place of business at 460 N. Gulph Road, King of Prussia, Pennsylvania and in the Federal Eastern District of Pennsylvania.  At all times material hereto, Defendant, OWENS-ILLINOIS GLASS CO., formerly known as Owens-Illinois Glass Company, manufactured, produced and sold, either directly or indirectly, in the geographical area in which plaintiffs worked and/or to the employers of the plaintiffs and/or to contractors on job sites on which plaintiffs worked, asbestos products.

(169)  Defendant, OWENS-ILLINOIS, INC., formerly known as Owens-Illinois Glass Company, is a corporation

Case ID: 260300273
Control No.: 26035904

organized and existing under the laws of the State of Ohio, with its principal place of business in Ohio and is doing business in the Commonwealth of Pennsylvania and in the Federal Eastern District of Pennsylvania. At all times material hereto, Defendant, OWENS-ILLINOIS, INC., formerly known as Owens-Illinois Glass Company, manufactured, produced and sold, either directly or indirectly, in the geographical area in which plaintiffs worked and/or to the employers of the plaintiffs and/or to contractors on job sites on which plaintiffs worked, asbestos products, including, but not limited to, Kaylo insulation material and Kaylo Pipecovering and Block.

(170)    Defendant, PARS MANUFACTURING COMPANY, sued in its corporate capacity and as a successor in interest to Pars Manufacturing Company, a proprietorship, and LAUGHTON PARSONS GASKET MANUFACTURING COMPANY, a proprietorship, is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania which is doing business in the Commonwealth of Pennsylvania and in the Federal Eastern District of Pennsylvania. At all times, materials hereto, Defendant, PARS MANUFACTURING COMPANY, and/or its predecessors manufactured, produced and sold, either directly or indirectly, in the geographical area in which plaintiffs worked and/or to the employers of the plaintiffs and/or to contractors on job sites on which plaintiffs worked, asbestos containing products, particularly high temperature ceiling gaskets, including but not limited to, folded gaskets, die cut gaskets, braided and twisted packings and rope, cloth and various textiles, woven and bolt hole tape, wick, tubing, blankets, curtains, gloves, "tadpole tape", sewed asbestos gaskets, industrial and marine brake linings and Teflon impregnated asbestos packings. In addition, Defendant, PARS MANUFACTURING COMPANY and/or its predecessors were manufacturers, distributors and suppliers of some or all of various other defendants named herein.

(171)    Defendant, PARSONS SALES COMPANY, INC., is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania, with its principal place of business in Pennsylvania, which is doing business in the Commonwealth of Pennsylvania and in the Federal Eastern District of Pennsylvania. At all times material hereto, PARSONS SALES COMPANY, INC., and/or its predecessors, manufactured, distributed and/or supplied asbestos products, either directly or indirectly, in the geographical area in which plaintiffs worked and/or to the employers of the plaintiffs and/or to contractors at job sites on which plaintiffs worked when they were exposed to said asbestos products.

(172)    Defendant, PEERLESS INDUSTRIES, INC., is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania with its principal place of

-70-

Case ID: 260300273
Control No.: 26035904

business in Pennsylvania which is doing business in the Commonwealth of Pennsylvania and in the Federal Eastern District of Pennsylvania. At all times material hereto, Defendant, PEERLESS INDUSTRIES, INC., manufactured, produced and sold, either directly or indirectly, in the geographical area in which plaintiffs worked and/or to the employers of plaintiffs and/or to contractors on job sites on which plaintiffs worked, asbestos products.

(173)    Defendant, PELTZ ROWLEY CHEMICALS COMPANY sued in its corporate capacity and as successor to George A. Rowley & Co., Inc., is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania with its principal place of business in Pennsylvania which is doing business in the Commonwealth of Pennsylvania and in the Federal Eastern District of Pennsylvania. At all times material hereto, Defendant, PELTZ ROWLEY CHEMICALS COMPANY and/or its predecessors, including George A. Rowley & Co., Inc., manufactured, produced and sold, either directly or indirectly, in the geographical area in which plaintiffs worked and/or to the employers of the plaintiffs and/or to contractors on job sites on which plaintiffs worked, asbestos and/or asbestos products.

(174)    Defendant, PENN CENTRAL CORPORATION is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania, whose address for purposes of service is IVB Building, 1700 Market Street, Philadelphia, Pennsylvania 19103. Penn Central Corporation is the corporation which arose out of the reorganization of the Penn Central Transportation Company and as such is liable for the Federal Employers' Liability Act claim of the plaintiffs against Penn Central Transportation Company, a common carrier by rail. PENN CENTRAL CORPORATION operated a railroad which employed certain plaintiffs.

(175)    Defendant, PENNSYLVANIA BRAKE BONDING, is a corporation duly authorized and existing under the laws of the Commonwealth of Pennsylvania and is a citizen of the Commonwealth of Pennsylvania with a principal place of business at 9001 Torresdale Avenue, Philadelphia, Pennsylvania which is doing business in the Commonwealth of Pennsylvania and in the Federal Eastern District of Pennsylvania. At all times material hereto, defendant, PENNSYLVANIA BRAKE BONDING, produced, manufactured, distributed and/or sold either directly or indirectly, to the employers of the plaintiffs and/or its predecessors, asbestos products including, but not limited to, asbestos containing friction products.

(176)    Defendant, PENN VALVE & FITTING CORPORATION, is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania with its principal place of business in Pennsylvania which is doing business in the

-71-

Case ID: 260300273
Control No.: 26035904

Commonwealth of Pennsylvania and in the Federal Eastern District of Pennsylvania. At all times material hereto, Defendant, PENN VALVE & FITTING CORPORATION, manufactured, produced and sold either directly or indirectly, in the geographical area in which plaintiffs worked and/or to the employers of the plaintiffs and/or to contractors on job sites on which plaintiffs worked, asbestos products including, but not limited to, mechanical seals and sealing devices, packing and gaskets.

(177)   Defendant, PFIZER INC., is a corporation organized and existing under the laws of the State of Connecticut with its principal place of business in New York which is doing business in the Commonwealth of Pennsylvania. and in the Federal Eastern District of Pennsylvania. At all times material hereto, PFIZER INC., manufactured, produced and sold, either directly or indirectly, in the geographical area in which plaintiffs and/or to contractors on job sites on which plaintiffs worked, asbestos products, including, but not limited to asbestos spray insulation.

(178)   Defendant, PITTSBURGH CORNING CORPORATION, sued in its corporate capacity and as successor by purchase of the Insulation Division of Union Asbestos and Rubber Company, now known as Unarco Industries, Inc., is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania, with a principal place of business in Pennsylvania and is doing business in the Commonwealth of Pennsylvania and in the Federal Eastern District of Pennsylvania. At all times material hereto, Defendant, PITTSBURGH CORNING CORPORATION, and/or its predecessors, including, Union Asbestos and Rubber Company, manufactured, produced and sold, either directly or indirectly, in the geographical area in which plaintiffs worked and/or to the employers of the plaintiffs and/or to contractors on job sites on which plaintiffs worked, asbestos products, including, but not limited to, Unibestos Pipecovering and Block.

(179)   Defendant, PORTER HAYDEN CO., is a corporation organized and existing under the laws of the State of Maryland, with its principal place of business in Maryland and is doing business in the Commonwealth of Pennsylvania and in the Federal Eastern District of Pennsylvania. At all times material hereto, Defendant, PORTER HAYDEN CO., manufactured, produced and sold, either directly or indirectly, in the geographical area in which plaintiffs worked and/or to the employers of the plaintiffs and/or to contractors on job sites on which plaintiffs worked, asbestos products, including, but not limited to, friction materials, asbestos gaskets, packing and sealing devices.

(180)   Defendant, PPG INDUSTRIES, is a corporation organized and existing under the laws of the

-72-

Case ID: 260300273
Control No.: 26035904

Commonwealth of Pennsylvania and is a citizen of the Commonwealth of Pennsylvania doing business in the Commonwealth of Pennsylvania and in the Federal Eastern District of Pennsylvania. At all times material hereto, Defendant, PPG INDUSTRIES, INC., as the one-half equitable owner of Pittsburgh-Corning Corporation, acquired the assets of Union Asbestos and Rubber Company in 1962 and, through Pittsburgh-Corning Corporation, manufactured, produced and sold, either directly or indirectly, in the geographical area in which plaintiffs worked and/or to the employers of the plaintiffs and/or to the employers of the plaintiffs and/or to contractors on job sites on which plaintiffs worked, as asbestos products, including, but not limited to, Unibestos Pipecovering. In addition, PPG Industries, Inc., is sued in its capacity as a manufacturer and/or distributor of "Pyrocal", an asbestos-containing insulation product, between 1968 and 1971.

(181)     Defendant, QUIGLEY COMPANY INC., is a subsidiary of Pfizer, Inc., and is a corporation organized and existing under the laws of the State of New York, with its principal place of business in New York which is doing business in the Commonwealth of Pennsylvania and in the Federal Eastern District of Pennsylvania. At all times material hereto, Defendant, QUIGLEY COMPANY, INC., a subsidiary of Pfizer, Inc., mined, manufactured, produced, sold and supplied, either directly or indirectly to the employers of the plaintiffs asbestos products including, but not limited to Insulag-AF.

(182)  Defendant QUINT CORPORATION is a corporation organized and existing under the laws of Pennsylvania, with its principal place of business in Pennsylvania, which is doing business in the Commonwealth of Pennsylvania and in the Federal Eastern District of Pennsylvania. At all times material hereto, Defendant, QUINT CORPORATION, a subsidiary of Pfizer, Inc., mined, manufactured, produced, sold and supplied, either directly or indirectly to the employers of the plaintiffs asbestos products.

(183)     Defendant, RAND MINES, LTD., is a corporation organized and existing under the laws of South Africa and at all times material to this Complaint was doing business in the Commonwealth of Pennsylvania and in the Federal Eastern District of Pennsylvania. This defendant is sued in its corporate capacity and as successor in interest to Cape Asbestos S.A. (Pty) Ltd., Amosa (Pty), Ltd., Cape Blue Mines (Pty), Ltd. and/or Egnep, Ltd.

(184)     Defendant, RAYMARK INDUSTRIES, INC., is a corporation organized and existing under the laws of the State of Connecticut, with its principal place of business in Connecticut and is doing business in the Commonwealth of Pennsylvania and in the Federal Eastern District of

-73-

Case ID: 260300273
Control No.: 26035904

Pennsylvania.  At all times material hereto, Defendant, RAYMARK INDUSTRIES INC., mined, manufactured, produced and sold, either directly or indirectly, in the geographical area in which plaintiffs worked and/or to the employers of the plaintiffs and/or to contractors on job sites on which plaintiffs worked, asbestos products, including, but not limited to, Allbestos Tape, Sealsafe Tape, Glassbestos Cloth and Tape, Gator Tape, Novatex Cloth and Fabric, Speedlag Cloth Adhesive and other cloth, asbestos rope, wick and yarn and fabrics, including, but not limited to, Terrybestos, Fluorobestos, Goldbestos, Micabestos, Novabestos, Polybestos, Pyrotex, Novatex, Rhinobestos, Silvabestos and Tribestos and other asbestos products, inclduing, but not limited to, asbestos gaskets, packing and sealing devices and asbestos paper, asbestos blankets, asbestos brakes, brake linings, brake blocks, brake discs and pads, clutch plates and other friction products.

(185)    Defendant, THE READING COMPANY is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania, whose address for purposes of service is 1 North 12th Street, Philadelphia, Pennsylvania 19107.  The Reading Company is the corporation which arose out of the reorganization of the Reading Company and as such is liable for the Federal Employer's Liability Act claim of the plaintiffs against the Reading Company, a common carrier by rail.  THE READING COMPANY operated a railroad which employed certain plaintiffs.

(186)    Defendant, RICHARD KLINGER COMPANY, is a corporation organized and existing under the laws of the State of Ohio and is a citizen and resident of the State of Ohio and at all times material hereto was doing business in the Commonwealth of Pennsylvania.  At all times material hereto, Defendant, RICHARD KLINGER COMPANY, manufactured, produced and sold, either directly or indirectly, in the geographical area in which plaintiffs worked and/or to the employers of the plaintiffs and/or to contractors on job sites on which plaintiffs worked, asbestos containing products.

(187)    Defendant, RILEY STOKER CORPORATION, sued in its corporate capacity, is a corporation organized and existing under the laws of the Commonwealth of Massachu-setts, with its principal place of business in Massachusetts which is doing business in the Commonwealth of Pennsylvania and in the Federal Eastern District of Pennsylvania.  At all times material hereto, Defendant, RILEY STOKER CORPORATION manufactured, produced and sold, either directly or indi-rectly, in the geographical area in which plaintiffs worked and/or to the employers of the plaintiffs and/or to contrac-tors on job sites on which plaintiffs worked, asbestos

-74-

Case ID: 260300273
Control No.: 26035904

containing products including, boilers, furnaces and other equipment which contained asbestos containing components.

(188)  Defendant R-M FRICTION MATERIALS COMPANY is a corporation organized and existing under the laws of the State of Connecticut, with its principal place of business in Connecticut and is doing business in the Commonwealth of Pennsylvania and in the Federal Eastern District of Pennsylvania.  At all times material hereto, Defendant, R-M FRICTION MATERIALS COMPANY, mined, manufactured, produced and sold, either directly or indirectly, in the geographical area in which plaintiffs worked and/or to the employers of the plaintiffs and/or to contractors on job sites on which plaintiffs worked, asbestos products, including, but not limited to, asbestos brakes, brake linings, brake blocks, brake discs and pads, clutch plates and other friction products.

(189)   Defendant, ROBERT A. KEASBEY CO. is a corporation organized and existing under the laws of a state other than the State of New Jersey or the Commonwealth of Pennsylvania, is a citizen and resident of a state other than the State of New Jersey or the Commonwealth of Pennsylvania, has its principal place of business in a state other than the State of New Jersey or the Commonwealth of Pennsylvania, and at all times material hereto was doing business in the Commonwealth of Pennsylvania and in the Federal Eastern District of Pennsylvania.  At all times material hereto, defendant, ROBERT A. KEASBEY CO. mined, manufactured, produced, sold and/or supplied, either directly or indirectly to the employer of the plaintiff, asbestos products.

(190)   Defendant, ROCK BESTOS CO.,  is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania and is a citizen and resident of the Commonwealth of Pennsylvania and at all times material hereto was doing business in the Commonwealth of Pennsylvania and in the Federal Eastern District of Pennsylvania. At all times material hereto, Defendant, ROCK BESTOS CO., mined, manufactured, produced and sold, either directly or indirectly to the employers of the plaintiffs at Fairless Hills, Pennsylvania, among other places, asbestos products including but not limited to asbestos insulated electric cables.

(191)   Defendant, ROCKWELL INTERNATIONAL, is a corporation duly organized and existing under the laws of the State of Delaware with its principal place of business at 600 Grant Street, Pittsburgh, Pennsylvania, which is doing business in the Commonwealth of Pennsylvania and in the Federal Eastern District of Pennsylvania.  At all times material hereto, defendant ROCKWELL INTERNATIONAL produced, manufactured, distributed and/or sold, either directly or

Case ID: 260300273
Control No.: 26035904

indirectly to Septa or its predecessors, and/or the employers of plaintiffs, asbestos friction products including , but not limited to, asbestos brakes, brake shoes, brake assemblies, brake linings and clutch plates.  In addition, plaintiffs were exposed to asbestos friction products used in GRUMMAN an/or flexible buses.  This defendant sold those asbestos friction products for use on GRUMMAN or Flexible buses.

(192)     Defendant, ROCK WOOL MFG. CO., is a corporation organized and existing under the laws of the State of Delaware, is a citizen and resident of the State of Delaware, has its principle place of business in the State of Delaware, and at all times material hereto was doing business in the Commonwealth of Pennsylvania and in the Federal Eastern District of Pennsylvania.  At all times material hereto, defendant, ROCK WOOL MANUFACTURING CO., manufactured, produced, sold and/or supplied, either directly or indirectly to the employer of the plaintiffs, asbestos products including, but not limited to Delta-Maid One Shot Insulating Cement and Delta-Maid Hi-Temp Master Insulating Cement.

(193)     Defendant, ROGERS CORPORATION is a corporation organized and existing under the laws of the State of Connecticut and at all times material hereto was conducting business in the Commonwealth of Pennsylvania and in the Federal Eastern District of Pennsylvania.  At all times material hereto, Defendant, ROGERS CORPORATION, manufactured, produced, mined, distributed and/or sold, and placed into the stream of commerce, either directly or indirectly to the employers of the plaintiff, and/or to sub-contractors on their job sites, asbestos products.

(194)     Defendant, ROYAL ELECTRIC SUPPLY CO., is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania and is a citizen and resident of the Commonwealth of Pennsylvania and at all times material hereto was doing business in the Commonwealth of Pennsylvania and in the Federal Eastern District of Pennsylvania. At all times material hereto, Defendant, ROYAL ELECTRIC SUPPLY CO., mined, manufactured, produced and sold, either directly or indirectly to the employers of the plaintiffs at Fairless Hills, Pennsylvania, among other places, asbestos products including but not limited to insulation block diatomoceous silicia, brake linings including but not limited to those manufactured by Cutler Hammer, and industrial brake blocks including but not limited to those manufactured by Clark Control.

(195)     Defendant SAGER CORPORATION is a corporation organized and existing under the laws of Illinois with a principal place of business in Illinois which is doing business in the Commonwealth of Pennsylvania and in

-76-

Case ID: 260300273
Control No.: 26035904

the Federal Eastern District of Pennsylvania.  At all times material hereto, Defendant, SAGER CORPORATION, manufactured, produced, mined, distributed and/or sold, and placed into the stream of commerce, either directly or indirectly to the employers of the plaintiff, and/or to sub-contractors on their job sites, asbestos products and materials, including, but not limited to, asbestos gloves, to which plaintiffs were exposed.

(196)    Defendant, SEPCO CORPORATION, is a corporation organized and existing under the laws of the State of Alabama with its principal place of business in Alabama which is doing business in the Commonwealth of Pennsylvania and in the Federal Eastern District of Pennsylvania.  At all times material hereto, Defendant, SEPCO CORPORATION manufactured, produced and sold, either directly or indirectly in the geographical area in which plaintiffs worked and/or to employers of plaintiffs and/or to contractors on job sites on which plaintiffs worked asbestos products including but not limited to insulation, gaskets, gasketing materials and packing.

(197)    Defendant, SID HARVEY MIDATLANTIC, INC., is a Pennsylvania Corporation with its principal place of business located in King of Prussia, Pennsylvania, which is doing business in the Commonwealth of Pennsylvania and in the Federal Eastern District of Pennsylvania.  At all times material hereto, Defendant, SID HARVEY MIDATLANTIC, INC., manufactured, produced, mined, distributed and/or sold, and placed into the stream of commerce, either directly or indirectly to the employers of the plaintiff, and/or to sub-contractors on their job sites, asbestos products.

(198)    Defendant, SMITH OF PHILADELPHIA, is a corporation duly organized and existing under the laws of the Commonwealth of Pennsylvania and is a citizen of the Commonwealth of Pennsylvania with a principal place of business at 811 East Cayuga Street, Philadelphia, Pennsylvania, which is doing business in the Commonwealth of Pennsylvania and in the Federal Eastern District of Pennsylvania. At all times material hereto, said corporation distributed asbestos board and insulating compound and asbestos friction products including but not limited to brakes, brake linings, disc pads, etc., and predecessors for use at the Courtland Depot and other depots.

(199)    Defendant, SMS AUTOMOTIVE PRODUCTS, is a Pennsylvania corporation with an office at 4819 Langdon Street, Philadelphia, PA 19124, which does business in the Commonwealth of Pennsylvania and in the Federal Eastern District of Pennsylvania.  At all times material hereto, Defendant SMS AUTOMOTIVE PRODUCTS INCORPORATED, manufactured, produced and sold, either directly or indirectly in the geographic area in which plaintiffs worked and/or to the

-77-

Case ID: 260300273
Control No.: 26035904

employers of the plaintiffs and/or to contractors on job sites on which plaintiffs worked, asbestos products, including but not limited to, asbestos brakes, brake linings, brake blocks, brake discs and pads, clutch facings and other friction products.

(200)   Defendant, SOSMETAL PRODUCTS, INC. is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania, is a citizen and resident of the Commonwealth of Pennsylvania, has its principal place of business in the Commonwealth of Pennsylvania and at all times material hereto was doing business in the Commonwealth of Pennsylvania and in the Federal Eastern District of Pennsylvania.   At all times material hereto defendant, SOSMETAL PRODUCTS INC., manufactured, produced, sold and supplied, either directly or indirectly or through its predecessors, to the employer of the plaintiffs, asbestos automotive products including, but not limited to brakes, brake linings, clutches, clutch facings, gaskets and other friction materials.

(201)   Defendant, SOUTHEASTERN PENNSYLVANIA TRANSPORTATION AUTHORITY is a transportation authority created as an agency and instrumentality of the Commonwealth of Pennyslvania by the Metropolitan Transportation Authority Act of 1963, whose principal place of business and address for process of service is 130 S. 9th Street, 5th Floor, Philadelphia, Pennsylvania 19107.   SOUTHEASTERN PENNSYLVANIA TRANSPORTATION AUTHORITY operated a railroad which employed certain plaintiffs.

(202)   Defendant, SOUTHERN TEXTILE CORP., formerly known as Southern Asbestos Company, sued in its corporate capacity and as a subsidiary of H. K. Porter Co., Inc., is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in North Carolina and is doing business in the Commonwealth of Pennsylvania and in the Federal Eastern District of Pennsylvania.   At all times material hereto, Defendant, SOUTHERN TEXTILE CORP., and/or its predecessors, including, Southern Asbestos Company, and/or its successors, manufactured, produced and sold, either directly or indirectly, in the geographical area in which plaintiffs worked and/or to the employers of the plaintiffs and/or to contractors on job sites on which plaintiffs worked, asbestos products, including, but not limited to, cloth, tape, yarn/cord, felt, rope/wick, tubing, amosite, blankets such as Portersite and Porterlag, and other cloth such as Thermagard, Cleangard, Covergard, Flamegard, Guardian, Heatgard, Splashgard, Weldgard, Insulgard, and Soundgard.

(203)   Defendant, SPECIAL MATERIALS, INC., is a corporation organized and existing under the laws of the State of Wisconsin, with its principal place of business in

-78-

Case ID: 260300273
Control No.: 26035904

Wisconsin which is doing business in the Commonwealth of Pennsylvania and in the Federal Eastern District of Pennsylvania. At all times material hereto, Defendant, SPECIAL MATERIALS, INC., has been and/or is now engaged, directly or indirectly, in the mining, milling, manufacturing, producing, processing, compounding, converting, selling, merchandising, supplying, distributing and/or otherwise placing in the stream of commerce, asbestos, milled asbestos, raw asbestos, asbestos fiber, mined asbestos, processed asbestos, material containing asbestos, including, but not limited to, packaged or bagged asbestos, asbestos products and compounds (hereinafter collectively referred to as "asbestos products") in the geographical area in which plaintiffs worked and/or to employers of plaintiffs.

(204)    Defendant, SPRAYON RESEARCH CORPORATION is a corporation organized and existing under the laws of the State of Florida, is a citizen and resident of the State of Florida, and at all times material hereto was doing business in the State of New Jersey and in the Commonwealth of Pennsylvania and in the Federal Eastern District of Pennsylvania. At all times material hereto, defendant, SPRAYON RESEARCH CORPORATION, manufactured, produced, sold and/or supplied either directly or indirectly to the employer of the plaintiffs, asbestos products, including, but not limited to Sprayon.

(205)    Defendant, STRAHMAN VALVES, INC., is a corporation organized and existing under the laws of the State of New Jersey with its principal place of business in New Jersey and is doing business in the Commonwealth of Pennsylvania and the Federal Eastern District of Pennsylvania. At all times material hereto, defendant, STRAHMAN VALVES, INC., manufactured, produced, sold and/or supplied either directly or indirectly to the employer of the plaintiffs, asbestos products.

(206)    Defendant, STEARN'S DIV. F.M.C. CORP., is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania and is a citizen and resident of the Commonwealth of Pennsylvania and at all times material hereto was doing business in the Commonwealth of Pennsylvania and in the Federal Eastern District of Pennsylvania. At all times material hereto, Defendant, STEARN'S DIV. F.M.C. CORP., mined, manufactured, produced and supplied, either directly or indirectly to the employers of the plaintiffs at Fairless Hills, Pennsylvania, among other places, asbestos products including but not limited to asbestos clutches and brakes.

(207)    Defendant, STUDEBAKER-WORTHINGTON, INC. is a corporation organized and existing under the State of Delaware, with its principal place of business in Delaware. Studebaker-Worthingotn, Inc. acquired the assets, the

-79-

Case ID: 260300273
Control No.: 26035904

product line(s), and assumed the liabilities of Alco Products, Inc., Worthington Pump & Machinery Corporation, Worthington Corporation and American Locomotive Company and/or was doing business at all material times as that corporation and/or was the alter-ego of Alco Products, Inc., Worthington Pump & Machinery Corporation, Worthington Corporation and American Locomotive Company and/or had exerted such dominion and control over Alco Products, Inc., Worthington Pump & Machinery Corporation, Worthington Corporation and American Locomotive Company as to make it its agent or instrumentality and/or held a majority of the common stock of Alco Products, Inc., Worthington Pump & Machinery Corporation, Worthington Corporation adn American Locomotive Company and/or at material times hereto, Alco Products, Inc., Worthington Pump & Machinery Corporation, Worthington Corporation and American Locomotive Company was a wholly-owned subsidiary of Studebaker-Worthington, Inc. and/or is the predecessor-in-interest to Studebaker-Worthington, Inc. and/or was doing business at all material times as said corporations, within the State of Delaware, and in the Commonwealth of Pennsylvania and in the Federal Eastern District of Pennsylvania, with its service of process at c/o Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801.

(208)    Defendant, THERMAL MATERIALS CORP., is a corporation organized and existing under the laws of the State of New Jersey with its principal place of business in New Jersey and is doing business in the Commonwealth of Pennsylvania and in the Federal Eastern District of Pennsylvania. At all times material hereto, defendant THERMAL MATERIALS CORP., manufactured, produced and sold, either directly or indirectly, in the geographical area in which plaintiffs worked and/or to the employers of the plaintiffs and/or to the contractors on job sites which plaintiffs worked, asbestos products.

(209)    Defendant, TNT LIQUIDATING COMPANY, sued in its own right and as successor to MELRATH SUPPLY AND GASKET CO., INC., and TANNETICS, INC., is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania with its principal place of business in Pennsylvania which is doing business in the Commonwealth of Pennsylvania and in the Federal Eastern District of Pennsylvania. At all times material hereto, defendant TNT LIQUIDATING COMPANY and/or its predecessor MELRATH SUPPLY AND GASKET CO., INC., and for TANNETICS, INC., manufactured, produced and sold, either directly or indirectly, in the geographical area in which plaintiffs worked and/or to the employers of the plaintiffs and/or to the contractors on job sites which plaintiffs worked, asbestos products, including but not limited to, mechanical seals and sealing devices, packing and gaskets. TNT LIQUIDATING COMPANY filed Articles of Dissolution on January 31, 1985.

Case ID: 260300273
Control No.: 26035904

(210)    Defendant, TRANSCO, INC., is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in Illinois, which is doing business in the Commonwealth of Pennsylvania and in the Federal Eastern District of Pennsylvania.  At all times material hereto, TRANSCO, INC., manufactured, distributed and/or supplied asbestos products, either directly or indirectly, in the geographical area in which plaintiffs worked and/or to the employers of the plaintiffs and/or to contractors at job sites on which plaintiffs worked when they were exposed to said asbestos products.

(211) Defendant, TRANSVAAL CONSOLIDATED LAND & EXPLORATION CO., LTD. is a foreign corporation organized and existing under the laws of a jurisdiction other than the State of New Jersey or the Commonwealth of Pennsylvania, has its principal place of business in Johannesburg, South Africa and at all times material hereto was doing business in the State of New Jersey and in the Commonwealth of Pennsylvania and in the Federal Eastern District of Pennsylvania.  It also maintains an office at, and does business through defendant Charter Consolidated's headquarters in London, England.  In June of 1979 the defendant Transvaal Consolidated purchased the assets and liabilities of these members of the Cape Industries Group who mined and shipped asbestos.  Defendant Transvaal Consolidated is the alter ego and is the successor to the Cape Industries Group, North American Asbestos Corp., and Associated Minerals Corp., and is responsible for their tortious acts and omissions by virtue of the fact that it directed their policies and actions in a manner and/or for the purpose of committing a fraud, circumventing the law and/or otherwise defeating the ends of justice.

(212)    Defendant, TURNER ASBESTOS FIBRES, LTD., is a corporation organized and existing under the laws of England with its principal place of business at 20 St. Mary's Parsonage, Manchester, M3, 2NL, England.  At all times material hereto, Defendant, TURNER ASBESTOS FIBRES, LTD., manufactured, distributed and/or supplied asbestos products, either directly or indirectly, in the geographical area in which plaintiffs worked and/or to the employers of the plaintiffs and/or to contractors at job sites on which plaintiffs worked when they were exposed to said asbestos products.

(213)    Defendant, TURNER & NEWALL, LTD., including, but not limited to, any of its affiliated companies and or its former subsidiaries, and including, but not limited to, its subsidiary and mere alter ego at certain times material hereto, Keasbey & Mattison, is a corporation organized and existing under the laws of Great Britain, located at 20 St. Mary's Parsonage, Manchester, England M22-EA, and at all times material to this Complaint, was

-81-

Case ID: 260300273
Control No.: 26035904

doing business in the Commonwealth of Pennsylvania and in the Federal Eastern District of Pennsylvania. At all times hereto, Defendant, TURNER & NEWALL LTD., and/or its affiliated companies and/or its subsidiaries including, Keasbey & Mattison, mined, manufactured, produced and sold, either directly or indirectly, in the geographical area in which plaintiffs worked and/or to the employers of the plaintiffs and/or to contractors on job sites on which plaintiffs worked, asbestos products, including, but not limited to, raw asbestos and "limpet" spray asbestos. At all times relevant hereto TURNER & NEWALL, LTD. was the alter ego, parent company, and sole stockholder and in full control of Keasbey & Mattison which company mined, manufactured, processed, imported, converted, compounded, sold, supplied or delivered substantial amounts of asbestos and asbestos related materials for use, processing, or manufacturing in the Commonwealth of Pennsylvania.

(214)    Defendant, UNION CARBIDE CORPORATION, is a corporation organized and existing under the laws of the State of New York, with its principal place of business in * and is doing business in the Commonwealth of Pennsylvania and in the Federal Eastern District of Pennsylvania. At all times material hereto, Defendant, UNION CARBIDE CORPORATION, manufactured, produced and sold, either directly or indirectly, in the geographical area in which plaintiffs worked and/or to the employers of the plaintiffs and/or to contractors on job sites on which plaintiffs worked, asbestos products, including, but not limited to, asbestos brakes, brake linings, brake blocks, brake discs and pads, clutch plates and other friction products.

(215)    Defendant, UNIROYAL, INC., is a corporation organized and existing under the laws of the State of New Jersey, with its principal place of business in * and is doing business in the Commonwealth of Pennsylvania and in the Federal Eastern District of Pennsylvania. At all times material hereto, Defendant, UNIROYAL, INC., manufactured, produced and sold, either directly or indirectly, in the geographical area in which plaintiffs worked, and/or to the employers of the plaintiffs and/or to contractors on job sites on which plaintiffs worked, asbestos products, including, but not limited to, asbestos brakes, brake linings, brake blocks, brake discs and pads, clutch plates and other friction products, and asbestos cloth.

(216)    Defendant, UNITED STATES GYPSUM COMPANY, is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in Illinois which is doing business in the Commonwealth of Pennsylvania and in the Federal Eastern District of Pennsylvania. At all times material hereto, Defendant, UNITED STATES GYPSUM COMPANY, manufactured, produced and sold, either directly or indirectly, in the geographical area in

-82-

Case ID: 260300273
Control No.: 26035904

which plaintiffs worked and/or to the employers of the plaintiffs and/or to contractors on job sites on which plaintiffs worked, asbestos products, including, but not limited to, Accoustone, Firecode Spray, K-Fac 19 block, textures, joint compounds, plasters, toppings, spackle and Red Top products.

(217)     Defendant, UNITED STATES MINERAL PRODUCTS COMPANY, is a corporation organized and existing under the laws of the State of New Jersey with its principal place of business in New Jersey which is doing business in the Commonwealth of Pennsylvania and in the Federal Eastern District of Pennsylvania.  At all times material hereto, Defendant, UNITED STATES MINERAL PRODUCTS COMPANY, mined, manufactured, produced and sold either directly or indirectly, in the geographical area in which plaintiffs worked and/or to the employers of the plaintiffs and/or to contractors on job sites on which plaintiffs worked, asbestos products, including but not limited to CAFCO and other asbestos spray products.

(218)     Defendant, UNIVERSAL INSULATION COMPANY, is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania, Pennsylvania with its principal place of business in Pennsylvania, and is doing business in the Commonwealth of Pennsylvania, and in the Federal Eastern District of Pennsylvania.  At all times material hereto, Defendant, UNIVERSAL INSULATION COMPANY, was a manufacturer, distributor and supplier of asbestos products, including, but not limited to, products of some or all of the various other defendants named herein, including, but not limited to, as sole distributor of Johns-Manville Products in one of the geographical areas in which plaintiffs worked, which products were either directly or indirectly sold and/or supplied in the geographical area in which plaintiffs worked and/or to the employers of the plaintiffs and/or to contractors at job sites on which plaintiffs worked, when they were exposed to said asbestos products.

(219)     Defendant, U.S. BRAKELINING CORP., is a corporation organized and existing under the laws of the State of Florida and is a citizen of the State of Florida with its principal place of business in the State of Florida. At all times material hereto, Defendant U.S. BRAKELINING, has been and/or is now engaged, directly or indirectly, in the mining, milling, manufacturing, producing, processing, compounding, converting, selling, merchandising, supplying, distributing and/or otherwise placing in the stream of commerce, asbestos products, including asbestos-containing friction materials, in the geographic area in which plaintiffs worked and/or to employers of plaintiffs.

Case ID: 260300273
Control No.: 26035904

(220)    Defendant, VERMONT ASBESTOS GROUP, INC., is a corporation organized and existing under the laws of the State of Vermont, having its principal place of business in the State of Vermont which is doing business in the Commonwealth of Pennsylvania and in the Federal Eastern District of Pennsylvania.  At all times material hereto, Defendant VERMONT ASBESTOS GROUP, INC., during all times material to this Complaint, and for a long time prior thereto, has been and/or is now engaged, directly or indirectly, in the mining, milling, manufacturing, producing, processing, compounding, converting, selling, merchandising, supplying, distributing and/or otherwise placing in the stream of commerce, asbestos, milled asbestos, raw asbestos, asbestos fiber, mined asbestos, processed asbestos, material containing asbestos, including, but not limited to, packaged or bagged asbestos, asbestos products and and compounds in the geographic area in which plaintiffs worked and/or to employers of plaintiffs.

(221)    Defendant, WAGNER ELECTRIC COMPANY, is a corporation duly authorized and existing under the laws of the State of New Jersey with its principal place of business at 100 Misty Lane, Parsippany, New Jersey, which is doing business in the Commonwealth of Pennsylvania and in the Federal Eastern District of Pennsylvania.  At all times material hereto, defendant, WAGNER ELECTRIC COMPANY, manufactured, produced, distributed and/or sold, either directly or indirectly, to the employers of the plaintiffs and/or its predecessors, including, but not limited to, asbestos friction products.

(222)    Defendant, WARREN BALDERSTON, is a business organized and existing under the laws of the State of New Jersey and is a citizen and resident of the State of New Jersey and at all times material hereto was doing business in the Commonwealth of Pennsylvania and in the Federal Eastern District of Pennsylvania.  At all times material hereto, Defendant, WARREN BALDERSTON, mined, manufactured, produced and sold, either directly or indirectly to the employers of the plaintiffs at Fairless Hills, Pennsylvania, among other places, asbestos products including but not limited to Insulation Felt 50 Waterproof Asbestos.

(223)    Defendant, WEIL-McLAIN COMPANY, a division of THE MARLEY COMPANY which is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in Kansas which is doing business in the Commonwealth of Pennsylvania and in the Federal Eastern District of Pennsylvania.  At all times material hereto, Defendant, WEIL-McLAIN COMPANY, manufactured, produced and sold, either directly or indirectly, in the geographical area in which plaintiffs worked

-84-

Case ID: 260300273
Control No.: 26035904

and/or to the employers of plaintiffs and/or to contracttors on job sites on which plaintiffs worked, asbestos products.

(224)    Defendant, WEINSTEIN SUPPLY COMPANY, is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania with its principal place of business at Moreland & Davisville Roads, Willow Grove, PA 19090 which is doing business in the Commonwealth of Pennsylvania and in the Federal Eastern District of Pennsylvania.  At all times material hereto, defendant, WEINSTEIN SUPPLY COMPANY, manufactured, produced and/or sold, either directly, in the geographical area in which plaintiffs worked and/or to the employers of the plaintiffs and/or to contractors on job sites on which plaintiffs worked, asbestos products, including, but not limited to plumbing supplies and materials that contained asbestos to which plaintiffs were exposed.

(225)    Defendant, WESTINGHOUSE ELECTRIC CORPORATION, sued in its corporate capacity and as parent of Westinghouse Canada, Inc., and including, but not limited to, its subsidiary, Westinghouse Air Brake Co., is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania, and is a citizen of the Commonwealth of Pennsylvania doing business in the Commonwealth of Pennsylvania and in the Federal Eastern District of Pennsylvania.  At all times material hereto, Defendant, WESTINGHOUSE ELECTRIC CORPORATION, and/or its predecessors and/or its subsidiaries, including, Westinghouse Air Brake Co., manufactured, produced and sold, either directly or indirectly, in the geographical area in which plaintiffs worked and/or to the employers of the plaintiffs and/or to contractors on job sites on which plaintiffs worked, asbestos products, including, but not limited to, asbestos brakes, brake linings, brake blocks, brake discs and pads, clutch plates and other friction products, and asbestos cloth, canvas and other products.

(226)    Defendant, WEST PHILADELPHIA ELECTRIC SUPPLY COMPANY, is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania and is a citizen and resident of the Commonwealth of Pennsylvania and at all times material hereto was doing business in the Commonwealth of Pennsylvania and in the Federal Eastern District of Pennsylvania.  At all times material hereto, Defendant, WEST PHILADELPHIA ELECTRIC SUPPLY COMPANY, mined, manufactured, produced sold and supplied, either directly or indirectly to the employers of the plaintiffs at Fairless Hills, Pennsylvania, among other places, asbestos products including but not limited to brake linings, clutches and electrical insulation.

(227)    Defendant, WHEELING BRAKE BLOCK MANUFACTURING COMPANY, is a corporation organized and existing

-85-

Case ID: 260300273
Control No.: 26035904

under the laws of the State of Virginia with its principal place of business in the State of Virginia. At all times material hereto, defendant, WHEELING BRAKE BLOCK MANUFACTURING COMPANY, manufactured, produced and/or sold, either directly, in the geographical area in which plaintiffs worked and/or to the employers of the plaintiffs and/or to contractors on job sites on which plaintiffs worked, asbestos products.

(228)    Defendant, W.I.C.K., INC. is a corporation organized and existing under the laws of the State of Michigan, is a citizen and resident of the State of Michigan, has its principle place of business in the State of Michigan, and at all times material hereto was doing business in the Commonwealth of Pennsylvania and in the Federal Eastern District of Pennsylvania. Defendant, W.I.C.K., INC. mined, manufactured, produced, sold and/or supplied, either directly or indirectly to the employer of the plaintiffs, asbestos products.

(229)    Defendant, WILMINGTON SUPPLY COMPANY OF PENNSYLVANIA, INC., is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania with its principal place of business in Pennsylvania which is doing business in the Commonwealth of Pennsylvania and in the Federal Eastern District of Pennsylvania. At all times material hereto, Defendant, WILMINGTON SUPPLY COMPANY OF PENNSYLVANIA, INC., manufactured, produced and sold, either directly or indirectly, in the geographical area in which plaintiffs worked and/or to the employers of plaintiffs and/or to contractors on job sites on which plaintiffs worked, asbestos products.

(230)    Defendant, W.R. GRACE CO., INC., is a corporation organized and existing under the laws of the State of Connecticut with a principal place of business in New York which is doing business in the Commonwealth of Pennsylvania and the Federal Eastern District of Pennsylvania. At all times material hereto, Defendant, W.R. GRACE CO., INC., manufactured, produced and/or sold, either directly or indirectly, in the geographical area in which plaintiffs worked and/or to the employers of the plaintiffs and/or to contractors on job sites on which plaintiffs worked, asbestos products, including but not limited to, asbestos spray insulation known as Zonalite, Spraytex and other names.

(231)    Defendant, YORK INDUSTRIES CORP., formerly known as York Insulation Company, is a corporation organized and existing under the laws of the State of New Jersey with a registered agent located in New Jersey, which is doing business in the Commonwealth of Pennsylvania and the Federal Eastern District of Pennsylvania. At all times material hereto, Defendant, YORK INDUSTRIES, INC and/or its

-86-

Case ID: 260300273
Control No.: 26035904

predecessor, York Insulation Company, manufactured, produced and/or sold, either directly or indirectly, in the geographical area in which plaintiffs worked and/or to the employers of the plaintiffs and/or to contractors on job sites on which plaintiffs worked, asbestos products including but not limited to aircell materials.

(232)    Defendant, YORK-SHIPLEY, INC., a division of ROBINTECH, INC., which is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania with its principal place of business in Pennsylvania which is doing business in the Commonwealth of Pennsylvania and in the Federal Eastern District of Pennsylvania.  At all times material hereto, Defendant, YORK-SHIPLEY, INC., directly or indirectly, in the geographical area in which plaintiffs worked and/or to the employers of plaintiffs and/or to contractors on job sites on which plaintiffs worked, asbestos products.

(b) Defendants who are successor corporations have assumed the assets and liabilities of their predecessors and they are responsible for the liabilities of their predecessors, both as to compensatory damages and as to punitive damages.  As used in this Complaint, "defendant(s)" includes, unless expressly stated to the contrary above,  all predecessors for whose actions plainitffs claim the named defendant(s) is(are) liable.

5.    (a)  At all times material hereto, defendants and/or their predecessors acted through their agents, servants or employees, who were acting within the scope of their employment on the business of the defendants.

(b)  The defendants are all corporations, companies or other business entities, which, during all times material hereto, and for a long time prior thereto, have been and/or are now engaged, directly or indirectly, in the mining, milling, manufacturing, producing, processing, compounding, converting, selling, merchandising, supplying, distributing and/or otherwise placing in the stream of commerce, asbestos, material containing asbestos, asbestos products and asbestos compounds (hereinafter collectively referred to as "asbestos products").  The term "asbestos products," for the purposes of this action, shall include asbestos fiber in any form and manufactured or finished products containing asbestos.

## COUNT I - NEGLIGENCE AND OUTRAGEOUS CONDUCT

6.    Plaintiffs hereby incorporate by reference paragraphs 1 through 5 inclusive, as if each of said paragraphs were set forth fully hereunder.

-87-

Case ID: 260300273
Control No.: 26035904

7.    At all times material hereto, the asbestos products mined, manufactured, produced, processed, compounded, converted, sold, merchandised, supplied, distributed and/or otherwise placed in the stream of commerce by the defendants which the plaintiffs continually worked with, used, handled, and were caused to come into contact with and be exposed to were under the exclusive control of the defendants and, accordingly, plaintiffs invoke the Doctrines of Exclusive Control and Res Ipsa Loquitur.

8.    At all times material hereto, defendants knew or should and/or could have known that their asbestos products, as set forth above and in their ordinary and foreseeable use would be used in connection with installation of insulation in new construction, would be used for installation of insulation in reconstruction and repair, would be used in the manufacture of asbestos products or would be used in a variety of work settings,  would be ripped out and/or removed during reconstruction and repair (and that such ripping would initially cause large quantities of asbestos dust and fibers to be released into the atmosphere of the work area for extended periods of time, to be later followed by the additional dust and fibers to be released into the atmosphere of the same work area upon the application of new asbestos products) and that asbestos dust released by those products during their intended and foreseeable use would be brought home by asbestos workers on their work clothes and tools, all of which defendants knew or should have known created hazardous and unsafe work areas and risk to the health of plaintiffs and others similarly situated.

9.    At all times material hereto, defendants mined, manufactured, produced, processed, compounded, converted, sold, merchandised, distributed, supplied, and/or otherwise placed in the stream of commerce the said asbestos products, all of which the defendants knew, or in the exercise of ordinary care should and/or could have known, were inherently defective, ultrahazardous, dangerous, deleterious, poisonous and otherwise highly harmful to the plaintiffs, and to other persons similarly situated.

10.    At all times material hereto, plaintiffs, and other persons similarly situated in the general community, did not know of the nature and extent of the danger to their lungs, respiratory system, heart, other bodily parts including bone and tissue, and their general health that would result from their contact with and exposure to the defendants' asbestos products and to the inhalation of the asbestos dust and fibers resulting from the ordinary and foreseeable use of said asbestos products; and, at all times material hereto, each of the defendants knew, should have known, or could have reasonably determined that the plaintiffs, and other persons similarly situated, would be in contact with and be exposed to the defendants' asbestos

-88-

Case ID: 260300273
Control No.: 26035904

products and to the inhalation of the asbestos dust and fibers resulting from the ordinary and foreseeable use of said asbestos products; and, despite such facts, defendants, individually, jointly and severally, as part of the conspiracy as alleged herein and/or as a result of tacit agreement or cooperation and/or as a result of industry-wide standards or practice:

(a) mined, manufactured, produced, processed, compounded, converted, sold, supplied, merchandised, distributed, and/or otherwise placed in the stream of commerce, asbestos products which defendants knew, or in the exercise of ordinary care should and/or could have known, were inherently defective, dangerous, deleterious, ultrahazardous, poisonous and otherwise highly harmful to plaintiffs, and to other persons similarly situated;

(b) affirmatively misrepresented to plaintiffs and other members of the public in advertising, labels and otherwise that their asbestos products were safe in their ordinary and forseeable use, which material misrepresentation induced plaintiffs to expose themselves to hazards;

(c) failed to take any reasonable precautions or to exercise reasonable care to adequately or sufficiently warn plaintiffs, and other persons similarly situated, of the risks, dangers and harm to which they were exposed by continuous work with, contact with, use, handling, and exposure to defendants' asbestos products and the inhalation of the asbestos dust and fibers resulting from the ordinary and foreseeable use of said asbestos products;

(d) failed and omitted to provide the plaintiffs, and other persons similarly situated, with the knowledge of reasonably safe and sufficient safeguards, wearing apparel and proper safety equipment and appliances necessary to protect them from being injured, poisoned, disabled, killed, or otherwise harmed, by working with, using, handling, coming into contact with, and being exposed to the defendants' asbestos products and the inhalation of the asbestos dust and fibers resulting from the ordinary and foreseeable use of said asbestos products;

(e) failed and omitted to place warnings, or adequate and sufficient warnings, on the containers of the said asbestos products regarding the risks, dangers, and harm therefrom and the precautions necessary to make said asbestos products safe for their ordinary and foreseeable use by plaintiffs and other persons similarly situated in the general community;

(f) failed to package the said asbestos products so that, in the ordinary and foreseeable use and handling thereof, the plaintiffs, and other persons similarly

-89-

Case ID: 260300273
Control No.: 26035904

situated, would not come into contact with and be exposed to the inhalation of the asbestos dust and fibers from said asbestos products;

(g)   failed to take reasonable, sufficient and proper precautions reasonably calculated to reach such persons as the plaintiffs, and other persons similarly situated in the general community, to warn them of the inherently dangerous, deleterious, ultrahazardous, poison-ous, and otherwise highly harmful effects of the inhalation of the asbestos dust and fibers resulting from the ordinary and foreseeable use of the defendants' asbestos products and to instruct them in the proper and safe use and handling of said asbestos products;

(h)   failed to take any reasonable, sufficient and proper precautions or to exercise reasonable care to protect the plaintiffs, and other persons similarly situated, from harm and danger resulting from working with, using, han-dling, coming into contact with and being exposed to the defendants' asbestos products and the inhalation of the asbestos dust and fibers from the ordinary and foreseeable use of said asbestos products;

(i)   failed to adopt and enforce a safe, suffi-cient and proper plan and method of working with, using, handling, and coming into contact with and being exposed to defendants' asbestos products so that plaintiffs, and other persons similarly situated, would not inhale the asbestos dust and fibers resulting from the ordinary and foreseeable use of said asbestos products;

(j)   failed to adequately test their respective asbestos products before offering them for sale and use so that plaintiffs, and other persons similarly situated, would not inhale the asbestos dust and fibers resulting from the ordinary and foreseeable use of said asbestos products;

(k)   failed to render such asbestos products safe or to provide proper and sufficient safeguards for the use and handling thereof so that plaintiffs, and other persons similarly situated, would not inhale the asbestos dust and fibers resulting from the ordinary and foreseeable use of said asbestos products;

(l)   failed to remove and recall said asbestos products from the stream of commerce and marketplace upon ascertaining that said asbestos products would cause asbestosis, scarred lungs, respiratory disorders, cardiovascular disorders, mesothelioma, lung cancer, other cancers and other injuries, some or all of which are perma-nent and may be fatal;

-90-

Case ID: 260300273
Control No.: 26035904

(m)    failed to comply with the Federal Hazardous Substance Act, 15 U.S.C. _1261 et seq;

(n)    failed to advise the plaintiffs, and others similarly situated in the general community, whom the defendants knew and/or should have and/or could have known had been exposed to long-term inhalation of the asbestos dust and fibers resulting from the ordinary and foreseeable use of said asbestos products, to cease all future exposure to the inhalation of all types of other fumes, smoke, dust and fibers, to keep dust and fibers on work clothes and tools away from the home environment, to be examined by a lung specialist to determine the nature and extent of any and all diseases caused by such exposure and inhalation and to receive treatment for such diseases;

(o)    defendants did or could have joined together in trade associations or industrial hygiene associations wherein information relative to the hazards of asbestos inhalation was available, but defendants by their actions, withheld such information from the plaintiffs, failed to assimilate such information for distribution to the plaintiffs, distorted such information by watering it down so that sales would not be interfered with, and actively engaged in disseminating counter information;

(p)    failed to manufacture or design their products so that said asbestos could or would not be released into the ambient air during their use;

(q)    failed to advise plaintiffs and others similarly situated who the defendants knew and/or should have known had been exposed to long-term inhalation of the asbestos dust and fibers resulting from the ordinary and foreseeable use of said asbestos products, of the progressive nature of the disease process to which all defendants were causing them to be subjected;

(r)    failed to advise plaintiffs and other similarly situated who the defendants knew and/or should have and/or could have known had been exposed to long-term inhalation of the asbestos dust and fibers resulting from the ordinary and foreseeable use of said asbestos products, to cease all future exposure to the inhalation of all types of other fumes, smoke, dust and fibers and to be examined by a lung specialist to determine the nature and extent of any and all diseases caused by such exposure and the inhalation of asbestos dust and fibers and to receive treatment for such diseases.

(s)    were otherwise careless and negligent under the law.

-91-

Case ID: 260300273
Control No.: 26035904

## COUNT II - STRICT LIABILITY

11.    Plaintiffs hereby incorporate by reference paragraphs 1 through 10 inclusive, as if each of said paragraphs were set forth fully hereunder.

12.    Defendants, acting individually, jointly and severally, as part of the conspiracy as alleged herein and/or as a result of tacit agreement or cooperation and/or as a result of industry-wide standards or practice knew, or in the exercise of reasonable care should and/or could have known, that their asbestos products would be sold to the public, including employers of the plaintiffs and others similarly situated, and would be used by plaintiffs, and other persons similarly employed in the general community, and would be relied upon by such persons to be fit for the use and to accomplish the purpose for which they were mined, manufactured, produced, processed, sold, supplied, distributed and/or otherwise placed in the stream of commerce; and the defendants, because of their positions as miners, manufacturers, producers, processors, sellers, suppliers and distributors, are strictly liable to the plaintiffs, for the following reasons:

(a)  Defendants, as manufacturers-sellers, are engaged in the business, inter alia, of selling asbestos products;

(b)  At the time of the manufacture and sale of the said asbestos products by the defendants to the plaintiffs or plaintiffs' employers, defendants knew, or had reason to know, that the said asbestos products would be used by plaintiffs, and other persons similarly situated, as the ultimate users or consumers;

(c)  The said asbestos products were sold by the defendants in a defective condition, unreasonably dangerous to the plaintiffs, and others similarly situated, as users or consumers, and that all throughout the many years of the plaintiffs'and others' similarly situated  exposure to and use of the said products, the said asbestos products were expected to and did reach the users or consumers without substantial change in the condition in which they were sold;

(d)  The said asbestos products were defective in that they were incapable of being made safe for their ordinary and intended use and purpose, and those uses believed safe by the general community, and said defendants failed to give adequate or sufficient warnings or instructions about the risks, dangers, and harm inherent in said asbestos products;

(e)  The defendants affirmatively mispresented to plaintiffs and other members of the public in advertising,

-92-

Case ID: 260300273
Control No.: 26035904

labels and otherwise that their asbestos products were safe in their ordinary and forseeable use, which material misrepresentation induced plaintiffs and others to expose themselves to hazards; and

(f)  The ordinary and foreseeable use of the defendants' asbestos products is an intrinsically dangerous and ultrahazardous activity; and

(g)  The said asbestos products were defeective because they contained asbestos; and

(h)  The said asbestos products were defective because they were defectively packaged.

## COUNT III - CONSPIRACY

13.  Plaintiffs hereby incorporate by reference paragraphs 1 through 12 inclusive, as if each of said paragraphs were set forth fully hereunder.

14.  Defendants, individually, jointly, and in conspiracy with each other and with other entities, the identities of which are presently unknown to plaintiffs, and as an industrial group and through trade associations including, but not limited to the Air Hygiene Foundation, the Industrial Hygiene Foundation of America, the Industrial Health Foundation, the Asbestos Textile Institute, the Asbestos Information Association, the National Insulation Manufacturers Association, the Thermal Insulation Manufacturers Association, the Quebec Asbestos Mining Association, and the Saranac Laboratory since at least the 1930's, and continuing to the present, have been possessed of medical and scientific data which clearly indicated that the inhalation of asbestos dust and fibers resulting from the ordinary and foreseeable use of their asbestos products was unreasonably dangerous, ultrahazardous, deleterious, carcinogenic, and potentially deadly.

15.  Despite the medical and scientific data possessed by and available to them, the defendants, acting willfully, maliciously, callously, deliberately, and with wanton disregard for the rights, safety, and position of plaintiffs, and other persons similarly situated, individually, jointly, and in conspiracy with each other and with other entities, the identities of which are presently unknown to plaintiffs, which conduct and conspiracy continues to the present, fraudulently and deliberately:

(a)  manufactured, sold, distributed, and caused to be used inherently dangerous asbestos products which, through their ordinary and foreseeable use, and unbeknownst to the plaintiffs, and other persons similarly situated,

-93-

Case ID: 260300273
Control No.: 26035904

would result in the serious and severe injuries which plaintiffs have suffered;

(b)   exposed and continued to expose plaintiffs, and other persons similarly situated, to the risks and dangers of asbestosis, mesothelioma, scarred lungs, cancer and other illnesses all of which risks and dangers defendants or their predecessors knew, should have known or could have known;

(c)   participated and continue to participate in the fraudulent scheme described above to keep the plaintiffs, and other persons similarly situated in the general community, in ignorance of their rights by fraudulently misrepresenting and concealing the nature and extent of the harm which they suffered as a result of handling, working with, using and being exposed to the defendants' asbestos products and by fraudulently misrepresenting and concealing that this harm was the direct and proximate result of the occupational handling, use and exposure to the defendants' asbestos products and the inhalation of the asbestos dust and fibers resulting from the ordinary and foreseeable use of said asbestos products and, in fact, said fraudulent scheme did keep the plaintiffs, and others similarly situated, in ignorance of their rights;

(d)   intended by the fraudulent misrepresentations and willful omissions set forth above and below to induce the plaintiffs, and others similarly situated in the general community, to rely upon said fraudulent misrepresentations and willful omissions, and to continue to expose themselves to the risks and dangers that the defendants knew to be inherent in the use of and exposure to their asbestos products and the asbestos dust and fibers resulting from the ordinary and foreseeable use of said asbestos products, without warning the plaintiffs, and others similarly situated, of these risks and dangers, thereby depriving them of the opportunity of informed free choice as to whether to continue to use said asbestos products and to expose themselves to these dangers and risks;

(e)   withheld or misrepresented the medical conditions of and altered other material and significant medical information on their employees, on other asbestos workers, on other workers in the construction industry, including plaintiffs, and withheld from or misrepresented to these workers and their families information about these workers' medical conditions, concerning, in particular, confirmatory evidence, appearance, suspicion or belief of asbestos-related diseases or other illnesses;

(f)   reviewed, altered, distorted and/or caused to be misdiagnosed  medical records and test results of their employees or other asbestos workers, for the purpose of

-94-

Case ID: 260300273
Control No.: 26035904

intentionally, fraudulently and maliciously preventing said employees or other workers and their families, including plaintiffs, from being able to discover the true state of their medical conditions, or the true state of the medical conditions of other asbestos employees, or workers, or otherwise treating same;

(g)  intended and caused their employees and other asbestos workers and their families, including plaintiffs:

(i)  to refrain from or lose the ability to file workmen's compensation or other disability claims for the occupational diseases suffered by them by the defendants' seeking methods to ignore or defeat their claims;

(ii) to fail to obtain proper medical care so as to cure, arrest, abate or otherwise treat their developing or existing asbestos-related diseases or other illnesses;

(iii) to increase their risk of harm and further aggravate or complicate developing or existing asbestos related diseases or other illnesses;

(iv) to deny them the right to decide or exercise their options to withdraw from unsafe and deleterious working or household conditions, exposing them to asbestos products, asbestos dust or fibers;

(v)  to keep them ignorant of their medical conditions, thereby preventing them from taking any safety or precautionary measures available either through their employment or other independent means; and,

(vi) to prevent, limit or otherwise bar their right to seek recovery of compensatory and/or punitive damages against the defendants for the injuries suffered by them and caused by said defendants;

(h)  manufactured, sold and distributed asbestos products in such a manner as to camouflage and make indistinguishable, and to conceal the identity, source, and manufacturer and/or distributor of said products for the purpose of misleading and keeping ignorant the users and consumers of same, thereby preventing injured plaintiffs from identifying and suing the proper defendant or defendants;

(i)  entered into secret relabelling and distribution agreements, produced products without any labels or distinguishing characteristics, distributed products bearing no identification whatsoever, manufactured and distributed products identical in color, texture and/or appearance, and concealed the sale and/or transfer of corporate assets or

-95-

Case ID: 260300273
Control No.: 26035904

entities through "secret" contracts and/or agreements and/or through the continuation of predecessor trademarks, tradenames, logos, or labels in successor companies and/or successor products, so as to deceive the ultimate users, including the injured plaintiffs herein, as to the true identity, source, manufacturer and distributor of said hazardous products;

(j)  used indistinguishable standardization of products and removal of trademarks, tradenames, markings, logos, labels or other identifying characteristics, in order to limit and exclude liability from claims brought by persons, including the plaintiffs, through the use and handling of said products and exposure to said asbestos products, asbestos dust and fibers and also entered into open and considered agreements for the purpose of concealing the identity and source of asbestos and asbestos products in the marketplace;

(k)  caused to be released, published and disseminated data and/or reports concerning the dangers and/or safety of their asbestos products, which data and reports they knew, should have known, or could have reasonably determined to be incorrect, incomplete, outdated and misleading;

(l)  failed and refused to provide the public, or workers such as plaintiffs who would foreseeably use and/or be exposed to their products and to the inhalation of the asbestos dust and fibers resulting from the ordinary and foreseeable use of said asbestos products, with any warning as to the risks, dangers, and harm that the defendants knew, or should have known, or could have known to be inherent in the use of and exposure to said asbestos products and to the inhalation of asbestos dust and fibers in the ordinary and foreseeable use of said products fearing that adequate and proper warnings would adversely affect sales;

(m)  deliberately chose to provide patently inadequate and ambiguous warnings and intentionally failed to warn of the known risks and dangers of their asbestos products and the inhalation of asbestos dust and fibers rersulting from the ordinary and foreseeable use of said products fearing that adequate and proper warnings would adversely·affect sales;

(n)  refused and failed to meaningfully test their asbestos products regarding the risks and dangers to persons who use or were exposed to their asbestos products and the inhalation ok the asbestos dust and fibers resulting from the ordinary and foreseeable use of said asbestos products;

(o)  when the aforesaid asbestos products were tested they willfully concealed and or refused to publish

-96-

Case ID: 260300273
Control No.: 26035904

adverse test results, or distorted said adverse test results so that the public and persons such as plaintiffs were misled into believing that the test results were not adverse and that their asbestos products were safe for their ordinary and forseeable use;

(p)   ignored medical and scientific data which demonstrated a causal connection between asbestos exposure and asbestosis, cancer, and mesothelioma, or other diseases, or which discussed the risk of those diseases from asbestos expsoure;

(q)   attempted to discredit scientists, doctors, writers, and medical literature who or which indicated, demonstrated, or established a causal connection between asbestos and asbestos related diseases;

(r)   sought to create favorable publicity about the safe nature of their asbestos products for pecuniary motives when they knew of the risks and danger inherent in their asbestos products;

(s)   failed to seek safe substitute products for their asbestos products because pecuniary motives of profit were followed at the expense of human lives;

(t)   ignored, withheld and/or actively concealed the existence of tests, data, studies, literature and medical reports regarding the causal connection between asbestos exposure and cancer, mesothelioma, asbestosis, respiratory diseases, scarred lungs and other illnesses and diseases;

(u)   chose to rely upon and cause to be disseminated reports, tests, medical and scientific data that they knew, should have known, or could have known to be inaccurate, insufficient, incomplete, outdated and misleading medical or scientific research or data regarding the causal connection between asbestos products and disease in order to avoid any possible adverse publicity that would affect the sales of asbestos products;

(v)   refused to conduct, contribute to and/or to authorize testing and research involving the causal relationship of illness and disease to exposure to and the use of their asbestos products and the inhalation of the asbestos dust and fibers resulting from the ordinary and foreseeable use of said asbestos products fearing adverse test results and the publicity thereof would affect the highly profitable market of asbestos products sales, which pecuniary motives of profit were followed at the expense of human lives; and

Case ID: 260300273
Control No.: 26035904

(w)    are presently relying upon invalid medical reports and data in order to defend suits such as those brought by clients of the undersigned.

16.    Plaintiffs reasonably and in good faith relied upon the fraudulent misrepresentations, concealments, and willful omissions made by the defendants, individually, jointly, and in conspiracy with each other and with other entities, the identities of which are presently unknown to plaintiffs, regarding the safe nature of their asbestos products, which reliance resulted in illnesses and injuries to plaintiffs, the particulars of which will be more fully set forth in each plaintiffs' "Short-Form Complaint."

## COUNT IV - BREACH OF WARRANTY

17.    Plaintiffs hereby incorporate by reference paragraphs 1 through 16 inclusive, as if each of said paragraphs were set forth fully hereunder.

18.    Defendants, acting individually, jointly and severally, as part of the conspiracy as alleged hereinabove and/or as a result of tacit agreement or cooperation and/or as a result of industry-wide standards or practice, impliedly warranted that the asbestos products which they mined, manufactured, produced, compounded, converted, processed, sold, supplied, merchandised, distributed, and/or otherwise placed in the stream of commerce were reasonably fit for use and safe for their intended purposes.

19.    Defendants, acting individually, jointly and severally, as part of the conspiracy as alleged hereinabove and/or as a result of tacit agreement or cooperation and/or as a result of industry-wide standards or practice, breached said warranties to plaintiffs in that their said asbestos products were inherently defective, ultrahazardous, danger-ous, unfit for use, not properly merchantable, and not safe for, nor reasonably fit for, their intended ordinary and foreseeable use and purpose.

## COUNT V - ADMIRALTY (IN SHIPYARD CASES ONLY)

20.    Plaintiffs hereby incorporate by reference paragraphs 1 through 19 inclusive as if each of said paragraphs were set forth fully hereunder.

21.    Plaintiffs further allege that there is jurisdiction of this cause of action pursuant to U.S.C.A. _1333(1), 46 U.S.C.A. _740, et seq., and the general admiralty and maritime law of the United States.

-98-

Case ID: 260300273
Control No.: 26035904

22. Plaintiffs aver that their employment was necessary to the seaworthiness of maritime vessels upon which they worked and that during the years of their employment heretofore stated, a majority of their work was upon seagoing vessels or vessels being constructed for use at sea.

23. Plaintiffs further aver that during the years of their employment, plaintiffs worked on or near naval vessels of the United States Navy or its allies, upon United States Merchant Marine vessels, merchant vessels and passenger vessels, both in dry dock and on the navigable waters of the United States, performing the traditional maritime activities of shipbuilding and ship repair.

24. In the performance of such traditional maritime activities plaintiffs were continually required either to install, remove and/or perform their duties in the proximity of co-employees engaged in the installation, removal and repair and/or replacement of the defendants' asbestos products which products were or became appurtenances of the aforesaid ships and plaintiffs continually worked with, used and/or were caused to come into contact with and be exposed to the defendants' asbestos products, asbestos dust and fibers resulting from the ordinary and foreseeable use of said maritime asbestos products as has been more particularly described herein.

25. Plaintiffs were injured as has previously been described in the course of the aforementioned traditional maritime activities and such injuries were proximately caused by the ordinary and foreseeable use of the said maritime asbestos products which were or became appurtenances of the said vessels on which plaintiffs worked.

COUNT VI - NEIGHBORHOOD AND HOUSEHOLD EXPOSURE

26. Plaintiffs hereby incorporate by reference paragraphs 1 through 25 inclusive as if each of said paragraphs were set forth fully hereunder.

27. Plaintiffs' relatives with whom they lived at various times during their lives were employed by certain of the defendants and/or used asbestos products manufactured by the defendants.

28. As a result of living with the relatives as aforesaid, plaintiffs were caused to come into contact with and inhale asbestos particles, dust, and fibers carried on the persons and/or clothing of their aforesaid relatives and/or brought into their residence by the aforesaid relatives.

-99-

Case ID: 260300273
Control No.: 26035904

29.   Further, the defendants allowed asbestos particles, dust, and fibers to be emitted into the air in the neighborhood of plaintiffs' residence from its plants and dump sites located near the plaintiffs' residence, which asbestos particles, dust and fibers were inhaled by plaintiffs.

30.   At all times relevant hereto, defendants knew or should have known of the health hazards caused by the afore-stated asbestos fibers, dust, particles, and/or pollution being emitted into the air outside the plant and should have known that said dust, fibers, particles, and/or pollution were deleterious, poisonous, and highly harmful to plaintiffs' bodies, lungs, and respiratory system and to the bodies, lungs, and respiratory systems of other people living near the defendants' facility, yet defendants failed to provide adequate and sufficient warnings.

## COUNT VII - EMPLOYER DEFENDANTS' TORTIOUS CONDUCT

31.   Plaintiffs hereby incorporate by reference paragraphs 1 through 30 inclusive as if each of said paragraphs were set forth fully hereunder.

32.   Certain of the defendants (referred to here as "defendant employers") employed plaintiffs. Defendant employers at all times relevant hereto were negligent, reckless, careless and performed intentional torts, which acts or omissions to act caused injuries to plaintiffs, in the following conduct:

(a)   failing to advise plaintiffs of the presence of asbestos and of the dangerous characteristics of the asbestos and asbestos related products which they were working with in connection with their employment;

(b)   failing to provide plaintiffs with appropriate protective equipment and applicances necessary in order to protect them from being becoming injured or disabled by way of exposure to asbestos and asbestos related products;

(c)   failing to provide plaintiffs with a safe place to work;

(d)   failing to provide proper instruction and supervision to plaintiffs in the performance of their duties in handling asbestos or asbestos products;

(e)   failing to provide plaintiffs with necessary and proper safety equipment to use while performing their work duties in and around asbestos and asbestos products;

Case ID: 260300273
Control No.: 26035904

(f)  failing to take adequate precautions to prevent plaintiffs from suffering injuries as a result of their employment;

(g)  being otherwise negligent, reckless and careless in failing to protect the health, safety and welfare of their employees;

(h)  failing to advise plaintiffs of the results of their x-rays, examinations and pulmonary function tests which were taken by or on behalf of defendant employer during the course of their employment and/or failing to advise plaintiffs to cease further asbestos exposure; and

(i)  failing to advise plaintiffs after plaintiffs' exposure to asbestos ceased, about the dangers of exposure to asbestos, about the dangers of past or present asbestos exposure in combination with smoking or exposure to other fumes and dust, and about the need for future medical surveillance.

33.  At all times relevant hereto, defendant employers intentionally, fraudulently, deliberately and systematically misrepresented and/or intentionally, fraudulently, deliberately and systematically failed to represent their knowledge of the presence of asbestos and the health hazards associated with asbestos exposure to the employed plaintiffs, all with the intent to deceive and injure plaintiffs.

34.  At all times relevant hereto, defendant employers acted maliciously, deceitfully, recklessly, intentionally, willfully, negligently, and/or deliberately and in a conspiratorial manner with other persons or entities in order to withhold from plaintiffs their knowledge of the condition of plaintiffs' health as it is related to asbestos exposure and their knowledge of health hazards in general related to asbestos exposure.

35.  At all times relevant hereto, defendant employers had in their possession and control, or had available to them, medical information including but not limited to medical reports, x-ray findings and pulmonary function testing results which indicated that plaintiffs had suffered damage to their body, lungs, and/or internal organs as a result of plaintiff's exposure to asbestos at their workplace and defendant employesr callously, maliciously, intentionally, recklessly, willfully, negligently, and/or deliberately withheld from plaintiffs for many years their aforesaid medical reports, x-ray findings and pulmonary function testing results, failed to adequately advise plaintiffs of the information that they had available to them and/or continued to allow plaintiffs to work in an asbestos environment without changing their job locations which was detrimental to plaintiffs' health and which caused

-101-

Case ID: 260300273
Control No.: 26035904

plaintiffs to develop diseases and/or aggravated the initial work related injury that plaintiffs suffered. Furthermore, defendant employers authorized their medical staffs to participate in the fraud and deceit of plaintiffs with the intent to injure the plaintiffs by authorizing their medical staffs to withhold medical information, medical reports, x-ray results, pulmonary function testing results, and physical examination results from the plaintiffs at all times referred to herein.

36. Plaintiffs bring this claim against the defendant employers based on common law principles of negligence and have been advised and therefore allege that their claims are not precluded by the applicable Workmen's Compensation and/or Occupational Disease Acts of Pennsylvania, Delaware, New Jersey or of any other state or territory of the United States, by reason of the fact that:

(a)  injury or personal injury to plaintiffs, resulting in disability and/or death, did not occur within the statutory time provisions of the date of the last employment in an occupation or industry in which they were exposed to hazards which could result in asbestos related diseases;

(b)  the defendant employers committed intentional acts and/or conduct as described above; and

(c)  the defendant employers engaged in activities, such as supplying and/or installing asbestos products, which were not the ordinary activities for which plaintiffs were employed and plaintiffs therefore rely upon the "dual capacity" exception to the Workers' Compensation bar against third party suits.

## COUNT VIII - RAILROAD DEFENDANTS

37.  Plaintiffs hereby incorporate by reference paragraphs 1 through 36 inclusive, as if each paragraph were fully set forth hereunder.

38.  Certain of the defendants (referred to herein as "railroad defendants") employed plaintiffs. While employed by the railroad defendants, the plaintiffs acting within the scope of such employment were engaged in the furtherance of interstate commerce within the meaning of F.E.L.A.

39.  All the property, equipment and operations involved in the harm to plaintiffs described herein were owned and/or under the direct and exclusive control of the defendant railroads, their agents, servants and/or employees.

40.  The injuries and disability of plaintiffs while working as employees of the railroad defendants were caused

-102-

Case ID: 260300273
Control No.: 26035904

by plaintiffs' exposure to toxic and/or pathogenic liquids, solids, dusts, fumes, vapors, mists or gases, including asbestos.

41. The injuries and disability of plaintiffs were caused in whole or in part by the negligence, carelessness and/or recklessness of the railroad defendants, generally and more specifically as follows:

(a) in failing to exercies reasonable care to adequately warn plaintiffs of the risks, dangers and harm to which they were exposed in working with, touching or inhaling toxic and/or pathogenic liquids, solids, dusts, fumes, vapors, mists or gases, including asbestos;

(b) in failing to provide the plaintiffs with reasonably safe and sufficient personal safety apparel and equipment including but not limited to respirators as was necessary to protect them from being injured, poisoned, disabled, killed or otherwise harmed, by working with, using, handling and/or coming in contact with and being exposed to toxic and/or pathogenic liquids, solids, dusts, fumes, vapors, mists, or gases, including asbestos;

(c) in failing to provide plaintiffs with a reasonably safe place in which to work;

(d) in failing and omitting to minimize or eliminate plaintiffs' exposure to substances containing toxic and/or pathogenic liquids, solids, dusts, fumes, vapors, mists, or gases, including asbestos by providing ventilating and exhaust fans, dampening or wetting procedures and other recommended and available procedures;

(e) in failing and omitting to conduct any test to determine the presence and/or amount of toxic and/or pathogenic liquids, solids, dusts, fumes, vapors, mists, or gases, including asbestos, in and around plaintiffs' workplace;

(f) in failing to transfer plaintiffs from workplaces where they had been exposed to toxic and/or pathogenic liquids, solids, dusts, fumes, vapors, mists or gases, including asbestos, to other employment with no such or lesser exposure;

(g) in faiing to conduct physical examinations of plaintiffs of such quality as to detect any effects of toxic and/or pathogenic liquids, solids, dusts, fumes, vapors, mists, or gases, including asbestos, so that their employees, such as plaintiffs, could be advised as to the danger and take appropriate safety measures;

-103-

Case ID: 260300273
Control No.: 26035904

(h)  in violating the provisions of the Boiler Inspection Act, 45 U.S.C. __22-34;

(i)  in failing to substitute non-toxic and non-pathogenic material for hazardous material;

(j)  in failing to issue and enforce appropriate safety rules limiting or eliminating exposure to toxic and/or pathogenic liquids, solids, dusts, fumes, vapors, mists, or gases, including asbestos; and

(k)  in failing to obey appropriate and relevant federal and state regulations and industrial hygiene recommendations intended to protect plaintiffs from exposure to toxic and/or pathogenic liquids, solids, dusts, fumes, vapors, mists, or gases, including asbestos.

## COUNT IX - WRONGFUL DEATH

42.  Plaintiff hereby incorporates by reference paragraphs 1 through 41 inclusive, as if each of said paragraphs were set forth fully hereunder.

43.  As the direct and proximate result of the aforesaid some of the plaintiffs or people who were exposed to the defendants' asbestos products (hereafter referred to as "decedents"), were caused to contract the diseases and injuries described herein, causing extreme pain, suffering and mental anguish and died as a direct and proximate result of defendants' gross negligence, carelessness, breach of waranty, strict liability, conspiracy, misrepresentation and willful conduct, as alleged herein.

## COUNT X - DAMAGES

44.  Plaintiffs hereby incorporate by reference paragraphs 1 through 43 inclusive, as if each of said paragraphs were set forth fully hereunder.

45.  As a direct and proximate result of the negligence, carelessness, gross negligence, willful misconduct, breach of warranty, strict liability, fraudulent concealment, conspiracy, misrepresentation, willful omissions, recklessness and outrageous conduct of the defendants as described in Counts I-VII supra, plaintiffs were caused to contract diseases and injuries to plaintiffs' respiratory system, heart and other parts of the body, the full extent of which has not yet been determined, including pleural thickening, pleural placques, asbestos-related pleural disease, asbestosis, scarred lungs, cancer of the lungs and other parts of the body, mesothelioma, and/or the risks of these same diseases, some or all of which are permanent and/or fatal, as set forth in each plaintiff's "short-form" complaint to be filed, and may suffer in the future from

-104-

Case ID: 260300273
Control No.: 26035904

other diseases which have not yet been diagnosed, causing plaintiffs pain, suffering and mental anguish.

46. As a direct and proximate result of the aforesaid, plaintiffs were obliged to spend various sums of money to treat their diseases and injuries and plaintiffs continue to be obliged for the expenses of same; as a direct and proximate result of the aforesaid, plaintiffs have sustained a loss of earnings and earning capacity; and as a direct and proximate result of the aforesaid, plaintiffs' enjoyment of life has been impaired and plaintiffs' life expectancies shortened, all to plaintiffs' great loss.

47. As a direct and proximate result of the aforesaid, plaintiffs have undergone great physical pain, mental anguish, and shock to their nervous system.

48. As a direct and approximate result of the aforesaid, and since plaintiffs first learned of their injuries, plaintiffs have developed severe anxiety, hysteria or phobias, any or all of which have developed into a reasonable and traumatic fear of an increased risk of additional asbestos caused and/or related disease, including, but not limited to, cancer, resulting from exposure, directly and indirectly, to the asbestos products of the defendants.

49. As a direct and proximate result of the aforesaid, plaintiffs have and will continue to suffer permanent and ongoing psychological damage which may require future psychological and/or medical treatment.

50. As a direct and proximate result of the aforesaid, plaintiffs have and will continue to suffer a disintegration and deterioration of the family unit and the relationships existing therein, resulting in enhanced anguish, depression and other symptoms of psychological stress and disorder.

51. As a direct and proximate cause of the aforesaid, plaintiff-spouses have suffered the loss of the plaintiff-workers' society, services and companionship and a deterioration of the marital relationship, and may continue to be so deprived, and, accordingly, plaintif-spouses claim damages for loss of consortium.

52. As a direct and proximate result of the aforesaid, decedents incurred hospital, nursing and medical expenses. Decedents' beneficiaries have incurred hospital, nursing, medical, funeral and estate administration expenses as a result of decedents' death. Plaintiffs as Executors/Executrices of the Estates of decedents bring this claim on behalf of decedents' lawful beneficiaries for these damages and for all pecuniary losses sustained by said beneficiaries pursuant to 42 Pa. C.S.A. _8301 and 2A N.J.S.A. _13-1.

-105-

Case ID: 260300273
Control No.: 26035904

53. As a direct and proximate result of the aforesaid, decedents, prior to their deaths, were obliged to spend various sums of money to treat their injuries, which debts have been assumed by their estates; as a direct and proximate result of the aforesaid, decedents were caused pain, suffering, mental anguish and impairment of the enjoyment of life, until the date of their deaths; and, as a direct and proximate result of the aforesaid, decedents suffered a loss of earnings and earning capacity. Plaintiffs, as Executors/Executrices of decedents' estates bring this claim on behalf of the estates for damages under 42 Pa. C.S.A. _8302 and 2A N.J.S.A. _15-13.

54. As a direct and proximate result of the aforesaid, decedents and their spouses, until the time of decedents' deaths, suffered a disintegration and deterioration of the family unit and the relationships existing therein, resulting in enhanced anguish, depression and other symptoms of psychological stress and disorder. This claim is brought on behalf of the estates of decedents, pursuant to 42 Pa. C.S.A. _8302, and 2A N.J.S.A. _15-13 and on behalf of plaintiff-spouses in their own right.

55. As a direct and proximate result of the aforesaid, and since first learning of decedents' and/or living plaintiff-workers' injuries, all other plaintiffs have developed severe anxiety, hysteria or phobias, any and all of which has developed into a reasonable and traumatic fear of an increased risk of asbestos-caused and/or related disease, including, but not limited to, cancer to plaintiffs, resulting from exposure, directly and indirectly, to the asbestos products of defendants, to decedents' and plaintiff-workers' work clothes and tools.

56. As a direct and proximate result of the aforesaid, and including the observance of the suffering of their spouses, decedents, until the date of their deaths, suffered permanent and ongoing psychological damage; as a direct and proximate result of the aforesaid, and including the observance of the suffering and physical deterioration of their spouses, until the date of their death, plaintiffs have and will continue to suffer permanent and ongoing psychological damage which may require future psychological and/or medical treatment. Plaintiffs as Executors/Executrices or Administrators/Administratrices of decedents' estates bring the claim on behalf of the estate for damages under 42 Pa. C.S.A. _8302, and in their own right.

WHEREFORE, Plaintiffs pray for judgment against the defendants and each of them individually, jointly and severally on each of the above Counts, for compensatory damages in an amount in excess of TWENTY THOUSAND DOLLARS ($20,000.00) and (except on Count IV) punitive damages in a sum in excess of TWENTY THOUSAND DOLLARS ($20,000.00) plus costs of suit, and such other and further relief as is just and proper.

Case ID: 260300273
Control No.: 26035904

# Exhibit 3

Case ID: 260300273
Control No.: 26035904

# State Corporation Commission
# Clerk's Information System

## Entity Information

### Entity Information

| | | | |
|---|---|---|---|
| Entity Name: | Huntington Ingalls Industries, Inc. | Entity ID: | F1852609 |
| Entity Type: | Stock Corporation | Entity Status: | **Active** |
| Series LLC: | N/A | Reason for Status: | Active and In Good Standing |
| Formation Date: | N/A | Status Date: | 05/07/2024 |
| VA Qualification Date: | 03/03/2011 | Period of Duration: | Perpetual |
| Industry Code: | 0 - General | Annual Report Due Date: | N/A |
| Jurisdiction: | DE | Charter Fee: | $50.00 |
| Registration Fee Due Date: | Not Required | | |

### Registered Agent Information

| | | | |
|---|---|---|---|
| RA Type: | Entity | Locality: | HENRICO COUNTY |
| RA Qualification: | BUSINESS ENTITY THAT IS AUTHORIZED TO TRANSACT BUSINESS IN VIRGINIA | | |
| Name: | C T CORPORATION SYSTEM | Registered Office Address: | 4701 Cox Rd Ste 285, Glen Allen, VA, 23060 - 6808, USA |

 

Case ID: 260300273
Control No.: 26035904

# State Corporation Commission
# Clerk's Information System

VA, 23001 - 0000, USA

## Principal Information

| Title | Director | Name | Address | Last Updated |
|---|---|---|---|---|
| President | Yes | Christopher D Kastner | 4101 WASHINGTON AVE, NEWPORT NEWS, VA, 23607 - 0000, USA | 03/31/2022 |
| CORP VP/SECRETARY | No | TIFFANY M. KING | 2451 CRYSTAL DRIVE, SUITE 1100, Arlington, VA, 22202, USA | 02/04/2026 |
| CORP VP/TREASURER | No | STEPHEN R. POWELL | 4101 WASHINGTON AVE, NEWPORT NEWS, VA, 23607 - 0000, USA | 02/04/2026 |

## Current Shares

Total Shares:  100

Filing History     RA History     Name History     Previous Registrations

Garnishment Designees     Image Request

Back     Return to Search     Return to Results

Back to Login

 
https://cis.scc.virginia.gov/EntitySearch/BusinessInformation?businessId=300210&source=FromEntityResult&isSeries = false

Case ID: 260300273
Control No.: 26035904

2/3

# State Corporation Commission
# Clerk's Information System

 
Case ID: 260300273
Control No.: 26033904

https://cis.scc.virginia.gov/EntitySearch/BusinessInformation?businessId=300210&source=FromEntityResult&isSeries = false

TO:   Plaintiff,

*Filed and Attested by the Office of Judicial Records 25 MAR 2026 02:40 pm G. IMPERATO*

YOU ARE HEREBY NOTIFIED TO FILE A WRITTEN RESPONSE TO THE ATTACHED PRELIMINARY OBJECTIONS WITHIN TWENTY (20) DAYS FROM SERVICE HEREOF OR A JUDGMENT MAY BE ENTERED AGAINST YOU.

/s/ Alexandra B. Cunningham, Esq.

**HUNTON ANDREWS KURTH LLP**
BY: Alexandra B. Cunningham, Esquire
PA Bar #334728
951 East Byrd Street
Riverfront Plaza, East Tower
Richmond, Virginia 23219
(804) 787-8087

*Attorneys for Defendant*
*Huntington Ingalls Industries, Inc.*

| | |
|---|---|
| ANTONIO R. WILLIAMS, | **COURT OF COMMON PLEAS** |
| | **PHILADELPHIA COUNTY** |
| Plaintiff, | |
| | |
| v. | No.: 260300273 |
| | |
| AIR & LIQUID SYSTEMS CORPORATION, ET AL., | |
| | **ASBESTOS CASE** |
| Defendants. | **JURY TRIAL DEMANDED** |

### PRELIMINARY OBJECTIONS TO PLAINTIFF'S COMPLAINT

Defendant Huntington Ingalls Industries, Inc. ("HII"), incorrectly sued as Huntington Ingalls Industries, by and through its attorneys, pursuant to Pennsylvania Rule of Civil Procedure 1028 and Local Rule 210, <u>specially appears</u> and hereby files these Preliminary Objections to Plaintiff's Short Form Complaint and the incorporated Master Complaint (collectively, the "Complaint").

Case ID: 260300273
Control No.: 26035904

1.      Plaintiff's Complaint does not identify any basis for this Court to exercise personal jurisdiction over HII.  HII is a Delaware corporation with its principal place of business in Virginia, and there are no allegations in the Complaint that HII engaged in any activity in Pennsylvania that relates to Plaintiff's claims against this defendant.  Moreover, HII is not registered to do business in Pennsylvania.  Accordingly, Plaintiff's Complaint against HII should be dismissed in its entirety for lack of personal jurisdiction pursuant to Pa.R.C.P. 1028(a)(1).

2.      Plaintiff's Complaint contains no specific allegations against HII, and HII cannot tell from the face of the pleadings what counts are asserted against it and on what factual basis.  If Plaintiff's Complaint against HII is not dismissed for lack of personal jurisdiction, then the Court should require Plaintiff to file an Amended Complaint that identifies the counts against HII and the facts upon which those claims are based pursuant to Pa.R.C.P. 1028(a)(3).

WHEREFORE, Huntington Ingalls Industries, Inc. requests that the Court dismiss Plaintiff's Complaint against it for lack of personal jurisdiction.  If the Complaint is not dismissed in its entirety, then the Court should require Plaintiff to file an Amended Complaint with the required specificity to put HII on notice of the claims against it and the factual basis of those claims.[1]

---

[1] Plaintiff's Complaint names HII, and that is the entity that he served.  To the extent Plaintiff intended to assert claims against Huntington Ingalls Incorporated ("HIC"), as the owner and operator of the Newport News Shipyard, he has failed to do so.  The Complaint does not name HIC and HIC has not been served.  In any event, this Court lacks personal jurisdiction over HIC, a Virginia corporation with its principal place of business in Virginia, for the same reasons it lacks jurisdiction over HII.  Although HIC is registered to do business in Pennsylvania, the consent-by-registration statutory scheme violates the dormant commerce clause.  The Complaint also fails to state any claim against HIC, both because it is not named as a defendant, and for the same reasons it fails to state a claim against HII.  Should Plaintiff to seek to amend the complaint to assert claims against HIC, HIC will file its own Preliminary Objections to address these issues.

2

Case ID: 260300273
Control No.: 26035904

HUNTON ANDREWS KURTH LLP


_____
Alexandra B. Cunningham, Esquire
PA Bar #334728

*Attorney for Defendant*
*Huntington Ingalls Industries, Inc.*

3

Case ID: 260300273
Control No.: 26035904

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
CIVIL TRIAL DIVISION

| | |
|---|---|
| ANTONIO R. WILLIAMS, | : **COURT OF COMMON PLEAS** |
| | : **PHILADELPHIA COUNTY** |
| Plaintiff, | : |
| | : |
| v. | : No.: 260300273 |
| | : |
| AIR & LIQUID SYSTEMS | : |
| CORPORATION, ET AL., | : **ASBESTOS CASE** |
| | : **JURY TRIAL DEMANDED** |
| Defendants. | : |
| | : |

**ORDER**

AND NOW, this __ day of ____, 2026, upon consideration of the Preliminary Objections of Defendant, Huntington Ingalls Industries, Inc. ("HII"), incorrectly sued as Huntington Ingalls Industries, and any opposition thereto, it is hereby ORDERED and DECREED that:

(1)  Preliminary Objection 1, in the nature of a Motion to Strike Plaintiff's Complaint against Defendant Huntington Ingalls Industries, Inc. pursuant to Pa.R.C.P. 1028(a)(1) for lack of personal jurisdiction is SUSTAINED, the Plaintiff's Complaint against HII is DISMISSED WITHOUT PREJUDICE, and for this reason, the Court need not rule on HII's remaining Preliminary Objections.

(2)  Preliminary Objection 2, in the nature of a Motion for a More Specific Pleading as to all counts, is SUSTAINED.  Plaintiff is hereby ORDERED to file an Amended Complaint that identifies the Counts that are directed towards HII and that includes the factual basis for the claims against HII, including the details regarding the product or premises attributed to HII, the dates and location of the alleged exposures, and the details of such exposure.

Case ID: 260300273
Control No.: 26035904

BY THE COURT:

_____
                                    J.

Case ID: 260300273
Control No.: 26035904

**HUNTON ANDREWS KURTH LLP**
BY: Alexandra B. Cunningham, Esquire
PA Bar #334728
951 East Byrd Street
Riverfront Plaza, East Tower
Richmond, Virginia 23219
(804) 787-8087

*Attorneys for Defendant*
*Huntington Ingalls Industries, Inc.*

| | |
|---|---|
| ANTONIO R. WILLIAMS, | : **COURT OF COMMON PLEAS** |
| | : **PHILADELPHIA COUNTY** |
| Plaintiff, | : |
| | : |
| v. | : No.: 260300273 |
| | : |
| AIR & LIQUID SYSTEMS | : |
| CORPORATION, ET AL., | : **ASBESTOS CASE** |
| | : **JURY TRIAL DEMANDED** |
| Defendants. | : |
| | : |

**DEFENDANT HUNTINGTON INGALLS INDUSTRIES, INC.'S BRIEF IN SUPPORT
OF PRELIMINARY OBJECTIONS TO PLAINTIFF'S COMPLAINT**

Defendant Huntington Ingalls Industries, Inc. ("HII"), incorrectly sued as Huntington
Ingalls Industries, by and through its attorneys, and pursuant to Pennsylvania Rule of Civil
Procedure 1028 and Local Rule 210, <u>specially appears</u> for the purpose of this Motion, preserving
all defenses, and submits this brief in support of its Preliminary Objections.

**I.      MATTER BEFORE THE COURT**

Defendant HII's Preliminary Objections to Plaintiff's Short-form Complaint and the
Master Complaint (collectively, the "Complaint"), pursuant to Pa.R.C.P. 1028.   A Copy of
Plaintiff's Complaint is attached hereto as Exhibit 1.   A copy of the Master Complaint is attached
hereto as Exhibit 2.

**II.     STATEMENT OF QUESTIONS PRESENTED**

1.  Should Plaintiff's Complaint be dismissed in its entirety as to defendant Huntington Ingalls
    Industries, Inc. for lack of personal jurisdiction pursuant to Pa.R.C.P. 1028(a)(1)?

Case ID: 260300273
Control No.: 26035904

SUGGESTED ANSWER:    Yes.

2. If the Complaint is not dismissed for lack of personal jurisdiction, should Plaintiff be required to identify the Counts he asserts against HII and to re-plead those Counts with more specificity, pursuant to Pa.R.C.P. 1028(a)(3)?

SUGGESTED ANSWER:    Yes.

## III.    **<u>INTRODUCTION</u>**

Plaintiff Antonio R. Williams ("Plaintiff") filed this lawsuit against HII and 11 other defendants in which he seeks to recover damages for lung cancer that he alleges was caused by exposure to asbestos.  Plaintiff filed a short-form complaint ("Short-Form Complaint") that incorporates by reference the Master Complaint filed as of the November Term 1986, No. 8610-001 ("Master Complaint").

Plaintiff's Short-Form Complaint provides Plaintiff's name, address, social security number, and date of birth.  Short-Form Complaint at ¶1.  It alleges that Plaintiff, a North Carolina resident, was "occupationally exposed to asbestos from his work as an ironworker" and lists his "asbestos employment history" at various jobs in Virginia and North Carolina from January 1980 to December 2001.  *Id.* at ¶5.  The Short-Form Complaint states that "[f]rom 1980 to 1989, Mr. Williams was exposed to asbestos while working as an ironworker for McLean Contracting" and that he "spent time working at Newport News Shipbuilding, where he worked with and around asbestos-containing pumps, valves, cranes, electrical equipment, and welding rods."  *Id.*  The Short-Form Complaint further states that Mr. Williams "was non-occupationally exposed to asbestos from his father's work in a shipyard" but does not identify the shipyard or its location. *Id.*

The Short-Form Complaint does not contain any allegations specific to HII.  To the extent the reference to Newport News Shipbuilding is intended to put HII on notice of the claims against

2

Case ID: 260300273
Control No.: 26035904

it, it does not. The Short-Form Complaint does not allege that HII owns or operates "Newport News Shipbuilding" (it does not), or that Plaintiff can pierce the corporate veil of the owner/operator to reach HII (he cannot). Nor does the Short-Form Complaint contain any other factual allegations that would support a claim against HII. Rather, Plaintiff alleges he worked for McLean Contracting or some other third party and fails to link any alleged exposure at Newport News Shipbuilding to any conduct of HII. There are no allegations that HII controlled Plaintiff's work, manufactured or supplied any asbestos-containing products to which Plaintiff claims exposure, or had any responsibility to warn him of any hazards or to provide him with safety equipment. He simply alleges that—as an employee of McLean Contracting—he worked with and around asbestos-containing equipment and that some of this work occurred at Newport News Shipbuilding.

The Short-Form Complaint incorporates Counts I-X of the Master Complaint. But nothing in the Short-Form Complaint gives HII any indication of which of these counts apply to it. The counts in the Master Complaint are as follows:

- Count I – Negligence and Outrageous Conduct (products liability)

- Count II – Strict Liability (products liability)

- Count III – Conspiracy

- Count IV – Breach of Warranty (products liability)

- Count V – Admiralty in Shipyard Cases (for plaintiffs who worked on maritime vessels and were exposed to defendant's products on such vessels)

- Count VI – Neighborhood and Household Exposure (for plaintiffs whose relatives were employed by the defendants or used the defendants' products and brought asbestos home where plaintiff was exposed)

- Count VII – Employer Defendants' Tortious Conduct

- Count VIII – Railroad Defendants

3

Case ID: 260300273
Control No.: 26035904

- Count IX – Wrongful Death; and

- Count X – Damages

HII has no idea which of these counts Plaintiff intends to assert against it, nor what the factual basis is for doing so.  Plaintiff has not identified any product manufactured by HII; Plaintiff has not identified HII as his employer or an employer of any of his relatives; and Plaintiff has not identified HII as a railroad defendant.  Exactly what HII is being sued for is simply not disclosed in the Short-Form or Master Complaint.  Indeed, to the extent this is intended to be a premises liability claim, there is no premises liability count asserted in the Short-Form Complaint or the Master Complaint, and no factual allegations to support such a claim.

Plaintiff's Complaint should be dismissed in its entirety as to HII because Plaintiff has failed to establish that HII is subject to personal jurisdiction in Pennsylvania for purposes of his claims.  Moreover, even if the Court could exercise personal jurisdiction over HII, Plaintiff's Complaint lacks the facts and specificity required by the Pennsylvania Rules of Civil Procedure.  As a result, HII has no means of determining which of Plaintiff's claims are against HII, let alone understanding the factual allegations underlying those claims.  Thus, to the extent that Plaintiff's claims are not dismissed in their entirety, HII requests that the Court order Plaintiff to file an amended complaint that identifies which counts are asserted against HII and provides the material facts that purportedly support those claims.

## IV.    LEGAL ARGUMENT

### a.  PRELIMINARY OBJECTION IN THE NATURE OF A MOTION TO STRIKE PLAINTIFF'S COMPLAINT AGAINST HII FOR LACK OF PERSONAL JURISDICTION PURSUANT TO PA.R.C.P. 1028(a)(1)

Preliminary objections are the appropriate method to raise a challenge to personal or subject matter jurisdiction. *C.E. Williams Co. V. Henry B. Pancoast Co.*, 194 A.2d 189, 191 (Pa.

4

Case ID: 260300273
Control No.: 26035904

1963); Pa.R.C.P. 1028(a)(1).  Here, Plaintiff's Complaint is devoid of jurisdictional allegations as to HII, and it should be dismissed.

First, Plaintiff fails to allege any basis for the Court to exercise general jurisdiction over HII.  Plaintiff does not allege that HII is incorporated in Pennsylvania, that it operates its principal place of business here, or that HII is "at home" in Pennsylvania.  Nor could he.  HII is incorporated in Delaware and operates its principal place of business in Virginia.  *See* Exhibit 3, Virginia State Corporation Commission Entry for Huntington Ingalls Industries, Inc.  Thus, under the standard set forth in *Daimler AG v. Bauman*, 571 U.S. 117, 126 (2014), Plaintiff has failed to establish that the Court can exercise general personal jurisdiction over HII within the bounds of due process.

Plaintiff, furthermore, has not and cannot allege that HII is subject to jurisdiction under Pennsylvania's consent-by-registration statutory scheme, 42 Pa. Cons. Stat.  §5301(a)(2)(i).  HII is not registered to do business in Pennsylvania, and thus not subject to jurisdiction under that statute.

Nor has Plaintiff alleged facts sufficient to demonstrate that this Court can exercise specific personal jurisdiction over HII for purposes of his claims.  A state can exercise specific jurisdiction over an out-of-state entity only with respect to a claim that arises from or relates to the defendant's contacts with the forum.  *Daimler*, 571 U.S. at 127; *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984).  To establish personal jurisdiction, Plaintiff must demonstrate a connection between HII's activities in the state and his claims.  Here, Plaintiff's Complaint is completely devoid of any such allegations.  He has not identified any conduct that HII directed at Pennsylvania.  He merely alleges that he was exposed to asbestos while working for companies in Virginia and North Carolina, without connecting HII or any of its purported activities in Pennsylvania to that exposure in any way.  "What is needed—and what is missing here—is a

5

Case ID: 260300273
Control No.: 26035904

connection between the forum and the specific claims at issue." *Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty.,* 582 U.S. 255, 265 (2017).

Simply put, this Court lacks personal jurisdiction over HII, and the Complaint against it must be dismissed.

**b.  PRELIMINARY OBJECTION IN THE NATURE OF A MOTION FOR A MORE SPECIFIC PLEADING PURSUANT TO PA.R.C.P. 1028(a)(3), AS TO ALL COUNTS**

Pennsylvania is a fact-pleading jurisdiction, and a complaint must do more than allege "general averments of wrongdoing." *Estate of Lay v. McDonald*, 2016 WL 5952504, at *13 (Pa. Super. Ct. Oct. 13, 2016). Rule 1019(a) of the Pennsylvania Rules of Civil Procedure requires that "the material facts on which a cause of action or defense is based shall be stated in a concise and summary form." Rule 1028(a)(3) allows a party to challenge a pleading by filing preliminary objections where there is "insufficient specificity in a pleading." *XF Enterprises, Inc. v. BASF Corp.*, 47 Pa. D. & C. 4th 147, 152–53 (Pa. Comm. Pl. 2000). When determining the sufficiency of the pleadings, the Court must consider "whether the plaintiff's complaint informs the defendant with *accuracy and completeness* of the *specific basis* on which recovery is sought so that he may know *without question* upon what grounds to make his defense." *American Express Centurion v. Decker*, 9 Pa. D. & C. 5th 299, 306 (Pa. Comm. Pl. 2009) (citation omitted) (emphasis added).

Plaintiff's Complaint falls short of the above rules in every respect. The Complaint does not inform HII which of the ten incorporated counts are asserted against it, or how any of those counts apply to it. The Complaint does not inform HII of any product for which it is sued. The Complaint does not contain any facts to suggest HII was an employer of Plaintiff, and thus, potentially subject to the employer counts. The Complaint does not contain any allegations regarding railroad exposure related to HII or any other defendant. And the Complaint does not

6

contain a premises liability count or related allegations at all. Plaintiff has utterly failed to inform HII, "with *accuracy and completeness* of the *specific basis* on which recovery is sought." *Id.* (emphasis added). Instead, he leaves HII with nothing but questions about the proper grounds upon which to make its defense.

The counts contained in the Master Complaint state nothing but legal elements of claims under Pennsylvania law. The Master Complaint provides nothing in the way of facts showing acts or omissions by HII that would make it liable for these claims. The Short-Form Complaint, which should fill in these factual gaps, does nothing of the sort. It fails to provide any additional facts to sustain the legal claims alleged in the Master Complaint. As such, both complaints fail to give HII an accurate, complete, and specific basis for Plaintiff's purported entitlement to recovery.

For these reasons, HII respectfully requests that this Court sustain its Preliminary Objections as to all counts of Plaintiff's Complaint, and direct Plaintiff to file a more specific complaint that identifies which counts are asserted against HII and the factual basis for those claims.

## V.   CONCLUSION

WHEREFORE, for the reasons set forth above, Plaintiff's claims against HII should be dismissed in their entirety for lack of personal jurisdiction. In the event HII is not dismissed on personal jurisdiction grounds, Plaintiff should be required to identify all counts that he asserts against HII and re-plead those counts with the specificity required by Pennsylvania law.[2]

---

[2] Plaintiff's Complaint names HII, and that is the entity that he served. To the extent Plaintiff intended to assert claims against Huntington Ingalls Incorporated ("HIC"), as the owner and operator of the Newport News Shipyard, he has failed to do so. HIC is not named in the Complaint and it has not been served. In any event, this Court lacks personal jurisdiction over HIC, a Virginia corporation with its principal place of business in Virginia, for the same reasons it lacks jurisdiction over HII. Although HIC is registered to do business in Pennsylvania, the consent-by-registration statutory scheme violates the dormant commerce clause. The Complaint also fails to state any claim against HIC, both because it is not named as a defendant, and for the same reasons it fails to state a claim against HII. Should Plaintiff seek to amend the complaint to assert claims against HIC, HIC will file its own Preliminary Objections to address these issues.

7

Case ID: 260300273
Control No.: 26035904

Respectfully submitted:

**HUNTON ANDREWS KURTH LLP**

/s/ Alexandra B. Cunningham
Alexandra Brisky Cunningham
PA Bar #334728

951 East Byrd Street
Riverfront Plaza, East Tower
Richmond, Virginia 23219
acunningham@hunton.com
(804) 788-8200

*Attorney for Defendant Huntington Ingalls Industries, Inc.*

8

Case ID: 260300273
Control No.: 26035904

Dated:  March 25, 2026

**<u>VERIFICATION</u>**

I, Alexandra B. Cunningham, hereby state that I am the attorney for Defendant, Huntington Ingalls Industries, Inc., that I am authorized to make this Verification on its behalf, and that the facts set forth in the foregoing Preliminary Objections are true and correct to the best of my knowledge, information, and belief.

This statement is made subject to the penalties of 18 Pa. C.S. Section 4904 relating to unsworn falsification to authorities.

_____
Alexandra B. Cunningham, Esquire

## CERTIFICATE OF SERVICE

I, Alexandra B. Cunningham, certify that on March 25, 2026, a true and correct copy of the foregoing *Brief in Support of Huntington Ingalls Industries, Inc's Preliminary Objections*, was filed via the First Judicial District of Philadelphia Court of Common Pleas Civil Trial Division's E-Filing System and thereby deemed served on Plaintiff's counsel and all defense counsel.

/s/ Alexandra B. Cunningham

Alexandra B. Cunningham, Esquire
Pennsylvania Attorney I.D. No. 334728

**MORGAN, LEWIS & BOCKIUS LLP**

Brady S. Edwards (PA ID 207293)
1000 Louisiana Street, Suite 4000
Houston, TX 77002
Phone: (713) 890-5110

Hillary C. Rankin (PA I.D. 322799)
One Oxford Centre, Thirty-Second Floor
Pittsburgh, PA 15219
Phone: (412) 560-3300

Attorney for Defendant
Goulds Pumps

Filed and Attested by the
Office of Judicial Records
26 MAR 2026 09:47 am
G. IMPERATO

_____

|  |  |
|---|---|
| ANTONIO R. WILLIAMS, | COURT OF COMMON PLEAS |
|  | PHILADELPHIA COUNTY |
| Plaintiff, | CIVIL ACTION – ASBESTOS CASE |
| v. |  |
|  | MARCH TERM, 2026 |
| AIR & LIQUID SYSTEMS CORPORATION, ET AL. | NO. 00273 |
|  | Jury Trial Demanded |
| Defendants. |  |

_____

### ENTRY OF APPEARANCE AND SHORT FORM ANSWER OF GOULDS PUMPS LLC TO PLAINTIFF'S COMPLAINT

TO THE PROTHONOTARY:

Kindly enter my appearance on behalf of Goulds Pumps LLC ("Goulds") in the above-captioned matter.

In accordance with Pa. R. Civ. P. 1041(c), Phila. Loc. R. 1019(C), and the Order, as amended, for Master Pleading in Asbestos cases in the Philadelphia County Court of Common Pleas, this Entry of Appearance also serves as an Answer of Goulds, to the Master Long Form Complaint and to the Plaintiff's Short Form Complaint, and therefore constitutes as a matter of law: (1) a denial of all averments of fact in the Master Long Form Complaint and Plaintiff's Short Form Complaint; (2) an allegation of all affirmative defenses; (3) a claim for indemnification and contribution from any other party; and (4) a denial of all allegations raised in cross-claims by other parties.

Case ID: 260300273

This Entry of Appearance also serves to incorporate by reference the Asbestos Defendants' Master New Matter filed of record, including any amendments and/or supplements thereto.

Respectfully submitted,

Dated: March 26, 2026

/s/ Hillary C. Rankin
Brady S. Edwards (PA I.D. 207293)
Hillary C. Rankin (PA I.D. 322799)

Attorneys for Defendant Goulds Pumps LLC

## <u>CERTIFICATE OF SERVICE</u>

Hillary C. Rankin, attorney for Defendant Goulds Pumps LLC, certifies that on March 26, 2026, a true and correct copy of this Entry of Appearance and Short Form Answer of Goulds Pumps LLC to Plaintiff's Complaint was served on all parties and/or their counsel via this Court's Electronic filing systems pursuant to the Rules of Civil Procedure.

Dated:  March 26, 2026

/s/ Hillary C. Rankin
Brady S. Edwards (PA I.D. 207293)
Hillary C. Rankin (PA I.D. 322799)

*Attorneys for Defendant Goulds Pumps LLC*

**MORGAN, LEWIS & BOCKIUS LLP**
Brady S. Edwards (PA ID 207293)
1000 Louisiana Street, Suite 4000
Houston, TX 77002
Phone: (713) 890-5110

Hillary C. Rankin (PA I.D. 322799)
One Oxford Centre, Thirty-Second Floor
Pittsburgh, PA 15219
Phone: (412) 560-3300

Attorney for Defendant
ITT LLC f/k/a Bell & Gossett
Co. and Kennedy Valve Mfg.
Co., Inc.

Filed and Attested by the
Office of Judicial Records
26 MAR 2026 09:49 am
G. IMPERATO

---

|   |   |
|---|---|
| ANTONIO R. WILLIAMS, | COURT OF COMMON PLEAS PHILADELPHIA COUNTY |
| Plaintiff, | CIVIL ACTION – ASBESTOS CASE |
| v. | MARCH TERM, 2026 |
| AIR & LIQUID SYSTEMS CORPORATION, ET AL. | NO. 00273 |
| Defendants. | Jury Trial Demanded |

---

## ENTRY OF APPEARANCE AND SHORT FORM ANSWER OF ITT LLC F/K/A BELL & GOSSETT CO. AND KENNEDY VALVE MFG. CO., INC. TO PLAINTIFF'S COMPLAINT

TO THE PROTHONOTARY:

Kindly enter my appearance on behalf of ITT LLC f/k/a Bell & Gossett Co. and Kennedy Valve Mfg. Co., Inc. (Named in the complaint as "ITT LLC, Individually and as successor to Bell & Gossett and as successor to Kennedy Valve Manufacturing Co., Inc.") ("ITT") in the above-captioned matter.

In accordance with Pa. R. Civ. P. 1041(c), Phila. Loc. R. 1019(C), and the Order, as amended, for Master Pleading in Asbestos cases in the Philadelphia County Court of Common Pleas, this Entry of Appearance also serves as an Answer of ITT, to the Master Long Form Complaint and to the Plaintiff's Short Form Complaint, and therefore constitutes as a matter of law: (1) a denial of all averments of fact in the Master Long Form Complaint and Plaintiff's Short Form Complaint; (2) an allegation of all affirmative defenses; (3) a claim for indemnification and contribution from any other party; and (4) a denial of all allegations raised in cross-claims by other parties.

Case ID: 260300273

This Entry of Appearance also serves to incorporate by reference the Asbestos Defendants' Master New Matter filed of record, including any amendments and/or supplements thereto.

Respectfully submitted,

Dated: March 26, 2026

/s/ Hillary C. Rankin
Brady S. Edwards (PA I.D. 207293)
Hillary C. Rankin (PA I.D. 322799)

*Attorneys for ITT LLC f/k/a Bell & Gossett Co. and Kennedy Valve Mfg. Co., Inc*

**CERTIFICATE OF SERVICE**

Hillary C. Rankin, attorney for Defendant ITT LLC f/k/a Bell & Gossett Co. and Kennedy Valve Mfg. Co., Inc. (Named in the complaint as "ITT LLC, Individually and as successor to Bell & Gossett and as successor to Kennedy Valve Manufacturing Co., Inc."), certifies that on March 26, 2026, a true and correct copy of this Entry of Appearance and Short Form Answer of ITT LLC f/k/a Bell & Gossett Co. and Kennedy Valve Mfg. Co., Inc. (Named in the complaint as "ITT LLC, Individually and as successor to Bell & Gossett and as successor to Kennedy Valve Manufacturing Co., Inc.") to Plaintiff's Complaint was served on all parties and/or their counsel via this Court's Electronic filing systems pursuant to the Rules of Civil Procedure.

Dated:  March 26, 2026

/s/ Hillary C. Rankin
Brady S. Edwards (PA I.D. 207293)
Hillary C. Rankin (PA I.D. 322799)

*Attorneys for Defendant ITT LLC f/k/a Bell &*
*Gossett Co. and Kennedy Valve Mfg. Co., Inc.*

# Exhibit E

**The Philadelphia Courts**
# Civil Docket Access

No Items in Cart | **LOGIN**

**Civil Docket Report**

A $5 Convenience fee will be added to the transaction at checkout.

## Case Description

| | |
|---|---|
| **Case ID:** | 260300273 |
| **Case Caption:** | WILLIAMS VS AIR & LIQUID SYSTEMS CORPORATION ETAL |
| **Filing Date:** | Monday , March 02nd, 2026 |
| **Court:** | MASS TORT |
| **Location:** | CITY HALL |
| **Jury:** | JURY |
| **Case Type:** | MASS TORT - ASBESTOS |
| **Status:** | WAITING FOR LISTING MASS TORT |

## Related Cases

*No related cases were found.*

## Case Event Schedule

*No case events were found.*

## Case motions

| Motion | Assign/Date | Control No | Date/Received | Judge |
|---|---|---|---|---|
| PRELIMINARY OBJECTIONS | *pending* | 26035904 | 25-MAR-2026 | MASS TORT-ASBESTOS JUDGE |

## Case Parties

| Seq # | | Assoc | Expn Date | Type | Name |
|---|---|---|---|---|---|
| 1 | | | | ATTORNEY FOR PLAINTIFF | COSTELLO III, EDWARD M |
| **Address:** | 220 LAKE DRIVE EAST SUITE 210 CHERRY HILL NJ 08002 (856)755-1115 ECOSTELLO@WEITZLUX.COM | **Aliases:** | *none* | | |
| | | | | | |
| 2 | | 1 | | PLAINTIFF | WILLIAMS, ANTONIO R |

| | | | |
|---|---|---|---|
| **Address:** | 401 DAVIS AVE<br>ELIZABETH CITY NC 27909 | **Aliases:** | *none* |

| | | | |
|---|---|---|---|
| 3 | 18 | DEFENDANT | IMO INDUSTRIES LLC |
| **Address:** | 28 LIBERTY STREET<br>28TH FLOOR<br>NEW YORK NY 10005 | **Aliases:** | *none* |

| | | | |
|---|---|---|---|
| 4 | 21 | DEFENDANT | ITT LLC |
| **Address:** | CT CORPORATION<br>28 LIBERTY STREET<br>NEW YORK NY 10005 | **Aliases:** | I/A/A/S/T BELL & GOSSETT AND AS SUCCESSOR TO KENNEDY VALVE MANUFACTURING CO., INC. |

| | | | |
|---|---|---|---|
| 5 | 16 | DEFENDANT | PARAMOUNT GLOBAL |
| **Address:** | ECKERT SEAMANS CHERIN & MELLOT<br>USX TOWERS<br>600 GRANT STREET<br>PITTSBURGH PA 15219 | **Aliases:** | F/K/A VIACOMCBS INC., F/K/A CBS CORP, A DELAWARE CORPORATION F/K/A/ VIACOM INC., SUCCESSOR BY MERGER TO CBS CORPORATION A PENNSYLVANIA CORPORATION, F/K/A WESTINGHOUSE ELECTRIC CORP |

| | | | |
|---|---|---|---|
| 6 | | DEFENDANT | REDCO CORPORATION |
| **Address:** | THE CORPORATION TRUST COMPANY<br>1209 ORANGE STREET<br>WILMINGTON DE 19801 | **Aliases:** | F/K/A CRANE CO. |

| | | | |
|---|---|---|---|
| 7 | 17 | DEFENDANT | SCHNEIDER ELECTRIC USA INC |
| **Address:** | CORPORATION SERVICE COMPANY<br>801 ADLAI STEVENSON DR<br>SPRINGFIELD IL 62703 | **Aliases:** | FORMERLY KNOWN AS SQUARE D COMPANY |

| 8 | 19 | | DEFENDANT | WARREN PUMPS LLC |
|---|---|---|---|---|
| **Address:** | CT CORPORATION 1209 ORANGE STREET WILMINGTON DE 19801 | **Aliases:** | *none* | |
| | | | | |
| 9 | | | DEFENDANT | AIR & LIQUID SYSTEMS CORPORATION |
| **Address:** | 5235 NORTH FRONT STREET HARRISBURG PA 17110 | **Aliases:** | AS SUCCESSOR-BY-MERGER TO BUFFALO PUMPS, INC. | |
| | | | | |
| 10 | | | DEFENDANT | CATERPILLAR INC |
| **Address:** | CORPORATION SERVICE COMPANY 251 LITTLE FALLS DRIVE WILMINGTON DE 19808 | **Aliases:** | *none* | |
| | | | | |
| 11 | 17 | | DEFENDANT | FMC CORPORATION |
| **Address:** | 306 WEST MAIN STREET SUITE 512 FRANKFORT KY 40601 | **Aliases:** | INDIVIDUALLY AND SUCCESSOR TO LINKBELT | |
| | | | | |
| 12 | 16 | | DEFENDANT | GENERAL ELECTRIC COMPANY |
| **Address:** | ELECTRIC INSURANCE COMPANY 75 SAM FONZO DRIVE BEVERLY MA 01915 | **Aliases:** | *none* | |
| | | | | |
| 13 | 21 | | DEFENDANT | GOULDS PUMPS LLC |
| **Address:** | CT CORPORATION SYSTEM 28 LIBERTY ST, 42ND FL NEW YORK NY 10005 | **Aliases:** | *none* | |
| | | | | |
| 14 | 20 | | DEFENDANT | HUNTINGTON INGALLS INDUSTRIES |

| **Address:** | C/O HUNTON ANDREWS KURTH LLP<br>951 E. BYRD STREET<br>RICHMOND VA 23219 | **Aliases:** | *none* | |
|---|---|---|---|---|
| | | | | |
| 15 | | | TEAM LEADER | ROBERTS, JOSHUA |
| **Address:** | 538 CITY HALL<br>PHILADELPHIA PA 19107 | **Aliases:** | *none* | |
| | | | | |
| 16 | | | ATTORNEY FOR DEFENDANT | MCSHEA, JOHN P |
| **Address:** | EASTBURN & GRAY, P.C.<br>60 EAST COURT STREET<br>DOYLESTOWN PA 18901<br>(215)345-7000<br>asbcourtfilings@eastburngray.com | **Aliases:** | *none* | |
| | | | | |
| 17 | | | ATTORNEY FOR DEFENDANT | REBER, W MATTHEW |
| **Address:** | KELLEY JASONS MCGOWAN SPINELLI<br>1818 MARKET ST<br>SUITE 3205<br>PHILADELPHIA PA 19103<br>(215)854-0658<br>mreber@kjmsh.com | **Aliases:** | *none* | |
| | | | | |
| 18 | | | ATTORNEY FOR DEFENDANT | FONTAK, JOSEPH IRA |
| **Address:** | LEADER BERKON COLAO SILVERSTEI<br>1515 MARKET ST<br>SUITE 1200<br>PHILADELPHIA PA 19102<br>(215)755-0455<br>jfontak@leaderberkon.com | **Aliases:** | *none* | |
| | | | | |
| 19 | | | ATTORNEY FOR DEFENDANT | SCHEETS, JOSHUA D |

| Address: | 2000 MARKET STREET<br>23RD FLOOR<br>PHILADELPHIA PA 19104<br>(215)575-2751<br>jdscheets@mdwcg.com | | Aliases: | none |
|---|---|---|---|---|

| 20 | | | | ATTORNEY FOR DEFENDANT | CUNNINGHAM, ALEXANDRA B |
|---|---|---|---|---|---|
| Address: | 951 E. BYRD ST<br>RICHMOND VA 23219<br>(804)787-8087<br>ACUNNINGHAM@HUNTONAK.COM | | Aliases: | none | |

| 21 | | | | ATTORNEY FOR DEFENDANT | RANKIN, HILLARY C |
|---|---|---|---|---|---|
| Address: | ONE OXFORD CENTRE<br>THIRTY SECOND FLOOR<br>PITTSBURGH PA 15219<br>(412)560-7471<br>hillary.rankin@morganlewis.com | | Aliases: | none | |

## Docket Entries

| Filing Date/Time | Docket Type | Filing Party | Disposition Amount |
|---|---|---|---|
| 02-MAR-2026 10:57 AM | ACTIVE CASE | | |
| Docket Entry: | E-Filing Number: 2603001151 | | |
| | | | |
| 02-MAR-2026 10:57 AM | COMMENCEMENT CIVIL ACTION JURY | COSTELLO III, EDWARD M | |
| Documents: | Click link(s) to preview/purchase the documents<br>Final Cover | Click HERE to purchase all documents related to this one docket entry | |
| Docket Entry: | none. | | |
| | | | |
| 02-MAR-2026 10:57 AM | COMPLAINT FILED NOTICE GIVEN | COSTELLO III, EDWARD M | |

| Documents: | 📄 Click link(s) to preview/purchase the documents<br>Williams, Antonio (T126864) Redacted PA Complaint.pdf<br>Williams, Antonio (T126864) PA Complaint.pdf<br>**(CONFIDENTIAL DOCUMENT)** | Click HERE to purchase all documents related to this one docket entry |
|---|---|---|
| Docket Entry: | COMPLAINT WITH NOTICE TO DEFEND WITHIN TWENTY (20) DAYS AFTER SERVICE IN ACCORDANCE WITH RULE 1018.1 FILED. | |

| 02-MAR-2026 10:57 AM | JURY TRIAL PERFECTED | COSTELLO III, EDWARD M | |
|---|---|---|---|
| Docket Entry: | 12 JURORS REQUESTED. | | |

| 02-MAR-2026 10:57 AM | WAITING FOR LISTING MASS TORT | COSTELLO III, EDWARD M | |
|---|---|---|---|
| Docket Entry: | *none.* | | |

| 02-MAR-2026 10:57 AM | CASE MANAGEMENT ORDER ISSUED | COSTELLO III, EDWARD M | |
|---|---|---|---|
| Documents: | 📄 Click link(s) to preview/purchase the documents<br>Asbestos | Click HERE to purchase all documents related to this one docket entry | |
| Docket Entry: | * | | |

| 04-MAR-2026 07:32 AM | NOTICE GIVEN | | |
|---|---|---|---|
| Docket Entry: | OF GLOBAL CASE MANAGEMENT ORDER ISSUED. | | |

| 06-MAR-2026 10:21 AM | ENTRY OF APPEARANCE | MCSHEA, JOHN P | |
|---|---|---|---|
| Documents: | 📄 Click link(s) to preview/purchase the documents<br>2026-03-6-Williams-GE-EOA.pdf | Click HERE to purchase all documents related to this one docket entry | |
| Docket Entry: | ENTRY OF APPEARANCE OF JOHN P MCSHEA FILED. (FILED ON BEHALF OF GENERAL ELECTRIC COMPANY) | | |

| 06-MAR-2026 10:51 AM | AFFIDAVIT OF SERVICE FILED | COSTELLO III, EDWARD M | |
|---|---|---|---|

Civil Docket Report

| Documents: | ⚏ Click link(s) to preview/purchase the documents<br>Goulds Pumps LLC 260300273-5532.pdf | 🛒 Click HERE to purchase all documents related to this one docket entry |
|---|---|---|
| Docket Entry: | AFFIDAVIT OF SERVICE OF PLAINTIFF'S COMPLAINT UPON GOULDS PUMPS LLC BY PERSONAL SERVICE ON 03/04/2026 FILED. (FILED ON BEHALF OF ANTONIO R WILLIAMS) | |
| | | |
| 06-MAR-2026 10:52 AM | AFFIDAVIT OF SERVICE FILED | COSTELLO III, EDWARD M | |
| Documents: | ⚏ Click link(s) to preview/purchase the documents<br>IMO Industries LLC 260300273-5528.pdf | 🛒 Click HERE to purchase all documents related to this one docket entry |
| Docket Entry: | AFFIDAVIT OF SERVICE OF PLAINTIFF'S COMPLAINT UPON IMO INDUSTRIES LLC BY PERSONAL SERVICE ON 03/04/2026 FILED. (FILED ON BEHALF OF ANTONIO R WILLIAMS) | |
| | | |
| 06-MAR-2026 10:54 AM | AFFIDAVIT OF SERVICE FILED | COSTELLO III, EDWARD M | |
| Documents: | ⚏ Click link(s) to preview/purchase the documents<br>ITT LLC 260300273-5526.pdf | 🛒 Click HERE to purchase all documents related to this one docket entry |
| Docket Entry: | AFFIDAVIT OF SERVICE OF PLAINTIFF'S COMPLAINT UPON ITT LLC BY PERSONAL SERVICE ON 03/04/2026 FILED. (FILED ON BEHALF OF ANTONIO R WILLIAMS) | |
| | | |
| 11-MAR-2026 06:40 PM | AFFIDAVIT OF SERVICE FILED | COSTELLO III, EDWARD M | |
| Documents: | ⚏ Click link(s) to preview/purchase the documents<br>FMC Corporation 260300273-5534.pdf | 🛒 Click HERE to purchase all documents related to this one docket entry |
| Docket Entry: | AFFIDAVIT OF SERVICE OF PLAINTIFF'S COMPLAINT UPON FMC CORPORATION BY PERSONAL SERVICE ON 03/04/2026 FILED. (FILED ON BEHALF OF ANTONIO R WILLIAMS) | |
| | | |
| 11-MAR-2026 06:43 PM | AFFIDAVIT OF SERVICE FILED | COSTELLO III, EDWARD M | |
| Documents: | ⚏ Click link(s) to preview/purchase the documents<br>Schneider Electric USA Inc 260300273-5511.pdf | 🛒 Click HERE to purchase all documents related to this one docket entry |
| Docket Entry: | AFFIDAVIT OF SERVICE OF PLAINTIFF'S COMPLAINT UPON SCHNEIDER ELECTRIC USA INC BY PERSONAL SERVICE ON 03/05/2026 FILED. (FILED ON BEHALF OF ANTONIO R WILLIAMS) | |
| | | |

| 12-MAR-2026 03:50 PM | ANSWER TO COMPLAINT FILED | REBER, W MATTHEW | |
|---|---|---|---|
| **Documents:** | ⚏ Click link(s) to preview/purchase the documents<br>Williams_ Antonio - EOA FMC(3529265.1).pdf | 🛒 Click HERE to purchase all documents related to this one docket entry | |
| **Docket Entry:** | ANSWER TO PLAINTIFF'S COMPLAINT FILED. (FILED ON BEHALF OF FMC CORPORATION) ENTRY OF APPEARANCE FILED ON BEHALF OF FMC CORPORATION. | | |
| | | | |
| 13-MAR-2026 12:50 PM | AFFIDAVIT OF SERVICE FILED | COSTELLO III, EDWARD M | |
| **Documents:** | ⚏ Click link(s) to preview/purchase the documents<br>Caterpillar Inc 260300273-5539.pdf | 🛒 Click HERE to purchase all documents related to this one docket entry | |
| **Docket Entry:** | AFFIDAVIT OF SERVICE OF PLAINTIFF'S COMPLAINT UPON CATERPILLAR INC BY AGENT AUHTORIZED TO ACCEPT SERVICE ON 03/10/2026 FILED. (FILED ON BEHALF OF ANTONIO R WILLIAMS) | | |
| | | | |
| 13-MAR-2026 12:53 PM | AFFIDAVIT OF SERVICE FILED | COSTELLO III, EDWARD M | |
| **Documents:** | ⚏ Click link(s) to preview/purchase the documents<br>Huntington Ingalls Industries 260300273-5529.pdf | 🛒 Click HERE to purchase all documents related to this one docket entry | |
| **Docket Entry:** | AFFIDAVIT OF SERVICE OF PLAINTIFF'S COMPLAINT UPON HUNTINGTON INGALLS INDUSTRIES BY PERSONAL SERVICE ON 03/05/2026 FILED. (FILED ON BEHALF OF ANTONIO R WILLIAMS) | | |
| | | | |
| 13-MAR-2026 12:55 PM | AFFIDAVIT OF SERVICE FILED | COSTELLO III, EDWARD M | |
| **Documents:** | ⚏ Click link(s) to preview/purchase the documents<br>Redco Corporation 260300273-5516.pdf | 🛒 Click HERE to purchase all documents related to this one docket entry | |
| **Docket Entry:** | AFFIDAVIT OF SERVICE OF PLAINTIFF'S COMPLAINT UPON REDCO CORPORATION BY PERSONAL SERVICE ON 03/10/2026 FILED. (FILED ON BEHALF OF ANTONIO R WILLIAMS) | | |
| | | | |
| 13-MAR-2026 12:57 PM | AFFIDAVIT OF SERVICE FILED | COSTELLO III, EDWARD M | |
| **Documents:** | ⚏ Click link(s) to preview/purchase the documents<br>Warren Pumps LLC 260300273-5503.pdf | 🛒 Click HERE to purchase all documents related to this one docket entry | |
| **Docket Entry:** | AFFIDAVIT OF SERVICE OF PLAINTIFF'S COMPLAINT UPON WARREN PUMPS LLC BY PERSONAL SERVICE ON 03/10/2026 FILED. (FILED ON BEHALF OF | | |

ANTONIO R WILLIAMS)

| | | | |
|---|---|---|---|
| 13-MAR-2026 01:11 PM | ANSWER TO COMPLAINT FILED | REBER, W MATTHEW | |

| | |
|---|---|
| **Documents:** | ⚞ Click link(s) to preview/purchase the documents<br>Antonio Williams - Square D Entry.pdf    [🛒 Click HERE to purchase all documents related to this one docket entry] |
| **Docket Entry:** | ANSWER TO PLAINTIFF'S COMPLAINT FILED. (FILED ON BEHALF OF SCHNEIDER ELECTRIC USA INC) ENTRY OF APPEARANCE FILED ON BEHALF OF SCHNEIDER ELECTRIC USA INC. |

| | | | |
|---|---|---|---|
| 13-MAR-2026 01:16 PM | SHORT FORM ANSWER FILED | FONTAK, JOSEPH IRA | |

| | |
|---|---|
| **Documents:** | ⚞ Click link(s) to preview/purchase the documents<br>Williams (PA) - Imo - Entry of Appearance and Answer to Complaint.pdf    [🛒 Click HERE to purchase all documents related to this one docket entry] |
| **Docket Entry:** | SHORT FORM ANSWER WITH ALL AFFIRMATIVE DEFENSES IN ACCORDANCE WITH 1041.1 FILED. (FILED ON BEHALF OF IMO INDUSTRIES LLC) ENTRY OF APPEARANCE FILED ON BEHALF OF IMO INDUSTRIES LLC. |

| | | | |
|---|---|---|---|
| 19-MAR-2026 11:41 AM | AFFIDAVIT OF SERVICE FILED | COSTELLO III, EDWARD M | |

| | |
|---|---|
| **Documents:** | ⚞ Click link(s) to preview/purchase the documents<br>Paramount Global 260300273-5520.pdf    [🛒 Click HERE to purchase all documents related to this one docket entry] |
| **Docket Entry:** | AFFIDAVIT OF SERVICE OF PLAINTIFF'S COMPLAINT UPON PARAMOUNT GLOBAL BY PERSONAL SERVICE ON 03/10/2026 FILED. (FILED ON BEHALF OF ANTONIO R WILLIAMS) |

| | | | |
|---|---|---|---|
| 19-MAR-2026 02:23 PM | ENTRY OF APPEARANCE | MCSHEA, JOHN P | |

| | |
|---|---|
| **Documents:** | ⚞ Click link(s) to preview/purchase the documents<br>2026-03-19-Williams-PG-EOA.pdf    [🛒 Click HERE to purchase all documents related to this one docket entry] |
| **Docket Entry:** | ENTRY OF APPEARANCE OF JOHN P MCSHEA FILED. (FILED ON BEHALF OF PARAMOUNT GLOBAL) |

| | | | |
|---|---|---|---|
| 24-MAR-2026 02:48 PM | ENTRY OF APPEARANCE | SCHEETS, JOSHUA D | |

| | |
|---|---|
| **Documents:** | ⚞ Click link(s) to preview/purchase the documents<br>Williams - EOA.Warren Pumps (175380036.1).pdf    [🛒 Click HERE to purchase all documents related to this one docket entry] |

| | |
|---|---|
| **Docket Entry:** | ENTRY OF APPEARANCE OF JOSHUA D SCHEETS FILED. (FILED ON BEHALF OF WARREN PUMPS LLC) |

| | | | |
|---|---|---|---|
| 24-MAR-2026 04:36 PM | SHERIFF'S SERVICE | COSTELLO III, EDWARD M | |
| **Documents:** | ⤓ Click link(s) to preview/purchase the documents <br> Air Liquid Systems Corporation 260300273-5547.pdf | 🛒 Click HERE to purchase all documents related to this one docket entry | |
| **Docket Entry:** | DEPUTIZED SERVICE OF PLAINTIFF'S COMPLAINT UPON AIR & LIQUID SYSTEMS CORPORATION BY SHERIFF OF DAUPHIN COUNTY ON 03/12/2026. (FILED ON BEHALF OF ANTONIO R WILLIAMS) | | |

| | | | |
|---|---|---|---|
| 25-MAR-2026 02:40 PM | PRELIMINARY OBJECTIONS | CUNNINGHAM, ALEXANDRA B | |
| **Documents:** | ⤓ Click link(s) to preview/purchase the documents <br> HII_Williams - Preliminary Objections Packet.pdf <br> HII_Williams - Preliminary Objections - Exhibits 1 - 3.pdf | 🛒 Click HERE to purchase all documents related to this one docket entry | |
| **Docket Entry:** | 04-26035904 PRELIMINARY OBJECTIONS TO SHORT FORM COMPLAINT AND THE MASTER COMPLAINT FILED. RESPONSE DATE: 04/14/2026 (FILED ON BEHALF OF HUNTINGTON INGALLS INDUSTRIES) ENTRY OF APPEARANCE FILED ON BEHALF OF HUNTINGTON INGALLS INDUSTRIES. | | |

| | | | |
|---|---|---|---|
| 26-MAR-2026 09:47 AM | SHORT FORM ANSWER FILED | RANKIN, HILLARY C | |
| **Documents:** | ⤓ Click link(s) to preview/purchase the documents <br> Williams, Antonio_Goulds EOA.pdf | 🛒 Click HERE to purchase all documents related to this one docket entry | |
| **Docket Entry:** | SHORT FORM ANSWER WITH ALL AFFIRMATIVE DEFENSES IN ACCORDANCE WITH 1041.1 FILED. (FILED ON BEHALF OF GOULDS PUMPS LLC) ENTRY OF APPEARANCE FILED ON BEHALF OF GOULDS PUMPS LLC. | | |

| | | | |
|---|---|---|---|
| 26-MAR-2026 09:49 AM | SHORT FORM ANSWER FILED | RANKIN, HILLARY C | |
| **Documents:** | ⤓ Click link(s) to preview/purchase the documents <br> Williams, Antonio_ITT EOA.pdf | 🛒 Click HERE to purchase all documents related to this one docket entry | |
| **Docket Entry:** | SHORT FORM ANSWER WITH ALL AFFIRMATIVE DEFENSES IN ACCORDANCE WITH 1041.1 FILED. (FILED ON BEHALF OF ITT LLC) ENTRY OF APPEARANCE FILED ON BEHALF OF ITT LLC. | | |

▶ Case Description    ▶ Related Cases    ▶ Event Schedule    ▶ Case Parties    ▶ Docket Entries

# Exhibit F

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| **ANTONIO R. WILLIAMS,**<br><br>    **Plaintiff,**<br><br>**v.**<br><br>**AIR & LIQUID SYSTEMS CORPORATION, et al.,**<br><br>    **Defendants.** | **Civil Action No.** _____ |

## DECLARATION OF REAR ADMIRAL DAVID P. SARGENT, JR.

DAVID P. SARGENT, JR., being duly sworn, deposes and states under the penalties of perjury, as follows:

### Background and Experience

1. I am a retired Rear Admiral of the United States Navy, in which I served between 1967 and 1999. I began my active naval career in 1967 after receiving a Bachelor of Science degree in Mechanical Engineering from Cornell University and receiving a commission in the Navy through the Naval ROTC program. Upon commissioning in the Navy, I attended the Cruiser-Destroyer Forces Pacific Fleet Engineering Officer's School in a course focused on the operation and maintenance of engineering plants of World War II era warships. In 1974, I received a Master of Mechanical Engineering degree from the Naval Postgraduate School, Monterey, California. In addition, I am a licensed Professional Engineer (Mechanical) with extensive operational experience in ship engineering, ship maintenance and at-sea operations.

2. My assignments from 1967 until 1988 were primarily involved with the operation and maintenance of Navy warships. Thereafter, I held a variety of program and technical management positions in the Naval Sea Systems Command program offices where I was responsible for the design, construction, fleet introduction, in-service support, and modernization of various classes of warships. Upon selection to Rear Admiral in 1994, I was assigned as

RADM Sargent Declaration in Williams, Antonio for Huntington Ingalls

Commander, Naval Surface Warfare Center, a diverse organization of research laboratories and engineering stations responsible for research and development of all technical aspects of Navy surface ships and submarines. My final assignment before retirement in 1999 was as Program Executive Officer for Aircraft Carriers, Expeditionary Warfare and Auxiliary ships. In that position, I had overall responsibility for all matters relating to both the technical and programmatic details of design, construction, delivery and support of both new and in-service aircraft carriers, expeditionary warfare and auxiliary ships of the Navy.

3.    I am now the President of Sargent Enterprises, Inc. which includes several business units:  SEI Associates, a consulting business that provides technical and management advice to marine industries; SEI Marine Technologies LLC; a currently inactive company that operates and maintains various test and demonstration craft for R&D companies involved in developing new equipment and hull forms for future high performance ships, SEI Vistas LLC that is focused on the introduction of innovative durable construction technologies for maritime related uses, and SEI Properties LLC, a business unit involved in the management and renovation of rental properties, I served for many years in active leadership of the American Society of Naval Engineers (ASNE) and in 2001 was elected to serve as President ASNE, and served two consecutive two-year terms. I am also a member of the Sigma Xi Engineering Honorary Society, the American Society of Mechanical Engineers, The Cornell Engineering Alumni Association, the U.S. Navy League and several other professional societies.

4.    My statements in this Declaration are based on a combination of my education, training and experience as a degreed and Licensed Professional Mechanical Engineer and as a career Naval Officer with extensive experience in both the operation and command of Navy ships and the design, procurement and lifetime support of Navy ships and weapons systems.

5.    As a Navy engineering officer and program manager, I was often called upon to assist in determining conformance of shipbuilders and equipment and material vendors to drawings and specifications prior to acceptance by the Navy. The chain of command within the Navy concerning ship design and construction involves several layers of authority, particularly in the

lines of command for technical and contractual control over Navy ship design, construction, maintenance and repair. Ultimately, the Secretary of the Navy has authority over the Navy including Navy shipbuilding design, construction and operation. During the 1940s, 1950s and 1960s, the Navy Bureau of Ships (BUSHIPS) (later known as NAVSHIPS and currently as NAVSEA) controlled all Navy ship design and construction.

6.      I am knowledgeable from my own Navy service, and also from my education, training, and experience with the historical practices and procedures employed by the Navy in the design and construction of ships and the operation of its ships and facilities.

7.      It is my understanding from reviewing the Complaint that Antonio Williams alleges that while working at Newport News Shipbuilding and Dry Dock Company (NNS&DD) in the 1980s he was exposed to asbestos from asbestos containing equipment including pumps, valves and electrical equipment. I have been provided with a copy of a document that identifies the ships that were constructed or overhauled at NNS&DD between 1980 and 1990 which is attached as Exhibit A. It is my understanding that this document was prepared from NNS&DD records. According to this document the only ships constructed or overhauled at NNS&DD during this timeframe were US Navy ships and submarines. To the extent that Antonio Williams claims to have been exposed to asbestos from work on or around asbestos containing shipboard equipment, all that equipment would have been specified in detail by the Navy and would have been procured and installed in accordance with Navy acquisition procedures described in this report.

**The Military Environment on Navy Warships is Unique**

8.      The military setting on Navy ships is unique and distinct from the civilian environment, and also differs somewhat from that of land based military organizations. All have management structures, but the military command hierarchy of rank is well defined and the accountability and authority of the Navy ship's Commanding Officer approaches absolute. This authority is based in Federal statute, as well as in Navy Regulations and Instruction. Over time, there have been evolutionary changes in these to incorporate changing societal values, but the authority of the individual in command remains constant. When routine "orders" are given, prompt

and appropriate response is expected. The failure to obey a lawful order is a punishable offense and, depending upon the situation (wartime, national emergency, misconduct), the punishment can be severe. Individual freedoms that are common to civilians are not as universally applied to military members. Civil liberties indeed exist, but they are tempered to the strict Uniform Code of Military Justice (UCMJ) and the requirements of individuals serving in the Country's national defense. Military personnel are required to wear uniforms with rank insignia, and to maintain strict physical and grooming standards. Military members ask for permission to leave the presence of a senior in a normal setting, and juniors initiate salutes when in uniform. Although the actual work tasks and duties performed by Navy sailors may be similar to some civilian trades, naval uniformed personnel are not civilians "doing their job".

9. The normal day in the military also differs dramatically from the civilian environment. Whereas civilians have a "normal work day" of 8 or so hours and then return to their "private life", in the military the "work day" is 24 hours long. Here again that 24 hour day is unique for Navy personnel on ships for several reasons. First, a warship is the only weapons system in which the operators live. Armies live in barracks or tents, store their weapons in ammo magazines, and conduct their daily military tasks in locations separate from both of those. On Navy ships, the ship is the "barracks", the "magazine, the "weapon", and the military "work site", and is continuously in motion on the oceans of the world. Thus, sailors on a Navy ship must continuously operate the ship's propulsion system and "hotel services" equipment that make the ship safe and livable, but must also spend a "military work day" focused on training and maintenance of the "weapon systems" to be battle ready. These two requirements are done concurrently on ships through a "watch bill" in which personnel operate the ships on a twenty-four hour basis, and a "work day" of approximately eight hours. The "watch bill" is typically comprised of four hour "watches" during which the "engineers" operate the propulsion, electrical generating, and other systems that make the ship mobile, safe and livable, the ship's officers and "deck force" stand navigation and ship control watches on the bridge, and the "operations crew" continuously operate the ships radars, communications, and other electronics equipment. There are typically three

"watch sections", thus allowing the personnel to be "on watch" for four hours, and "off watch" for eight hours. Those watch sections in an "off watch" status during the daylight hours use that time to accomplish the "military work day" focused on training and readiness of the war fighting equipment. Thus, a typical day for a sailor on a Navy ship includes two four hour "watches" and up to eight hours of "military work". In addition to the concurrent "watches" and "military work", a Navy ship typically conducts "underway replenishment" every three or four days. During these "underway replenishments", warships rendezvous in close formation with Navy oilers, ammunition ships, and food cargo ships and transfer large quantities of fuel, ammunition, and food to that are needed to keep the ship operating and battle ready. These "underway replenishments" typically take three to four hours to complete, and require "all hands" to be involved to operate the special equipment and to handle the food, ammunition, and cargo coming aboard. These "underway replenishments" can occur at any time of the day, and are often done in the middle of the night. Therefore, a Navy sailors' "typical work day" is very busy with "watches", "work", and "special evolutions" such as replenishment.

## Navy Warships are Unique and Complex

10.    Warships must be designed to meet very demanding performance requirements such as high speed and firing of weapons, the ability to safely carry and employ a vast array of explosives and ammunition, the ability to operate for long periods at sea without support or replenishment, and do all these missions both in peacetime and in combat.

11.    Navy warships are some of the most complex machines ever designed and constructed. They are high-speed, floating, heavily armed communities that must support hundreds of crew members and a vast array of complex systems for months at sea. Ships are the only machines sufficiently large, complex and mobile that the operators must live inside the machines they operate. Thus, warships of all sizes and types contain all the facilities of a community plus multiple armaments and ammunition. Major characteristics and capabilities include a sturdy and survivable hull form, high performance propulsion systems, electrical power generation to support all needs, fresh water distilling systems, food storage, preparation, and eating

RADM Sargent Declaration in Williams, Antonio for Huntington Ingalls                    Page - 5 - of - 47

spaces as well as clean up, living spaces, laundry services, medical spaces, library, firefighting and damage control capabilities, and many other services.

12.     An example will help to illustrate the immense task faced by the Navy in designing warships.  Among the warships constructed by the Navy during the 1950s and 1960s were the *FORRESTAL* Class aircraft carriers.  These ships were designed and constructed during the 1950s and served the Navy into the 1990s.

13.     The *FORRESTAL* Class carriers were 1,063 feet long, with an extreme width of 252 feet.  They displaced about 80,000 tons. Their draft, or depth below the waterline, was approximately 37 feet (about the height of a 4 story building). The overall height of the ships was greater than the height of a 25 story building, and they had 19 different "levels" or floors.  The flight deck from which aircraft took off and landed was approximately four acres in size, and the hangar bay consumed an additional two acres.  The ships had approximately 3,000 separate compartments or rooms, ranging in size from small offices to engineering spaces the size of gymnasiums.  The onboard storerooms were equal in size to a six-story building. It took about 300,000 gallons of paint to paint the entire ship. There were multiple large food preparation and serving areas to feed the crew around the clock.

14.     The *FORRESTAL* Class carriers were capable of speeds in excess of 30 knots (about 36 mph), produced more than 200,000 gallons of fresh water a day by distilling salt water, and carried several hundred-thousand gallons of ship and aviation fuel.  Each had eight large turbo-generators that produced enough electricity to power a good sized city.  The Navy estimates that the ships had more than 10,000 miles of electrical cable installed and many miles of piping the ships carried more than 80 aircraft each, and they had crews of more than 5,500.

15.     Navy warships must be designed to operate effectively in very harsh and hostile environments, to survive battle damage and fight again, and to meet demanding speed and maneuvering requirements.  Over time, the specific types of enemies, weapons and combat which Navy ships must face has changed, from a focus on surface-to-surface combat involving heavy

guns to greater use of aircraft and missiles.  These changes have created fundamental changes in the design and construction of Navy ships.

16.     Beginning in and following World War II, the aircraft carrier became the most significant type of surface ship. An aircraft carrier must use high speed to create wind over the deck to launch and recover aircraft.  The result was an overall increase in the speed demanded of Navy ships of all types, whether carriers or the support and escort ships that accompany them.  To meet these demands, Navy designers had to develop significantly higher horsepower propulsion plants.  It was also imperative that this increased power be achieved without significant increase in either the size or the weight of the propulsion plant, since increased size and weight would require even more horsepower.

17.     Although there are multiple companies and industries that design and construct components and subsystems for seagoing ships, there has never been any one US company that can design, construct and deliver a complete ship, especially a complex Navy warship. Thus the unique aspects of Navy warship design and development placed other requirements on the Navy establishment.  Since there was no U.S. industry that either designed or assembled these high performance propulsion plants, the Navy had to undertake itself the design of these complex and state-of-the-art warships, and had to develop ways to verify the performance and reliability of these new designs.  To accomplish this, the Navy maintained an engineering establishment with many different engineering specialties.  The Navy had the most diverse and advanced engineering workforce in the nation.  Additionally, verifying the performance of these new propulsion designs required that the Navy engineering organization build large shore-based laboratories in which they assembled and operated prototypes of these propulsion plants.  These prototypes served many uses including verifying performance, validating reliability, and developing optimum operating procedures.

## Navy Organization

17.     Consistent with the sweeping scope of its mission and responsibilities, the Navy is comprised of many different organizations, each of which is specialized in focus, talent and

experience. These organizations work together in accomplishing the very complex and unique sequential efforts from the defining naval war fighting requirements, designing ships and weapon systems that will meet these requirements, and contracting with industry and other government agencies to procure the vast array of required equipment and materials and to construct and test warships. This diverse Navy organization can be described in four major groupings:

-- Secretary of the Navy (SECNAV) and the Chief of Naval Operations (CNO) headquarters staffs (CNO staff is referred to as OPNAV)

-- Operational Fleets

-- Technical Bureaus (now called Systems Commands)

-- Staff Corps (Medical, Dental, Legal, etc.)

SECNAV and CNO Staffs

18.     The staffs of Secretary of the Navy (SECNAV) and the Chief of Naval Operations (CNO) are involved in the analysis of national naval war fighting needs, and the development of specific war fighting requirements that must be met.  At a top level for warships, these requirements include such things as the types and numbers of ships needed; the capabilities for these ships such as speed, weapons to be installed; types and numbers of aircraft to be embarked; the range and duration at which these ships must be able to operate independently at sea without replenishment; and the reliability of systems that must be guaranteed in order for the Navy to meets its war fighting mission.  These staffs are manned by a combination of experienced uniformed Navy personnel with extensive Fleet experience and career civil servants.

Operational Fleets

19.     The Operational Fleets are the Navy's war fighters who control and operate the various ships, aircraft, and other equipment in the Navy and Marine Corps.  There are several numbered Fleets (e.g., Sixth Fleet, Seventh Fleet) with regional geographic responsibilities around the world.  These Operational Fleets have always worked closely with the headquarters staffs in the development of naval warship required capabilities.

Technical Bureaus

20.     The Bureau System was established in 1842 to provide the Navy with necessary technical and management control. By the early 1940s, there were six bureaus:

-- Bureau of Naval Yards and Docks

-- Bureau of Ships (BUSHIPS)

-- Bureau of Supplies and Accounts (BUSANDA)

-- Bureau of Ordnance and Hydrography

-- Bureau of Medicine and Surgery

-- Bureau of Aeronautics

21.     In the 1950s, a Bureau of Weapons (BUWEPS) was formed by merging the Bureau of Ordnance and the Bureau of Aeronautics.  In the 1960s the bureau system evolved several times into what are now called the Systems Commands where BUWEPS was divided into the Naval Air Systems Command and Naval Ordnance Command (NAVORD), and BUSHIPS was divided into the Naval Ship Systems Command (NAVSHIPS) and the Naval Electronics Systems Command. In 1975, another reorganization took place in which NAVSHIPS and NAVORD became the Naval Sea Systems Command (NAVSEA). During this organizational evolution the Bureau of Supplies and Accounts (BUSANDA) became the Naval Supply Systems Command.

Navy Staff Corps

22.     The various staff corps of the Navy are comprised of professionals such as doctors, dentists, and lawyers who support all aspects of the Navy in their respective specialties.

23.     The Bureau of Medicine & Surgery (BUMED) has always had a very significant role in both the design and operation of Navy warships, in addition to its fundamental role in the overall health and well-being of Navy personnel. All ships have medical facilities integrated into the design, both for normal medical support of the large crews, and for treatment of battle injuries. Small ships such as destroyers have a modest infirmary space and other spaces that can be converted for medical use while at battle stations.  Larger ships have much greater medical

capability, with aircraft carriers being fully equipped with several operating rooms for surgery and large hospital wards for sick and wounded personnel.

24.     BUMED also plays a very significant role in the operation of Navy ships. BUMED establishes the medical policies and procedures, both preventive and curative, which are utilized on all Navy warships.  Additionally, the crew of each warship includes medical personnel who are involved in preventive medicine, crew training, health inspections, and treatment of ailments and injuries.  Small ships such as destroyers typically have one highly trained enlisted hospital corpsman assigned, and large ships have both physicians and hospital corpsmen. Aircraft carriers have numerous medical doctors and surgeons with various specialties.

<b>Responsibilities in Warship Design and Construction</b>

25.     Responsibilities for the various functions associated with warship design and construction in from the World War II period to the 1970s were as follows:

<u>SECNAV and OPNAV Staffs</u>

26.     Working closely with the Operational Fleets and Bureaus, these staffs had the responsibility for defining naval war fighting requirements, developing concepts of operations and ship concepts, and requesting congressional authority and funding to build war ships.

<u>BUSHIPS (Now called NAVSEA)</u>

27.     The Bureau of Ships (BUSHIPS) was comprised of a broad assortment of engineers and technical personnel, and was responsible for all technical aspects of Navy warships. Included were the preliminary designs of ships, the detailed design of ships, subsystems and equipment, and development of the contract design package.  BUSHIPS, aided by BUSANDA, had the responsibility to develop the contract design package and the myriad invitation for bids required to actually procure and construct the ships. All U.S. Naval Shipyards were under the direct command of BUSHIPS, as were the resident Supervisors of Shipbuilding who performed the same government supervisory functions at civilian shipyards.  Thus, BUSHIPS was responsible for both the new construction and future repair and overhaul of ships at both naval and private shipyards.

BUSHIPS and BUSANDA each had on-site Navy inspectors at various vendors' plants that were responsible for verifying that the vendor complied exactly with all provisions of that vendor's procurement contracts. BUSHIPS was also responsible for the design development of equipment repair and maintenance standards and procedures, and for the development of Navy Specs/MILSPECs that related to ships and ship equipment.

Other Technical Organizations

28.     Warships are equipped with many different weapon systems, aviation capabilities, and the accompanying electronic equipment. Therefore, many other Navy and national technical organizations provided support to BUSHIPS in all phases of design and construction. Principal supporting organizations included the Bureau of Ordnance, the Bureau of Aeronautics, and the Naval Electronics Command. Also key in the development and testing of warship propulsion equipment and systems were the National Boiler Test Lab and the Naval Ship System Engineering Station.

BUSANDA (Now called NAVSUP)

29.     The Bureau of Supplies and Accounts (BUSANDA) was comprised of a variety of professionals with specialties in areas such as government contracting, logistics planning, financial and business management, warehousing and parts distribution management, etc. BUSANDA, in addition to on-site and continuous support of BUSHIPS and other technical bureaus, also provided all Supply Corps officers to the Operational Fleet. The Supply Corps officers were assigned to both ships and Fleet staffs and were responsible for planning and managing all shipboard messing, berthing and spare parts management. BUSANDA was responsible for maintaining and managing the vast inventory of spare parts, consumables, documentation, and replacement equipment for the Navy.

**Navy Ships - Concept to Operational- The Process**

Cost and Feasibility Studies

30.     Prior to the 1940s through the 1970s, the design of Navy warships started with the establishment of naval war fighting requirements at the national level. Examples included

requirements such as the need to ensure that sea lanes in international waters cannot be denied by an enemy, the need to detect and neutralize hostile ships, submarines, and aircraft that might threaten U.S. or allied coasts, the need to transport and operate aircraft near enemy territory, and the need to transport and debark Marines anywhere in the world. From requirements such as these, various ship concepts were formulated.

31.     Rigorous feasibility studies were done on these concepts by both seasoned naval operators and by experienced ship engineers and designers to validate and mature the concepts, and to develop initial cost estimates for budgeting and congressional funding requests.  A final ship concept design emerged, describing such parameters as approximate physical size and displacement of the ship, what weapons and sensors would be used aboard, what speed it was required to achieve, what range it must be able to achieve without refueling, and how long it must operate at sea without replenishment.  Typically, it took a year or more to progress from a defined new warship requirement set to an agreed to concept design to meet those requirements.

**Multiple considerations in the design of warship equipment**

32.     As stated earlier in this report the purpose of and operating in a Navy warship is unlike either land based applications or even civilian shipping.  Unique aspects include the mechanical aspects of high propulsion power for high speed, inclusion of complex weapons systems, need for survivability in battle conditions amongst others and the human aspects of being operated and maintained by relatively young and inexperienced personnel. This was particularly true in the 1940s, 1950s and 1960s when Navy personnel were drafted versus being rigorously screened volunteers as is true today.

33.     These unique aspects of Navy warships create many equally unique design challenges for the Navy establishment. Some of these challenges come from principles of physics or engineering such as Archimedes' principle and tradeoffs amongst displacement, power needed to achieve desired speed, and fuel versus ammunition payload weight and seakeeping. Computational fluid dynamics and other mathematical and engineering approaches

are used to resolve these physics and engineering challenges.  These principles result in certain physical and mechanical realities that impose constraints and limits on equipment design.

34.     Other design challenges are posed by Navy specific circumstances and needs. A few examples:

(1)     The need to design systems that can be effectively and efficiently operated, maintained and repaired by crews that rotate about one third of members each year and composed of crew members with limited training and experience who must operate complex systems in very challenging weather and potential battle conditions;

(2)     The need to be able to quickly and effectively train Navy personnel to safely and effectively operate these complex ships when the new recruits vary greatly in education levels, technical abilities and motivation;

(3)     The need to affordably and effectively logistically support hundreds of Navy ships of multiple ship classes that are constantly mobile and operating around the globe;

(4)     The need to incorporate in both ship and equipment design lessons learned from the vast operating experience of the US Navy since its founding.

35.     These ship and equipment design challenges force the Navy to make many choices as to how to best meet these many vital needs. Decisions must be made as to what level of complexity and sophistication will be specified for various types of ship equipment, what level of standardization and commonality will be specified in repair parts, consumable materials and multiple other logistics related areas, what specific Navy enlisted ratings will be required and in what quantity to properly man the ships. Some considerations, such as material selection, are impacted by both the technical limitations imposed by engineering and physics and the dictates of the Navy environment.  Thus, for example, while there are available to the Navy various methods and materials to seal between metal surfaces or around rotating shafts, the Navy has always resolved those questions – should a pump have a packing gland or a mechanical seal? should a casing be sealed with a gasket, a liquid sealant or by welding? etc., etc. – through a balancing of the full range of technical, logistical and other considerations.  The Navy's balancing of its needs as well as the physical limitations and realities are embodied in the military specifications and other contractual requirements for both the ship and the equipment installed in it.

Preliminary Design

36.     The next step in the creation of a new warship during the time periods in question was the conversion of the concept design into a preliminary design package that contained sufficient details of the structure and all ships systems to allow engineers to verify that the ship would meet established requirements.  During preliminary design Navy engineers determined all equipment arrangements, the weight and stability of the ship, a detailed understanding of the ship's displacement and powering requirements, and a much better cost estimate.  Work included investigation of details such as identification of what materials and technologies existed or could be developed in time to achieve the performance of each system, and ensuring that these technologies and design details could in fact be manufactured and integrated into a completed warship.

37.     The preliminary design phase was accomplished by dividing the very complex ship into many groupings and sub-groupings such as hull design, propulsion, electrical, deck equipment, messing and berthing, medical, navigation, weapons, sensors, and auxiliary systems to name just a few.  During this preliminary design phase, engineers had to develop and document the performance, configuration, and location of each system and piece of equipment that is required to meet the overall ship performance requirements.

38.     The preliminary design also had to comply fully with extensive Navy warship design General Specifications and other design guidance developed over many decades of experience.  Examples include aspects such as how much damage the ship must be able to experience and still remain operable, what levels of shock from battle damage equipment must withstand and remain operational, and what firefighting and damage control capabilities must be included in the design.  At the completion of the preliminary design and related documentation, the Navy was confident that the ship and all included systems and equipment would function as designed and would meet the war fighting requirements.

39.    Although the time to develop a preliminary design varied greatly depending on the size and complexity of the warship, typically for a destroyer-type warship, the preliminary design required six months to a year and thousands of man-years of engineering work.

Development of the Contract Design package

40.    The next phase in progressing from a ship design to an operational warship was the contract design process, in which the preliminary designs were converted into documentation of proper format and sufficient details for use in the government acquisition contracting process.  In essence, this effort was to "design" the procurement contract.

41.    The complex ship systems and subsystems described in the preliminary design were typically comprised of a myriad of individual mechanical and electrical components connected together in intricate ways. During the contract design phase, Navy engineers had to confirm that sources exist from which the specified materials, equipment, and consumables could be obtained. However, usually there was no one source from which the Navy could obtain these complex warship systems and subsystems.  Rather, sources had to be identified for individual components that can later be assembled into the Navy's complete systems.  Thus, the Navy typically had to procure, for each ship, countless individual components from dozens of individual suppliers and sources.  Examples of components associated with just the propulsion systems on Navy warships include specific types of steel and fasteners, pipe and fittings; valves, pumps, turbines, condensers; electrical motors, generators, and switchboards; gauges, meters, alarms; boilers, condensers and reduction gears.  During World War II and well into the 1960s, virtually all equipment that was to be installed in warships was procured by the Navy and provided to the building shipyard as government-furnished equipment.

42.    This detailed design of all equipment, subsystems, systems, and the entire ship had to fully comply with a plethora of Navy design guidance developed from previous experience.  For example, the Navy set and followed internal standards and requirements regarding such matters as levels of redundancy necessary to preclude single points of failure, standardization of consumables and spare parts amongst different equipment and systems, and across warship classes, crew

operating environmental requirements such as temperature, noise, lighting, equipment labeling, standard Navy identification and labeling of decks, doorways, compartments, and equipment, and housekeeping matters such as heating and ventilation, food storage preparation and serving, and laundry requirements.

43.     The contract design package when complete included the entire set of Ship Specifications with detailed design information, the contract plan for procuring all equipment as well as contracting for ship construction, and the multitude of individual requests for proposals that were required to describe every piece of material, equipment and subsystem that had to be procured to allow construction of the warship.  The development of the contract design package involved multiple government decisions.  Examples include decisions which were subject to various Navy and other federal guidance and regulations, such as Federal Specifications, Federal Acquisition Regulations and Defense Federal Acquisition Regulations.

44.     The Navy developed Navy technical specifications (Navy Specs) called, since the 1950s, Military Specifications (MILSPECs) for use in the contract design package and acquisition process.  Thousands of MILSPECs were developed for various specific materials, equipment, components, books, manuals, label plates, etc.  These MILSPECs presented very detailed descriptions of what the government required when procuring the items covered by the MILSPECs, including requirements such as chemical composition, dimensions, required testing and performance demonstrations, required labeling, packaging and shipping requirements, and similar content.  These specifications typically cross-referenced and invoked other specifications.

45.     The Navy maintained the responsibility to develop the MILSPECs and other standards for the manufacture and supply of equipment used in the construction, maintenance and repair of Navy ships.  Specifications for any equipment intended for use aboard Navy ships were drafted, approved and maintained by the Navy.  Once promulgated, only the Navy could make changes or modifications to those specifications. MILSPECs were prepared by hundreds of Navy engineers highly qualified in specialty areas such as, among many other things, valves, pumps, steam turbines, gas turbines, reduction gears, ship propulsion, auxiliary equipment, sealing

materials such as gaskets and packing and thermal insulation. Three examples of specifications for pumps, MIL-P-17840 and MIL-P-17639 for centrifugal pumps and MIL-P-18547 for rotary pumps are attached hereto as Exhibits B1, B2 and B3. Similar detailed specifications existed for other types of pumps such as positive displacement gear pumps and reciprocating pumps. I include them here to emphasize the extreme details not to focus on the specific technical content.

46. This specification system was initiated in the 1930s and was expanded in both scope and detail for use in the procurement of the large number of complex warships procured in the World War II timeframe and since. The technical specifications system always included a disciplined revision and change process to ensure technical specifications were kept current and reflected changing requirements, technology, materials, and other related updates. Manufacturers of components, such as valves, pumps, oil purifiers and other propulsion plant equipment, procured by the Navy for use in warships were required to comply with technical specifications in all details in order for the Navy to accept the equipment being manufactured, tested, and shipped.

47. Navy specifications were communicated to vendors when the Navy (or private entities, such as shipyards or design professional firms) issued Requests for Proposal (formerly called Invitations for Bid) for the manufacture or supply of equipment and materials for warship construction. Compliance with the standards and specifications issued for equipment and materials supplied for ultimate use aboard Navy ships was directly monitored by Naval Machinery Inspectors under both of the following divisions: (a) Machinery Inspectors under the Bureau of Supplies and Accounts worked on-site at vendors' facilities, and (b) Machinery Inspectors under BUSHIPS carried out their responsibilities at the shipbuilding yards. The Machinery Inspectors ultimately worked for the Secretary of the Navy or the Secretary of War. These Inspectors exercised primary, front line control and direction over the work performed for the Navy by original equipment and material manufacturers, regardless of whether the equipment and material was being constructed or supplied pursuant to a Navy or private contract. The Navy required in process testing and approval. For example, shock testing, balance testing, vibration testing, tolerance measurements, endurance testing, radiographic testing, etc., were reviewed at the

manufacturer's facility and approved by the Machinery Inspectors before the equipment or material was shipped. Compliance with the testing requirements necessitated unique design and engineering to ensure the necessary strength and durability of the equipment and material for battle conditions. Equipment or material could not have been installed aboard Navy ships unless it was first determined by the Navy to be in conformity with all applicable Navy specifications. The Navy required equipment manufacturers to supply drawings and plans, which the Navy would approve and sometimes revise or comment on before equipment was constructed and shipped.

48.     The incredible level of detail contained in these specifications is necessary to ensure complete and common understanding between the government and vendors of what it is the government is requiring and is committing to pay for, to ensure commonality across systems with similar components, and ensure that replacement parts, equipment and consumable materials, some provided by different manufacturers, will all perform as desired. An acquisition contract typically invokes many different MILSPECs, various technical documents such as drawings prepared by the Navy's Bureau of Ships. Taken together, the contract and the incorporated materials present all details of what the Navy requires. It is through this detailed acquisition process that misunderstanding, or rejection at the time of government acceptance inspection, is avoided. This process also minimizes contract disputes between the government and industry vendors.

49.     Developing the contract design package is comparable to the effort required if a team was to simultaneously develop the detailed designs and contracts to construct a small city including all the required services such as utilities, hospitals, restaurants, and the like. Because of the complexity and thoroughness required, development of the contract design package for a warship such as a destroyer typically took two years or more to complete, with thousands of man-years or effort from engineers, logisticians, contract and legal specialists.

Detailed Design

50.     From the 1940s through the 1970s, the next step in the creation of a new warship was the conversion of the contract design into detailed design package that contains sufficient

details of the structure and all ships systems to allow the building shipyard to build the ship and integrate all specified equipment and material in accordance with Navy requirements and specifications. The detailed design was typically accomplished by the construction shipyard - whether a Navy yard or a private yard after the construction contract was awarded. During this detailed design phase, engineers had to develop and document in detail the exact location, mounting details, and interface details of each system and piece of equipment in the total ship as well as detailed plans for installation of thermal insulating materials. Even where not performed by Navy personnel, the detailed design was also overseen by Navy representatives. Pursuant to those design plans and specifications, the shipyard connected an array of components such as valves, pumps, boilers, turbines, generators, and other equipment to pipes by adding gaskets to the flanges of each piece of equipment and piping. Where flange gaskets contained asbestos, it was because the Navy required it; the manufacturers of valves, pumps, oil purifiers and other propulsion plant equipment did not manufacture or supply the flange gaskets. Likewise where thermal insulation contained asbestos materials it was because the Navy required it.

Warship Construction

51.     The final phases in getting the warship operational included the construction, testing and trials, and acceptance by the Navy. During World War II and up until the mid-1960s, some Navy warships were constructed at Naval Shipyards and others were constructed at private shipyards under Navy contract and supervision. Once the Navy selected a construction shipyard, that shipyard was required to comply with all details of the contract in the procurement of material and equipment, the construction of the ship, the testing of equipment, subsystems, and systems, the application of thermal insulation and paint and the demonstration to the government that all systems functioned properly. All construction and testing was overseen on a daily basis by the on-site Navy Supervisor of Shipbuilding (SUPSHIP) team. Formal acceptance of the completed warship was recommended by the Navy Board of Inspection and Survey (INSURV) only after the members of the Board had witnessed successful sea trials of all systems.

52.     Construction of even a relatively small warship such as a destroyer typically took three to five years, with larger ships requiring somewhat longer.  During World War II, the construction time for warships was dramatically reduced through the concerted efforts of both the Navy and the industries involved.  The Navy, working with the War Production Board, instituted standardization of warship designs, central procurement of ships' major equipment, propulsion machinery, and ordnance, and allocation of key materials such as asbestos.  Industry went to twenty-four hour workdays with multiple shifts, prefabrication and automation of many processes, and multiple other time saving methodologies.  The Navy and the U.S. Maritime Commission worked closely with the shipbuilding industries and increased the number of shipyards capable of constructing destroyers and larger ships from approximately a dozen in 1940 to around 70 in about two years.

## Product Delivery and Contract Completion

<u>Adherence to detailed specifications and contract language</u>

53.     Ensuring that the detailed specification and contracting packages utilized in the design and construction of Navy warships are fully effective in producing warships and installed systems that meet all requirements requires a robust confirmation process during all phases including documentation, manufacturing, testing and final trials and acceptance by the Navy. Examples of some of those confirmation processes are described below. This is true for individual pieces of equipment as well as for the entire operational Navy warship.

54.     The Navy invested significant resources into ensuring strict compliance by its suppliers with all specifications and requirements applicable to their products.  The Navy Department "General Specification for Inspection of Material" date 1 December states:

> "Unless otherwise expressly provided in the contract, all material purchased by the Navy shall be subject to inspection by an inspector representing the Navy Department.  The cognizant inspector will conduct inspection of the material in accordance with instructions issued him by the Navy Department.  Acceptance of material . . . will depend upon whether the material presented meets the

requirements of the contract or order and conforms to the applicable specifications, including these General Specifications."

55.    Similar requirements were reflected in various purchasing regulations and other Navy documents governing the procurement of equipment and other materials.

Drawings

The drawings for all aspects of Navy warships and installed systems come from a variety of sources. Some are developed by Navy ship design agents while others are developed by relevant vendors. However, all drawings are merely drafts until reviewed and approved by the Navy (BUSHIPS). When approved as accurate in all details the drawings are given a BUSHIPS number, become Navy documents and can be changed only with the approval of the Navy (BUSHIPS).

Technical Documentation

56.    Technical specifications referenced in the procurement documents for shipboard components in propulsion, auxiliary, electrical, weapon and all other systems have, since at least the 1940s, included detailed requirements regarding all written materials supplied with the components.  In addition to drawings and plans, this written material often also included operator reference materials to assist the equipment operators in operating, servicing and maintaining such equipment and to assist the Navy training establishment to develop instructional materials and courses.

57.    Technical documentation such as equipment technical manuals, schematics, system level manuals and other descriptive documentation are described in detail in procurement contracts by invoked specifications.  The specifications required that certain equipment be supplied with a defined number of copies of one or more instruction books or technical manuals.  Navy personnel or those of the Navy's Design Agents participated intimately in the preparation and review of these instruction books and technical manuals in a standardized format used by the Navy.  The Navy typically developed these technical manuals by including in equipment procurement contracts a requirement that manufacturers supply preliminary manuals as part of equipment procurement contracts.

58.     Like drawings, these types of documentation are merely drafts until reviewed and approved by the Navy (BUSHIPS). The draft manuals are required to be submitted to the Navy for detailed review and feedback. The Navy dictates and, itself or through its Design Agents, reviews and approves the contents of all technical manuals and other documentation, including any cautionary language or emphasis. The Navy approaches this process for review and approval of technical manuals and other documentation in an exacting manner. It often creates lengthy memoranda detailing word-by-word line edits to the content of technical manuals submitted for approval, including the wording of instructional material and warnings. When approved as accurate in all details the manual or other documentation is given a unique Navy (BUSHIPS) number, becomes a Navy document and can be changed only with the approval of the Navy (BUSHIPS). After Navy review and approval equipment technical manuals embody *Navy technical policy.*

59.     As a result of this review and approval process, these manuals included safety information to the extent – and only to the extent – directed by the Navy. Manufacturers of components and equipment were not permitted, under the specifications, associated regulations and procedures, nor under the actual practice as it evolved in the field, to include any type of warning or caution statement in instruction books or technical manuals, beyond those required and approved by the Navy without prior discussion and approval by the Navy.

60.     The reasons for the Navy's detailed control over and review and approval of all written communication regarding equipment it procured was to ensure consistency of that information with the overall goals and priorities of the Navy in its operations. The Navy employed millions of uniformed and civilian personnel aboard thousands of ships and at hundreds of land-based facilities around the world. The information provided with regard to equipment had to be consistent with the Navy's overall evaluation of the appropriate types and level of information its personnel required to efficiently perform their job responsibilities under a variety of circumstances. In addition, written communications regarding work practices, including safety precautions and equipment, had to be coordinated with the training of Navy personnel, the physical circumstances

in which they performed their work, and the tools, protective devices and equipment and other materials available aboard Navy ships and at Navy installations.

61.     Uniformity and standardization of any communication, particularly safety information, are critical to the operation of the Navy and Navy ships.  The Navy could simply not operate safely and effectively if personnel were trained differently, using inconsistent information received from different manufacturers.  If every equipment, structural steel and pipe manufacturer were allowed to decide on the need for, and provide its own safety and health warnings (including those concerning asbestos insulation that might be used on or around its product), inconsistent warnings would certainly have resulted.  If each were to warn about all the possible substances that might be used on or around its equipment, sailors would quickly become inundated with inconsistent information on a myriad of substances. Therefore, the Navy's detailed specification of and control over what warnings were required, both on equipment and in technical documentation, was logical and necessary.

Manufacturing and ship construction

62.     Compliance with the standards and specifications issued for equipment supplied for ultimate use aboard Navy ships is directly monitored by Navy representatives. In the 1940s into the 1970s this was done by Naval Machinery Inspectors under both of the following divisions: (a) Machinery Inspectors under the Bureau of Supplies and Accounts worked on-site at vendor facilities; and (b) Machinery Inspectors under BUSHIPS/NAVSEA carried out their responsibilities at the ship building yards. The Machinery Inspectors ultimately worked for the Secretary of the Navy or the Secretary of War. These Inspectors exercised primary, front line control and direction over the work performed for the Navy by original equipment manufacturers, regardless of whether the equipment was being constructed or supplied pursuant to a Navy or private contract.  Similar processes exist today although the titles of organizations and representatives have changed. No equipment could have been installed aboard Navy ships unless that equipment was first determined by the Navy to be in conformity with all applicable Navy specifications.

63.     Private shipyards when contracted by the Navy to do the construction of Navy ships were essentially functioning as a Naval Shipyard in that role. The Navy contracts with the shipyard specified in great detail all the materials, processes and testing that was required by invoking numerous Navy or Military Specifications and Standards, and the work was overseen continuously by the onsite Navy SUPSHIP commander and staff.  Shipyards could not vary from those detailed specifications and standards in any way without the express approval of the Navy and a modification to the contract documenting that approved change.

Inspecting and Testing

64.     Inspecting and testing of equipment and systems installed in Navy warships as well as the construction of the ship is a continuous process conducted by government inspectors as described above. During manufacture of equipment and systems Navy/government inspectors do interim inspections and approvals at various designated way-points during manufacture. Details of what testing is required, both interim and final acceptance of the equipment before shipping, is detailed in MILSPECs and contract packages. During construction of the ships a Navy Supervisor of Shipbuilding (SUPSHIP) and staff are resident at the constructing yard to provide continuous oversight and approval of each step during construction and testing. At completion of construction, the Navy Board of Inspection and Survey (INSURV) evaluates all systems during rigorous at sea acceptance trials. Only after all systems are demonstrated to meet all requirements does the INSURV Board recommend acceptance to the Secretary of the Navy.

Labeling, Packaging and Shipping

65.     Consistent with its objective of ensuring that, in form and content, written information regarding equipment filled the specific informational role, for the specific Navy audience and environment, the Navy developed precise specifications as to the nature of any markings, communication or directions affixed to or made a part of any equipment supplied by OEMs for ultimate use aboard Navy ships.

66.     By way of example, the Navy maintained precise specifications that detailed all aspects of label plates that were required on equipment.  The Navy and military specifications for

identification plates included materials to be used, method of attachment, size of plate, information and format of information required, and many other details to ensure standardization of such plates. The content and format of information that was to appear on those plates was required to be submitted to the Navy for approval.

67.     The Navy's specific requirements regarding labeling, packaging and shipping of equipment , as described in various MILSPECs and MILSTDs, were intended to ensure that equipment and parts are not damaged during shipment, are properly and safely packaged for storage for extended periods both onboard ships and at Navy Supply facilities. Equipment and materials are inspected for packaging compliance before shipping from the manufacturer's plant and at receipt at Navy Supply facilities, constructing/repairing shipyards and other shipping termination points.

68.     OEMs were not permitted, under the specifications, associated regulations and procedures, nor under the actual practice as it evolved in the field, to vary or to deviate in any respect from the Navy specifications in supplying equipment, including affixing any type of warning or caution statement to equipment intended for installation in a Navy ship, beyond those specifically required by the Navy, without prior discussion and express approval by the Navy.

Ultimate determination of full contract compliance

69.     The ultimate confirmation that all specification, standards and contract requirements have been complied with occurs when the Navy accepts the "product" and authorizes payment. This is true for individual pieces of equipment, orders for repair parts and consumables and ultimately for the completed ship after acceptance trials. When the Navy accepts and pays for the contracted product this verifies that all contract requirements have been satisfactorily met.

**Military Specifications and Military Standards**

70.     The term **Military Specification** refers to detailed and formatted technical documents that describe the physical and/or operational characteristics of a military-unique product or material.

71.     The term **Military Standard** refers to detailed and formatted documents that detail the processes to be used in making or handling military-unique products.

72.     The term **General Specification (GENSPEC)** refers to requirements that are common to different types, classes, grades or styles of specific items or services. For instance the BUSHIPS/NAVSEA General Specification for Machinery contains BUSHIPS/NAVSEA requirements that are common to machinery across all Navy ship classes.

73.     Detailed Military Specifications and Military Standards were and still are used extensively in the design and procurement of materials and products for virtually all Navy equipment, material and systems.  In the mid-1970s as part of acquisition reform initiatives, policies were implemented across the Department of Defense to review existing Military Specifications to determine if there were alternative commercial specifications and/or standards that could meet the needs of the military. The major driver for this review was to reduce cost of military equipment. Certainly there were areas of technology such as computer processors, communications and other digital technologies where state of the art commercial digital systems were found to be militarily useful although often rugged repackaging or mounting was required. Another result was a DoD policy that in order to develop or invoke a Military Specification in the procurement of equipment and materials, a formal review had to be done to document why that requirement was in fact militarily unique. The demanding operational and combat environment in Navy warships is one example of a military unique requirement in which Military Specifications are still considered valid and required.

### Asbestos and Insulation in the Navy

74.     As described above, the Navy requirements for aircraft carriers and other warships of World War II and later included the need for significantly higher speeds than previously.  This high speed required was achieved by the design and development of sophisticated high-pressure steam propulsion systems.  Steam pressures of 600 pounds per square inch and the ability to superheat the steam to 850 degrees F became the norm.

75.    The key to meeting this high horsepower demand was the development by the Navy of much high pressure, superheated steam propulsion plants.  With the increased pressures came greatly increased temperatures and thus the need for much improved insulation technologies, both for plant efficiency and for operator comfort and safety.  These "high power density" propulsion plants increased the operating temperatures of machinery and piping, and they created a need for greatly improved thermal insulating and lagging materials.  The Navy maintained significant expertise in the important areas of heat transfer and insulation.  As a consequence, the thermal insulation needs associated with various equipment and systems was a significant issue in the design of Navy ships from a number of perspectives.  Thermal insulation served a number of important functions, as set forth, for example, by the 1947 version of the Navy's BUSHIPS Manual, a technical reference for Navy engineers, where Chapter 39 was devoted entirely to "Thermal Insulation":

39-2. REASONS FOR INSULATING

(l)    In every power plant there is a heat loss from all heated surfaces and a heat flow to all cooled surfaces. Heat flow may occur in three ways; by conduction, by convection, and by radiation.

(2)    Conduction is the heat flow from one part of a body to another part of the same body, or from one body to another with which it is in physical contact, without displacement of the particles of the body. This manner of heat flow is most important in insulation as it is the low conduction which results in the greatest temperature differential between a hot insulated surface and the atmosphere (as in steam piping insulation), or the relatively warm atmosphere and a cold surface (as in refrigerating plant insulation). Heat transfer from insulated pipes or large blanketed or cemented surfaces (turbines, evaporators, etc.) to the outer surface of their lagging is included in this mode. Conduction is associated with solids and comparison of materials in this respect is measured by a factor called the "thermal conductivity" which expresses rate of conductivity in British thermal units (B.t.u.) per inch of thickness per hour per square foot of area per degree Fahrenheit temperature differential.

(3)    Convection is the transfer of heat from one point to another within a fluid, gas or liquid, by circulating or mixing of one portion of the fluid with another. These currents are produced by warm fluid being displaced by heavier cold fluid. It is of interest to note that convection reduces the effectiveness of air space insulation unless such space is very small.

(4)     Radiation is the method of heat transfer by which a hot body gives off energy in the form of radiant heat which is emitted in all directions. Radiant heat, like light, travels in straight lines and with the speed of light. The surface condition greatly affects the ability of a body to radiate heat. Dull, dark, rough finished surfaces are the best radiators. Conversely, bright, shiny, smooth surfaces are good heat reflectors.

(5)     In order to minimize the transfer of heat from or to a body or surface which is hotter or colder, respectively, than the surrounding atmosphere, thermal insulation is applied. This thermal insulation is a material or materials of low thermal conductivity. (See par. 39-2 (2).) While increasing the economy of the plant, thermal insulation also reduces the quantity of air necessary for ventilating and cooling requirements and prevents injury of personnel due to burns from contact with hot parts of apparatus. It also insures more uniform heat distribution within equipment. Another function of thermal insulation is to prevent "sweating" of cold surfaces on which atmospheric moisture condenses thus causing undesirable dripping as well as accelerated corrosion of the metal. Insulation must be sufficiently effective to reduce heat losses and lower surface temperatures to a degree which will permit habitable conditions in a specific space or compartment.

(Exhibit C, 39-2).

76.     Due to the importance of heat transfer and insulation in Navy propulsion plants and aboard Navy ships more generally, the Navy maintained significant expertise in these areas. The BUSHIPS manual and other documents issued and continuously updated by the Navy contained detailed instructions for the insulation by Navy shipyards or private contractors of various systems and equipment, including, primarily, the miles of piping associated with thermal systems aboard ships. The Navy's specifications provided detailed instructions as to the specific insulating materials to be used, and also as to the amounts of those materials and the manner in which they were to be applied.

77.     38. A 1946 article entitled "A Health Survey of Pipe Covering Operations in Constructing Naval Ships" summarized the extent of and reasons for the Navy's use of asbestos-containing insulation during World War II:

The chief reasons for the wide use of amosite felt and pipe covering in naval work are its low thermal conductivity, light weight, strength, and refractoriness. When the felt and pipe cover were first developed, we were still building vessels under the Washington Treaty of Limitations in Tonnage, and every pound saved meant

that much more armor, guns or ammunition for a given displacement, to say nothing of more economic operation for the weight involved in insulation.

Amosite pipe covering weighs about 14 pounds per cubic foot, with a temperature limit of 750 degrees F. as compared to magnesia with a weight of 16 pounds per cubic foot[....]

The development of amosite felt started in 1934 when a need existed to secure a thermal insulation lighter in weight and thermally more efficient than the materials (blocks and cement or asbestos blankets) which were then being used in destroyer turbines.... Originally amosite was used only for turbine insulation, but it proved so satisfactory that its field of application enlarged to include insulation of valves, fittings, flanges, etc. From the initial destroyer, it has been used on almost all the destroyers built since that time and on all other combat ships built since before the War.

Pipe covering was a later development in late 1935 and early 1936. Due to the manufacturing problems involved, it took a longer time to evolve into a satisfactory shape, and its first use on naval vessels was in 1937. Since that time its use has spread markedly and it was used on the great majority of naval combat vessels built during World War II.

(Exhibit D, p. 9).

78.     The Navy's dictation of the methods and materials for insulation of thermal systems took various forms. As noted above, these included serial iterations of the BUSHIPS Manual's Chapter 39 on "Thermal Insulation."  See Exhibits C (1947) and  (1959).  The Navy also prepared and imposed upon Navy design engineers General Specifications for Machinery for Vessels of the United States Navy.  Those specifications included an entire section - Section S39 - governing "Thermal Insulation for Machinery and Piping."  The 1951 version of this document is attached as Exhibit F.  Beginning in 1962, the Navy began issuing a Military Standard (MIL-STD-769) intended "to amplify the general requirements for insulation of piping, machinery, uptakes, and mechanical equipment covered in the General Specifications for Ships of the U.S. Navy or in ships specifications.  (Exhibit G).

79.     The Navy and/or its design agents prepared for the builders of Navy ships detailed drawings and plans showing the precise methods and materials for insulation of various systems and equipment.   Those documents - referred to as "Insulation and Lagging Schedules" -

implemented the overall requirements of the General Specifications and they provided the actual instructions to the personnel applying insulation as part of an integrated system of temperature control and energy conservation consistent with the Navy's needs in the operation of its ships. These plans are referred to as "Insulation and Lagging Schedules." They were typically developed for each class of warship. Examples of such plans for the *USS Fletcher* and *USS Sumner/Gearing* class destroyers and the *USS Essex* class aircraft carriers are attached as Exhibits H, I and J. The Insulation and Lagging Schedules included details on the materials to be used, the thickness, installation procedures, and finishing details for tens or even hundreds of tons of thermal insulation materials to be applied by Navy and private shipyards. Once the Navy selected a construction shipyard, that shipyard was required to comply strictly with all Navy specifications, plans and drawings in the application of insulation and lagging to systems and equipment aboard Navy ships.

80.    As the attached documents demonstrate, throughout the World War II and post-World War II era, the vast majority of thermal insulating materials used aboard Navy ships contained asbestos. Asbestos-containing materials offered many advantages over previous or alternative materials in meeting these needs. They were relatively light compared with previous materials, had better insulating properties, did not require excessive thicknesses in application, were more durable and were resistant dissolving in or absorbing salt water. The materials also served as fire protection in an environment in which fires were an ever-present danger.

81.    Thus, the use of asbestos in thermal insulation allowed the Navy to design and field propulsion systems that met the demanding war fighting requirements of World War II and later. The importance of asbestos to Navy warships is attested to by the fact that it was assigned a high priority in the U.S. government's critical materials allocation process. Asbestos was in short supply during World War II, and its use was controlled through the War Production Board process. A very large percentage of asbestos was allocated to the needs of the Navy and U.S. Maritime Commission for use in insulation for ship construction.

82.    The Navy's demands for asbestos-containing insulation were extraordinary. For example, the Insulation and Lagging schedules for destroyers of the Navy's *Sumner* and *Gearing*

classes - relatively small ships of which the Navy constructed approximately 200 during World War II - specified nearly 24 tons of asbestos containing thermal insulation be installed. A 1979 Department of the Navy letter (Exhibit K) recites the following estimates of the quantities of asbestos containing thermal insulation aboard different types of Navy ships of the 1950s and 1960s:

| | |
|---|---|
| Destroyer – DD | 87,634lbs |
| Guided Missile Cruiser – CGN | 123,770lbs |
| Submarine – SSN | 62,465lbs |
| Replenishment Oiler – AOR | 78,515lbs |
| Large Harbor Tug – YTB | 6,858lbs |

Larger ships, such as aircraft carriers and battleships, required multiples of those amounts. Taken as a whole, in both new construction and overhaul, the Navy applied thousands of tons of asbestos containing thermal insulation and other materials aboard its ships from the 1930s through the 1970s.

83.    Due to the complexities of the ship design and construction process, and the global nature of the Navy's approach to selection and procurement of insulation and lagging materials, manufacturers of components were not consulted by the Navy with respect to insulation of their equipment.  Moreover, they had no control over the types and quantities of insulation products to be used in conjunction with their equipment, nor could they even be certain whether or not any insulation would, in fact, be applied to their equipment due to the variety of circumstances and potential uses of the original equipment once aboard a Navy ship.

84.    Above and beyond the tens or hundreds of tons of thermal insulation used, other asbestos materials were ubiquitous aboard Navy ships pursuant to Navy specifications and requirements.  These materials included electrical insulating materials, flooring, refractories and sealing materials.

85.    Shipyards, both public Naval Shipyards and private shipyards were required to use exactly the materials, both asbestos containing and non-asbestos containing, specified by the Navy

in the shipbuilding contract and could not vary from those detailed requirements without prior approval from the Navy and a modification to the contract documenting any approved variation from the original contract.

**Navy Transition to Non-Asbestos Containing Thermal Insulation in Warships**

86.     In the early 1970's, the Navy became concerned about possible health hazards to a wider range of Navy personnel from the handling and disturbance of thermal insulation that was required to be installed on Navy ship piping and equipment during installation, repairs or operations. To address these concerns, the Navy embarked on efforts to find suitable non-asbestos containing insulation materials for use in Navy ships.  As that process progressed and suitable alternative materials were identified, the Navy issued the applicable Military Standards and Specifications to reflect the Navy's decision to eliminate asbestos containing thermal insulation both in the new construction of ships and during the replacement of thermal insulation that had to be disturbed and replaced during the repair and overhaul of Navy ships. Examples of these document changes include Military Specifications MIL-I-2918E INTERIM AMENDMENT-A (SHIPS) of 9 January 1973 "MILITARY SPECIFICATION INSULATION BLOCK, THERMAL" (Exhibit L) in which paragraph 3.2 Material states "The insulation block shall be composed of asbestos-free and silica free heat-resistant compounds suitable for the temperature conditions and the purpose intended." And MIL-I-2781E "MILITARY SPECIFICATION INSULATION, PIPE, THERMAL" of 7 October 1975 (Exhibit M) in which paragraph 3.2 Material states "The thermal pipe insulation shall be composed of asbestos-free heat resisting compounds suitable for the temperature conditions and purpose intended". This and other similar specifications delineated the characteristics of materials that could properly be procured for installation in Navy ships, so the effect was, in effect, to render asbestos-containing materials ineligible for use.   Another example is Military Standard MIL-STD-769E "THERMAL INSULATION REQUIREMENTS FOR MACHINERY AND PIPING" of 15 July 1974 (Exhibit N) in which Requirements paragraph 3.3 states "The installation of asbestos or asbestos containing insulation and lagging materials is not permitted".  This document was intended primarily for those

responsible for the installation of such materials in Navy ships, so its effect was effectively to prohibit shipbuilding and repair contractors and facilities from using such materials. This transition was from asbestos containing thermal insulation and did not during that time include any changes to gasket and packing materials as they were not considered by the Navy to pose any potential health issues.

## Navy Shipboard Documentation

87.     Navy warships are sophisticated "mobile communities" outfitted with a vast array of complex equipment and manned by a crew of operators comprised of brand new recruits with no experience to seasoned senior technical professionals. In order to ensure effective, efficient and safe operation of its warships, the Navy, since at least World War II, has developed and maintained extensive documentation for each ship class and individual ship. This extensive "library" of documentation consists of different major categories of subjects such as Organizational Regulations and Policy, Tactical, Technical, Administration, Logistics, and Training to name just a few. The intended audience and purpose of a document differs amongst categories and documents within those categories. Some documentation contains information relevant to the entire crew or ship while other documents address more focused subjects such as a ship department, a specific technical rating or an individual piece of equipment. Understanding the specific Navy objectives of different categories of documentation is helpful in understanding the required content and level of detail that the Navy specified to be included. Of particular relevance to shipboard operators of equipment are the categories of Training and Technical documentation.

## Navy Shipboard Training Documentation

88.     Shipboard training of Navy personnel consists of both individual and team training and each category includes both technical and non-technical requirements. The Navy defines individual training as any training, including in-rate training, which improves a member's usefulness to his unit. Team training is defined as the training of groups of officers and enlisted members to work effectively together as teams in the engineering spaces, on the bridge, in damage control parties and similar team efforts. Technical requirements (sometimes referred to as

Occupational Standards) include the specific knowledge expected of an individual in his or her specialty, rate and rating. Non-technical requirements (sometimes referred to as Naval Standards) include subjects such as general naval knowledge of discipline, Navy Regulations, Uniform Regulations, first aid, shipboard safety, and similar all-hands subjects.

89.     Training documentation in support of individual and team, technical and non-technical training was developed under the directives of the Chief of Naval Operations and the Chief of Naval Personnel. Examples of individual technical training documentation are the various Naval Personnel (NAVPERS) rate training manuals such as Machinist's Mate 3&2 and Boilerman 3&2 and similar manuals for all ratings. Examples of individual non-technical training documentation are the Military Requirements for Petty Officers 3&2 and General First Aid Manual. Damage Control and Engineering Casualty Control Exercise Drill outlines are examples of Navy-developed team training documentation.

90.     Training documentation, both technical and non-technical, was developed by the Navy with specific focus on the skills, level of experience, education and advancement requirements of the individuals and groups for which it was developed. It was typically developed with content applicable to all Navy members of that group. Thus, technical rate training manuals included general information about equipment and systems as opposed to focusing on any specific make or model. Non-technical general training documentation included information and examples that were relevant to all Navy personnel whether stationed afloat or ashore. The ultimate use of Navy training documentation was, and is, to assist the Navy members to become as proficient as possible both in their rates and specific skills and as Navy leaders and managers.

## Navy Shipboard Technical Documentation

91.     Unlike Navy shipboard training documentation that is focused on training individuals and teams, Navy shipboard technical documentation is developed and provided as reference material that can be consulted if and when required in the operation, maintenance and repair of equipment and systems. Navy shipboard technical documentation includes various categories from high level Navy technical policy documents such as the Bureau of Ships Technical

Manual to equipment specific documents such as BUSHIPS drawings/blue prints, system schematics, and troubleshooting manuals.

92.     The Bureau of Ships Technical Manual (BSTM) was a multi-chapter manual that documented the Bureau of Ships-level technical policy and procedures developed and used by BUSHIPS engineering and technical organizations in the design and life-cycle support of Navy ships and installed equipment.

93.     Equipment specific technical documents such as BUSHIPS drawings and systems schematics contain information of sufficient detail to allow maintenance and repair of shipboard equipment by ship's force personnel while operating at sea and in remote areas where outside assistance is not available.

94.     The Navy typically developed equipment operational guidance manuals for more complex equipment and systems. Typically, the Navy required these "instructional manuals" for equipment that required operator involvement in start-up, operation, and shutdown. Equipment that did not require operational steps, such as globe and gate valves, and equipment that operated "passively", without operator involvement, such as steam traps and check valves, would typically not require a "technical or instructional manual". Examples include equipment level Technical Manuals (sometimes called Instruction Books) and system-level manuals such as the DD-445/692 Classes Main Propulsion Plant Operations Manual.

95.     The Navy identified a need and developed standards for equipment Technical Manuals. Unlike a civilian "owner's manual" for an appliance or consumer purchased equipment that was developed by the manufacturer with content that might be considered "helpful" to a broad range of potential customers or users, Navy equipment Technical Manuals were developed by the Navy to detailed technical content and format requirements for use by a known audience of Navy-trained shipboard technicians. The purpose of these documents was to provide information specific to the equipment, with a focus on its operation, and avoidance of injuries or accidents that might occur during operation.

96.     The purpose of Navy shipboard technical documentation was to provide technical information that could be referenced and understood by the ship's operators if and when needed. Although certainly available to augment Navy training documentation if desired, the shipboard technical documentation was not readily accessible by all personnel, and was not part of the training documentation.

**Documentation Regarding Warnings**

97.     As described above, the content of Navy training documentation focuses on Navy-wide groups of users whereas Navy technical reference documentation is equipment and system specific. Thus, Navy decisions concerning which category of document to include desired warnings and cautions were dependent on the nature of such warnings and caution statements. Warnings and cautions concerning Navy-wide/all-hands subjects such as general shipboard safety, safe driving awareness, hearing loss prevention and later asbestos health warnings were included in readily available and broadly used training documents, some in technical documentation such as Navy rate training manuals, and some in non-technical documentation such as General Military Training syllabuses. Warnings and cautions concerning immediate hazards unique to the operation and maintenance of specific equipment were included in equipment and system specific technical documents such as equipment technical manuals and system level operating manuals which were aimed and available to only limited audiences of personnel directly involved in work on the specific systems or equipment covered by the manuals.  Such manuals were not, therefore, appropriate locations for warnings and cautions relating to general or widespread shipboard health issues.

**Written Materials Regarding Equipment Supplied to the Navy**

98.     Technical specifications referenced in the procurement documents for components such as valves, pumps, oil purifiers and other propulsion plant equipment have, since at least the 1940s, included detailed requirements regarding all written materials supplied with valves, pumps, oil purifiers and other propulsion plant equipment.  Manufacturers were required to supply drawings and plans, and at times draft technical manuals for equipment.  The applicable

specifications included strict instructions regarding the labeling of and packaging of the components themselves, and for all technical documentation that was procured with them.

99. To achieve its objective of ensuring that, in form and content, the marking on equipment filled the specific informational role, for the specific Navy audience and environment, the Navy developed precise specifications as to the nature of any markings, communication or directions affixed to or made a part of any equipment supplied by OEMs for ultimate use aboard Navy ships. OEMs and constructing shipyards would not have been permitted, under the specifications, associated regulations and procedures, nor under the actual practice as it evolved in the field, to vary or to deviate in any respect from the Navy specifications in supplying equipment, including affixing any type of warning or caution statement to equipment intended for installation in a Navy ship, beyond those specifically required by the Navy without prior discussion and express approval by the Navy.

100. The Navy likewise had precise specifications as to the nature of written materials to be delivered with equipment supplied by OEMs to the Navy. This written material included a variety of formats such as design drawings, system schematics as well as operator reference materials to assist the equipment operators in operating, servicing and maintaining such equipment and to assist the Navy training establishment to develop instructional materials and courses. Through specifications, the Navy required that certain equipment be supplied with a defined number of copies of one or more instruction books or technical manuals. The Navy typically developed these technical manuals by including development of a draft manual as part of equipment procurement contracts. The draft manuals were required to be submitted to the Navy for detailed review and feedback. Once the draft manuals were found to be acceptable to the Navy, a BUSHIPS number was assigned and the manual became an official BUSHIPS document the contents of which were controlled by the Navy. The term "manufacturer's instruction books" that is found in many Navy rate training manuals refers to these Navy developed and approved technical manuals.

101.    Navy personnel or those of the Navy's Design Agents participated intimately in the preparation and review of these instruction books and technical manuals in a standardized format used by the Navy.  These manuals included safety information to the extent – and only to the extent – directed by the Navy.  Manufacturers of components and equipment were not permitted, under the specifications, associated regulations and procedures, nor under the actual practice as it evolved in the field, to include any type of warning or caution statement in instruction books or technical manuals, beyond those required and approved by the Navy without prior discussion and approval by the Navy.  The Navy dictated and, itself or through its Design Agents, reviewed and approved the contents of all technical manuals, including any cautionary language or emphasis.  The Navy approached this process for review and approval of technical manuals in an exacting manner.  It often created lengthy memoranda detailing word-by-word line edits to the content of technical manuals submitted for approval, including the wording of instructional material and warnings.  Examples of such correspondence are attached hereto as Exhibit O.  Review of and comment upon instructional materials by the Navy's Design Agents was similarly detailed.

102.    The reasons for the Navy's detailed control over and review and approval of all written communication regarding equipment it procured was to ensure consistency of that information with the overall goals and priorities of the Navy in its operations.  The Navy employed millions of uniformed and civilian personnel aboard thousands of ships and at hundreds of land-based facilities around the world.  The information provided with regard to equipment had to be consistent with the Navy's overall evaluation of the appropriate types and level of information its personnel required to efficiently perform their job responsibilities under a variety of circumstances.  In addition, written communications regarding work practices, including safety precautions and equipment, had to be coordinated with the training of Navy personnel, the physical circumstances in which they performed their work, and the tools, protective devices and equipment and other materials available aboard Navy ships and at Navy installations.

103.    Uniformity and standardization of any communication, particularly safety information, are critical to the operation of the Navy and Navy ships.  The Navy could simply not

operate safely and effectively if personnel were trained differently, or were provided with inconsistent information received from different manufacturers, each left to its own discretion in trying to anticipate the Navy's needs. If every equipment, structural steel and pipe manufacturer were allowed to decide on the need for, and provide its own safety and health warnings (including those concerning asbestos insulation that might be used on or around its product), inconsistent warnings would certainly have resulted. If each were to warn about all the possible substances that might be used on or around its equipment, sailors would quickly become inundated with inconsistent information on a myriad of substances. Therefore, the Navy's detailed specification of what warnings were required, both on equipment and in technical documentation, was logical and necessary.

104.    Asbestos-associated health issues, and the insulation materials with which the Navy associated those issues, were ubiquitous in Navy environments. Tens of tons of asbestos-containing insulation were present in mechanical and other spaces aboard Navy ships. Consistent with its objective to ensure that all documentation to which its personnel were exposed be thoroughly consistent with its overall training and procedures, the Navy would not have permitted equipment suppliers to place asbestos-related warnings on packaging or containers for valves, pumps, oil purifiers and other propulsion plant equipment or related parts or items supplied during the 1940s, 1950s, or 1960s. Similarly, the Navy would not have permitted equipment suppliers to place asbestos-related warnings in any literature or documentations supplied with valves, pumps, oil purifiers or other propulsion plant equipment for Navy ships during the 1940s, 1950s and 1960s.

105.    In this regard, it is useful to consider the Bureau of Ships Technical Manual. This manual, prepared by the Navy and updated periodically, was intended to provide guidance and information to Navy personnel on various matters. The Manual contained specific chapters covering numerous topics.

106.    A review of examples of Chapter 47 relating to pumps and Chapter 95 relating to gaskets and packing reveals that even when drafting its own manuals governing activities widely known to involve asbestos, the Navy nowhere included any cautionary language regarding – or

even any mention of – any potential hazards relating to asbestos. In addition, neither Chapter 39 of the BUSHIPS Manual relating to insulation nor Chapter 48 covering piping (and valves) likewise contained reference to such hazards during the 1940s, 1950 and 1960s. Similarly, the Navy's system-level manuals of the type described above likely did not, even where they pertained to propulsion or other systems on which the Navy required shipbuilders and Navy personnel to install large amounts of asbestos insulation, contain asbestos-related cautions to Navy personnel.

107.    The absence of asbestos-related cautionary language in the Navy's own manuals for equipment or for asbestos-containing materials is consistent with the notion that the Navy did not accept, and did not permit, asbestos-related warnings in technical manuals relating to individual pieces of machinery or equipment, and is fully consistent with my experience that such warnings were not neither sought nor welcome from manufacturers of such items.

108.    Based upon my knowledge of and experience in the design, inspection and procurement of equipment for use on Navy ships, the Navy would not have permitted equipment suppliers to place asbestos-related warnings on packaging or containers for valves, pumps or related parts or items supplied during the 1940s, 1950s, or 1960s. Similarly, it is also my opinion that the Navy would not have permitted equipment suppliers to place asbestos-related warnings in any literature or documentations supplied with valves, pumps, oil purifiers and other propulsion plant equipment for Navy ships in the 1940s, 1950s and 1960s.

109.    The Navy maintained precise Navy Specifications and later Military Specifications that detailed all aspects of label plates that were required to be installed on equipment. The Navy and military specifications for identification plates included materials to be used, method of attachment, size of plate, information and format of information required, and many other details to ensure standardization of such plates. The content and format of information that was to appear on those plates was required to be submitted to the Navy for approval. MIL-I-15024 and MIL-I-15024B are examples of such precise military specifications for identification plates, and are attached as Exhibits P and Q.

110.    I have reviewed and am familiar with the BUSHIPS and later MILSPEC standards for technical manuals, including BUSHIPS General Specifications for Machinery Subsection S-I-1 of 1941 (Exhibit R); and later MILSPECS including MIL-M-15071 (Exhibit S), MIL-M-15071A (Exhibit T), MIL-M-15071B (Exhibit U), MIL-M-15071C (Exhibit V), and MIL-M-15071D (Exhibit W).   These MILSPECs confirm that the Navy was very specific in detailing what information would be included in these equipment technical manuals.   The wording of these documents is consistent with my overall opinion that the Navy intended technical manual text to address operating procedures and related equipment and personnel safety issues specifically associated with the particular equipment to which the technical manual related, rather than to generic occupational health issues.   In MIL-M-15071D, adopted in 1961, the Navy included the terms Note, Caution and Warning as possible text in technical manuals. In the section of that MILSPEC that details the requirements for Text to be used, the MILSPEC includes what is termed "Emphasis" language to be used when necessary.   It further defines three emphasis terms to be used: "Note", "Caution" and "Warning".   The MILSPEC clearly states that these terms will be used sparingly and as adjuncts to text that details operating procedures for the equipment. Thus, these terms could only be included in a technical manual to emphasize specific operating instructions that, if not properly followed, would result in either damage to the equipment or related injury to the operator.   The term "Caution" is specified to be used to emphasize an operating procedure that must be followed to prevent damage to the equipment, and the term "Warning" is specified to be used to emphasize a procedure that must be followed to prevent personal injury while operating the equipment. Like both earlier and later versions of the 15071 series, MIL-M-15071D required that all manuals be submitted in draft to the Navy for review and approval prior to finalization and delivery with equipment.

111.    It is also my personal experience that the terms "Note", "Caution" and "Warning", when used in Navy equipment technical manuals refer specifically to safe operating and maintenance procedures and not to any more generic health related issues.

**MIL-STD-129 - Purpose and Utilization in Navy Procurement Actions**

112.    MIL-STD-129, titled "Marking for Shipment and Storage", is a Department of Defense level Military Standard that provides guidance for the uniform marking of military supplies and equipment for shipment and storage. It was first issued in August 1951 and consolidated and superseded previous requirements that had been issued by the separate military services.  It has been updated several times since then. Since it was first issued, MIL-STD-129 has been included as one of many higher level referenced documents in many Military Specifications. The Military Specifications typically state that those higher level referenced documents form a part of the Military Specification to the extent described in the Military Specification. The Military Specifications are more detailed in their content and requirements than Military Standards and include a wide range of detailed requirements for equipment and materials. Navy procurement contracts utilize numerous applicable Military Specifications to detail the technical requirements that must be met in complying with the contract.

113.    Military Specification MIL-P-16789B(SHIPS) of 9 November 1962, titled "Military Specification, Preservation, Packaging, Packing and Marking of Pumps, General, and Associated Repair Parts", is one example of a Military Specification that references MIL-STD-129. Paragraph 2.1 of MIL-P-16789B (Exhibit X) states that MIL-STD-129 and the other listed Federal and Military Specifications and Standards form a part of MIL-P-16789B to the extent specified therein. Paragraph 3.4, titled "Marking", stated that in addition to any special marking required by the contract or order, interior packages and exterior shipping containers shall be marked in accordance with MIL-STD-129. In this way, the requirements defined in MIL-STD-129 are invoked in the contract without having to repeat them. MIL-STD-129 defines two types of interior packages:

-        Unit package is the first tie, wrap, or container applied to a single item or a multiple thereof, or a group of items preserved or unpreserved, which involves a complete or identified package.

- Intermediate package is an interior container which contains two or more unit packages.

Although this example applies specifically to a pump MILSPEC, MIL-STD-129 likewise was an included reference in other MILSPECs for valves, turbines and other types of equipment.

114.    MIL-STD-129 (including version 129C – Exhibit Y) is detailed and complete in specifying all aspects of marking requirements for shipment and storage.  Specific requirements are imposed with respect to cautionary labels required by the government and, by omission, those not permitted on packaging or containers.  Examples of required cautionary labels include radioactive and magnetic materials.  Compliance with these requirements is mandatory. Deviations cannot be made without approval and specific instructions from a cognizant military authority. Paragraph 4.2.1 of MIL-STD-129C states, "No markings, other than those specified in this standard, or authorized by the cognizant activity concerned, or those required by regulation or statute, shall be placed on any container, except as permitted in 4.2.1.1."  (Paragraph 4.2.1.1 addresses advertising and case marking and does not relate to warnings, cautions or instructions.) Thus, deviations in required markings, including fewer markings, additional markings, or markings not exactly in accordance with the standard all required prior specific instructions from the cognizant military authority.

115.    Section 5.2.2.4 of MIL-STD-129C imposes a requirement that packages or containers of "hazardous chemicals" must "have affixed thereto such warning labels as may be required by the Manufacturing Chemists Association (MCA) Manual L-1 "A Guide for Preparation of Warning Labels for Hazardous Chemicals", or by appropriate Department of Defense instructions and Military specifications and standards as published which shall take precedence."  Neither the referenced Manufacturing Chemists Association document, nor Section 5.2.2.4 has any applicability to equipment such as valves, pumps, oil purifiers and other propulsion plant equipment, to technical manuals relating to such items, or to asbestos-containing gaskets or packing that might have been supplied with such equipment.

116.    Both MIL-STD-129 and the referenced MCA Manual L-1 by their terms apply to external marking of the shipping/storage containers and interior packages as defined above of military supplies and equipment. In the case of equipment such as valves, pumps, oil purifiers and other propulsion plant equipment procured by the Navy for use in the construction or repair of ships, there are no interior packages as defined in MIL-STD-129. The exterior shipping container would typically be opened and discarded at the receiving shipyard or repair activity before the equipment or valve was taken aboard the ship.  Thus, the MIL-STD-129 shipping markings would not be seen by the mechanics installing the equipment and certainly would have never been seen by the operators and maintainers of the equipment once it was aboard the ship.

117.    I have reviewed the Secretary of the Navy Instruction of 24 September 1956 and three enclosures (labeled SECNAV 6260.3 and hand changed to 5100.8 – Exhibit Z) titled Uniform Labeling Program for hazardous industrial chemicals and materials. In my opinion that instruction when issued and since was not intended to and never did apply to the labeling of equipment for naval ships manufactured in response to Navy procurement requests and in compliance with applicable Navy and MILSPEC technical reference documents.

118.    This particular SECNAV Instruction, as clearly stated in paragraphs 1 and 2, addresses standardized labeling of the containers that are used for hazardous chemical products that will ultimately be used by personnel at the shop, office or unit level. Furthermore, paragraph 3 states that the instruction is issued in response to "the rapid development of new chemical products and the introduction of new chemical processes."

119.    SECNAV Instruction 5100.8 also was not intended and did not apply to the labeling of equipment for naval ships manufactured in response to Navy procurement requests and in compliance with applicable Navy and MILSPEC technical reference documents. The SECNAV Instruction for labeling the containers of chemical products for use by personnel has no relevance to the manufacture, packaging and labeling of equipment such as valves, pumps, oil purifiers and other propulsion plant equipment procured by the Navy from industry. This equipment typically was packaged and shipped either to a shipyard for use in building or modernizing a ship or to the

Naval Supply Systems Command as repair parts. They are not shipped to end users such as those described in the SECNAV Instruction 5100.8 mentioned above.

120.    Also included in the SECNAV Instruction 5100.8 discussed above were specific implementation actions to be taken by various Navy organizations including the technical bureaus including the Bureau of Ships (BUSHIPS). Those bureaus were required to implement the instruction and to undertake the classification and labeling of chemical and hazardous materials as defined in SECNAV Instruction 5100.8. Yet in review of numerous MILSPECS and other technical reference documents for equipment such as valves, pumps, oil purifiers and other propulsion plant equipment procured and installed on naval ships in the late 1950s and subsequent, I have never seen this SECNAV instruction referenced nor have I seen the classification of such valves, pumps, oil purifiers and other propulsion plant equipment as hazardous equipment as defined in the instruction. This is further evidence that this instruction does not apply to equipment such as valves, pumps, oil purifiers and other propulsion plant equipment.

All opinions contained in this report are stated to a reasonable degree of Naval engineering certainty.

Pursuant to 28 USC § 1746, I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Signed on the 27th day of March 2026.



_____

David P. Sargent, Jr., PE

List of Exhibits:

A.   NNS&DD 1980-1990 Ships
B1. MIL-P-17840(SHIPS) of 1 March 1954 - MILITARY SPECIFICATION, PUMPS, CLOSE-COUPLED, NAVY STANDARD
B2. MIL-P-17639(Ships) of 8 October 1953 – MILITARY SPECIFICATION, PUMPS, CENTRIFUGAL, MISCELLANEOUS SERVICE
B3. MIL-P-18547(ships) of 22 August 1955 – MILITARY SPECIFICATION PUMPS, ROTARY, POWER DRIVEN, NAVAL SHIPBOARD MAIN LUBRICATING OIL SERVICE

C.  BUREAU OF SHIPS (BUSHIPS) MANUAL CHAPTER 39 -  THERMAL INSULATION - 1 April 1947

D.   Article "A HEALTH SURVEY OF PIPE COVERING OPERATIONS IN CONSTRUCTING NAVAL VESSELS" – Fleischer/Drinker

E.  BUSHIPS TECHNICAL MANUAL CHAPTER 39 – THERMAL INSULATION – 15 April 195

F.  GENERAL SPECIFICATIONS FOR MACHINERY FOR VESSSELS OF THE UNITED STATES NAVY – SECTION S39-2 – 9 December 1951

G.  MIL-STD-769(SHIPS) of 13 July 1962 – MILITARY STANDARD THERMAL INSULATION REQUIREMENTS FOR MACHINERY AND PIPING

H.  H1 & H2: BUSHIPS USS FLETCHER CLASS INSULATION AND LAGGING SCHEDULE EXTRACTS – BUSHIPS PLAN DD445-S3902 Series

I.  BUSHIPS USS SUMNER/GEARING CLASS INSULATION AND LAGGING SCHEDULE EXTRACTS – BUSHIPS PLAN DD692-S3902 Series

J.  BUSHIPS USS ESSEX CLASS INSULATION AND LAGGING SCHEDULE EXTRACTS – BUSHIPS PLAN CV-9-S3902 Series

K.  DEPT OF NAVY LETTER of 8 February 1979 to U.S. General Accounting Office

L.  MIL-I-2918E INTERIM AMENDMENT-A (SHIPS) of 9 January 1973 – MILITARY SPECIFICATION INSULATION, BLOCK THERMAL

M.  MIL-I-2781E of 7 October 1975 – MILITARY SPECIFICATION INSULATION, PIPE, THERMAL

N.  MIL-STD-769E(SHIPS) of 15 July 1974 – MILITARY STANDARD THERMAL INSULATION REQUIREMENTS FOR MACHINERY AND PIPING

O.  O1: SUPSHIP CAMDEN 10 March 1942 CL55 Letter and related re CL55 Class DFT Instruction Book;
O2: Portsmouth Naval Shipyard 8 June 1959 letter and related re SSN -593 Class LP Distillation Brine Pump Tech Manual;
O3: SUPSHIP New York 15 June 1966 Letter and related re DE1052 Distiller Feed Pump Tech Manual

P.  MIL-I-15024(SHIPS) of 19 September 1952 – INTERIM MILITARY SPECIFICATION, PLATES, IDENTIFICATION PLATES, INFORMATION PLATES AND MARKING INFORMATION FOR IDENTIFICATION OF ELECTRICAL, ELECTRONIC AND MECHANICAL EQUIPMENT

Q.  MIL-I-15024B(SHIPS) of 5 November 1956 – MILITARY SPECIFICATION, PLATES, IDENTIFICATION-INFORMATION AND MARKING FOR IDENTIFICATION OF ELECTRICAL, ELECTRONIC AND MECHANICAL EQUIPMENT

R.  GENERAL SPECIFICATIONS FOR MACHINERY BUSHIPS – SUBSECTION S1-1. PLANS – 1 March 1941

S.  MIL-M-15071(SHIPS) of 1 April 1950 – MILITARY SPECIFICATION, BOOKS, INSTRUCTION; PREPARATION, CONTENTS, AND APPROVAL

T.  MIL-M-15071A(SHIPS) of 20 October 1952 – INTERIM MILITARY SPECIFICATION, BOOK, INSTRUCTION, PREPARATION, CONTENTS AND APPROVAL

U.  MIL-M-15071B(SHIPS) of 16 August 1954 – MILITARY SPECIFICATION, TECHNICAL MANUALS FOR MECHANICAL AND ELECTRICAL EQUIPMENT

V.  MIL-M-15071C(SHIPS) of 10 September 1957) - MILITARY SPECIFICATION, TECHNICAL MANUALS FOR MECHANICAL AND ELECTRICAL EQUIPMENT (LESS ELECTRONICS)

W.  MIL-M-15071D(SHIPS) of 6 June 1961 – MILITARY SPECIFICATION, MANUAL, SERVICE (INSTRUCITON BOOKS) FOR SHIPBOARD ELECTRICAL AND MECHANICAL EQUIPMENT

X.  MIL-P-16789B(SHIPS) OF 9 November 1962 – MILITARY SPECIFICATION, PRESERVATION, PACKAGING, PACKING AND MARKING OF PUMPS, GENERAL, AND ASSOCIATED REPAIR PARTS

Y.  Y1: MIL-STD-129C OF 11 July 1960 – MILITARY STANDARD, MARKING FOR SHIPMENT AND STORAGE
Y2: MIL-STD-129C Schematics

Z.  SECNAVINST 6260.3 (5100.8) of 24 September 1956 – Uniform Labeling program for hazardous industrial chemicals and materials

# Exhibit A

